CECILIA D. WANG (CSB #187782)
LUCAS GUTTENTAG (CSB #90208)
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950
Email: CWang@aclu.org

Attorneys for Plaintiffs-Petitioners
*Additional counsel listed on following page

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALIA AHMADI, VLADIMIR MIKULICIC, IGOR OVCHINNIKOV, BILJANA PETROVIC, SERGEI SAPOZHNIKOV, EIMAN TAKY and YAN WANG, <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> MICHAEL CHERTOFF, U.S. Secretary of Homeland Security; ROBERT S. MUELLER III, Director of the Federal Bureau of Investigation; ALBERTO GONZALES, Attorney General of the United States; EMILIO T. GONZALEZ, Director, U.S. Department of Homeland Security, Bureau of Citizenship and Immigration Services; DAVID STILL, District Director, U.S. Department of Homeland Security, Bureau of Citizenship and Immigration Services, San Francisco District, <br><br> Defendants-Respondents. | Case No.  07-CV-3455-WHA <br><br> **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)** <br><br> **CLASS ACTION** <br><br> Judge:  Hon. William A. Alsup |

1

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

Additional counsel:

JULIA HARUMI MASS (CSB #189649)
ALAN L. SCHLOSSER (CSB #49957)
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

SIN YEN LING*
JOREN LYONS (CSB #203403)
ASIAN LAW CAUCUS
939 Market Street, Suite 201
San Francisco, CA 94103
Telephone:  (415) 896-1701
Facsimile:  (415) 896-1702

*Application for admission pro hac vice forthcoming

Of counsel:

TODD GALLINGER (CSB #238666)
COUNCIL ON AMERICAN-ISLAMIC RELATIONS
    (CAIR) – SAN FRANCISCO BAY AREA
3000 Scott Boulevard, Suite 212
Santa Clara, CA 95054
Telephone:  (408) 986-9874
Facsimile:  (408) 986-9875

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

# INTRODUCTION

1.      Plaintiffs-Petitioners, Alia AHMADI, Vladimir MIKULICIC, Igor OVCHINNIKOV, Biljana PETROVIC, Sergei SAPOZHNIKOV, Eiman TAKY and Yan WANG are all long-time lawful permanent residents of the United States.  Each of them has sought to become a citizen of this country by applying for naturalization, having met all statutory requirements.  However, despite successfully undergoing their naturalization interviews and clearing criminal background checks more than two years ago, none of the Plaintiffs has received an adjudication from the U.S. Bureau of Citizenship and Immigration Services ("CIS") on the ground that a background check known as an "FBI name check" is still pending.

2.      Plaintiffs are among tens of thousands of naturalization applicants throughout the United States who are suffering from systemic delays in the naturalization process caused by the policies, practices and procedures of the Defendants.

3.      Defendants are officers of CIS and the Federal Bureau of Investigation ("FBI") and are responsible for the naturalization process, including the FBI name check, which CIS requires for naturalization despite the absence of any promulgated rule or regulation.

4.      Each named Plaintiff seeks to be naturalized by this Court, as Congress has authorized through the Immigration and Nationality Act.  See 8 U.S.C. § 1447(b) (district court may make a determination of a naturalization application if there has been no adjudication within 120 days of the date of examination – i.e., the applicant's naturalization interview); United States v. Hovsepian, 359 F.3d 1144, 1151 (9th Cir. 2004) (en banc).  The named Plaintiffs also seek declaratory and injunctive relief on behalf of themselves and the proposed class members, to eliminate the systemic delays that Defendants have caused through their policies, practices and procedures.

5.      In failing to adjudicate the Plaintiffs' naturalization applications, Defendant officers of CIS have violated CIS regulations requiring that such applications be adjudicated within 120 days of the initial examination.  8 C.F.R. § 335.3.

6.      In addition, Defendant officers of both CIS and the FBI have engaged in unreasonable and extraordinary delay in adjudicating Plaintiffs' naturalization applications, in

3

1   violation of the Administrative Procedures Act, 5 U.S.C. §§ 555, 706, and the Due Process

2   Clause of the Fifth Amendment.

3       7.       Defendants' rationale for CIS's unreasonable naturalization delays – that the

4   delays are required to complete FBI name checks – highlights an independent violation of the

5   Administrative Procedures Act:  Defendants' failure to follow the notice and comment

6   requirements of 5 U.S.C. § 553.  CIS has promulgated no regulations concerning an FBI name

7   check, but nonetheless has imposed the current version of the FBI name check as a requirement

8   for over four years – without any deadlines for completion of the checks.  In contrast,

9   immigration regulations do provide for criminal records checks based on Plaintiffs' fingerprints

10  and biographical data.  Each of the Plaintiffs has passed those criminal background checks.

11  Because Defendants' addition of the FBI name check constitutes a substantive rule and causes

12  undue burden and prejudice to Plaintiffs and other members of the proposed class, the public

13  should have been provided notice and an opportunity to comment prior to its implementation.

14      8.       CIS's own ombudsman has criticized the rampant delays in the processing of

15  naturalization applications.  In an annual report released in June 2007, the CIS Ombudsman

16  concluded:  "FBI name checks, one of several security screening tools used by USCIS, continue

17  to significantly delay adjudication of immigration benefits for many customers, hinder backlog

18  reduction efforts, and may not achieve their intended national security benefits.  FBI name

19  checks may be the single biggest obstacle to the timely and efficient delivery of immigration

20  benefits.  The problem of long-pending FBI name checks cases <u>worsened</u> during the reporting

21  period [of June 2006 to June 2007]."  CIS Ombudsman, Annual Report 2007, at 37 (emphasis in

22  original), available at http://www.dhs.gov/xabout/structure/gc_1183751418157.shtm.

23      9.       Plaintiffs all have spent many years in the United States and have made this

24  Nation their home.  They seek to pledge their allegiance to their adopted country and to

25  participate fully in U.S. society as citizens.  Each of the Plaintiffs has met the statutory

26  requirements to become a U.S. citizen, and in some cases they have sought relief through

27  requests to members of Congress and through formal and informal inquiries with the

28  government.  Nonetheless, each of the Plaintiffs has been stymied in his or her efforts by the

1   unreasonable and extraordinary delay of the Defendants.

2       10.   As a result of the Defendants' failure to process naturalization applications within

3   a reasonable time, under timelines set by Congress, Plaintiffs are unable to participate in civic

4   society by voting and jury service.  Plaintiffs also are unable expeditiously to petition for lawful

5   permanent residency immediate relatives living abroad including, in some cases, their spouses

6   and children.  Plaintiffs also are unable to participate freely as U.S. citizens in the Visa Waiver

7   Program or to travel abroad and to return to the United States without fear of exclusion.  One of

8   the named Plaintiffs is blocked in his professional advancement because of the delay in

9   naturalization.

10      11.   Plaintiffs seek not only their own naturalization through 8 U.S.C. § 1447(b), but

11  also declaratory and injunctive relief as representatives of a class of other individuals who have

12  satisfied all statutory requirements for naturalization and are suffering similar unreasonable

13  delays.  Plaintiffs ask the Court to declare that the Defendants are violating the due process rights

14  of Plaintiffs and the proposed class, as well as the Administrative Procedures Act and the

15  immigration laws and regulations, in failing to complete all background checks necessary for

16  adjudication of naturalization applications within a reasonable time as established by Congress

17  and by CIS's own regulations.

