SCOTT N. SCHOOLS, SC 9990
United States Attorney
JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
Chief, Civil Division
EDWARD A. OLSEN, CSBN 214150
Assistant United States Attorney

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102
     Telephone: (415) 436-6915
     FAX: (415) 436-6927

PETER D. KEISLER
United States Department of Justice
Assistant Attorney General, Civil Division
ELIZABETH J. STEVENS VSBN 47445
Senior Litigation Counsel
Office of Immigration Litigation
JEFFREY S. ROBINS NY SBN 4355244
Trial Attorney

     P.O. Box 878, Ben Franklin Station
     Washington, D.C. 20044
     Telephone: (202) 616-1246
     FAX: (202) 233-0397
     Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALIA AHMADI, et al., | ) No. C-07-3455-WHA |
| | ) |
| Plaintiffs, | ) **DEFENDANTS' NOTICE OF MOTION** |
| | ) **AND MOTION TO DISMISS; AND** |
| v. | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES** |
| MICHAEL CHERTOFF, et al., | ) |
| | ) Date: October 11, 2007 |
| Defendants. | ) Time: 8:30 a.m. |
| | ) Courtroom: 9, 19th Floor |
| | ) |

## TABLE OF CONTENTS

NOTICE OF MOTION

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.  LEGAL AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      Authority To Naturalize Aliens.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        B.      Statutory Requirement to Conduct Background Investigations. . . . . . . . . 3

    II.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      Plaintiffs' First Count Should Be Dismissed For Lack Of Jurisdiction,
                Or The  Individual Plaintiffs' Claims Should Alternatively
                Be Remanded To USCIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            1.      The Court Lacks Jurisdiction Under 8 U.S.C. § 1447(b)
                    Because The Completion Of The Background
                    Check Is A Precondition To The Running Of The
                    120-Day Clock. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            2.      Alternatively, The Individual Plaintiffs' Claims Should Be
                    Remanded To USCIS Because The Court May Not
                    Grant Citizenship Without The Benefit Of A Full And
                    Complete Background Investigation. . . . . . . . . . . . . . . . . . . . . . . 9

            3.      Plaintiffs' Claims Are Improperly Joined. . . . . . . . . . . . . . . . . 11

        B.      Plaintiffs' Second Count Fails To State A Claim For Which
                Relief Can Be Granted Pursuant To The Administrative
                Procedures Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            1.      Plaintiffs Cannot Seek Judicial Review Under The APA
                    Because 8 U.S.C. § 1447(b) Is The Only Statute
                    Under Which Such A Claim Can Be Asserted, And It
                    Provides An Adequate Remedy In A Court. . . . . . . . . . . . . . . . 13

            2.      Plaintiffs Cannot Seek Judicial Review Under The
                    APA Because Defendants' Actions Are Not
                    "Final Agency Actions.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

3. Plaintiffs Cannot Seek Judicial Review Under The APA Where Defendants' Actions Are Not Legally Required. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

4. The FBI's Procedures Do Not Violate The APA.. . . . . . . . . . . . . 17

5. USCIS's Procedures Do Not Violate The APA. . . . . . . . . . . . . 18

C. Plaintiffs' Third Count Should Be Dismissed Because USCIS's Longstanding Investigation Requirements Do Not Violate The APA's Notice-and-Comment Requirements. . . . . . . . . . . . . . . . . . 19

D. Plaintiffs' Fourth Count Should Be Dismissed Because Plaintiffs Do Not Assert A Protected Interest.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

E. Plaintiffs' Requests For Injunctive Relief Should Be Dismissed. . . . . . . 22

CONCLUSION

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

### FEDERAL CASES

Abend v. MCA, Inc.,
    863 F.2d 1465 (9th Cir. 1988). ................................................................. 22

Alcaraz v. Block,
    746 F.2d 593 (9th Cir. 1984). ................................................................. 19

Alkenani v. Barrows,
    356 F. Supp. 2d 652 (N.D. Tex. 2005). .......................................... 7, 11, 15

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007). .......................................................................... 5

Bennett v. Spear,
    520 U.S. 154 (1997). ............................................................................. 13

Board of Regents v. Roth,
    408 U.S. 564 (1972). ............................................................................. 21

Brown v. Duchesne,
    19 How. 183,194 (1857). ....................................................................... 8

Coughlin v. Rogers,
    130 F.3d 1348 (9th Cir. 1997). ............................................................... 12

Damra v. Chertoff,
    No. 05-0929, 2006 WL 1786246 (N.D. Ohio June 23,2006)...................... 7

Danilov v. Aguirre,
    370 F. Supp. 2d 441 (E.D. Va. 2005). ................................................. 7, 13

Davis v. Michigan Department of Treas.,
    489 U.S. 803 (1989). .............................................................................. 7

Deng v. Chertof,
    No. C 06-7697, 2007 WL 1501736 (N.D. Cal. May 22, 2007). ................. 9

El-Daour v. Chertoff,
    417 F. Supp. 2d 679 (W.D. Pa. 2005). ............................................... 9, 11

Essa v. USCIS,
  No. 05-1449, 2005 U.S. Dist. LEXIS 38803 (D. Minn. Dec.14, 2005)............... 10, 11

FDIC v. Henderson,
  940 F.2d 465 (9th Cir. 1991). .................................................................. 22

Federenko v. U.S.,
  449 U.S. 490 (1981)................................................................................ 22

Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,
  528 U.S. 167 (2000)................................................................................ 22

Gunderson v. Hood,
  268 F.3d 1149 (9th Cir. 2001). ................................................................ 19

Haig v. Agee,
  453 U.S. 280 (1981)................................................................................ 16

Heckler v. Ringer,
   466 U.S. 602 (1984)................................................................................ 5

Ibrahim v. Still,
  2007 WL 841790 (N.D.Cal. Mar. 30, 2007)............................................... 10

In re Barr Laboratory,
  930 F.2d 72 (D.C. Cir. 1991)................................................................... 17

INS v. Aguirre,
  526 U.S. 415 (1999)........................................................................... 10, 11

Jarrett v. Roser,
  426 F.2d 213 (9th Cir. 1970). .................................................................. 13

Kassemi v. Department of Homeland Security,
   No. 06-1010, 2006 WL 2938819 (D. N.J. Oct. 13, 2006). ......................... 7

Khan v. Chertoff,
  2006 U.S. Dist. LEXIS 48937 (D. Az. July 14, 2006)................................. 10

Khelifa v. Chertoff,
  433 F. Supp. 2d 836 (E.D. Mich. 2006)..................................................... 10

King v. St. Vincent's Hospital,
  502 U.S. 215 (1991)................................................................................. 7

-iv-

Kokoszka v. Belford,
    417 U.S. 642 (1974)........................................................................................... 8

Lecky v. Gonzales,
    No. C 07-0007, 2007 WL 1813644 (N.D. Cal. June 22, 2007). .................................. 9

Liberty Fund, Inc. v. Chao,
    394 F. Supp. 2d 105 (D.D.C. 2005). .................................................................. 17, 18

Linoz v. Heckler,
    800 F.2d 871 (9th Cir. 1986). ............................................................................. 19

Martinez v. Gonzales,
    463 F. Supp. 2d 569 (E.D. Va. 2006). ..................................................................... 7

Mashpee Wampanoag Tribal Council, Inc. v. Norton,
    336 F.3d 1094 (D.C. Cir. 2003). ......................................................................... 17

Monahan v. Dorchester Counseling Center, Inc.,
    961 F.2d 987 (1st Cir. 1992). ............................................................................. 15

Mustafa v. Pasquerell,
    2006 WL 488399 (W.D. Tex. 2006). ..................................................................... 16

Norton v. Southern Utah Wilderness Alliance,
    542 U.S. 55 (2004)............................................................................................. 14

Nunez v. City of Los Angeles,
    147 F.3d 867 (9th Cir. 1998). .............................................................................. 21

Ohio Adult Parole Authority v. Woodard,
    523 U.S. 272 (1998)........................................................................................... 21

Olim v.  Wakinekona,
    461 U.S. 238 (1983)........................................................................................... 21

Orantes-Hernandez v. Thornburgh,
    919 F.2d 549 (9th Cir. 1990). ............................................................................. 22

Oregon Natural Desert Association v. U.S. Forest Service,
    465 F.3d 977 (9th Cir. 2006). ............................................................................. 14

Powderly v. Schweiker,
    704 F.2d 1092 (9th Cir. 1983). ........................................................................... 19

R.T. Vanderbilt Co. v. Babbitt,
    113 F.3d 1061 (9th Cir. 1997). ................................................................. 5

Rivera v. Becerra,
    714 F.2d 887 (9th Cir. 1983). ................................................................. 19

Roberts v. Corrothers,
    812 F.2d 1173 (9th Cir. 1987). ................................................................. 5

Roberts v. Spaulding,
    783 F.2d 867 (9th Cir. 1986). ................................................................. 21

