# EXHIBIT 2

1 | SCOTT N. SCHOOLS, SC 9990
United States Attorney
2 | JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
3 | Chief, Civil Division
EDWARD A. OLSEN, CSBN 214150
4 | Assistant United States Attorney

5 |      450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
6 |      Telephone: (415) 436-6915
FAX: (415) 436-6927
7 |
PETER D. KEISLER
8 | United States Department of Justice
Assistant Attorney General, Civil Division
9 | ELIZABETH J. STEVENS VSBN 47445
Senior Litigation Counsel
10 | Office of Immigration Litigation
JEFFREY S. ROBINS NY SBN 4355244
11 | Trial Attorney

12 |      P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
13 |      Telephone: (202) 616-1246
FAX: (202) 233-0397
14 |      Attorneys for Defendants

15 |

16 |                UNITED STATES DISTRICT COURT

17 |                NORTHERN DISTRICT OF CALIFORNIA

18 |                   SAN FRANCISCO DIVISION

ALIA AHMADI, et al.,                    )
19 |                                      )   No. C-07-3455-WHA
          Plaintiffs,                    )
20 |                                      )
          v.                             )
21 |                                      )   **DECLARATION OF JONAH HADARY**
MICHAEL CHERTOFF, et al.,                )
22 |                                      )
          Defendants.                    )
23 | _____ )

24 |

25 |

26 |

27 |

28 |

Declaration of Jonah Hadary - C-07-3455-WHA          1

I, Jonah Hadary, do hereby declare and say:

1.    I am employed by the United States Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"), formerly known as the Immigration and Naturalization Service ("INS").  I am employed as a district adjudications officer at the San Francisco District Office, in the Citizenship Branch of the Adjudications Unit which oversees the adjudication of applications for Naturalization.  I have been employed by the Department of Homeland Security (formerly Department of Justice), August 11, 1996. During that time I have worked as a district adjudications officer.

2.    I make this declaration based upon my personal knowledge and information made known to me in the course of my professional duties and responsibilities.

3.    When a lawful permanent resident applies to USCIS for citizenship by filing an N-400 Application for Naturalization (or other application seeking an immigration benefit), the agency conducts numerous mandatory criminal and national security background checks. These checks are conducted both to enhance national security and to ensure the integrity of the immigration and naturalization processes.  These security and background checks serve to screen out aliens who may seek to harm the United States and its citizens or who may be seeking immigration benefits improperly or fraudulently.  These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism.  Pursuant to established agency policy, all required security checks must be completed prior to adjudication of the application.

4.    In addition to record checks of the alien applicant against United States Department of Homeland Security's own immigration record(s) systems, the background checks that must be completed include, but are not limited to (a) FBI fingerprint check for criminal history records on the alien applicant; (b) a check against the DHS-managed Interagency Border Inspection System (IBIS).  The IBIS system contains records and information from more than 20 federal law enforcement and intelligence agencies including the Central

1

Intelligence Agency (CIA), FBI and other divisions of the U.S. Department of Justice, the Department of State, DHS Customs and Border Protection (CBP) and other DHS agencies; and (c) an FBI Name Check, which is run against FBI investigative databases containing information that is not necessarily revealed in the FBI's fingerprint check or IBIS check. The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement agencies.

5.  Once USCIS receives an Application for Naturalization, N-400, the applicant's file is opened and an electronic record of that application is created. The generation of an FBI Name check request is automated through our DHS systems. USCIS maintains reports from FBI regarding the status of the FBI name check requests. If a problem is reported, the FBI name check request will be initiated a second time and resent manually or electronically to the FBI for a response. In this way, USCIS ensures that the FBI has in fact received all requests for name checks. If an application is otherwise approvable, but all the background checks are not completed, the application is placed on a pending background check shelf.

6.  All files on the background check shelf are audited regularly in order to identify those in which a response from the FBI has been received. This audit is conducted at least every week. In this manner the agency ensures that as FBI responses are received, files are expeditiously released for adjudication.

7.  Although in the majority of FBI name checks no matches are found, some cases involve complex or highly sensitive information and cannot be resolved quickly.

8.  Resolving name checks is a multi-agency effort with a central system that combines information from these various sources and databases to compile information regarding

2

national security risks, public safety concerns, and other law enforcement concerns.

9.  For most applicants, USCIS can quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. However, due both to the sheer volume of security checks USCIS conducts, and the fact that USCIS must await responses from the FBI or other relevant agencies that conduct some of the required security checks, some delays on individual applications are unavoidable and may be lengthy.  Moreover, in some cases a background or security check will reveal that positive (derogatory) information on the subject alien is possessed by some agency other than USCIS without necessarily revealing the substance of that information. In such cases, USCIS works closely with the other law enforcement or intelligence agencies to obtain all available information concerning the positive result in order to properly evaluate its significance. Even where the FBI or a third agency has provided a final response, a case may still be considered pending where the response requires further investigation or review by USCIS or another agency.   It is vitally important to thoroughly screen each applicant in order to resolve all concerns of a law enforcement or national security nature before determining that an individual is eligible for an immigration benefit.

10.  USCIS reports the average processing times for specific applications and petitions on the USCIS website.  This information reflects only average processing times on the date the information is published.  Average processing times fluctuate widely and will sometimes even regress for a specific form type due to a number of factors, including a reallocation of agency resources, reordering of the agency's priorities, and other reasons.  Additionally, not every application will require the same level of inquiry.  Some may require a more detailed level of review and or investigation from either the USCIS or other agencies for a number

3

of reasons ranging from the alien's eligibility for the benefit sought to national security concerns. Accordingly, even when it appears that the adjudication of a particular application is outside the average processing time, this does not establish that the delay is unreasonable or even due to factors within the control of USCIS.