18                          **JURISDICTION AND VENUE**

19      12.   This Court has subject matter jurisdiction over this matter pursuant to 8 U.S.C. §

20  1447(b) (district court jurisdiction to adjudicate delayed naturalization applications), 5 U.S.C. §

21  702 (Administrative Procedures Act), 28 U.S.C. § 1361 (writ of mandamus), and 28 U.S.C. §

22  1331 (federal question).

23      13.   Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§

24  1391(e).  Plaintiffs sue the Defendants in their official capacities as officers and employees of the

25  United States.  A substantial portion of the events giving rise to this Complaint occurred within

26  this District, where the Plaintiffs' applications for naturalization are pending before the San

27  Francisco District of the CIS.  In addition, venue is proper in this District pursuant to 8 U.S.C. §

28  1447(b), which provides that a petition for de novo review of a naturalization application shall be

5

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

filed in the district in which the applicant resides.  All of the Plaintiffs live within this District.

### PARTIES

14.     Plaintiff Alia Ahmadi is a citizen of Afghanistan.  She is a lawful permanent resident of the United States and lives in Union City, California.  She applied for naturalization with CIS and passed her naturalization examination in May 2003.  Her naturalization application has not been adjudicated.

15.     Plaintiff Vladimir Mikulicic was born in former Yugoslavia and is a citizen of Croatia.  He is a lawful permanent resident of the United States and lives in Lafayette, California.  He applied for naturalization with CIS and passed his naturalization examination on or about December 1, 2004.  His naturalization application has not been adjudicated.

16.     Plaintiff Igor Ovchinnikov is a citizen of Ukraine.  He is a lawful permanent resident of the United States and lives in San Francisco, California.  He applied for naturalization with CIS and passed his naturalization examination in February 2004.  His naturalization application has not been adjudicated.

17.     Plaintiff Biljana Petrovic is a native of former Yugoslavia and a naturalized citizen of Canada.  She is a lawful permanent resident of the United States and lives in Los Altos, California.  She applied for naturalization with CIS and passed her naturalization examination in February 2004.  Her naturalization application has not been adjudicated.

18.     Plaintiff Sergei Sapozhnikov is a native of the former Soviet Union and a citizen of Russia.  He is a lawful permanent resident of the United States and lives in Walnut Creek, California.  He applied for naturalization with CIS and passed his naturalization examination in July 2004.  His naturalization application has not been adjudicated.

19.     Plaintiff Eiman Taky is a citizen of Egypt.  She is a lawful permanent resident of the United States and lives in San Jose, California.  She applied for naturalization with CIS and passed her naturalization examination in March 2005.  Her naturalization application has not been adjudicated.

20.     Plaintiff Yan Wang is a citizen of China.  She is a lawful permanent resident of

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

1  the United States, and she resides in San Francisco, California.  She applied for naturalization
2  with CIS and passed her naturalization examination in January 2004.  Her naturalization
3  application has not been adjudicated.

4          21.     Defendant Michael Chertoff is the U.S. Secretary of Homeland Security and has
5  ultimate responsibility for CIS, a subunit of the Department of Homeland Security.  Mr. Chertoff
6  is ultimately responsible for the administration of all immigration and naturalization laws,
7  including the processing and determination of applications for naturalization.  He is sued in his
8  official capacity.

9          22.     Defendant Robert S. Mueller III is the Director of the Federal Bureau of
10  Investigation.  Mr. Mueller is ultimately responsible for the processing of FBI name checks
11  submitted by CIS to the FBI during the naturalization process.  Mr. Mueller is sued in his official
12  capacity.

13          23.     Defendant Alberto Gonzales is the Attorney General of the United States.  He is
14  the head of the U.S. Department of Justice, which encompasses the FBI.  Mr. Gonzales is also
15  jointly responsible with Mr. Chertoff for enforcement of immigration laws.  Mr. Gonzales is
16  sued in his official capacity.

17          24.     Respondent Emilio T. Gonzalez is the Director of CIS.  Mr. Gonzalez is
18  responsible for the processing and determination of all applications for naturalization submitted
19  to CIS.  He is sued in his official capacity.

20          25.     Respondent David Still is the District Director for the San Francisco District of
21  the Bureau of Citizenship and Immigration Services ("CIS"), U.S. Department of Homeland
22  Security.  Mr. Still is responsible for applications for naturalization pending in the San Francisco
23  District.  Mr. Still is sued in his official capacity.

24                              **LEGAL FRAMEWORK**

25  **General Requirements for Naturalization**

26          26.     Federal immigration law allows persons who have been residing in the United
27  States as lawful permanent residents to become United States citizens through a process known
28  as naturalization.

7

27.     A person seeking to naturalize must meet certain requirements, including an understanding of the English language and history and civics of the United States; a sufficient period of physical presence in the United States; and good moral character.  8 U.S.C. § 1423, 1427(a).

28.     Persons seeking to naturalize must submit an application for naturalization to CIS.  8 U.S.C. § 1445.  CIS is the agency that is responsible for adjudicating naturalization applications.

29.     Once an application is submitted, CIS conducts a criminal background investigation of each naturalization applicant.  8 U.S.C. § 1446(a); 8 C.F.R. § 335.1.

30.     After a criminal background investigation is completed, CIS schedules a naturalization examination, at which an applicant meets with a CIS examiner who is authorized to ask questions and take testimony.  The CIS examiner must determine whether to grant or deny the naturalization application.  8 U.S.C. § 1446(d).

31.     CIS must grant a naturalization application if the applicant has complied with all requirements for naturalization.  8 C.F.R. § 335.3.  Naturalization is not a discretionary benefit, but a right upon satisfaction of statutory requirements.

32.     CIS must grant or deny a naturalization application at the time of the examination or, at the latest, within 120 days after the date of the examination.  8 C.F.R. § 335.3.  Once an application is granted, the applicant is sworn in as a United States citizen.

33.     When CIS fails to adjudicate a naturalization application within 120 days of the examination, the applicant may seek de novo review of the application by a district court.  8 U.S.C. § 1447(b).  When the applicant requests district court review, the district court gains exclusive jurisdiction over the application, United States v. Hovsepian, 359 F.3d 1144 (9th Cir. 2004), and it may naturalize the applicant.  8 U.S.C. § 1447(b).

34.     In general, Congress has provided that applications for immigration benefits should be adjudicated within 180 days of the initial filing of the application.  8 U.S.C. § 1571. The President has also expressed that view.  *See* Remarks by the President at INS Naturalization Ceremony (July 10, 2001), available at http://www.whitehouse.gov/news/releases/2001/07/print

8

20010710-1.html (urging immigration agencies to adopt standard of six-month processing time for applications for immigration benefits).

**Pre-Naturalization Background Checks**

35.     Under 8 U.S.C. § 335.2, CIS should not schedule the "initial examination" (i.e., the naturalization interview) until the agency has received "a definitive response from the [FBI] that a full criminal background check" has been completed.  The regulation defines a "definitive response" as one of the following:  (1) FBI confirmation that the applicant "does not have an administrative or criminal record; (2) FBI confirmation that the applicant does have such a record; or (3) FBI confirmation that the applicant's fingerprint cards "have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected."  8 U.S.C. § 335.2(b).  Thus, 8 C.F.R. § 335.2(b) contemplates that the "criminal background check" required by regulation is based upon fingerprint records, and is not a "name check."  The FBI fingerprint check is run against criminal records showing arrests, criminal charges not leading to convictions, and criminal convictions.