Shalabi v. Gonzales,
    2006 WL 3032413 (E.D. Mo. Oct. 23, 2006). ........................................ 16

San Francisco Baykeeper v. Whitman,
    297 F.3d 877 (9th Cir. 2002). ................................................................. 14

Shomberg v. United States,
    348 U.S. 540 (1955). ............................................................................... 1

Skelly Oil Co. v. Phillips Petroleum Co.,
    339 U.S. 667 (1950). ............................................................................. 13

Stock West, Inc. v. Confederated Tribes,
    873 F.2d 1221 (9th Cir. 1989). ............................................................... 5

Telecommunication Research Action Ctr. v. FCC,
    750 F.2d 70 (D.C. Cir.1984). ...................................................... 5, 17, 18

Thornhill Publishing Co. v. General Telegraph & Electrics Corp.,
    594 F.2d 730 (9th Cir. 1979). ................................................................. 5

United States v. America Trucking Ass'ns,
    310 U.S. 534 (1940). ............................................................................... 8

United States v. Fausto,
    484 U.S. 439 (1988). ............................................................................. 13

United States v. Ginsburg,
    243 U.S. 472 (1917). ....................................................................... 21, 22

United States v. Hovsepian,
    359 F.3d 1144 (9th Cir. 2004). .......................................................... 6, 18

United States v. Ramos,
    933 F.2d 968 (11th Cir. 1991). ................................................. 16

Valdez v. Rosenbaum,
    302 F.3d 1039 (9th Cir. 2002). ................................................ 21

W. Watersheds Project v. Matejko,
    468 F.3d 1099 (9th Cir. 2006). ................................................ 14

Walji v. Gonzales,
    No. 06-20937 (5th Cir. June 19, 2007)................................. 17

Walker v. Schmoke,
    962 F. Supp. 732 (D. Md. 1997). ............................................ 16

Walters v. Reno,
    143 F.3d 1032 (9th Cir. 1998). ................................................ 22

Weinberger v. Romero-Barcelo,
    456 U.S. 305 (1982)............................................................... 23

Whitman v. America Trucking Association,
    531 U.S. 457 (2001)............................................................... 14

Yang v. California Department of Social Services,
    183 F.3d 953 (9th Cir.1999). ................................................... 15

## STATUTES

### Administrative Procedure Act:

5 U.S.C. § 704.............................................................................. 12

5 U.S.C. § 706(1).......................................................................... 14

### Declaratory Judgement Act:

28 U.S.C. § 2201........................................................................... 12

### Department of Commerce, Justice, and State, The Judiciary, and Related Agencies Appropriations Act of 1991:

Pub. L. No. 101-515, 104 Stat. 2101, 2112 (1990)......................... 16

**Department of Commerce,  Justice, and State, The Judiciary, and Related Agencies Appropriations Act of 1998:**

Pub. L. No. 105-119, 111 Stat. 2448 (Nov. 26, 1997). ........................................ 3, passim

**Homeland Security Act of 2002:**

Pub. L. No.107-296, § 1512(d), 116 Stat. 2135, 2310........................................................2

**Immigration and Nationality Act of 1952, as amended:**

Section 101(a)(24),
   8 U.S.C.§§1101(a)(24)..................................................................... 1

Section 101(f),
   8 U.S.C. § 1101(f)............................................................................ 4

Section 310,
   8 U.S.C. § 1421............................................................................... 1

Section 310(a),
   8 U.S.C. § 1421(a)........................................................................... 2

Section 310(b)(a),
   8 U.S.C. § 1421(b)(1). .................................................................... 2

Section 310(c)
   8 U.S.C. § 1421(c). ..................................................................... 2, 11

Section 316(a)(3),
   8 U.S.C. § 1427(a)(3)...................................................................... 4

Section 334,
   8 U.S.C. §§ 1445............................................................................. 1

Section 334(b,)

    8 U.S.C. §§ 1445(b). ................................................................................... 1

Section 335(a),

    8 U.S.C. § 1446. ................................................................................... 8, 18

Section 335(a),

    8 U.S.C. § 1446(a). ................................................................................ 3, 20

Section 335(a),(b),(c),

    8 U.S.C. § 1446(a),(b),(c). ........................................................................ 2

Section 335(d),

    8 U.S.C. § 1446(d). .................................................................................. 21

Section 336(a),

    8 U.S.C. § 1447(a). ............................................................................... 2, 10

Section 336(b),

    8 U.S.C. § 1447(b). .......................................................................... 1, passim

8 U.S.C. § 1571(b). ..................................................................................... 15

**Immigration Act of 1990:**

Pub. L. No. 101-649, § 401, 104 Stat. 4978 ("IMMACT"). .............................................. 2

**Intelligence Reform and Terrorism Prevention Act of 2004:**

Pub. L. 108-458, § 3001(g), 118 Stat. 3638 (2004). ....................................................... 16

## LEGISLATIVE HISTORY

135 Cong. Rec. H4539-02 (July 31, 1989). ...................................................... 2

H.R. Rep. No. 101-187 at 34 (1989). ........................................................... 10

## CODE OF FEDERAL REGULATIONS

8 C.F.R. §§ 334.11................................................................................. 1

8 C.F.R. § 335 ............................................................................... 2, 21

8 C.F.R § 335(a)................................................................................. 3

8 C.F.R. § 335.1................................................................................. 3

8 C.F.R. § 335.2(b). ................................................................... 3, Passim

8 C.F.R. § 335.11................................................................................ 3

8 C.F.R. § 335.13................................................................................ 3

8 C.F.R. § 336.2(b). ............................................................................ 2

## FEDERAL REGISTER

Administrative Naturalization,
   56 Fed. Reg. 50,475 (Oct. 7, 1991) (codified at 8 C.F.R. §335.1)............................ 20

Information Collections Under Review,
   60 Fed. Reg. 38,371 (July 26, 2005)....................................................... 20

Requiring Completion of Criminal Background Checks Before Final
Adjudication of Naturalization Applications, 63 Fed. Reg. 12,987 (March
17, 1998)..................................................................................................................... 20

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(1).................................................................................................. 5

Fed. R. Civ. P. 12(b)(1), (6). ........................................................................................ 1

Fed. R.  Civ. P. 21........................................................................................................ 11

1

<u>NOTICE OF MOTION</u>

2

**PLEASE TAKE NOTICE** that on October 11, 2007, at 8:30 a.m. or as soon thereafter as

3

the parties may be heard, Defendants Michael Chertoff, Robert S. Mueller III, Alberto Gonzales,

4

Emilio T. Gonzalez, and David Still (collectively "Defendants" or "Government") will bring for

5

hearing a motion to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and

6

(6). The hearing will take place before the Honorable William H. Alsup, in Courtroom 9, 19th

7

Floor, 450 Golden Gate Ave., San Francisco, CA 94102.

8

This Motion is based on the Memorandum of Points and Authorities attached hereto, the

9

Declarations of Michael A. Cannon and Jonah J. Hadary, and all pleadings, papers and files in this

10

action, and such oral argument as may be presented at the hearing on the motion.

11

12

Respectfully submitted,

13

SCOTT N. SCHOOLS
United States Attorney

14

JOANN M. SWANSON
Assistant United States Attorney

15

Chief, Civil Division
EDWARD A. OLSEN

16

Assistant United States Attorney

17

PETER D. KEISLER

18

United States Department of Justice
Assistant Attorney General, Civil Division

19

ELIZABETH J. STEVENS
Senior Litigation Counsel

20

Dated: August 31, 2007          By:     /s/

21

JEFFREY S. ROBINS
Trial Attorney

22

23

24

25

26

27

28

Defendants' Motion to Dismiss - C-07-3455-WHA

# MEMORANDUM OF

# POINTS AND AUTHORITIES

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants Michael Chertoff, Robert S. Mueller III, Alberto Gonzales, Emilio T. Gonzalez, and David Still (collectively "Defendants" or "Government"), by and through their undersigned counsel, respectfully move this Court for an Order dismissing Plaintiffs' Complaint because the Court lacks subject matter jurisdiction over Plaintiffs' claims and the Complaint fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(1), (6). Alternatively, Defendants request that the Court remand this matter to the United States Citizenship and Immigration Services ("USCIS"), pursuant to 8 U.S.C. § 1447(b). This Motion is based on the supporting declarations of Michael Cannon ("Cannon Decl.") and Jonah J. Hadary ("Hadary Decl."), attached hereto as Exhibits 1 and 2, respectively.[1]

## I. LEGAL AUTHORITY

### A.    Authority To Naturalize Aliens.

Until 1990, United States District Courts sat as naturalization courts and were vested with exclusive jurisdiction to review the qualifications of an applicant for naturalization and to naturalize aliens as citizens of the United States. *See* 8 U.S.C. §§ 1101(a)(24), 1421(a) (repealed 1990); *see also Shomberg v. United States*, 348 U.S. 540 (1955). Under this two-tiered system, the applicant submitted a preliminary naturalization application to the then Immigration and Naturalization Service ("INS"), which conducted a preliminary investigation of the applicant, and made a non-binding recommendation to the district court as to whether the application should be approved or denied. *See* 8 U.S.C. §§ 1445(b), 1446(b)&(d) (repealed 1990); 8 C.F.R. §§ 334.11, 335.11-335.13 (1990). The actual decision to approve or deny the naturalization application was vested solely with the federal court, which took jurisdiction based on a petition filed by the applicant and administered the oath of allegiance. *See* 8 U.S.C. §§ 1421, 1445, 1447, 1448 (repealed 1990).