11. The FBI has an established procedure of processing FBI Name Check requests from USCIS chronologically based on the date the request is forwarded. It is important to note that whenever a particular application or petition receives expedited processing and is moved up in the queue, it is at the expense of those still unadjudicated petitions or applications that bear an earlier filing date.

12. I have reviewed the administrative file of the plaintiff, Eiman Taky A 072343583, and thus am familiar with the facts and circumstances of the case.

13. The record reflects that Eiman Taky became a lawful permanent resident on March 26, 1993. She filed an N-400 Application for Naturalization on August 2, 2004. An FBI name check was initiated on August 25, 2004. Eiman Taky was interviewed regarding her application for naturalization on March 15, 2005. To date, that application remains pending the completion of security checks. Once the required security checks are completed, plaintiff's application will be adjudicated. For this reason the USCIS cannot adjudicate plaintiff's N-400 application for naturalization until such time as all security checks are complete.

14. I have reviewed the administrative file of the plaintiff, Sergei Sapozhnikov A 075121185, and thus am familiar with the facts and circumstances of the case.

15. The record reflects that Sergei Sapozhnikov became a lawful permanent resident on September 16, 1998. He filed an N-400 Application for Naturalization on January 6, 2004.

An FBI name check was initiated on January 20, 2004. Sergei Sapozhnikov was interviewed regarding his application for naturalization on July 22, 2004. Furthermore, on August 23, 2007, USCIS requested an expedite of the FBI name check. To date, that application remains pending the completion of security checks. Once the required security checks are completed, plaintiff's application will be adjudicated. For this reason the USCIS cannot adjudicate plaintiff's N-400 application for naturalization until such time as all security checks are complete.

16. I have reviewed the administrative file of the plaintiff, Igor Ovchinnikov A 046314427, and thus am familiar with the facts and circumstances of the case.

17. The record reflects that Igor Ovchinnikov became a lawful permanent resident on January 28, 1998. He filed an N-400 Application for Naturalization on June 3, 2003. An FBI name check was initiated on June 27, 2003. Igor Ovchinnikov was interviewed regarding his application for naturalization on February 9, 2004. Furthermore, on August 23, 2007, USCIS requested an expedite of the FBI name check. To date, that application remains pending the completion of security checks. Once the required security checks are completed, plaintiff's application will be adjudicated. For this reason the USCIS cannot adjudicate plaintiff's N-400 application for naturalization until such time as all security checks are complete.

18. I have reviewed the administrative file of the plaintiff, Vladimir Miulicic A 072666132, and thus am familiar with the facts and circumstances of the case.

19. The record reflects that Vladimir Miulicic became a lawful permanent resident on September 17, 1996. He filed an N-400 Application for Naturalization on May 5, 2004. An FBI name check was initiated on June 4, 2004. Vladimir Miulicic was interviewed

5

regarding his application for naturalization on December 1, 2004. Furthermore, on August 23, 2007, USCIS requested an expedite of the FBI name check. To date, that application remains pending the completion of security checks. Once the required security checks are completed, plaintiff's application will be adjudicated. For this reason the USCIS cannot adjudicate plaintiff's N-400 application for naturalization until such time as all security checks are complete.

20.  I have reviewed the administrative file of the plaintiff, Yan Wang A 075591305, and thus am familiar with the facts and circumstances of the case.

21.  The record reflects that Yan Wang became a lawful permanent resident on July 22, 2000. She filed an N-400 Application for Naturalization on May 1, 2003. An FBI name check was initiated on May 15, 2003. Yan Wang was interviewed regarding her application for naturalization on January 15, 2004. Furthermore, on April 23, 2007, USCIS requested an expedite of the FBI name check. USCIS received the results of that name check on May 15, 2007. USCIS is prepared to adjudicate plaintiff's N-400 application for naturalization.

22.  I have reviewed the administrative file of the plaintiff, Biljana Petrovic A 041221712, and thus am familiar with the facts and circumstances of the case.

23.  The record reflects that Biljana Petrovic became a lawful permanent resident on June 23, 1988. She filed an N-400 Application for Naturalization on April 4, 2003. An FBI name check was initiated on April 28, 2003. Biljana Petrovic was interviewed regarding her application for naturalization on July 15, 2004. USCIS received the results of that name check on August 27, 2007. USCIS is prepared to adjudicate plaintiff's N-400 application for naturalization.

6

24. I have reviewed the administrative file of the plaintiff, Alia Ahmedi A 027776021, and thus am familiar with the facts and circumstances of the case.

25. The record reflects that Alia Ahmedi became a lawful permanent resident on November 25, 1986. She filed an N-400 Application for Naturalization on October 23, 2002. An FBI name check was initiated on December 8, 2002. Alia Ahmedi was interviewed regarding her application for naturalization on May 27, 2003. Furthermore, on June 16, 2005, USCIS requested an expedite of the FBI name check. USCIS received the results of that name check on October 13, 2005, which required further follow up and review. On July 11, 2007, USCIS indicated to Alia Ahmedi's counsel that a further interview was required prior to adjudication of her application. Counsel agreed in principle to the additional interview on July 11, 2007, but on July 19, 2007, declined to submit to an additional interview.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this twenty-ninth day of August, 2007 at San Francisco, California.


Jonah Hadary
District Adjudications Officer

7