36.     Nonetheless, CIS runs two name-based background checks on each naturalization applicant.  First, CIS runs each applicant's name against the Interagency Border Inspection System ("IBIS"), a centralized records system combining information on "national security risks, public safety issues and other law enforcement concerns" from multiple law enforcement and intelligence agencies.  Second, in 1998, CIS instituted the FBI name check.  As originally implemented in 1998, the FBI name check ran a naturalization applicant's name against a database containing the names of persons who are or were the subjects of an FBI investigation.

37.     In 2002, without giving public notice and an opportunity for public comment, CIS drastically expanded the scope of the FBI name check, so that an applicant's name would be checked against not only the names of investigation subjects, but also other names that are merely mentioned in FBI files.

38.     As expanded in 2002, the FBI name check requirement is implemented in such a manner that it is highly likely that an applicant may be identified erroneously as a person "of interest" to the FBI, thereby delaying adjudication of the naturalization application, even though

the applicant has committed no crimes, does not pose any kind of security risk, and has never been a suspect in any investigation. For example, the name check may result in a "hit" when the applicant's name is mentioned in FBI records because he has been an innocent witness or victim of a crime, has undergone an employment-related security clearance in the past, or has assisted the FBI in an investigation. Thus, since 2002, the FBI name check has not been implemented in a manner that is calculated effectively to uncover national security risks, criminal conduct, or other wrongdoing.

39.     The FBI name check procedure is also highly likely to result in false positive results because the FBI runs not only a naturalization applicant's actual name, but also various alternate spellings and permutations of the applicant's given and family names.

40.     Plaintiffs are informed and believe that CIS does not adjudicate applications for naturalization until it receives a completed FBI name check. Neither CIS nor the FBI imposes any time limits for completion of FBI name checks. As a result of their policies, practices and procedures, including their failure to require FBI name checks to be completed in a reasonable time period, Defendants are responsible for systemic, years-long delays in adjudicating tens of thousands of naturalization applications nationwide, including those submitted by Plaintiffs.

41.     Although Defendants have asserted that the FBI name checks are necessary for national security, there is no justification for delays in the FBI name check process. Delays in the FBI name check process do not serve the interest of national security. Indeed, as the CIS Ombudsman has reported, "the current USCIS name check policy may *increase* the risk to national security by prolonging the time a potential criminal or terrorist remains in the country." CIS Ombudsman, Annual Report 2006 at 25 (emphasis added), available at http://www.dhs.gov/xlibrary/assets/CISOmbudsman_AnnualReport_2006.pdf. In his most recent annual report, the CIS Ombudsman expressed his "agree[ment] with the assessment of many case workers and supervisors at USCIS field offices and service centers that the FBI name check process has limited value to public safety or national security, especially because in almost every case the applicant is in the United States during the name check process, living or working without restriction." CIS Ombudsman, Annual Report 2007 at 40.

42. Upon information and belief, CIS has not reported any instance of a security threat discovered through an FBI name check that was not also disclosed through criminal background checks such as the fingerprint check and IBIS database check. The CIS Ombudsman has questioned CIS's claims that the FBI name check provides information that is not otherwise available through other, existing background checks in the naturalization process. In his 2007 annual report, the CIS Ombudsman states: "It is unclear how many of the FBI name check 'responses' also were revealed by one or more of the other security checks conducted for the [naturalization] applications. To date, the Ombudsman has been unable to ascertain from USCIS the total number of actual problem cases that the agency discovered exclusively as a result of the FBI name check. The Ombudsman understands that most, if not all, of the problem cases which would result in an eventual denial of benefits also can be revealed by the other more efficient, automated criminal and security checks that USCIS initiates." CIS Ombudsman, Annual Report 2007, at 41.

43. Plaintiffs are informed and believe that in April 2006, CIS implemented a new policy or practice of delaying naturalization examinations until after the FBI name check is completed. Thus, for certain applicants for naturalization, lengthy delays in adjudication now occur prior to the examination, rather than after the examination. Upon information and belief, the April 2006 policy change has resulted in delayed scheduling of the naturalization examination for thousands of applicants. CIS has stated that a purpose of the policy change was to discourage litigation under 8 U.S.C. § 1447(b), which gives district courts jurisdiction to adjudicate applications when CIS has failed to act within 120 days of the examination.

## FACTS

### Plaintiffs

44. Alia Ahmadi is a 73-year-old native and citizen of Afghanistan. She came to the United States as a lawful permanent resident in November 1986, through a petition by her son Basheer Ahmadi, a U.S. citizen. Ms. Ahmadi lives in Union City, California, with one of her daughters. Ms. Ahmadi has six adult children. Five of her children are U.S. citizens and one is a lawful permanent resident of the United States. Ms. Ahmadi also has 13 grandchildren, all U.S.

11

1    citizens.

2        45.    In October 2002, Ms. Ahmadi applied for citizenship and successfully completed

3    her naturalization interview and criminal background checks in May 2003.  She meets all other

4    statutory requirements for naturalization.  At the end of the interview, the CIS officer told Ms.

5    Ahmadi that she had passed her examination and would receive her oath notice shortly.

6        46.    Approximately three to four months after successfully passing her naturalization

7    examination, Ms. Ahmadi contacted CIS because she had not received her oath notice.   A CIS

8    employee told Ms. Ahmadi that her application was still pending.  Ms. Ahmadi has followed up

9    with further contacts with CIS by telephone and in person.  Each time, CIS officers have

10    informed her that her naturalization application is still pending due to an FBI name check.  She

11    also has had to re-submit her fingerprints as her application has been pending so long that CIS

12    informed her that her original fingerprint card "expired."  Ms. Ahmadi's children also contacted

13    their representatives in Congress for assistance.  Representative Pete Stark made an inquiry to

14    CIS, which responded that a name check was pending.

15        47.    Although CIS informed Ms. Ahmadi that her naturalization application has not

16    been adjudicated because her FBI name check is pending, Plaintiffs are informed and believe

17    that in fact the FBI did complete Ms. Ahmadi's name check on or about October 13, 2005.

18    Nonetheless, CIS has failed to adjudicate the application to date.

19        48.    Ms. Ahmadi has suffered harm from the delay of her naturalization.  One of her

20    daughters lives outside of the U.S. part-time.  Because it is difficult for citizens of Afghanistan to

21    obtain visas for foreign travel, she has sometimes been deterred from visiting her daughter and

22    grandchildren while they are abroad.  Ms. Ahmadi is 73 years old and the anxiety surrounding

23    the delay in the granting of her citizenship has put extreme pressure on her already frail health.

24        49.    Vladimir Mikulicic is a 61-year-old native of former Yugoslavia and citizen of

25    Croatia.  Having previously visited the United States several times, he came on a tourist visa in

26    1991 to visit his sister in San Francisco and to ski in Colorado.  While in the United States, he

27    decided to enroll in an English language course and changed his visa status accordingly, with the

28    assistance of counsel.  During Mr. Mikulicic's visit to the United States, the civil war in the

12

former Yugoslavia escalated. As a result of a previous conflict with a Croatian nationalist official, Mr. Mikulicic feared that he would be in danger if he returned to Yugoslavia, and he applied for asylum through counsel. In 1994, Mr. Mikulicic began dating his sister's coworker, Suzanne Craft, a U.S. citizen. They married in 1996. Mr. Mikulicic and his wife applied for adjustment of his status and he became a lawful permanent resident in or about September 1996.

50. Mr. Mikulicic and his wife live in Lafayette, California. He is an engineer and is employed by the Parsons Corporation as a Ports and Harbors Operational Manager.