---

[1] Defendants' declarations assist the Court in determining whether plaintiffs have indeed provided sufficient factual allegations to support their assorted claims. The affidavits provide factual support regarding defendant's reasonable interpretation of the examination process, and the parameters of that process.

In 1990, Congress enacted the Immigration Act of 1990, Pub. L. No. 101-649, § 401, 104 Stat. 4978 ("IMMACT"), which overhauled the naturalization process in favor of a one-tier administrative procedure. The central purpose for this shift to an administrative naturalization process from a judicial one was to reduce the waiting time for eligible naturalization applicants, who encountered unwarranted delays because of the two-tiered process. *See* 135 Cong. Rec. H4539-02 (July 31, 1989).

Under Section 401 of IMMACT, Congress transferred the power to naturalize from the district courts and vested the Attorney General – now the Secretary of the Department of Homeland Security ("DHS")[2] – with "sole authority to naturalize persons as citizens of the United States." *See* Immigration and Nationality Act ("INA") § 310(a); 8 U.S.C. § 1421(a). Under the administrative naturalization process, USCIS is responsible for adjudicating naturalization applications, including rendering a preliminary investigation of the applicant, interviewing and if necessary subpoenaing witnesses, conducting an examination, and making a determination as to whether to grant or deny the application. *See* INA § 335(a),(b),(c); 8 U.S.C. § 1446(a),(b),(c). If USCIS initially denies a naturalization application, the applicant may seek administrative review of the denial by requesting a hearing before a supervisory immigration officer. INA § 336(a); 8 U.S.C. § 1447(a); 8 C.F.R. § 336.2(b).

Although vesting the primary naturalization authority with the Secretary of DHS, Congress did not completely eliminate district court jurisdiction over the naturalization application process. District courts may still administer the citizenship oath of allegiance. *See* INA § 310(b)(1); 8 U.S.C. § 1421(b)(1). District courts also have jurisdiction to review *de novo* applications for naturalization denied as a result of the administrative review procedure under INA § 336(a); 8 U.S.C. § 1447(a). *See* INA § 310(c), 8 U.S.C. § 1421(c).

---

[2] The transfer of the former INS's naturalization functions to the newly-created DHS included the transfer of the authority to naturalize from the Attorney General to the Secretary of DHS. *See* Homeland Security Act of 2002, Pub. L. No.107-296, § 1512(d), 116 Stat. 2135, 2310.

1    Finally, under INA § 336(b), 8 U.S.C. § 1447(b), the provision at issue here, the applicant

2 may apply to the appropriate district court for a hearing on the naturalization application if USCIS

3 does not grant or deny the application by "the end of the 120-day period after the date on which the

4 examination is conducted under such section."  In such a case, the court "may either determine the

5 matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter."

6 INA § 336(b), 8 U.S.C. § 1447(b).

7    **B.  Statutory Requirement to Conduct Background Investigations.**

8    In all petitions or applications for immigration services or benefits, USCIS conducts

9 security checks in order to enhance national security, public safety, and to ensure the integrity of

10 the immigration process.  Before USCIS is permitted to adjudicate any Form N-400 naturalization

11 application, a full background investigation of the applicant must be completed.

12    In 1997, Congress mandated that the former INS "receiv[e] confirmation from the Federal

13 Bureau of Investigation ("FBI") that a full criminal background check has been completed, except

14 for those excepted by regulation as of January 1, 1997," before adjudicating a naturalization

15 application.  Pub. L. No. 105-119, Title I, 111 Stat. 2448 (Nov. 26, 1997).

16    Consistent with this congressional mandate, the relevant statutory and regulatory provisions

17 require the Executive Branch to thoroughly investigate the background of every applicant for

18 citizenship in order to determine whether that applicant is eligible to be naturalized.  *See* INA

19 § 335(a), (b), 8 U.S.C. § 1446(a), (b); *see also* 8 C.F.R. § 335.1 (2004).  These regulations provide

20 that:

21        Subsequent to the filing of an application for naturalization, the Service shall conduct
        an investigation of the applicant.  The investigation shall consist, at a minimum, of a
22        review of all pertinent records, police department checks, and a neighborhood
        investigation in the vicinities where the applicant has resided and has been employed,
23        or engaged in business, for at least the five years immediately preceding the filing of
        the application . . . .

24 8 C.F.R. § 335.1 (2004).  The regulations also specify that citizenship applicants are to be

25 interviewed only after a full background check has been completed.  *See* 8 C.F.R. § 335.2(b) (2006).

26 While Defendants acknowledge that the interviews for each of the named Plaintiffs preceded the

27 completion of a full background check, statute and USCIS regulations still require that the FBI

28

1   criminal background check be completed before a naturalization application may be adjudicated.

2   *See* Pub. L. No. 105-119, 11 Stat. 2448; 8 C.F.R. § 335.2(b).

3       A full and complete background check is part of the inquiry into whether an applicant

4   possesses good moral character.  *See* INA § 316(a)(3), 8 U.S.C. § 1427(a)(3).  The existence of a

5   criminal background check is one of the primary means to appraise an alien's moral character.  For

6   example, an alien cannot establish good moral character if he or she was convicted of certain

7   criminal offenses, including crimes involving moral turpitude.  *See* INA § 101(f), 8 U.S.C.

8   § 1101(f).  Further, USCIS conducts several forms of security and background checks on citizenship

9   applicants to ensure they are not a risk to national security or public safety.  These background

10  checks include a record check of the alien made against the Department of Homeland Security's

11  ("DHS") own immigration data systems; an FBI background/fingerprint check for relevant criminal

12  history records on the alien (e.g., arrests and convictions); and a FBI name check, which is run

13  against databases containing information that is not necessarily revealed by the FBI's fingerprint

14  check.  *See* USCIS Fact Sheet, Immigration Security Checks - How and Why the Process Words

15  (Exhibit 3); Hadary Decl. at ¶ 4.  Often, these law enforcement checks reveal significant derogatory

16  information pertaining to applicants for immigration benefits, including applicants seeking

17  naturalization, which result in the alien being found ineligible for naturalization and other benefits.

18  *Id.*

19      At this time, FBI name checks remain pending for the naturalization applications of

20  Plaintiffs Mikulicic, Ovchinnikov, Sapozhnikov, and Taky.  *See* Cannon Decl. at ¶¶ 40-41, 43-44;

21  Hadary Decl. at ¶¶ 13, 15, 17, 19.   USCIS cannot adjudicate Plaintiffs' Applications for

22  Naturalization until USCIS receives the name check results because USCIS must verify that each

23  Plaintiff has established the good moral character requirement of naturalization, that he or she is not

24  statutorily barred from naturalization, and that he or she has not committed or been convicted of

25  certain criminal offenses, including crimes involving moral turpitude, which would also bar

26  naturalization.

27      The FBI has reported the completion of name checks for Plaintiffs Ahmadi, Petrovic, and

28  Wang.  *See* Cannon Decl. at ¶¶ 39, 42, 45; Hadary Decl. at ¶¶ 21, 23, 25.  However, USCIS must

1   still evaluate the results of those FBI name checks to determine whether each Plaintiff has

2   established the good moral character requirement of naturalization, that he or she is not statutorily

3   barred from naturalization, and that he or she has not committed or been convicted of certain

4   criminal offenses, including crimes involving moral turpitude, which would also bar naturalization.

5   Furthermore, only Plaintiff Ahmadi can demonstrate that the FBI reported to USCIS that her name

6   check was completed more than 120 days prior to the commencement of this action. *See id.* ¶ 25.

### II. ARGUMENT

8         This Court should dismiss Plaintiffs' First Amended Complaint for Declaratory and

9   Injunctive Relief and Petition for Naturalization Pursuant to 8 U.S.C. § 1447(b) because this Court

10  lacks subject matter jurisdiction over Plaintiff's claims. Fed. R. Civ. P. 12(b)(1).[3]  Plaintiffs have

11  the burden of establishing the jurisdiction of this Court.  *See Stock West, Inc. v. Confederated*

12  *Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (noting that a federal court is presumed to lack subject

13  matter jurisdiction until the contrary affirmatively appears).  Even where a plaintiff's pleadings are

14  technically sufficient to establish some basis of jurisdiction, a Rule 12(b)(1) motion may also allege

15  that there is an actual lack of jurisdiction. *See, e.g.*, *Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*

16  *Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.