51. In or about May 2004, Mr. Mikulicic applied for citizenship. He successfully completed his criminal background checks and passed his naturalization interview on or about December 1, 2004. Mr. Mikulicic meets all statutory requirements for naturalization. At the time of the naturalization interview, a CIS officer told Mr. Mikulicic that he had passed the examination, but that the agency would have to wait for a response from the FBI before Mr. Mikulicic would receive his oath notice.

52. During the pendency of his naturalization application, Mr. Mikulicic has made numerous inquiries of CIS about the delay. Beginning six months after his interview, he has made numerous inquiries of CIS by telephone. CIS has responded by informing him that his background checks are still pending. In addition, Mr. Mikulicic and his wife have twice requested assistance from the office of Senator Dianne Feinstein. In response to inquiries from Senator Feinstein's staff, CIS stated that Mr. Mikulcic's name check is still pending. Mr. Mikulicic also telephoned his local FBI office to inquire about the delay of his FBI name check, and was told to be patient as the FBI is overwhelmed with pending name checks.

53. Mr. Mikulicic is suffering serious prejudice from the delay of his naturalization. He is employed by a Pasadena-based engineering firm, Parsons Corporation, as a Ports and Harbors Operational Manager. Because he is not a U.S. citizen, he is precluded from obtaining certain security clearances that are necessary for some aspects of his job. As a result, he has had several temporary gaps in his employment with Parsons. In addition, Mr. Mikulicic has had to forgo job assignments that would require him to stay outside the United States for extended periods, so that he can maintain his lawful permanent resident status and meet the physical

13

1   presence requirement for naturalization.  These restrictions on Mr. Mikulicic's work

2   opportunities also affect his salary and opportunities for advancement.

3          54.    Igor Ovchinnikov is a 43-year-old native of the former Soviet Union and citizen

4   of Ukraine.  He first came to the United States in 1989 on a student visa as part of an exchange

5   program at Willamette University in Salem, Oregon, and again from 1992-94 as an Edmund

6   Muskie Fellow at the business school at Ohio State University.  Mr. Ovchinnikov immigrated to

7   the United States as a lawful permanent resident through the diversity visa program in January

8   1998.

9          55.    Mr. Ovchinnikov lives with his wife and teenaged daughter, who are both

10  naturalized U.S. citizens.  Mr. Ovchinnikov holds an M.B.A. degree from Ohio State University

11  and has previously worked as a management consultant for IBM and Price Waterhouse.  He is

12  currently working at a nonprofit organization in the Mission District of San Francisco, teaching

13  computer skills as part of a job training program.  He also works part-time as a licensed real

14  estate broker.

15         56.    In or about May 2003, Mr. Ovchinnikov applied for citizenship.  He successfully

16  completed his criminal background checks and passed his naturalization interview on or about

17  February 9, 2004.  Mr. Ovchinnikov meets all statutory requirements for naturalization.  At the

18  time of his interview, a CIS officer told him that his application was complete but that his case

19  required "further supervisory review."

20         57.    During the course of the long delay in adjudication of Mr. Ovchinnikov's

21  naturalization application, CIS directed him to reappear for fingerprinting twice, in or about June

22  2003 and in July 2005.  On information and belief, CIS commonly makes such requests of

23  delayed applicants because it regularly purges its records of fingerprint cards once they have

24  been in CIS's system for a certain period of time.

25         58.    During the pendency of his naturalization application, Mr. Ovchinnikov has made

26  numerous inquiries of CIS about the delay.  In response, CIS has informed him that his

27  application is still pending because of "background" or "security" checks.  Mr. Ovchinnikov also

28  has submitted a written request to CIS for expediting of his application, to no avail.  Mr.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

1    Ovchinnikov also has made requests for assistance to the CIS Ombudsman and to U.S.

2    Representative Nancy Pelosi.

3          59.    Mr. Ovchinnikov is suffering serious prejudice from the delay of his application.

4    He would like to petition for his mother, who lives alone in Ukraine, to join him in the United

5    States.  Because Mr. Ovchinnikov is not yet a U.S. citizen, he has been unable to do so.  *See* 8

6    U.S.C. § 1151(b)(2)(A)(i) (providing that children, spouses, and parents of U.S. citizens are not

7    subject to worldwide limitations on numbers of visas issued); 8 U.S.C. § 1153(a) (setting forth

8    preferences for issuance of visas to unmarried sons or daughters of U.S. citizens, spouses and

9    unmarried sons or daughters of lawful permanent residents, married sons and daughters of U.S.

10   citizens, and brothers or sisters of U.S. citizens, in that order).  Mr. Ovchinnikov has not seen his

11   mother since he immigrated to the United States in 1998.

12         60.    Biljana Petrovic is a 54-year-old native of former Yugoslavia and naturalized

13   citizen of Canada.  Ms. Petrovic has been a lawful permanent resident for 19 years.  She entered

14   the United States in June 23, 1988, upon the petition of her husband, Ihab Abu-Hakima, who was

15   then a lawful permanent resident and has since naturalized.  Ms. Petrovic and her husband have

16   two children, who are both U.S. citizens.  Ms. Petrovic is full-time homemaker and cares for her

17   two children, while her husband works as the Chief Executive Officer of a small start-up wireless

18   company in Silicon Valley.  Ms. Petrovic is an active member of her local community.  She is a

19   member of the YMCA and the Parent-Teacher Association at Mountain View High School.

20   From 1999 to 2004, Ms. Petrovic was an active member of the Peninsula Children's Auxiliary,

21   which provides services to autistic children.

22         61.    In or about April 2003, Ms. Petrovic submitted her citizenship application.  She

23   passed criminal background checks and successfully completed her naturalization interview on

24   or about February 13, 2004.  At the end of the interview, the CIS officer informed Ms. Petrovic

25   that she had passed the tests for English and U.S. history and civics.  CIS directed her to attend

26   another interview on July 15, 2004, but then later sent a notice that the second interview was

27   canceled.  Ms. Petrovic meets all statutory requirements for naturalization.  Since passing her

28   interview, she has made at least five inquiries to CIS by mail.  She also has twice visited the CIS

15

office in San Jose in person and was told that her case was pending with the FBI.  On October 24, 2005, a CIS officer informed Ms. Petrovic's former counsel that her application was still pending because of the background and name check.  In October 2004, Ms. Petrovic contacted Senator Dianne Feinstein, and she received a response on November 12, 2004, stating that the FBI name check is still pending.  In April 2006, Ms. Petrovic contacted Representative Anna G. Eshoo in an effort to expedite her citizenship application.  In April 28, 2006, she received a response from the staff of Representative Eshoo confirming the name check delay and that a request to expedite the application has been made with CIS.

62.     On or about October 10, 2006, Ms. Petrovic submitted a request to the FBI under the Freedom of Information Act, seeking information about the delay of her name check.  By letter dated February 5, 2007, the FBI responded with the notation:  "No arrest record, CJIS Division FBI."

63.     Ms. Petrovic has suffered severe prejudice from the delay of her naturalization.  Ms. Petrovic's parents are 80 and 81 years old and living in Canada.  She is their only child.  Her mother is beginning to suffer from the early stages of dementia, and Ms. Petrovic fears that her parents will soon need her full-time attention and assistance.  Because of the delay in her naturalization, Ms. Petrovic has been unable to petition for her parents to join her in the United States.  This circumstance has caused her a great deal of anguish, as she has two children and will not be able to care for both her children and her parents, while the latter are still living in Canada.