17  1987).  In addition, dismissal for failure to state a claim under Rule 12(b)(6) is appropriate if

18  plaintiffs fail to provide "'grounds' of [their] 'entitle[ment] to relief,'" more than mere labels,

19  conclusions, or formulaic recitations of the elements of causes of action.  *Bell Atlantic Corp. v.*

20  *Twombly*, 127 S.Ct. 1955, 1965 (2007).  Because defendants challenge the jurisdiction of the Court,

21  a motion to dismiss under Rule 12 is appropriate.

22

23

─────────────────────────

24         [3]  As a preliminary matter, a mandamus analysis is not required, as Plaintiff is not entitled
   to a writ of mandamus because such writs are "not available when review by other means is

25  possible." *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79-80 (D.C. Cir.
   1984) ("*TRAC*").  Here, Plaintiff is presently pursuing a similar claim under the Sect 1447(b) of

26  the INA and the Administrative Procedure Act (APA).  *See Heckler v. Ringer*, 466 U.S. 602, 616
   (1984) (mandamus under § 1361 is "intended to provide a remedy for a plaintiff only if he has

27  exhausted all other avenues of relief"); *see also R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061,
   1065 (9th Cir. 1997) (analyzing claim under APA rather than mandamus).

28

**A. Plaintiffs' First Count Should Be Dismissed For Lack Of Jurisdiction, Or The Individual Plaintiffs' Claims Should Alternatively Be Remanded To USCIS.**

The Court cannot exercise jurisdiction over Plaintiffs' claims because the statutory requisites for jurisdiction under 8 U.S.C. § 1447(b) have not been met.  Thus, this case is unripe for review. In the alternative, this Court should remand Plaintiffs' individual claims to USCIS for further processing in light of the need to complete background checks, or the review of the results of such checks, before naturalization determinations can be made on Plaintiffs' applications for naturalization.

**1. The Court Lacks Jurisdiction Under 8 U.S.C. § 1447(b) Because The Completion Of The Background Check Is A Precondition To The Running Of The 120-Day Clock.**

If USCIS fails to adjudicate a naturalization application 120 days after an "examination" was conducted, a naturalization applicant may apply for a hearing before the District Court pursuant to 8 U.S.C. § 1447(b).  The court "may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter," 8 U.S.C. § 1447(b).  Plaintiffs claim this Court has jurisdiction over their naturalization applications because more than 120 days have elapsed since each of them was initially interviewed by USCIS, regardless of the fact that their background checks have not been completed, or USCIS continues to review the results of such checks.[4]  Plaintiffs also claim this Court has authority to grant their naturalization applications and to naturalize them thereafter.  *See* Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief and Petition for Naturalization Pursuant to 8 U.S.C. § 1447(b), at 25.

8 U.S.C. § 1447(b), however, does not define "examination" for purposes of starting the 120-day clock.  In the present case, Plaintiffs invoke 8 U.S.C. § 1447(b) because more than 120-days have passed from the time of their naturalization interviews.  Although the statute and accompanying regulations make clear that the FBI criminal background check must ordinarily

---

[4]  While the United States Court of Appeals for the Ninth Circuit appears to have previously found that the 120-day period began on the date of the "INS's initial interview of the applicant," *United States v. Hovsepian*, 359 F.3d 1144, 1161 (9th Cir. 2004), the Ninth Circuit made that determination without considering the statutory language regarding the necessity for a completed background investigation.

precede the interview, USCIS conducted these Plaintiffs' interviews out of order – prior to completion of background checks. *See* 8 C.F.R. § 335.2(b); *Walji v. Gonzales*, No. 06-20937, slip op. at 5 (5th Cir. June 19, 2007) *pending reh'g* ("There is nothing inherently pernicious in conducting the process out of order, but we will not upset the statutory and regulatory scheme because things occurred out of order") (Attachment A).  Even if the Court finds that the "examination" in  8 U.S.C. § 1447(b) is the equivalent of the naturalization interview, it would be an improper construction to find that Congress understood that the "examination" would <u>only</u> occur after the background check was complete.  Here, the statutory text and structure make abundantly plain that the required background investigation is a predicate to the examination described in 8 U.S.C. § 1447(b).  Consequently, because Congress understood a completed criminal background check as a precondition to an interview, and the interview as a precondition to the running of the 120-day clock, it follows that the completed criminal background check is <u>also</u> a precondition to the running of the 120-day clock.  *Walji*, No. 06-20937, slip op. at 5 (" . . . while Congress probably contemplated that the examination described in § 1447 (b) would be a single event that triggered the 120-day time period, Congress clearly intended the FBI's security investigation to occur before that examination takes place").

Congress's clear intent that the background investigation be completed before adjudication can take place is supported by the construction of the statute in question.  The word "examination" cannot be read in isolation and without regard to the other statutory provisions mandating that the criminal background check precede the adjudication of a naturalization application.  *See Davis v. Michigan Dep't of Treas.*, 489 U.S. 803, 809 (1989).[5]  "[A] statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context."  *King v. St. Vincent's Hospital*, 502 U.S. 215, 221 (1991).  "When 'interpreting a statute, the court will not look merely to

_____

[5]  A number of courts have found that Section 1447(b) does not confer jurisdiction upon the district courts absent a completed FBI background check.  *See, e.g., Danilov v. Aguirre*, 370 F. Supp. 2d 441 (E.D. Va. 2005); *Martinez v. Gonzales*, 463 F. Supp. 2d 569 (E.D. Va. 2006); *Damra v. Chertoff*, No. 05-0929, 2006 WL 1786246 (N.D. Ohio June 23, 2006); *Kassemi v. Dep't of Homeland Security*, No. 06-1010, 2006 WL 2938819 (D. N.J. Oct. 13, 2006); *Alkenani v. Barrows*, 356 F. Supp. 2d 652 (N.D. Tex. 2005) (dismissal without prejudice).

a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature.'" *Kokoszka v. Belford*, 417 U.S. 642, 650 (1974) (quoting *Brown v. Duchesne*, 19 How. 183, 194 (1857)).

8 U.S.C. § 1447(b) itself supports the view that a full background check is necessary before the adjudication of a naturalization application can take place. The references to a hearing and determination on a matter imply that Congress assumed that, once an examination had been conducted, a sufficient record would be in place for either the district court or for the agency to make a ruling on the naturalization application. Without a completed background check, however, no such hearing and no such determination can be made. *See* 8 U.S.C. § 1447(b) (". . . the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.") (emphasis added). Thus, it is impossible for a District Court to adjudicate naturalization applications where USCIS has conducted premature interviews where the background checks have not been completed, or USCIS continues to review the results of such background checks.

The definition of "examination" in Section 1443(a) also notes that the inquiry includes "other qualifications to become a naturalized citizen as required by law." One such requirement is that the FBI complete a full background check before adjudication of a naturalization application can occur. 8 U.S.C. § 1446 note, Pub. L. No. 105-119, Title I, 111 Stat. 2448 (Nov. 26, 1997). Therefore, Section 1443(a) firmly supports the view that "examination" means something more than just the interview of an applicant. Any holding that would result in the adjudication of a naturalization application prior to the completion and review of full background check would be contrary to the explicit intent of Congress and would have unreasonable results. *Cf., e.g., United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940) (statutory interpretation must avoid unreasonable, futile, or absurd results).

1    Since the required security checks (that are without a statutory time restriction) have not

2 been completed with regard to Plaintiffs Mikulicic, Ovchinnikov, Sapozhnikov, and Taky, and less

3 than 120 days have passed since the FBI notified USCIS of the completion of the name checks of

4 Plaintiffs Petrovic and Wang, (1) the time allowed by law for the USCIS to adjudicate an

5 application has not yet expired and (2) this Court lacks subject matter jurisdiction.  *See* 8 U.S.C. §

6 1447(b).  Defendants recognize that more than 120 days have passed since the FBI notified USCIS

7 of the completion of Plaintiff Ahmadi's name check.  While the passage of such time may allow

8 Plaintiff Ahmadi to invoke this Court's jurisdiction under 8 U.S.C. § 1447(b), Defendants maintain

9 that this Court should exercise its authority to remand Plaintiff Ahmadi's application to USCIS for

10 the completion of her examination and adjudication as discussed in the following section.

11    **2. Alternatively, The Individual Plaintiffs' Claims Should Be Remanded To USCIS
       Because The Court May Not Grant Citizenship Without The Benefit Of A Full And**
12    **Complete Background Investigation.**

13    Even if the Court finds jurisdiction pursuant to 8 U.S.C. § 1447(b), there is nothing in the

14 statutory framework that compels USCIS to adjudicate a naturalization petition within 120 days.