64.     Sergei Yuri Sapozhnikov is a 46-year old native of the former Soviet Union and citizen of Russia.  He came to the United States in August 1991 on an H1-B employment visa and became a lawful permanent resident through the sponsorship of his former employer, Tech Met Traders.  He has been working in Silicon Valley for Sun Microsystems as a computer engineer for approximately seven years.  Mr. Sapozhnikov's wife, a professor at California State University at Hayward, is a lawful permanent resident.  The Sapozhnikovs have three children – two of whom are U.S. citizens and one of whom is a lawful permanent resident.   Mr. Sapozhnikov's wife and younger son are also facing delays of their citizenship applications.

65.     In or about February 2004, Mr. Sapozhnikov submitted his citizenship application. He successfully passed his criminal background checks and successfully passed his naturalization examination on or about July 22, 2004. Mr. Sapozhnikov meets all statutory requirements for naturalization. At the end of his examination, the CIS officer informed Mr. Sapozhnikov that he passed the tests for English and U.S. history and government. However, the CIS officer gave him written notice stating that a decision cannot be made on his application because background checks have not been completed. Mr. Sapozhnikov has been waiting for his oath notice for approximately three years.

66.     Mr. Sapozhnikov has suffered serious prejudice from the delay of his naturalization. Mr. Sapozhnikov would like to petition for his 70-year-old father and his sister to live with him in the United States. Since the death of Mr. Sapozhnikov's mother in January 2005, his father has been living alone in Russia. The burden of providing care to his father has shifted to his sister even though she also has responsibility for her own family. Mr. Sapozhnikov seeks to naturalize so that he can reunite with his family, and fulfill his responsibilities as a son in the event that his father should become ill.

67.     Eiman Taky is a 44-year-old native and citizen of Egypt. She first came to the United States on an F-1 student visa in January 1987 and became a lawful permanent resident in May 1993 following her marriage to a lawful permanent resident. Ms. Taky, who was divorced from her husband in 2001, lives with her teenaged children, who are both U.S. citizens. Ms. Taky trained as a dentist in her home country and now works as a dental hygienist in the Bay Area.

68.     In August 2004, Ms. Taky applied for citizenship. She successfully completed her criminal background checks and passed her naturalization interview on or about March 15, 2005. Ms. Taky meets all statutory requirements for naturalization. At the time of her interview, a CIS officer told her that her application was complete but for an FBI name check.

69.     To date, CIS has failed to adjudicate Ms. Taky's naturalization application. In an effort to obtain a decision, Ms. Taky retained a private immigration attorney who made inquiries with CIS and FBI. The government's only response to the inquiries was that Ms. Taky's FBI

1   name check was still pending.

2       70.    During the course of the long delay in adjudication of Ms. Taky's naturalization

3   application, CIS directed her to reappear for fingerprinting in June 2006.  On information and

4   belief, CIS commonly makes such requests of delayed applicants because it regularly purges its

5   records of fingerprint cards once they have been in CIS's system for a certain period of time.

6       71.    Ms. Taky is suffering serious prejudice from the delay of her application.  Her

7   elderly parents live in Egypt and she has been unable to petition for them to join her in the

8   United States because she is not a U.S. citizen.  *See* 8 U.S.C. § 1151(b)(2)(A)(i) (providing that

9   children, spouses, and parents of U.S. citizens are not subject to worldwide limitations on

10  numbers of visas issued); 8 U.S.C. § 1153(a) (setting forth preferences for issuance of visas to

11  unmarried sons or daughters of U.S. citizens, spouses and unmarried sons or daughters of lawful

12  permanent residents, married sons and daughters of U.S. citizens, and brothers or sisters of U.S.

13  citizens, in that order).  Ms. Taky's elderly mother is currently serving as the sole caretaker for

14  Ms. Taky's father, even though both parents are in poor health.   Ms. Taky would like to bring

15  her parents to the United States so that she can care for them in their old age and ill health.

16      72.    Yan Wang is a 36-year old native and citizen of China.  She came to the United

17  States on a K-1 fiancee visa in February 1999 and became a lawful permanent resident on July

18  2000.  Ms. Wang and her husband, a U.S. citizen, live in San Francisco, California.  Ms. Wang is

19  currently attending San Francisco City College part-time.  She also works full-time for the City

20  of San Francisco providing home care for disabled persons.

21      73.    In May 2003, Ms. Wang applied for citizenship and successfully completed her

22  naturalization interview and criminal background checks in January 2004.  She meets all other

23  statutory requirements for naturalization.  At the end of the interview, a CIS officer told Ms.

24  Wang that she passed her examination and would receive her oath shortly.

25      74.    Approximately four months after successfully passing her naturalization

26  examination, Ms. Wang contacted CIS because she had not received her oath notice.  CIS

27  informed her that the application is pending because of a name check.  Ms. Wang has made

28  approximately eight to nine inquiries with CIS in the course of the last few years, and each time,

1   she was informed that the FBI name check was not complete.

2       75.    Plaintiffs are informed and believe that CIS submitted Ms. Wang's FBI name

3   check request to the FBI on or about May 15, 2003.  Despite the passage of more than four years,

4   the FBI has failed to complete Ms. Wang's name check to date.

5       76.    Ms. Wang has suffered harm from the delay of her naturalization.  Her ailing

6   father lives in China and she wishes to spend time with him.  As a citizen, she would be able to

7   petition for lawful permanent resident status for her father so that she can care for him.  *See* 8

8   U.S.C. § 1151(b)(2)(A)(i) (providing that children, spouses, and parents of U.S. citizens are not

9   subject to worldwide limitations on numbers of visas issued); 8 U.S.C. § 1153(a) (setting forth

10  preferences for issuance of visas to unmarried sons or daughters of U.S. citizens, spouses and

11  unmarried sons or daughters of lawful permanent residents, married sons and daughters of U.S.

12  citizens, and brothers or sisters of U.S. citizens, in that order).

13  **<u>Defendants' Policies and Practices</u>**

14      77.    Plaintiffs are informed and believe that Defendants Still, Emilio Gonzalez and

15  Chertoff have a policy, pattern, and practice of failing to adjudicate the applications for

16  naturalization of the proposed plaintiff class within 120 days of the date of naturalization

17  examinations, because of unreasonable delays in the processing of FBI name checks.

18      78.    Plaintiffs are informed and believe that Defendants Still, Emilio Gonzalez and

19  Chertoff have a policy, pattern, and practice of unlawfully withholding and unreasonably

20  delaying the adjudication of applications for naturalization of the proposed plaintiff class,

21  because of unreasonable delays in the processing of FBI name checks.

22      79.    Plaintiffs are informed and believe that Defendants Mueller and Alberto Gonzales

23  have a policy, pattern, and practice of unlawfully withholding and unreasonably delaying the

24  completion of FBI name checks, with the full knowledge that CIS requires the completion of

25  such FBI name checks for adjudication of applications for naturalization of the proposed plaintiff

26  class.

27      80.    Plaintiffs are informed and believe that Defendants have a policy, pattern and

28  practice of failing to set reasonable deadlines for completing FBI name checks and taking all the

19

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND<br/>PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

1    other reasonable steps necessary to complete the adjudication of applications for naturalization of

2    the proposed plaintiff class.

3        81.    Plaintiffs are informed and believe that Defendants Still, Emilio Gonzalez and

4    Chertoff have a policy, pattern and practice of requiring FBI name checks for adjudication of

5    applications for naturalization of the proposed plaintiff class, despite having no statutory or

6    regulatory authorization for such FBI name checks.