15 Rather, when USCIS fails to do so, the district court may either determine the matter or "remand the

16 matter, with appropriate instructions, to the Service to determine the matter."  8 U.S.C. § 1447(b);

17 *see also Lecky v. Gonzales*, No. C 07-0007, 2007 WL 1813644, *1 (N.D. Cal. June 22, 2007); *Deng*

18 *v. Chertoff,* No. C 06-7697, 2007 WL 1501736, *1 (N.D. Cal. May 22, 2007); *El-Daour v. Chertoff*,

19 417 F. Supp. 2d 679, 681-83 (W.D. Pa. 2005).  Therefore, if this Court finds jurisdiction over any

20 named Plaintiff's naturalization applications, there is no obligation on its part to do more than

21 remand the application to USCIS.  Thus, the Court should remand each of Plaintiffs' applications to

22 USCIS where: (1) the Court may not adjudicate a naturalization application without completion of

23 requisite background checks, and (2) courts often defer to USCIS's expertise in the adjudication of

24 naturalization applications.

25    First, if this Court assumes jurisdiction over Plaintiffs' claims, the Government respectfully

26 submits that the Court may not order the naturalization of Plaintiffs Mikulicic, Ovchinnikov,

27 Sapozhnikov, and Taky, whose background checks remain pending.  Rather, for the reasons stated

28 below, the Court must remand Plaintiffs' cases to USCIS so their background investigations may be

1   completed prior to adjudication.  To conduct a hearing without the completion of a background

2   check "would contravene Congress's intent that an FBI background check is to be completed prior

3   to the adjudication of every naturalization application."  *Essa v. USCIS*, No. 05-1449, 2005 U.S.

4   Dist. LEXIS 38803, at *8 (D. Minn. Dec. 14, 2005).  As previously stated, USCIS is required to

5   conduct a full criminal background check before an application can be adjudicated.  *See* Pub. L. No.

6   105-119, Title I, 111 Stat. 2448 (Nov. 26, 1997); 8 U.S.C. § 1447(a), (b); 8 C.F.R. § 335.2(b).

7       There is no indication that, in enacting 8 U.S.C. § 1447(b), Congress intended to expedite

8   the background check part of the application process and allow the adjudication of naturalization

9   applications – by USCIS or by the district courts – absent completion of the entire examination,

10  including the completion of the background checks.  The use of "examination" in 8 U.S.C.

11  § 1447(b) and adjoining statutes shows that Congress intended "examination" to mean the entire

12  process of gathering and obtaining evidence for the naturalization adjudication and not merely for

13  the interview of the applicant.  *See INS v. Aguirre*, 526 U.S. 415, 425 (1999) (judicial deference to

14  the executive branch regarding immigration issues is especially appropriate).[6]

15      Second, if this Court assumes jurisdiction over Plaintiffs' claims, the Government

16  respectfully submits that the Court should remand each named plaintiff's naturalization application

17  to USCIS in deference to the agency's expertise with respect to adjudicating the issues inherent in

18  such applications.  Even in cases in which background checks have been completed during the

19  course of the litigation, many district courts have still allowed USCIS to adjudicate the application

20  on these grounds.  *See, e.g., Ibrahim v. Still*, 2007 WL 841790, *3 (N.D.Cal. Mar. 30, 2007)

21  (discussing process of adjudicating such petitions); *Khan v. Chertoff*, 2006 U.S. Dist. LEXIS 48937,

22  at *6 (D. Az. July 14, 2006); *Khelifa v. Chertoff*, 433 F. Supp. 2d 836, 845 (E.D. Mich. 2006).

23  Therefore, this Court should remand all of the named Plaintiffs' applications to USCIS with

24

25      [6] What little legislative history exists regarding Section 1447(b) supports this view of

26  Section 1447(b).  Section 1447(b) is not given any meaningful discussion in either the committee
    report or conference report accompanying the enactment of the Immigration Act of 1990.  A

27  Committee on the Judiciary report issued the year before, however, notes that an examination
    should include a "full investigation of the facts," including, presumably, any background check.

28  H.R. Rep. No. 101-187 at 34 (1989).

1  instructions to complete the background security checks and adjudicate the naturalization

2  application as quickly as possible, but without further instructions.

3       Given the complex nature of the background check investigations, any deadline for the

4  conclusion of the naturalization investigation, completion of the background checks, or completion

5  of the adjudication process might well undermine the compelling governmental interests in the

6  nation's security and moral fitness of its citizenry. *See e.g., El-Daour v. Chertoff*, 417 F. Supp 2d

7  679 (W.D. Pa. 2005);  *Essa,* U.S. Dist. LEXIS 388803, *8.  This is so because of the reasonable

8  possibility that such investigation, checks, or adjudication will reveal information relating to the

9  plaintiffs which undermines their claims to citizenship.  *See* Cannon Decl. at ¶¶ 21-22; Hadary Decl.

10 at ¶ 8.  Limiting the time to conduct such an evaluation may require USCIS or the FBI to cut short a

11 promising lead in an ongoing investigation.  As another court noted, "delays of this nature are

12 inevitable and becoming more frequent in light of heightened security concerns in the post-911

13 world." *Alkenani v. Barrows*, 356 F. Supp. 2d 652, 657 (N.D. Tex. 2005).

14      In addition, the Supreme Court has recognized that "judicial deference to the Executive

15 Branch is especially appropriate in the immigration context."  *INS v. Aguirre-Aguirre*, 526 U.S. 415,

16 425 (1999).  In this case, deference should result in the Court's remanding the case and giving

17 USCIS the broadest possible latitude in adjudicating the naturalization applications.  Should

18 plaintiffs be dissatisfied with the resulting USCIS decision, they may individually return to the

19 Court for a *de novo* determination, after exhausting administrative remedies.  *See* 8 U.S.C.

20 § 1421(c).  In that event, the Court will have the benefit of a reasoned adjudication based upon a

21 complete record, including the results of the FBI checks.  In other words, the Court should permit

22 USCIS to complete the required investigations to create records on which any review of its

23 decisions, if necessary, could be based, and to adjudicate the individual Plaintiffs' applications.

24           **3. Plaintiffs' Claims Are Improperly Joined.**

25      Should the Court not defer to USCIS's reasonable interpretation of the statute, nor remand

26 the individual matters to USCIS for completion of the individual examinations and adjudication, the

27 Court must hold individual hearings for each named plaintiff.  If the Court determines that such

28 individual hearings are necessary, the Court should sever the individual plaintiffs under Fed.  R.

1    Civ. P. 21.  *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (finding joinder

2    inappropriate due to unique nature of each application).  In determining whether severance is

3    appropriate, a court considers:  (1) whether the claims arise out of the same transaction or

4    occurrence; (2) whether the claims present common questions of law or fact; and (3) whether

5    prejudice to a substantial right would be avoided if severance was granted.  *Id.* (Severance

6    appropriate where each Plaintiff suffered a different duration of alleged delay, there might have

7    been numerous reasons for the alleged delay, where Plaintiffs did not allege that Defendants

8    engaged in a policy of delay, and where undue delay in one case may not have been undue delay in

9    another case.).  Here, no substantial rights of the plaintiffs would be prejudiced by severance.  Like

10   the claims in *Coughlin*, Plaintiffs' claims do not arise out of the same transaction or occurrence.

11   Rather, each application is filed separately and is independent from another.  Moreover, the reasons

12   for the time necessary to complete adjudication in one case may by different in another case, and

13   therefore the claims do not involve common questions of law or fact.  *Id.*  Plaintiffs would not be

14   prejudiced by severance, as they would continue to receive the individual hearing envisioned under

15   8 U.S.C. § 1447(b).

16      **B.  Plaintiffs' Second Count Fails To State A Claim For Which Relief Can Be Granted
         Pursuant To The Administrative Procedures Act**

17          Even if the Court finds and asserts jurisdiction under Section 1447(b), none of Plaintiffs'

18   claims are amenable to resolution under the Administrative Procedures Act ("APA"), and Plaintiffs'

19   Second Count fails to state a claim and should therefore be dismissed.  The APA, by its terms,

20   provides a right to judicial review of all "final agency actions for which there is no other adequate

21   remedy in a court."  5 U.S.C. § 704.  Here, there is an adequate remedy at law under 8 U.S.C.