7        82.    Plaintiffs are informed and believe that Defendants do not have or use any

8    mechanisms to identify or to track the number and status of naturalization cases in which

9    applicants satisfy all eligibility criteria, have passed naturalization interviews, and are awaiting

10   adjudication solely on the basis of FBI name checks.  In addition, CIS and FBI do not have any

11   policies or practices in place to ensure final adjudication of those naturalization applications.

12       83.    Plaintiffs are informed and believe that Defendants do not have or use any

13   mechanisms to track the number and status of naturalization cases in which applicants satisfy all

14   eligibility criteria, have passed naturalization examinations, and are awaiting adjudication for

15   more than 120 days after their naturalization examinations.  In addition, CIS and FBI do not have

16   any policies or practices in place to ensure final adjudication of those naturalization applications.

17       84.    Plaintiffs are informed and believe that Defendants Still, Emilio Gonzalez and

18   Chertoff implemented the requirement of FBI name checks for naturalization without giving

19   notice to the public and allowing a period for public comment.  The Administrative Procedures

20   Act requires such notice and comment because the FBI name check requirement is a substantive

21   change in prior CIS policy and because the requirement has an adverse effect on individuals by

22   causing a delay in adjudication of their naturalization applications.

23       85.    As a result of the Defendants' policies, practices, actions and omissions, members

24   of the proposed plaintiff class have suffered injury, in that they have been unlawfully denied the

25   rights and benefits of U.S. citizenship for more than 120 days since they passed their

26   naturalization examinations.

27   **Prejudice Suffered By Applicants With Delayed Cases**

28       86.    The named Plaintiffs and other members of the proposed class suffer concrete

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

1   harms from the unreasonable delays caused by Defendants' policies and practices.

2         87.    Delays in naturalization can prevent applicants from conferring citizenship or

3   lawful permanent status on their immediate family members.  For example, delays can cause a

4   citizenship applicant to lose the opportunity to transmit her new nationality to a minor child.  If a

5   parent naturalizes before her child turns 18, the child may automatically gain derivative

6   citizenship if the child is living in the United States in the parent's custody and is also a

7   permanent resident.  8 U.S.C. § 1431.  Thus, if a naturalization application is delayed for so long

8   that a minor child reaches the age of 18, the applicant's child will lose the opportunity for

9   automatic derivative citizenship.  In addition, as compared to a lawful permanent resident, a U.S.

10  citizen has a far greater ability to petition for the immigration of immediate relatives to the

11  United States.  See 8 U.S.C. § 1151(b)(2) (spouses, children and parents of U.S. citizen are

12  "immediate relatives" generally not subject to worldwide limitations on number of immigrant

13  visas); 8 U.S.C. § 1153 (setting forth priority list for issuance of visas to family-sponsored

14  immigrants).

15        88.    Delays in naturalization can cause applicants to be separated from their children

16  living in the United States if the child does not otherwise have permanent status and reaches the

17  age of majority during the pendency of the naturalization application.  *See*, *e.g.*, *Alhamedi v.*

18  *Gonzales*, No. 07 Civ. 2541, 2007 WL 1573935 at *2 (S.D.N.Y. May 30, 2007) (noting that

19  applicant's 20-year-old daughter might be forced to leave her studies in the United States and

20  return to home country if delay were not resolved before her birthday).  In other cases, the

21  applicant's spouse and children may still be living in the home country, and thus delays in

22  naturalization mean delays in family reunification because relatives of lawful permanent

23  residents are subject to visa limitations.  8 U.S.C. § 1153.  Many permanent residents report that

24  the years-long separation from a spouse and children is the most agonizing aspect of the delay.

25  See New York University School of Law, Center for Human Rights and Global Justice,

26  Americans on Hold: Profiling, Citizenship and the "War on Terror" ("NYU Report") at 2, 5, 22,

27  40, available at www.chrgj.org/docs/AOH/AmericansonHoldReport.pdf.

28        89.    Naturalization delays result in restrictions on the ability of immigrants to travel

1  freely.  Many permanent residents are from countries that do not participate in the Visa Waiver

2  Program, which affords U.S. citizens the ability to make short trips to 26 countries without the

3  need for a visa.  See http://travel.state.gov/visa/temp/without/without_1990. html#countries.

4  Many permanent residents who are Muslim, or are perceived to be such, report that they are

5  routinely subjected as non-citizens to intrusive questioning and searches by U.S. government

6  officials while traveling.  See NYU Report at 33-34.  Thus, naturalization delays have caused

7  many applicants – as well as their immediate family members who may be U.S. citizens – to

8  refrain from travel altogether, even for urgent matters such as illness or death in the family.  See

9  NYU Report at 5, 23.

10  90.  For many permanent residents, naturalization delays have had a negative impact

11  on their employment.  This is particularly true for highly skilled scientists, engineers, and other

12  professional workers, who often have existing FBI records – which trigger "hits" in the FBI

13  name check, although there is no derogatory information – as a result of previous employment-

14  related security checks.  U.S. Gov't Accountability Office, Report to Congressional Requesters,

15  Immigration Benefits: Improvements Needed to Address Backlogs and Ensure Quality of

16  Adjudications (Nov. 2005) at 44-45.  These permanent residents often are hampered in their

17  professional advancement because many jobs in their fields are available only to U.S. citizens.

18  This is most often an impediment for white-collar professionals, but other immigrants who aspire

19  to work in law enforcement or the U.S. military are similarly impeded.  NYU Report at 24.

20  91.  Naturalization delays have blocked the enfranchisement of tens of thousands of

21  longtime permanent residents who wish to join American civic society formally, after years of

22  contributing their work, community involvement, and tax revenues.  See NYU Report at 33-23.

23  FBI name check delays have delayed tens of thousands of immigrants from obtaining the right to

24  vote.  Nina Bernstein, Backlog Blocks Immigrants Hoping To Vote, N.Y. Times, Oct. 15, 2004,

25  at B1.

26  ## CLASS ALLEGATIONS

27  92.  Plaintiffs bring this action on behalf of themselves and all other persons similarly

28  situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).  The class, as proposed

by Plaintiffs, consists of:

> All persons who have submitted or will submit applications for naturalization to CIS, and who have met all statutory requirements for naturalization, and whose applications for naturalization are not adjudicated within 120 days of the date of their naturalization examinations.

93.     The requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) are met in that the class is so numerous that joinder of all members is impracticable.  Counsel for Plaintiffs are aware of dozens of putative class members who are similarly situated to the named Plaintiffs in this District.  Plaintiffs are not aware of the exact numbers of putative class members because Defendants are in the best position to identify such persons.  The CIS Ombudsman has noted the enormous extent of the naturalization problem, reporting that "[a]s of May 2007, USCIS reported a staggering 329,160 FBI name check cases pending, with approximately 64 percent (211,341) of those cases pending more than 90 days and approximately 32 percent (106,738) pending more than one year."  CIS Ombudsman, Annual Report 2007, at 37. According to the CIS Ombudsman, as of June 2007, there were 31,144 FBI name check cases pending more than 33 months.  The CIS Ombudsman further reports that from 2006 to 2007, the number of delayed naturalization cases has increased by 93,358.  *Id.*

94.     The numerosity of the proposed class is further demonstrated by a November 2005 report of the CIS Office of Chief Counsel indicating that in the preceding one-year period, there were 1,000 federal lawsuits filed challenging FBI name check delays.