22   § 1447(b).  Even if the Court finds that Section 1447(b) is inapplicable or does not provide an

23   adequate remedy, judicial review under the APA is unavailable because the actions for which

24   Plaintiffs seeks review are not final, and there is no legally required deadline for the completion of

25   name checks or naturalization adjudications by the FBI or USCIS.[7]

26

27

28          [7] To the extent that Plaintiffs claim jurisdiction on the basis of the Declaratory Judgment
     Act, 28 U.S.C. § 2201, that statute does not provide an independent basis for subject matter
     jurisdiction; it only creates a particular kind of remedy available in actions where the district

**1. Plaintiffs Cannot Seek Judicial Review Under The APA Because 8 U.S.C. § 1447(b) Is The Only Statute Under Which Such A Claim Can Be Asserted, And It Provides An Adequate Remedy In A Court.**

Plaintiffs cannot prevail on their APA claim alleging that Defendants have unlawfully withheld or unreasonably delayed adjudication of their applications because 8 U.S.C. § 1447(b), which deals specifically with naturalization applications and the time necessary to complete adjudication, is the only statute under which such a claim can be asserted. *See United States v. Fausto*, 484 U.S. 439, 448-49 (1988) (general grants of jurisdiction cannot be relied upon in the face of a specific statute that confers and conditions jurisdiction); *Danilov*, 370 F. Supp. 2d at 445 (finding APA inapplicable to claim that naturalization adjudication delayed in light of 8 U.S.C. § 1447(b)). 8 U.S.C. § 1447(b) provides that the applicant may apply to the appropriate district court for a hearing on the naturalization application if USCIS does not grant or deny the application by "the end of the 120-day period after the date on which the examination is conducted under such section." In such a case, the court "may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter." 8 U.S.C. § 1447(b). Where Congress specifically provided district court jurisdiction over naturalization applications 120-days after the completion of USCIS's examination, any other basis of jurisdiction would contradict Congressional intent.

**2. Plaintiffs Cannot Seek Judicial Review Under The APA Because Defendants' Actions Are Not "Final Agency Actions."**

In order for an action to be final, and thus reviewable pursuant to the APA, the action must (1) "mark the 'consummation' of the agency's decision-making process," and (2) the action "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 178 (1997).

With regard to the first prong, the question courts ask is whether the agency "has rendered its

court already has jurisdiction to entertain a suit. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671-72 (1950); *Jarrett v. Roser,* 426 F.2d 213, 216 (9th Cir. 1970). Thus, to be eligible for declaratory relief, plaintiffs must first establish jurisdiction under an independent basis. *Skelly Oil Co.,* 339 U.S. at 671-672 As discussed above, plaintiffs have failed to otherwise establish jurisdiction; accordingly, the Declaratory Judgment Act is not applicable.

1   last word on the matter." *Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 984

2   (9th Cir. 2006) (citing *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457 (2001)).  With regard to a

3   naturalization application, the last word or final action is the adjudication of that application.  No

4   adjudication may take place without completion of background investigation.  *See* Pub. L. No. 105-

5   119, Title I, 111 Stat. 2448 (Nov. 26, 1997);  8 C.F.R. § 335.2(b).  For each of the named plaintiffs,

6   USCIS has not yet completed the background investigation.  Even for those Plaintiffs whose name

7   checks have been completed by the FBI, the completion of the name check by the FBI does not

8   determine a right or create an obligation, and no legal consequences flow from the FBI's completion

9   of the name checks.

10          **3.  Plaintiffs Cannot Seek Judicial Review Under The APA Where Defendants'**
                 **Actions Are Not Legally Required.**

11

12          Where there is no legally required deadline for the completion of adjudication nor any

13   specific requirements regarding the tracking of cases, this Court should dismiss Plaintiffs'

14   unreasonable delay claim.  *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004)

15   ("*SUWA*"); *W. Watersheds Project v. Matejko*, 468 F.3d 1099, 1110 (9th Cir. 2006) (holding that "a

16   'failure to regulate' claim must be based upon a clearly imposed duty to take some discrete action.")

17          In *SUWA*, the Supreme Court examined, among other things, the "limits the APA places on

18   judicial review of agency inaction."  *SUWA*, 524 U.S. at 61.  Discussing 5 U.S.C. § 706(1), the

19   Court held that "the only agency action that can be compelled under the APA is action legally

20   *required*."  *Id.* at 63 (emphasis in original).  The Court also specifically noted that "a delay cannot

21   be unreasonable with respect to action that is not required."  *Id.* at 64, n.1; *see also San Francisco*

22   *Baykeeper v. Whitman*, 297 F.3d 877, 885-86 (9th Cir. 2002) (finding there could be no

23   "unreasonable delay" under the APA where EPA did not have a present statutory duty to act).  The

24   Court thus held that "a claim under § 706(1) can proceed only where a plaintiff asserts that an

25   agency failed to take a *discrete* agency action that it is *required to take*[,]" and, further, that "[t]he

26   limitation to *required* agency action rules out judicial direction of even discrete agency action that is

27   not demanded by law."  *Id*. at 64-65.

28

1    Plaintiffs incorrectly rely on 8 U.S.C. § 1571(b) and 8 U.S.C. § 1447(b) as establishing

2    deadlines for agency action.  Nevertheless, the time periods mentioned in those statutes are not

3    expressed as commands to the agency, and neither statute creates a deadline for reasonableness.  *See*

4    8 U.S.C. §§ 1447(b), 1571(b).  8 U.S.C. § 1447(b), for example, merely provides a jurisdictional

5    basis through which an individual can secure judicial review.  Given that a separate statute

6    precludes adjudication until the name checks are complete, it cannot be said that defendants are

7    acting unreasonably.  *See, e.g., Alkenani*, 356 F. Supp. 2d at 657 (not unreasonable to wait for

8    results of the name check).  8 U.S.C. § 1571(b), by providing only the "sense" of the Congress,

9    provides no legally binding effect and, in any event, the large majority of applications for

10   naturalization are adjudicated within the six month period.  *See Yang v. California Dept. of Social*

11   *Services*, 183 F.3d 953, 958 (9th Cir. 1999) (citing *Monahan v. Dorchester Counseling Center, Inc.*,

12   961 F.2d 987, 995 (1st Cir.1992) (holding that a sense of Congress provision neither required nor

13   prohibited action by the states or any other party and therefore "created no enforceable federal

14   rights").

15   Even under the terms of the APA, the naturalization process has not been unreasonably

16   delayed because Congress has required name checks to be completed prior to action on a

17   naturalization application and has not provided any time limitation on completing that investigation.

18   Further, Congress has not enacted a time limit on acting on applications, it has only enacted a

19   jurisdictional provision allowing judicial review 120 days after the examination process is

20   complete.  None of the relevant statutes and regulations create a mandatory deadline for defendants

21   to act and the only relevant statute says that a naturalization application cannot be adjudicated until

22   the name check process has been completed.  Accordingly, the length of time that certain

23   individuals face pending adjudication of their naturalization applications is reasonable.

24   Furthermore, none of the relevant statutes and regulations mandate how Defendants should manage

25   the name check process nor the greater adjudicatory process for naturalization applications.

26   With specific regard to Defendant FBI, Plaintiffs have not, and indeed cannot, identify any

27   statute that imposes a mandatory duty upon the FBI to conduct background investigations in relation

28   to plaintiffs' applications for naturalization, let alone to complete such investigations within any

1  particular time frame.  *See, e.g., Shalabi v. Gonzales*, 2006 WL 3032413, at *5 (E.D. Mo. Oct. 23,

2  2006) ("There is no statute or regulation which imposes a deadline for the FBI to complete a

3  criminal background check.").  In addition, the statute requiring that USCIS complete a criminal

4  background check -- which includes the name check -- does not contain any specific time frame for

5  the FBI's investigation regarding the requested name checks.  *See* Pub. L. 105-119, Tit. I, 111 Stat.

6  2448 (Nov. 26, 1997); *see also Mustafa v. Pasquerell*, 2006 WL 488399 at *5 (W.D. Tex. 2006)

7  (rejecting APA claim against USCIS to complete adjudication of immigration petition where "no

8  statute or regulation specifies a time period within which USCIS must act").[8]  Thus, no statutory or

9  regulatory authority limits the FBI's discretion in how it completes a plaintiff's background check,

10  let alone how much time the FBI should allow for thoroughly completing this important task.

11      The extent of the FBI's discretion in conducting USCIS-requested name checks is

12  underscored by recent legislation seeking to reduce the length of personnel-related background

13  checks.  *See, e.g.*, Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. 108-458,

14  § 3001(g), 118 Stat. 3638 (2004) (requiring the FBI to complete name checks regarding hiring

15  candidates within 60 days if practical to do so).  Had it wished to do so, Congress could have

16  imposed a duty upon the FBI to complete immigration name checks within a particular deadline, and

17  could have subjected this process to judicial review.  *Cf. Haig v. Agee*, 453 U.S. 280, 300 (1981)

18  ("congressional acquiescence may sometimes be found from nothing more that silence in the face of

19  an administrative policy.") (citing *Zemel v. Rusk*, 381 U.S. 1, 11 (1965)).  *See also* Pub. L. No. 101-

20  515, 104 Stat. 2101, 2112 (1990) (the FBI may establish and collect fees to process name checks for

21  [certain non-criminal, non law enforcement and other purposes] but imposing no deadlines).