95.     There are questions of law and fact common to the proposed class that predominate over any questions affecting only the individually named Plaintiffs, including: (1) whether CIS's failure to adjudicate the applications for naturalization of the proposed plaintiff class within 120 days of the date of naturalization examinations due to delays in FBI name checks violates the Due Process Clause, the Immigration and Nationality Act and implementing regulations, and the Administrative Procedures Act; (2) whether CIS's imposition of a name check requirement violates the notice and comment provision of the Administrative Procedures Act; (3)  whether the FBI's actions in unlawfully withholding and unreasonably delaying the

completion of FBI name checks, with the full knowledge that CIS requires the completion of such FBI name checks for adjudication of applications for naturalization of the proposed plaintiff class, violates the Constitution and laws of the United States, including the Administrative Procedures Act; and (4) whether CIS and the FBI's failure to set deadlines for completing FBI name checks and failure to take all the other reasonable steps necessary to complete the adjudication of applications for naturalization of the proposed plaintiff class, violates the Constitution and laws of the United States, including the Administrative Procedures Act.

96. The claims of the named Plaintiffs are typical of the claims of the proposed class. The named Plaintiffs, like all class members, have not had their applications for naturalization adjudicated despite the passage of over 120 days since their naturalization examinations; they have been denied timely completion of FBI name checks which CIS requires for adjudication of their applications; and their applications for naturalization have been unlawfully withheld or unreasonably delayed on the basis of FBI name checks.

97. Like the named Plaintiffs, members of the proposed class are suffering prejudice from the delay of their naturalization applications, including the inability to participate in civic society by voting and jury service, the effective inability to sponsor immediate relatives for lawful permanent resident status, the inability to travel freely as U.S. citizens, and the harm of having an uncertain status in the country they have made their home and where they have established themselves as part of a community.

98. The named Plaintiffs will fairly and adequately represent the interests of all members of the proposed class because they seek relief on behalf of the class as a whole and have no interests antagonistic to other members of the class. The named Plaintiffs are represented by pro bono counsel, including the ACLU Immigrants' Rights Project, the ACLU of Northern California and the Asian Law Caucus, who have extensive expertise in class action litigation and/or immigrants' rights cases. Finally, the Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

1

**DECLARATORY AND INJUNCTIVE RELIEF ALLEGATIONS**

2       99.     An actual and substantial controversy exists between Plaintiffs and Defendants as

3   to their respective legal rights and duties.  Plaintiffs contend that Defendants' actions violate

4   Plaintiffs' rights and the rights of proposed class members.  Defendants contend the opposite.

5       100.     Defendants' failure to timely process Plaintiffs' naturalization applications,

6   including any name check, has caused and will continue to cause irreparable injury to Plaintiffs

7   and other class members.  Plaintiffs have no plain, speedy, and adequate remedy at law.

8       101.     Based on the foregoing, the Court should grant declaratory and injunctive relief

9   under 28 U.S.C. §§ 1361, 2201, 2202 and 5 U.S.C. § 702.

10

**CAUSES OF ACTION**

11

**COUNT ONE**

12

**RIGHT TO DE NOVO JUDICIAL DETERMINATION**

13

**OF APPLICATION FOR NATURALIZATION**

14

**8 U.S.C. § 1447(B)**

15

**[By the Named Plaintiffs Against Defendants Still, Emilio Gonzalez and Chertoff]**

16       102.     The allegations contained in paragraphs 1 through 101 above are repeated and

17   incorporated as though fully set forth herein.

18       103.     Because Respondents have failed to adjudicate each named Plaintiff's

19   naturalization application within 120 days after the date of his or her naturalization examination,

20   each named Plaintiff is entitled to de novo adjudication of his or her naturalization application by

21   this Court under 8 U.S.C. § 1447(b).

22       104.     This Court should grant each named Plaintiff's naturalization application pursuant

23   to 8 U.S.C. § 1447(b), because each named Plaintiff meets all of the requirements for

24   naturalization under chapter 2 of the Immigration and Nationality Act, 8 U.S.C. § 1421 *et seq.*,

25   and therefore has a right to become a naturalized citizen of the United States.

26

27

28

# COUNT TWO

## UNREASONABLE DELAY

## IN VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

### [By the Named Plaintiffs on Behalf of the Proposed Class Against All Defendants]

105.    The allegations contained in paragraphs 1 through 104 above are repeated and incorporated as though fully set forth herein.

106.    The Administrative Procedure Act requires administrative agencies to conclude matters presented to them "within a reasonable time."  5 U.S.C. § 555.  A district court reviewing agency action may "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The court also may hold unlawful and set aside agency action that, inter alia, is found to be: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C); or "without observance of procedure required by law," 5 U.S.C. § 706(2)(D).  "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. §551(13).

107.    The failure of Defendants Still, Emilio Gonzalez and Chertoff to adjudicate the applications for naturalization of the proposed plaintiff class within a reasonable time on the basis of delays in the processing of FBI name checks, in violation of 8 U.S.C. § 1446(d) and 8 C.F.R. § 335.3, violates the Administrative Procedures Act, 5 U.S.C. § 555(b); 5 U.S.C. §§ 706(1), 706(2)(A), 706(2)(C), 706(2)(D).

108.    The failure of Defendants Alberto Gonzales and Mueller to complete FBI name checks within a reasonable time period, with the full knowledge that CIS requires the completion of such FBI name checks for adjudication of applications for naturalization of the proposed plaintiff class, violates the Administrative Procedures Act, 5 U.S.C. § 555(b); 5 U.S.C. §§ 706(1), 706(2)(A), 706(2)(C), 706(2)(D).

109.    Defendants' failure to set reasonable deadlines for completing FBI name checks, to track the number and status of naturalization cases awaiting final adjudication solely on the basis of FBI name checks, to track the number and status of naturalization cases awaiting final

26

adjudication for more than 120 days after the naturalization examinations, and to take all the other reasonable steps necessary to complete the adjudication of applications for naturalization of the proposed plaintiff class, in violation of 8 U.S.C. § 1446(d) and 8 C.F.R. § 335, violates the Administrative Procedures Act, 5 U.S.C. § 555(b); 5 U.S.C. §§ 706(1), 706(2)(A), 706(2)(C), 706(2)(D).

110.    As a result of Defendants' actions, Plaintiffs and members of the proposed class have suffered and continue to suffer injury.  Declaratory and injunctive relief are therefore warranted.

**COUNT THREE**

**FAILURE TO FOLLOW NOTICE-AND-COMMENT REQUIREMENTS OF THE ADMINISTRATIVE PROCEDURES ACT**

**[By the Named Plaintiffs Against Defendants Still, Emilio Gonzalez and Chertoff]**

111.    The allegations contained in paragraphs 1 through 110 above are repeated and incorporated as though fully set forth herein.

112.    By regulation, CIS is required to conduct a criminal background check before a naturalization application can be granted.  8 C.F.R. § 335.2(b).  CIS does conduct or cause to be conducted criminal background checks, including a check of a naturalization applicant's fingerprints against the FBI's criminal records, and a check of an applicant's name against a multi-agency law enforcement database known as the Interagency Border Inspection System ("IBIS").

113.    In or about November 2002, CIS implemented an expanded version of a third background check known as an FBI name check, which goes beyond the criminal background check required by statute and regulation.  Unlike the databases searched during the criminal background checks, the expanded FBI name check runs applicants' names against a database containing names of persons who have never been convicted of, arrested for, or even suspected of a crime – including innocent witnesses and even crime victims.   This added requirement of an FBI name check constitutes a substantive rule that departed from prior policy and practice.