22  ────────────────────

23      [8]  Concerning the background investigation itself, independent of the time strictures, it is
    well established that the courts generally have no power to order the Executive to undertake a

24  particular investigation absent some statutory provision conferring this authority.  *See, e.g.*,
    *United States v. Ramos*, 933 F.2d 968, 971 n.1 (11th Cir. 1991) (refusing request to order

25  investigation and holding that "[c]riminal investigations are an executive functions within the
    exclusive prerogative of the Attorney General's office") (citations omitted); *Walker v. Schmoke*,

26  962 F. Supp. 732, 733 (D. Md. 1997) (noting that no federal appellate court, including the
    Supreme Court (and the appellate courts, not the trial courts, make legal policy) has recognized

27  that there is a federally enforceable right for the victim to have criminal charges investigated at
    all, let alone with vigor or competence.")

28

### 4. The FBI's Procedures Do Not Violate The APA.

Even if the Court found jurisdiction over Plaintiffs' APA claim against the FBI, the claim must fail because the time necessary to complete background checks is not unreasonable. *See Telecomm. Research Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). The backlog of name checks applies to a small number of the overall applications for naturalization (less than 10 percent). Cannon Decl. at ¶ 15. In addition, defendants must use limited resources to complete the background checks required not only for plaintiffs, but also for other naturalization applicants and for other individuals. *See id.* at ¶ 4 (name checks are performed for "Federal agencies, congressional committees, the Federal judiciary, friendly foreign police and intelligence agencies, and state and local criminal justice agencies"). Because USCIS has requested background checks in a broader range of circumstances post-9/11, a resource strain has been placed on the FBI. "[W]here resource allocation is the source of delay, courts have declined to expedite action because of the impact of competing priorities." *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005).

Even in the face of a statutory deadline, moving some individuals to the front of the queue has not been authorized by the courts because granting such relief for one group of petitioners would simply move that group ahead of others who had also been waiting, resulting in no net gain in processing. *See In re Barr Lab.*, 930 F.2d 72, 75 (D.C. Cir. 1991); *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1101 (D.C. Cir. 2003). With limited resources, defendants have prioritized the processing of name checks in a reasonable and entirely legal manner consistent with the resources at their disposal. *See Liberty Fund*, 394 F. Supp. 2d at 117; *In re Barr Lab*, 930 F.2d at 75; *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1101. The nature and extent of the interests at stake here also weigh heavily in favor of denying plaintiffs' request for a premature decision on their applications. Plaintiffs' interest in an expedited decision is minimal and does not implicate human health and welfare. Plaintiffs remain free to work and travel within the United States. On the other hand, the FBI has an important national security interest in ensuring a thorough and accurate result for plaintiffs' background checks.

Defendants also continue to address the backlog of background checks and have generally been processing the backlog on a first-in, first-out basis. Cannon Decl. at ¶¶ 18. The time necessary to complete name checks varies for a number of legitimate reasons. *Id.* at ¶ 24. Courts have been reluctant to find that such a process violates the undue delay standard. *Liberty Fund*, 394 F. Supp. 2d at 116-17 (denying such a claim against the Department of Labor for backlog processing of employer applications for permanent labor certifications on behalf of aliens). The FBI has also shown that the large majority of name checks have been processed in a relatively short time frame and that the agencies are faced with numerous competing priorities and limited resources in processing name checks. Under such circumstances, courts have been unwilling to find an APA violation.

### 5. USCIS's Procedures Do Not Violate The APA.

Even if the Court found jurisdiction over Plaintiffs' APA claim against USCIS, the claim must be dismissed because USCIS's actions with regard to Plaintiffs' background checks are not unreasonable because either (1) USCIS is unable to take action with regard to those Plaintiffs whose background checks are not yet completed, or (2) USCIS continues to take efforts to complete the adjudication of naturalization applications with complete background checks. *See Telecomm. Research Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). First, as previously noted, Congress has explicitly required that the FBI complete a full background check before adjudication of a naturalization application can occur. 8 U.S.C. § 1446 note, Pub. L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448. Second, USCIS recently sought to re-interview Plaintiff Ahmadi in the course of adjudicating her naturalization application, but her counsel declined to submit to an additional interview. Hadary Decl. at ¶ 25. Moreover, USCIS is presently prepared to adjudicate the naturalization application of Plaintiffs Petrovic and Wang, whose naturalization applications were deemed ready for adjudication within 120-days of USCIS receiving notification of the completion of their name checks. *Id.* at ¶¶ 21, 23. However, USCIS is prevented from completing these adjudications because of the exclusive jurisdiction provisions of *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004).

*    *    *

1    Therefore, Plaintiffs' Second Count fails to state a claim and should be dismissed because 8

2    U.S.C. § 1447(b) provides an adequate remedy, the actions for which Plaintiffs seeks review are not

3    final, there is no legally required deadline for the completion of name checks or naturalization

4    adjudications, and the actions of Defendant agencies FBI and USCIS are ultimately reasonable.

5    **C. Plaintiffs' Third Count Should Be Dismissed Because USCIS's Longstanding**
     **Investigation Requirements Do Not Violate The APA's Notice-and-Comment**
6    **Requirements.**

7    Plaintiffs argue that Defendants violated the APA by enacting an internal rule in November,

8    2002, when the scope of the file search during the name check process was expanded to include

9    both "references," and "main files," without giving the public notice or the opportunity for the

10   public to comment.  Contrary to Plaintiffs' assertions, the APA does not require administrative

11   agencies to follow notice and comment procedures in all situations.  Rather, 5 U.S.C. § 553(b)(3)

12   specifically exempts "interpretive rules, general statements of policy, or rules of agency

13   organization, procedure, or practice" from the requirement.  Because the November 2002 internal

14   rule was an interpretive rule, this Court should dismiss Count Three.

15   Ninth Circuit jurisprudence defines such interpretive rules as "hortatory and instructional"

16   things which "merely clarify or explain existing law or regulations."  *Alcaraz v. Block*, 746 F.2d

17   593, 614 (9th Cir. 1984) (citing *Powderly v. Schweiker*, 704 F.2d 1092, 1098 (9th Cir. 1983)); *see*

18   *also Linoz v. Heckler*, 800 F.2d 871, 877 (9th Cir. 1986) (superceded on other grounds).  Because

19   interpretative rules only "clarify or explain existing law," they are "not subject to the rigors of the

20   APA," and do not require notice and comment.  *Gunderson v. Hood*, 268 F.3d 1149, 1155 (9th Cir.

21   2001).  The fact that an interpretative rule has some substantial impact does not make the rule

22   subject to notice and comment.  *Alcaraz*, 746 F.2d at 614 (9th Cir. 1984) (citing *Rivera v. Becerra*,

23   714 F.2d 887, 890 (9th Cir. 1983)).

24   Here, Defendants' November 2002 expansion of the scope of the files searched in response

25   to a request for a name check is an action that is equivalent to an interpretative rule or agency

26   procedure because the action only served to modify the scope of the "full criminal background

27   check."   The actual requirement of a the name check portion of the "full criminal background

28   check" was unchanged.

The name check requirement itself is not new.  The INS long considered police department checks and background investigation as part of the examination of naturalization applicants.  *See* Administrative Naturalization, 56 Fed. Reg. 50,475 (Oct. 7, 1991) (codified at 8 C.F.R. § 335.1) (requiring that "the investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation. . .").  In fact, the INS gave notice beginning in 1995 that the Form G-325, or Biographical Information Form, would be used to "check other agency records (FBI, CIA, etc.) on applications or petitions submitted by applicants for benefits under the [INA]. . .," including naturalization applications.  *See* Information Collections Under Review, 60 Fed. Reg. 38,371 (July 26, 2005).  Congress codified this policy into statute in 1997 with the passage of 8 U.S.C. § 1446(a), which prohibited the use of Congressional appropriations to "complete adjudication of an application for naturalization," prior to receipt of confirmation from the FBI that a "full criminal background check has been completed."  USCIS promulgated regulations based on this act of congress through an interim final regulation, published March 17, 1998.  *See* Fingerprinting Applicants and Petitioners for Immigration Benefits; Establishing a Fee for Fingerprinting by the Service; Requiring Completion of Criminal Background Checks Before Final Adjudication of Naturalization Applications, 63 Fed. Reg. 12,987 (March 17, 1998) (codified at 8 C.F.R. § 335.2(b)) (requiring completion of criminal background checks before examination).  In November 2002, as a result of the terrorist attacks of September 11, 2001, the defendants expanded the scope of the files searched in response to a name check request to encompass a broader range of information by accessing both "main files," and "references."  Cannon Decl. at ¶ 21.

As a result, plaintiffs' assertion of a violation of the APA's notice and comment procedure has no basis in law, and Count Three should be dismissed.