114.    Defendants implemented the expanded FBI name check requirement for

naturalization without giving notice and providing a period for public comment, even though the name check requirement has an adverse impact on individuals whose naturalization applications are delayed due to the name check.

115.    The Administrative Procedures Act requires that administrative agencies provide the public with notice and an opportunity to comment prior to promulgating substantive rules, such as implementation of new requirements for naturalization.  5 U.S.C. § 553.

116.    Defendants' failure to provide a notice-and-comment period prior to implementing the FBI name check requirement violates the Administrative Procedures Act, 5 U.S.C. § 553.

<u>**COUNT FOUR**</u>

<u>**VIOLATION OF FIFTH AMENDMENT DUE PROCESS CLAUSE**</u>

<u>**[By the Named Plaintiffs on Behalf of the Proposed Class Against All Defendants]**</u>

117.    The allegations contained in paragraphs 1 through 116 above are repeated and incorporated as though fully set forth herein.

118.    The Due Process Clause of the Fifth Amendment prohibits the government from depriving any person of life, liberty or property without due process of law.

119.    Plaintiffs have a liberty or property interest in having their naturalization applications decided within a reasonable time period.

120.    Defendants Still, Emilio Gonzalez and Chertoff have a pattern, practice or policy of failing to adjudicate the applications for naturalization of the proposed plaintiff class within a reasonable time period because of delays in FBI name checks, in violation of 8 U.S.C. § 1446(d) and 8 C.F.R. § 335.  Defendants Alberto Gonzales and Mueller have a pattern, practice or policy of failing to complete FBI name checks in a reasonably timely manner, with the full knowledge that CIS requires the completion of FBI name checks for adjudication of applications for naturalization of the proposed plaintiff class.  Defendants have a pattern, practice or policy of failing to set deadlines for completing FBI name checks and to take all the other reasonable steps necessary to complete the adjudication of applications for naturalization of the proposed plaintiff class, in violation of 8 U.S.C. § 1446(d) and 8 C.F.R. § 335.3.  These actions by Defendants

violate Plaintiffs' rights to due process of law.

       121.    As a result of Defendants' actions, Plaintiffs and members of the proposed class have suffered and continue to suffer injury.  Declaratory and injunctive relief are therefore warranted.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

## **PRAYER FOR RELIEF**

WHEREFORE, in view of the arguments and authority noted herein, Petitioner prays for the following relief:

    (1)        Assume jurisdiction over the matter;

    (2)        Certify this case as a class action lawsuit, as proposed herein;

    (3)        Review de novo and grant the named Plaintiffs' applications for naturalization, pursuant to 8 U.S.C. § 1447(b);

    (4)        Order Defendants to promptly adjudicate, in a time period not to exceed 90 days, the currently pending applications for naturalization of all members of the proposed class;

    (5)        Order Defendants to adjudicate, within a reasonable time period not to exceed 180 days from the date of the application date, all applications for naturalization that shall be submitted in the future;

    (6)        Order that any name checks Defendants choose to conduct shall be completed in a manner that does not delay adjudication of naturalization applications beyond 180 days from the date the application is received by CIS;

    (7)        Order Defendants to adopt a procedure for identifying naturalization cases awaiting final adjudication based solely on FBI name checks, and for identifying naturalization cases awaiting final adjudication for more than 120 days after successful completion of the naturalization examination, or 180 days from the date CIS receives the naturalization application;

    (8)        Issue a declaratory judgment holding unlawful: (a) the failure of Defendants Still, Emilio Gonzalez and Chertoff to adjudicate applications for naturalization within 180 days of the date of the naturalization application is received by CIS; (b) The failure of Defendants Alberto Gonzales and Mueller to complete FBI name checks within a reasonable time; and (c) Defendants' failures to take all necessary steps to adjudicate

30

1    applications for naturalization within 180 days of receipt by CIS.

2    (9)    Award reasonable attorney fees and costs pursuant to the Equal Access to

3    Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412; and

4    (10)    Grant any and all further relief this Court deems just and proper.

5    Dated:  August 10, 2007    Respectfully submitted,

6    CECILLIA D. WANG
     LUCAS GUTTENTAG
7    AMERICAN CIVIL LIBERTIES UNION
        FOUNDATION
8    IMMIGRANTS' RIGHTS PROJECT
     39 Drumm Street
9    San Francisco, CA 94111

10    JULIA HARUMI MASS
      ALAN L. SCHLOSSER
11    AMERICAN CIVIL LIBERTIES UNION
         FOUNDATION OF NORTHERN
12         CALIFORNIA
      39 Drumm Street
13    San Francisco, CA 94111

14    SIN YEN LING
      JOREN LYONS
15    ASIAN LAW CAUCUS
      939 Market Street, Suite 201
16    San Francisco, CA 94103
      Telephone:  (415) 896-1701
17    Facsimile:  (415) 896-1702

18    TODD GALLINGER
      Of Counsel
19    COUNCIL ON AMERICAN-ISLAMIC
         RELATIONS (CAIR) – SAN
20    FRANCISCO BAY AREA
      3000 Scott Boulevard, Suite 212
21    Santa Clara, CA 95054
      Telephone:  (408) 986-9874
22    Facsimile:  (408) 986-9875

23

      By:    _____/s/_____
24                CECILLIA D. WANG

25    Attorneys for Plaintiffs

26

27

28

31

**CERTIFICATE OF SERVICE**

I, Cecillia D. Wang, declare as follows:

I hereby certify that today I electronically filed the foregoing FIRST AMENDED

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR

NATURALIZATION PURSUANT TO 8 U.S.C. § 1447 with the Clerk of the Court using the

ECF system, which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Alan Lawrence Schlosser<br>American Civil Liberties Union<br>  Foundation of Northern California | *Via ECF*<br>*at* aschlosser@aclunc.org |
| Joren Lyons<br>Asian Law Caucus | *Via ECF*<br>*at* joren@asianlawcaucus.org |
| Lucas Guttentag<br>American Civil Liberties Union<br>  Immigrants' Rights Project | *Via ECF*<br>*at* lguttentag@aclu.org |
| Julia Harumi Mass<br>American Civil Liberties Union<br>  Foundation of Northern California | *Via ECF*<br>*at* jmass@aclunc.org |
| Edward A. Olsen<br>United States Attorney's Office | *Via ECF*<br>*at* edward.olsen@usdoj.gov |
| Elizabeth J. Stevens<br>United States Department of Justice | *Via ECF*<br>*at* elizabeth.stevens@usdoj.gov |
| Jeffrey S. Robins<br>United States Department of Justice | *Via ECF*<br>*at* jeffrey.robins@usdoj.gov |

In addition, I hereby certify that on this 10th day of August 2007, true and correct copies

of the FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

AND PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447 were served by

U.S. Mail on the following non-ECF filers:

| | |
|---|---|
| Sin Yen Ling<br>Asian Law Caucus<br>939 Market Street, Suite 201<br>San Francisco, CA 94103 | Todd Gallinger<br>Council on American-Islamic Relations<br>3000 Scott Boulevard, Suite 212<br>Santa Clara, CA 95054 |

1    I declare under penalty of perjury under the laws of the State of California that the above

2   is true and correct.

3

4   Dated: August 10, 2007
            San Francisco, California

5

6                                                    _____/s/_____
                                                     CECILLIA D. WANG

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28