### D.  Plaintiffs' Fourth Count Should Be Dismissed Because Plaintiffs Do Not Assert A Protected Interest.

Plaintiffs allege that Defendants Still, Gonzalez, and Chertoff have "a pattern, practice, or policy of failing to adjudicate the applications for naturalization of the proposed plaintiff class within 120 days of the date of naturalization examinations because of the time necessary to

1 complete 'name checks,'" that such actions violate 8 U.S.C. § 1446(d) and 8 C.F.R. § 335, and

2 therefore violate Plaintiffs' rights to due process by law.  Plaintiffs make the same allegations with

3 regard to Defendants' failure "to set deadlines for completing 'name checks' and to take all other

4 reasonable steps necessary to complete the adjudication of applications for naturalization of the

5 proposed plaintiff class."

6      As a threshold requirement to any due process claim, however, every plaintiff must show

7 that he has a protected liberty interest.  *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972)

8 ("[t]he requirement of procedural due process apply only to the deprivation of interests

9 encompassed by the [Due Process Clause's] protection of liberty and property"); *Nunez v. City of*

10 *Los Angeles,* 147 F.3d 867, 871 (9th Cir. 1998) (due process claimant "must, as a threshold matter,

11 show government deprivation of life, liberty, or property").  To have a protectable property or

12 liberty interest in a benefit, "a person clearly must have more than an abstract need or desire for it.

13 He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of

14 entitlement to it."  *Roth*, 408 U.S. at 577; *Roberts v. Spaulding*, 783 F.2d 867, 870 (9th Cir. 1986)

15 ("A mere expectation of receiving a benefit is not enough to create a protected interest"); *Valdez v.*

16 *Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (If a statute does not "mandate a particular

17 outcome," there is no legitimate claim of entitlement and, hence, no liberty interest).  Here,

18 Plaintiffs fail to identify any protected interest in their ability to naturalize because "[n]o alien has

19 the slightest right to naturalization unless all statutory requirements are complied with . . . ."

20 *Ginsburg*, 243 U.S. at 475.  One such statutory requirement is the completion of background

21 investigations, which is ongoing for all named Plaintiffs.

22      Additionally, the Supreme Court has clearly ruled that the statutory grant of a procedural

23 right cannot itself give rise to a liberty interest.  First, the only procedure provided for Plaintiffs is

24 the ability to seek district court jurisdiction over their naturalization applications if USCIS has not

25 completed their adjudication more than 120 days after the examination is complete. 8 U.S.C.

26 § 1447(b).  Even if this court finds that it has jurisdiction pursuant to 8 U.S.C. § 1447(b),

27 Defendants have not violated such procedure, nor does such procedure give rise to a protected

28 interest.  *See Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 280 n.2 (1998); *Olim v.*

1   *Wakinekona*, 461 U.S. 238, 250 (1983) (an "expectation of receiving process is not, without more, a

2   liberty interest protected by the Due Process Clause"); *FDIC v. Henderson*, 940 F.2d 465, 475 (9th

3   Cir. 1991) ("[A] substantive property right cannot exist exclusively by virtue of a procedural right").

4   Where there is no protected interest in Plaintiffs' ability to naturalize, the mere fact that the INS

5   provides for a naturalization procedure does not create a protected interest in the ability to

6   naturalize, and this Court should dismiss Count Four.

7          **E.  Plaintiffs' Requests For Injunctive Relief Should Be Dismissed.**

8          An injunction is a "'harsh and drastic' discretionary remedy, never an absolute right." *Abend*

9   *v. MCA, Inc.*, 863 F.2d 1465, 1478 (9th Cir. 1988), and a federal judge is not obligated to issue an

10  injunction for every violation of law.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),*

11  *Inc.*, 528 U.S. 167, 192 (2000).  To qualify for injunctive relief, the class members must

12  demonstrate that they will sustain irreparable injury and that remedies at law are inadequate.

13  *Walters v. Reno,* 143 F.3d 1032, 1048 (9th Cir. 1998) (citing *Orantes-Hernandez v. Thornburgh*,

14  919 F.2d 549, 558 (9th Cir. 1990). "In order to meet this standard, the plaintiffs must establish

15  actual success on the merits, and that the balance of equities favors injunctive relief." *Id.; see also*

16  *Amoco Prod. Co. v. Vill. Of Gambell, Alaska*, 480 U.S. 531, 542 (1987).  Here, plaintiffs have failed

17  to establish any of the prerequisites for the issuance of a permanent injunction.

18         As a threshold matter, an adequate remedy at law already exists.  8 U.S.C. § 1447(b)

19  provides a remedy for those whose applications have been allegedly been pending for over 120 days

20  after completion of the naturalization examination. Moreover, this remedy at law, repeatedly and

21  successfully used by plaintiffs throughout the United States, is readily available and accessible to

22  others.  Instructions on how to bring such actions are readily available on the internet (*i.e.*,

23  American Immigration Law Foundation, http://www.ailf.org/lac/lac_pa_100605.pdf) and provide,

24  with clear and concise detail, instructions on seeking relief.

25         Furthermore, no irreparable injury is proximately related to Defendants' action because "[n]o

26  alien has the slightest right to naturalization unless all statutory requirements are complied with . . .

27  ." *United States v. Ginsburg*, 243 U.S. 472, 475 (1917); *see also Federenko v. U.S.*, 449 U.S. 490,

28  506 (1981).  The law requires USCIS to take no action on Plaintiffs' applications prior to receipt of

1   the final reports of the security background check.  Because Plaintiffs do not have a right to

2   naturalization, it cannot be shown that Plaintiffs have suffered irreparable injury as a result of the

3   time necessary for Defendants to complete the adjudication of Plaintiffs' naturalization

4   applications.

5       Finally, the public interest is always a factor to be considered in the granting of an

6   injunction.  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 326-27 (1982).  Here, particularly in

7   light of heightened security concerns in the post-September 11, 2001, world, as well as the

8   importance of the benefit sought, it would not be in the public interest to order the FBI or USCIS at

9   this point to rush through these applications or to limit their investigations to a specific duration.

10  Limiting the time to conduct an FBI investigation may require the FBI to cut short a promising lead

11  in an ongoing investigation relating to a terrorist or criminal group, and may require the FBI to

12  channel resources in a way that limits its ability to conduct other investigations.  The weight of

13  plaintiffs' arguments regarding public interest are lessened by the fact that they have the benefits of

14  lawful permanent resident status, including the ability to work and travel.  Thus, the public interest

15  clearly weighs against plaintiffs' request for an mandatory permanent injunction.  Therefore, this

16  Court should dismiss Plaintiffs' request for declaratory and injunctive relief with regard to Counts

17  Two through Four.

18

19  //

20

21  //

22

23  //

24

25  //

26

27  //

28

**CONCLUSION**

Plaintiffs First Amended Complaint should be dismissed for lack of jurisdiction in part, and for failure to state a claim in part. In the alternative, the Court should find that Plaintiffs' claims under 8 U.S.C. § 1447(b) are improperly joined, and to the extent that this Court takes any action, it should at most remand the individual cases to the USCIS without instructions.

Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney
JOANN M. SWANSON
Assistant United States Attorney
Chief, Civil Division
EDWARD A. OLSEN
Assistant United States Attorney

PETER D. KEISLER
United States Department of Justice
Assistant Attorney General, Civil Division
ELIZABETH J. STEVENS
Senior Litigation Counsel
Office of Immigration Litigation

Dated: August 31, 2007                By:    /s/
                                              JEFFREY S. ROBINS
                                              Trial Attorney

**CERTIFICATE OF SERVICE**

Case No. C-07-3455-WHA

I hereby certify that on this 31st day of August 2007, one copy of the foregoing **NOTICE OF MOTION AND MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES** was served on counsel for Plaintiffs via the district court ECF system which will send notification of such filing to the following ECF filers:

Julia Harumi Mass
jmass@aclu.org
Alan L. Schlosser
aschlosser@aclu.org
Cecillia D. Wang
cwang@aclu.org
ACLU Foundation of Northern California
Lucas Guttentag
lguttentag@aclu.org
ACLU Immigrants' Rights Project
Christopher Joren Lyons
joren@asianlawcaucus.org
Asian Law Caucus
Edward A. Olsen
edward.olsen@usdoj.gov
United States Attorney's Office
Elizabeth J. Stevens
Elizabeth.Stevens@usdoj.gov
Department of Justice, Office of Immigration Litigation

In addition, I hereby certify that on this 31st day of August 2007, true and correct copies of the **NOTICE OF MOTION AND MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES** were served by Federal Express next-day delivery on the following non-ECF filers:

Sin Yen Ling
Asian Law Caucus
939 Market Street, Suite 201
San Francisco, CA 94103

Todd Gallinger
Council on American-Islamic Relations (CAIR)
3000 Scott Boulevard, Suite 212
Santa Clara, CA 95054

_____/S/_____
JEFFREY S. ROBINS
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878, Ben Franklin Station
Washington, D.C. 20044

Defendants' Motion to Dismiss - C-07-3455-WHA