1  CECILIA D. WANG (CSB #187782)
   LUCAS GUTTENTAG (CSB #90208)
2  AMERICAN CIVIL LIBERTIES UNION
     FOUNDATION
3  IMMIGRANTS' RIGHTS PROJECT
   39 Drumm Street
4  San Francisco, CA 94111
   Telephone: (415) 343-0775
5  Facsimile: (415) 395-0950
   Email: CWang@aclu.org
6
   Attorneys for Plaintiffs-Petitioners
7  *Additional counsel listed on following page

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12

13  ALIA AHMADI, VLADIMIR MIKULICIC,
    IGOR OVCHINNIKOV, BILJANA
    PETROVIC, SERGEI SAPOZHNIKOV,
14  EIMAN TAKY and YAN WANG,
                                              Case No.  07-CV-3455-WHA
15              Plaintiffs-Petitioners,

16        v.                                  MEMORANDUM OF POINTS AND
                                              AUTHORITIES IN OPPOSITION TO
17  MICHAEL CHERTOFF, U.S. Secretary of       DEFENDANTS' MOTION TO DISMISS
    Homeland Security; ROBERT S. MUELLER
18  III, Director of the Federal Bureau of    Judge:   Hon. William H. Alsup
    Investigation; PETER KEISLER, Acting      Date:    October 11, 2007
19  Attorney General of the United States;     Time:    8:00 a.m.
    EMILIO T. GONZALEZ, Director, U.S.
20  Department of Homeland Security, Bureau of
    Citizenship and Immigration Services; DAVID
21  STILL, District Director, U.S. Department of
    Homeland Security, Bureau of Citizenship and
22  Immigration Services, San Francisco District,

23              Defendants-Respondents.

24

25

26

27

28
                                    *i*

1    Additional counsel:

2    JULIA HARUMI MASS (CSB #189649)
     ALAN L. SCHLOSSER (CSB #49957)
3    AMERICAN CIVIL LIBERTIES UNION
          FOUNDATION OF NORTHERN CALIFORNIA
4    39 Drumm Street
     San Francisco, CA 94111
5    Telephone: (415) 621-2493
     Facsimile: (415) 255-8437
6
     SIN YEN LING*
7    JOREN LYONS (CSB #203403)
     ASIAN LAW CAUCUS
8    939 Market Street, Suite 201
     San Francisco, CA 94103
9    Telephone:  (415) 896-1701
     Facsimile:  (415) 896-1702
10
     *Application for admission pro hac vice forthcoming
11

12   Of counsel:

13   TODD GALLINGER (CSB #238666)
     COUNCIL ON AMERICAN-ISLAMIC RELATIONS
14        (CAIR) – SAN FRANCISCO BAY AREA
     3000 Scott Boulevard, Suite 212
15   Santa Clara, CA 95054
     Telephone:  (408) 986-9874
16   Facsimile:  (408) 986-9875

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
07-CV-3455-WHA

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................v

INTRODUCTION .............................................................................................................1

LEGAL FRAMEWORK ....................................................................................................1

ARGUMENT ....................................................................................................................2

I.    DEFENDANTS' MOTION ARGUES THE MERITS OF
      PLAINTIFFS' FACTUAL ASSERTIONS AND LEGAL CLAIMS
      AND THEREFORE MUST BE DENIED UNDER RULE 12(B)(6). ...................2

II.   UNDER CONTROLLING NINTH CIRCUIT AUTHORITY, THIS
      COURT HAS JURISDICTION OVER THE NAMED PLAINTIFFS'
      CLAIMS FOR DISTRICT COURT NATURALIZATION UNDER 8
      U.S.C. § 1447(b). .........................................................................................3

      A.    The District Court Has Jurisdiction Under 8 U.S.C. § 1447(b)
            Beginning 120 Days After the Naturalization "Examination,"
            Which the Ninth Circuit, the Fifth Circuit, and the Majority of
            District Courts Have Held To Mean the Naturalization
            Interview. ...........................................................................................4

      B.    Congress Has Never Provided for an FBI Name Check and Did
            Not Intend for the Government To Evade District Court
            Jurisdiction Under Section 1447(b) by Indefinitely Delaying
            Completion of an FBI Name Check or Any Other Investigative
            Procedure. ..........................................................................................5

III.  A REMAND WITHOUT INSTRUCTION OR DEADLINE
      WOULD BE CONTRARY TO 8 U.S.C. § 1447(B)……………………………..9

IV.   PLAINTIFFS' CLAIMS ARE PROPERLY JOINED UNDER
      FEDERAL RULE OF CIVIL PROCEDURE 20.....................................................11

V.    PLAINTIFFS STATE A CLAIM FOR RELIEF FROM
      UNREASONABLE DELAY UNDER THE ADMINISTRATIVE
      PROCEDURES ACT.........................................................................................12

      A.    The First Amended Complaint Alleges Facts to Support a
            Finding of Unreasonable Delay. ...................................................12

      B.    Defendants' Procedural Arguments Are Unavailing. ................13

            1.    Section 1447(b) Does Not Provide a Remedy for
                  Systemic Delay. ....................................................................13

            2.    Review of Unreasonable Delay under § 706 Is
                  Available Without Final Agency Action. .....................15

            3.    Plaintiffs Seek to Compel Legally Required Agency
                  Action.....................................................................................16

*iii*

1            C.     Plaintiffs State a Claim that CIS and FBI Actions Are
                  Unreasonably Delayed. .............................................................18

2

VI.    PLAINTIFFS STATE A CAUSE OF ACTION UNDER THE APA'S
3            NOTICE AND COMMENT REQUIREMENT. ....................................................20

4    VII.   PLAINTIFFS HAVE A LIBERTY OR PROPERTY INTEREST IN A
           TIMELY ADJUDICATION OF THEIR NATURALIZATION
5            APPLICATION AND IN BEING NATURALIZED. ...........................................22

6   VIII.   PLAINTIFFS' ENTITLEMENT TO INJUNCTIVE RELIEF IS NOT
           A PROPER ISSUE FOR A MOTION TO DISMISS...........................................24

CONCLUSION.............................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3   *Alkenani v. Barrows*
     356 F. Supp. 2d 652 (N.D. Tex. 2005) ............................................................15
4

*Al-Kudsi v. Gonzales*
5     No. CV-05-1584, 2006 WL 752556 (D. Or. Mar. 22, 2006)...........................10

6   *Arpin v. Santa Clara Valley Transportation Agency*
     261 F.3d 912 (9th Cir. 2001) ......................................................................3, 19
7

*Aslam v. Gonzales*
8     No C06-614, 2006 WL 3749905 (W.D. Wash. Dec. 19, 2006)........................10

9   *Astafieva v. Gonzales*
     No C06-04820, 2007 WL 1031333 (N.D. Cal. Apr. 3, 2007) ..........................10
10

*In re Barr Laboratories, Inc.*
11     930 F.2d 72 (D.C.Cir. 1991) ....................................................................16, 19

12  *Board of Pardons v. Allen*
     482 U.S. 369 (1987)........................................................................................23
13

*Board of Regents v. Roth*
14     408 U.S. 564 (1972)........................................................................................22

15  *Bell Atlantic Corp. v. Twombly*
     __ U.S. __, 127 S. Ct. 1955 (2007).........................................................2, 3, 25
16

*Bennett v. Spear*
17     520 U.S. 154 (1997)........................................................................................16

18  *Brower v. Evans*
     257 F.3d 1058 (9th Cir. 2001) ..................................................................12, 17
19

*Carlo v. City of Chino*
20     105 F.3d 493 (9th Cir. 1997) ..........................................................................22

21  *Chrysler Corp. v. Brown*
     441 U.S. 281 (1979)........................................................................................21
22

*Conn. Board of Pardons v. Dumschat*
23     452 U.S. 458 (1981)........................................................................................23

24  *Coughlin v. Rogers*
     130 F.3d 1348 (9th Cir. 1997) ........................................................................11
25

*Danilov v. Aguirre*
26     370 F. Supp. 2d 441 (E.D. Va. 2005) ............................................................14

27  *Flagstaff Medical Center, Inc. v. Sullivan*
     962 F.2d 879 (9th Cir. 1992) ..........................................................................20
28

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
07-CV-3455-WHA

*Forest Guardians v. Babbitt*
    164 F.3d 1261 (1998)................................................................16, 17

*Fraga v. Smith*
    607 F. Supp. 517 (D. Or. 1985) ...............................................21

*Gilligan v. Jamco Development Corp.*
    108 F.3d 246 (9th Cir. 1997) ...................................................3

*Greenholtz v. Nebraska Penal Inmates*
    442 U.S. 1 (1979)........................................................................23

*Ky. Department of Corrections v. Thompson*
    490 U.S. 454 (1989)....................................................................22

*League to Save Lake Tahoe v. Tahoe Regional Planning Agency*
    558 F.2d 914 (9th Cir. 1977) ...................................................12

*Liberty Fund, Inc. v. Chao*
    394 F. Supp. 2d 105 (D.D.C. 2005)..........................................19

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*
    336 F.3d 1094 (D.C. Cir. 2003)................................................19

*McNary v. Haitian Refugee Center, Inc.*
    498 U.S. 479 (1991)....................................................................14

*McQuillion v. Duncan*
    306 F.3d 895 (9th Cir. 2002) ...................................................22

*Medina v. Argent Mortgage Co.*
    No. 05-CV-2905, 2006 WL 1305230 (N.D. Cal. May 11, 2006)....................12

*Mostovoi v. Sec'y of Dep't of Homeland Security*
    No. 06 Civ. 6388 (GEL), 2007 WL 1610209 (S.D.N.Y. June 4, 2007) ...........10

*Norton v. Southern Utah Wilderness Alliance*
    542 U.S. 55 (2004)........................................................15, 16, 17

*Olim v. Wakinekona*
    461 U.S. 238 (1983)..............................................................22, 24

*Oregon Natural Desert Association v. U.S. Forest Service*
    465 F.3d 977 (9th Cir. 2006) ...................................................16

*Roberts v. Spalding*
    783 F.2d 867 (9th Cir. 1986) ...................................................22

*Safe Air for Everyone v. Meyer*
    373 F.3d 1035 (9th Cir. 2004) ...................................................3

*Said v. Gonzales*
    No. C06-986P, 2006 WL 2711765 (W.D. Wash. Sept. 21, 2006)....................10

*vi*

*Sandin v. Connor*
    515 U.S. 472 (1995)..............................................................................22

*San Francisco BayKeeper v. Whitman*
    297 F.3d 877 (9th Cir. 2002) .................................................................16

*Santillan v. Gonzalez*
    388 F. Supp. 2d 1065 (N.D. Cal. 2005) ................................................17

*Scheuer v. Rhodes*
    416 U.S. 232 (1974)..........................................................................3, 25

*Singh*, 470 F. Supp. 2d at 1067-71...........................................17, 18, 19

*Steisberg v. State of Calif.*
    80 F.3d 353 (9th Cir. 1996) ..................................................................23

*Sweirkiewicz v. Sorema N.A.*
    534 U.S. 506 (2002)................................................................................3

*Telecommunications Research & Action Ctr. V. FCC ("TRAC")*
    750 F.2d 70 (D.C. Cir. 1984)...................................................12, 14, 17

*Tutun v. United States*
    270 U.S. 568 (1926)..............................................................................23

*United States v. Ginsberg*
    243 U.S. 472 (1917)..............................................................................24

*United States v. Hovsepian*
    359 F.3d 1144 (9th Cir. 2004) .............................................................4, 9

*U.S. v. Fausto*
    484 U.S. 439 (1988)..............................................................................15

*Valdez v. Rosenbaum*
    302 F.3d 1039 (9th Cir. 2002) ..............................................................22

*W. Watersheds Project v. Matejko*
    468 F.3d 1099 (9th Cir. 2006) ..............................................................17

*Walji v. Gonzales*, No. 06-20937
    __ F.3d __, 2007 WL 2685028 (5th Cir. Sept. 14, 2007) ......................4, 6, 9,13

*Walji v. Gonzales*
    No. 06-20937, slip op., (5th Cir. June 19, 2007) (vacated and rev'd on reh'g)...................3

*Whitman v. America Trucking Association*
    531 U.S. 457 (2001)..............................................................................16

*Yakubova v. Chertoff*
    No. 06-CV-3203, slip op., (E.D.N.Y.) (copy attached as Exhibit A) ................15

*vii*

# FEDERAL STATUTES

8 U.S.C. § 1421(c) ...................................................................................................24

8 U.S.C. § 1423...........................................................................................................1

8 U.S.C. § 1427(a)-(c)................................................................................................1

8 U.S.C. § 1427(d)......................................................................................................1

8 U.S.C. § 1445...........................................................................................................1

8 U.S.C. § 1446(a) ...................................................................................................2, 6

8 U.S.C. § 1446(b) ......................................................................................................2

8 U.S.C. § 1446(d).....................................................................................................23

8 U.S.C. § 1447(b) ......................................................................................... 2, *passim*

8 U.S.C. § 1571 .....................................................................................................2, 17

5 U.S.C. § 552(a) ......................................................................................................21

5 U.S.C. § 553 ......................................................................................................20, 21

5 U.S.C. § 553(b).......................................................................................................21

5 U.S.C. § 553(b)(3) ..................................................................................................20

5 U.S.C. § 555 ...........................................................................................................18

5 U.S.C. § 702 ...........................................................................................................12

5 U.S.C. § 706 ...........................................................................................................16

5 U.S.C. § 706(1) .......................................................................................................15

63 Fed. Reg. 12,987 (March 17, 1998) .....................................................................21

28 U.S.C. § 1331 .......................................................................................................15

Pub. L. No. 105-119, Tit. I, 111 Stat. 2440, 2448 (Nov. 26, 1997)..............................7

# FEDERAL RULES AND REGULATIONS

8 C.F.R. § 310.3 ..........................................................................................................5

8 C.F.R. § 312.2(c).......................................................................................................5

8 C.F.R. § 312.5 ..........................................................................................................5

8 C.F.R. § 320.4 ..........................................................................................................5

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
07-CV-3455-WHA

8 C.F.R. § 322.4 .................................................................................................................5

8 C.F.R. §§ 334.1, 334.2 ....................................................................................................1

8 C.F.R. § 334.4 .................................................................................................................5

8 C.F.R. § 335.1 .................................................................................................................2

8 C.F.R. § 335.2 ..........................................................................................................2, 5, 7

8 C.F.R. § 335.2(b) ......................................................................................................2, 7, 8

8 C.F.R. § 335.3 .........................................................................................................2, 17

8 C.F.R. § 335.3(a) ....................................................................................................1, 23

8 C.F.R. § 335.6 .................................................................................................................5

Fed. R. Civ. P. 8(a)(2) ........................................................................................................3

Fed. R. Civ. P. 12(b) ........................................................................................................19

Fed. R. Civ. P. 20(b) ........................................................................................................12

Fed. R. Civ. P. 21 .............................................................................................................11

Fed. R. Civ. P. 42(b) ........................................................................................................11

**OTHER AUTHORITIES**

56 Fed. Reg. 50,475 (Oct. 7, 1991) ..................................................................................21

60 Fed. Reg. 38,371 (July 26, 2005) .................................................................................21

135 Cong. Rec. H4539-02, 4542 ...................................................................................9, 10

**INTRODUCTION**

This proposed class action seeks a remedy to the systemic and unreasonable delays in Defendants' processing of naturalization applications. Those unlawful delays are caused by Defendants' policy and practice of indefinite and prolonged delays in an "FBI name check" procedure that has never been required or even authorized under statute or regulation. As a result of Defendants' policies and practices, Plaintiffs and other members of the proposed class are suffering enormous prejudice, while they wait indefinitely to pledge their allegiance to this nation after contributing to it for many years as lawful permanent residents.

Defendants move to dismiss all of Plaintiffs' claims. The motion to dismiss is contrary to settled Ninth Circuit and Supreme Court precedent. In addition, Defendants' motion relies upon extrinsic evidence to dispute Plaintiffs' allegations, which is improper under Federal Rule of Civil Procedure 12(b)(6). The motion to dismiss should be denied in its entirety.

**LEGAL FRAMEWORK**

Under the Immigration and Nationality Act, an applicant for naturalization must meet specified requirements. First, an applicant must be a lawful permanent resident of at least five years' standing and meet certain residence and continuous physical presence requirements. 8 U.S.C. § 1427(a)-(c). Second, the applicant must be a person of good moral character. 8 U.S.C. § 1427(d). And third, unless the applicant obtains a waiver due to disability or age, the applicant must demonstrate an understanding of the English language and U.S. history and principles of government. 8 U.S.C. § 1423. If the applicant complies with these statutory requirements, naturalization regulations require that the application for naturalization shall be granted. 8 C.F.R. § 335.3(a) ("The Service officer *shall grant* the application if the applicant has complied with all requirements for naturalization under this chapter.") (emphasis added).

The naturalization applicant demonstrates compliance with the three statutory requirements through a process set forth in the immigration statute and regulations. The applicant first submits an application for naturalization, known as a Form N-400. 8 U.S.C. § 1445; 8 C.F.R. §§ 334.1, 334.2. The applicant also must appear for an interview, referred to in

1   the statute and regulations as an "examination," before a CIS officer.  8 U.S.C. § 1446(b); 8

2   C.F.R. § 335.2.  While the naturalization application is pending, CIS may conduct a "personal

3   investigation" of the applicant in the "vicinity or vicinities" in which the applicant has lived and

4   worked.  8 U.S.C. § 1446(a); 8 C.F.R. § 335.1.  Pursuant to regulation, the "investigation shall

5   consist, at a minimum, of a review of all pertinent records, police department checks, and a

6   neighborhood investigation," although the last procedure may be waived by CIS.  8 C.F.R. §

7   335.1.  A separate regulation requires CIS to complete a "criminal background check" prior to

8   the naturalization examination.  8 C.F.R. § 335.2(b).  As set forth below in Part II(B), the

9   "criminal background check" consists solely of a fingerprint-based criminal records check.

10  Contrary to Defendants' contention, and as set forth below, nothing in any of the naturalization

11  regulations or statutes requires the FBI name check at issue in this lawsuit.

12          The naturalization statutes and regulations state in clear terms that CIS should complete

13  the naturalization process and render a final decision within 120 days of the naturalization

14  examination.  8 U.S.C. § 1447(b); 8 C.F.R. § 335.3.  Further, Congress has expressed its intent

15  that naturalization applications, like other applications for immigration benefits, should be

16  decided within 180 days of submission of the application.  8 U.S.C. § 1571.

17                                              **ARGUMENT**

18  **I.     DEFENDANTS' MOTION ARGUES THE MERITS OF PLAINTIFFS'
            FACTUAL ASSERTIONS AND LEGAL CLAIMS AND THEREFORE
19          MUST BE DENIED UNDER RULE 12(B)(6).**

20          Defendants devote much of their motion and accompanying declarations to asserting the

21  reasonableness of their actions and disputing the merits of Plaintiffs' allegations and claims.

22  Mot. to Dismiss ("MTD") at 3-5, 9-11, 17-19, 22-23.  Under Federal Rule of Civil Procedure

23  12(b)(6), however, the Court's consideration of the motion is limited to whether the facts

24  alleged, if true, would entitle plaintiffs to some form of legal remedy.  In order to survive a

25  motion to dismiss for failure to state a claim, plaintiffs need only plead a "cognizable legal

26  theory," with facts sufficient to "raise a right to relief above a speculative level." *Bell Atlantic*

27  *Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).  Allegations

28

in the complaint are assumed to be true and "a well pleaded complaint may proceed even if it appears that 'a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Rule 12(b)(6) motions are viewed with "disfavor" and "rarely granted." *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Under these standards, Plaintiffs' First Amended Complaint ("FAC") more than meets the requirements of a "short and plain statement of the claim showing that the pleader is entitled to relief." *Sweirkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)(2)).

Unless the court converts the Rule 12(b)(6) motion into a summary judgment motion, or the defense is apparent from matters of which a court may take judicial notice, courts may not consider material outside the complaint in ruling on a Rule 12(b)(6) motion. *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 925 (9th Cir. 2001). Thus the declarations filed in support of defendants' motions should not be considered by the Court.[1] In the event the Court chooses to consider the proffered evidence and treat the motion as one for summary judgment, Plaintiffs must be provided an opportunity to discover and present evidence relevant to the motion.[2]

## II.    UNDER CONTROLLING NINTH CIRCUIT AUTHORITY, THIS COURT HAS JURISDICTION OVER THE NAMED PLAINTIFFS' CLAIMS FOR DISTRICT COURT NATURALIZATION UNDER 8 U.S.C. § 1447(b).

Defendants argue that this Court does not have jurisdiction over the named Plaintiffs' claims for district court adjudication of their naturalization applications under 8 U.S.C. § 1447(b). In doing so, Defendants rely upon a Fifth Circuit case, *Walji v. Gonzales*, No. 06-20937 (5th Cir. June 19, 2007) (*see* Attachment A, Decl. of Jeffrey S. Robins), that had already been vacated pending rehearing at the time Defendants filed their motion to dismiss. The Fifth

---

[1] While extrinsic facts may be introduced in a "factual attack" on jurisdiction under Rule 12(b)(1), in this case, defendants mount purely legal arguments in their jurisdictional challenges. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The declarations submitted in support of defendants' motion therefore should be disregarded in their entirety.

[2] Plaintiffs dispute many of the factual assertions made in defendants' declarations and exhibit, but do not respond by filing declarations of their own due to defendants' styling of the motion as one made under Rule 12 and the need for discovery prior to a full presentation of evidence. Plaintiffs expressly reserve the right to present contradictory evidence and to object to the form of defendants' evidence if such evidence is to be considered by the Court.

1  Circuit has since reversed itself and rejected the government's position. *Walji v. Gonzales*, No.

2  06-20937, __ F.3d __, 2007 WL 2685028 (5th Cir. Sept. 14, 2007). Under the new *Walji*

3  decision – and more important, under the controlling Ninth Circuit authority, *United States v.*

4  *Hovsepian*, 359 F.3d 1144, 1161 (9th Cir. 2004) – there is no question that this Court has

5  jurisdiction to decide the named Plaintiffs' claims for naturalization under 8 U.S.C. § 1447(b).

      **A.**     **The District Court Has Jurisdiction Under 8 U.S.C. § 1447(b) Beginning 120**
6                   **Days After the Naturalization "Examination," Which the Ninth Circuit, the**
7                   **Fifth Circuit, and the Majority of District Courts Have Held To Mean the**
                  **Naturalization Interview.**
8

9        All of the named Plaintiffs passed their naturalization examinations more than 120 days

10  ago. FAC ¶¶ 14-20. Indeed, all of them passed their naturalization examinations more than two

11  years ago, and six of the seven passed their examinations more than three years ago. *Id.* Thus,

12  under 8 U.S.C. § 1447(b), each named Plaintiff may be naturalized by this Court. Section

13  1447(b) provides that if CIS fails to make a determination on an application within 120 days of

14  "the date on which the examination is conducted," the Court "has jurisdiction over the matter and

15  may either determine the matter or remand the matter, with appropriate instructions, to the

16  Service to determine the matter." In *Hovsepian*, the Ninth Circuit held *en banc* that "8 U.S.C. §

17  1447(b) requires the INS to make a decision regarding a naturalization application within 120

18  days of the INS's *initial interview* of the applicant." 359 F.3d at 1161 (emphasis added). The

19  Fifth Circuit followed suit, exhaustively analyzing 8 U.S.C. § 1447(b) and joining the

20  overwhelming majority of district courts in reaching its conclusion. As the Fifth Circuit

21  explained, "the statute's language that the 120-day period begins to run after 'the date on which

22  the examination is conducted,' 8 U.S.C. § 1447(b), 'contemplates that the examination occurs on

23  a particular, identifiable date.'" *Walji*, 2007 WL 2685028 at *3 (citations omitted).[3]

24  _____

25  [3] Defendants also cite five district court decisions holding that 8 U.S.C. § 1447(b) jurisdiction is
not triggered until after the FBI name check is completed. MTD at 7 n.5. However, Defendants
fail to mention that the overwhelming majority of district courts have reached the opposite

26  conclusion and have held that district courts have jurisdiction beginning 120 days after the
naturalization interview. *See Walji*, 2007 WL 2685028 at *2 (noting that "a handful of district

27  courts have agreed with government's interpretation," while "the majority of courts" have
concluded that "examination" refers to a discrete event, i.e., the naturalization interview);

28  *Mostovoi v. Sec'y of Dep't of Homeland Security*, No. 06 Civ. 6388 (GEL), 2007 WL 1610209 at
          4

1    The naturalization regulations further support the prevailing interpretation that the word

2    "examination" refers to the naturalization interview.  The key regulation describing the

3    naturalization "examination," 8 C.F.R. § 335.2 (titled "Examination of the applicant"), refers to

4    the "examination" as a discrete event.  Section 335.2(a) provides that each applicant "shall

5    appear in person before a Service officer designated to conduct examinations" and that the

6    applicant may request the presence of an attorney at the "examination."  Section 335.2(c)

7    provides that the applicant "shall be questioned, under oath or affirmation," at the examination,

8    and that the officer "shall maintain, for the record, brief notations of the examination for

9    naturalization," which "[a]t a minimum, … shall include a record of the test administered to the

10    applicant on English literacy and basic knowledge of the history and government of the United

11    States."[4]  Thus, the "examination" cannot refer to an ongoing investigative process, as

12    Defendants claim here.

13    **B.    Congress Has Never Provided for an FBI Name Check and Did Not Intend
            for the Government To Evade District Court Jurisdiction Under Section
14            1447(b) by Indefinitely Delaying Completion of an FBI Name Check or Any
            Other Investigative Procedure.**
15

16    The government asks this Court to ignore the controlling decision in *Hovsepian* and the

17    reasoning of the majority of other courts on the alternative ground that "because Congress

18    understood a completed criminal background check as a precondition to an interview, and the

---

*2 & n.3 (S.D.N.Y. June 4, 2007) (same).  *Walji* cites 27 representative district court decisions
holding that the 120-day period under 8 U.S.C. § 1447(b) begins to run at the time of the
naturalization interview, rather than upon completion of an investigation.  2007 WL 2685028 at
*2 n.5.

[4] Other regulations also make it abundantly clear that the naturalization "examination" refers to
the applicant's interview.  See 8 C.F.R. § 335.6 (describing consequences of applicant's failure
to appear "for the examination"); 8 C.F.R. § 310.3 (providing that applicant may elect "at the
time of filing of, or at the examination on, the application" to have the citizenship oath
administered by public ceremony or by a court); 8 C.F.R. § 312.2(c) (referring to "[t]he
examination of an applicant's knowledge of the history and form of government of the United
States"); 8 C.F.R. § 312.5 (providing that if applicant "fails the English literacy or history and
government test at the first examination," he will "be afforded a second opportunity to pass the
test(s) within 90 days after the first examination"); 8 C.F.R. § 320.4 (enumerating persons who
"must appear for examination" for derivative naturalization of child born outside United States);
8 C.F.R. § 322.4 (same); 8 C.F.R. § 334.4 (establishing procedure when applicant is "unable,
because of sickness or other disability, to appear for the initial examination on the application or
for any subsequent interview").

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
07-CV-3455-WHA

interview as a precondition to the running of the 120-day clock, it follows that the completed

criminal background check is *also* a precondition to the running of the 120-day clock."  MTD at

7 (citing vacated original panel decision in *Walji v. Gonzales*).  That argument was rejected by

the Fifth Circuit in *Walji*, 2007 WL 2685028 at *5, and it fails for two reasons.  First, as set forth

above, Congress clearly expressed its intent through the plain language of 8 U.S.C. § 1447(b).

Nothing in 8 U.S.C. § 1447(b) conditions the grant of district court jurisdiction on completion of

an FBI name check or any event other than the passage of 120 days from the time of the

examination.  Thus, Defendants' argument is simply contrary to the words of the statute.

Moreover, Defendants' argument rests on a false premise, as Congress has never

provided that completion of an FBI name check – as distinguished from an "investigation" or

"criminal background check" – is a prerequisite for naturalization.  Defendants contend that

"Congress codified this policy [of conducting the name check] into statute in 1997 with the

passage of 8 U.S.C. § 1446(a), which prohibited the use of Congressional appropriations to

"'complete adjudication of an application for naturalization, prior to receipt of confirmation from

the FBI that a 'full criminal background check has been completed.'"  MTD at 20.  This

statement is incorrect in several respects.  First, the statute cited by Defendants, 8 U.S.C. §

1446(a), does not refer a "criminal background check" at all.  Section 1446(a) provides only that

> [b]efore a person may be naturalized, an employee of the Service, or the United States designated by the Attorney General shall conduct a *personal investigation* of the person applying for naturalization in the vicinity or vicinities in which such person has maintained his actual place of abode and in the vicinity or vicinities in which such person has been employed or has engaged in business or work for at least five years immediately preceding the filing of his application for naturalization.  The Attorney General may, in his discretion, waive a personal investigation in an individual case or in such cases or classes of cases as may be designated by him.

8 U.S.C. § 1446(a) (emphasis added).  The statute does not specify what the "personal

investigation" should entail.  Moreover, the statute itself provides that the "personal

investigation" may be waived.

Elsewhere, Congress has mentioned a "full criminal background check," but that term

also does not encompass the FBI name check.  In an uncodified portion of a 1997 appropriations

act, Congress provided that beginning in fiscal year 1998, "none of the funds made available to the Immigration and Naturalization Service shall be used to complete *adjudication* of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a *full criminal background check* has been completed…."  Pub. L. No. 105-119, Tit. I, 111 Stat. 2440, 2448 (Nov. 26, 1997) (emphasis added).  Defendants make two incorrect claims about this provision.  First, contrary to the government's claim, MTD at 7, Congress provided that the "criminal background check" be completed before *adjudication*, not before the examination.  Second, there is no mention in the appropriations provision of an "FBI name check" and the provision itself does not explain what the "full criminal background check" should entail.

Despite the absence of any statutory definition of the "full criminal background check," Defendants nonetheless assert, in the form of a declaration from an CIS employee, that it consists of three "mandatory" procedures:  an FBI fingerprint check for criminal history; a check of the applicant's name against the Interagency Border Inspection System ("IBIS") database; and the FBI name check.  *See* Decl. of Jonah Hadary ¶ 4 (attached as Exh. 2 to Decl. of Jeffrey S. Robins).  That assertion is not correct under the plain terms of the implementing regulations, which make it clear that the required "criminal background check" refers to a fingerprint-based criminal records check and does not include an FBI name check.  The relevant regulation, 8 C.F.R. § 335.2, provides that the applicant should not be scheduled to appear for an "initial examination" until after the agency has received "a definitive response from the [FBI] that a full criminal background check" has been completed.  8 C.F.R. § 335.2(b).  The regulation defines a "definitive response" as one of the following:  (1) FBI confirmation that the applicant "does not have an administrative or criminal record"; (2) FBI confirmation that the applicant does have such a record; or (3) FBI confirmation that the applicant's fingerprint cards "have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected."  *Id.*  Thus, 8 C.F.R. § 335.2(b) contemplates that the "criminal background check," which is required under regulation and mentioned in Congress's uncodified 1997

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
07-CV-3455-WHA

1    appropriations act, is one based upon fingerprint records – *i.e.*, not a name check.

2          In addition to the plain terms of the regulation indicating that the "criminal background

3    check" is based upon fingerprint records, substantive analysis of the FBI name check

4    demonstrates that it does not pertain to "criminal background." As set forth in the FAC, the FBI

5    name check is run against a database that contains the names of many innocent persons who have

6    no criminal history and are not under any suspicion of criminal activity. FAC ¶¶ 36-38. FBI

7    field agents may include the names of persons who happen to be mentioned in the course of an

8    investigation, such as innocent witnesses and even victims of crimes. *Id.* For that reason,

9    running an FBI name check does not determine whether an applicant for naturalization has

10   criminal history or poses a criminal threat, or indeed whether there is any derogatory information

11   about the applicant. Thus, Defendants' implicit suggestion that the FBI name check is a

12   "criminal background check" required by statute or regulation, MTD at 3-4, is not accurate.

13         But more important for purposes of Defendants' jurisdictional argument, even if the

14   "criminal background check" mentioned in the uncodified 1997 appropriations act and the

15   regulations were meant to include the FBI name check – which is clearly not the case –

16   Defendants' argument still fails under the plain language of 8 U.S.C. § 1447(b) and test of

17   common sense. In 8 U.S.C. § 1447(b), Congress expressed its intent that CIS should decide

18   naturalization applications within 120 days of the interview, and that if CIS fails to do so, then a

19   district court may step in to make the decision. The appropriations act certainly did not amend 8

20   U.S.C. § 1447(b) to add completion of an "FBI name check" as another precondition, in addition

21   to the passage of 120 days from the naturalization examination, for district court jurisdiction in

22   cases of delay. Rather, Congress simply expressed its intent that CIS should complete the

23   "criminal background check" before granting naturalization. In other words, if CIS wishes to

24   conduct an FBI name check, it should do so in a timely manner so that the naturalization

25   application can be decided within 120 days of the examination.

26         Under the government's interpretation, CIS could indefinitely delay completion of the

27   "criminal background check" and therefore the district court would never have jurisdiction under

28

8 U.S.C. § 1447(b). As the Fifth Circuit has pointed out, the government's interpretation would render 8 U.S.C. § 1447(b) a dead letter and is at odds with the plain language of the statute. *Walji*, 2007 WL 2685028 at *5.

### III.    A REMAND WITHOUT INSTRUCTION OR DEADLINE WOULD BE CONTRARY TO 8 U.S.C. § 1447(B).

The government suggests that even though each of the named Plaintiffs has been waiting for more than two years since his or her naturalization examination without a decision, the Court should simply remand to CIS without setting any deadlines. As an initial matter, whether the Court should adjudicate the naturalization application or remand to CIS is a question of remedy that is not ripe for decision on a motion to dismiss.

In any event, government's suggestion of a remand without any instructions or deadlines is contrary to Congress's intent as plainly expressed in 8 U.S.C. § 1447(b). Section 1447(b) provides that a district court "may either determine the matter or remand the matter, *with appropriate instructions*, to the Service to determine the matter." 8 U.S.C. § 1447(b) (emphasis added). Thus, as the Ninth Circuit has pointed out, "Congress empowered the district court to remand the matter to the INS with *the court's* instructions." *Hovsepian*, 359 F.3d at 1160 (emphasis in original). A remand without any instructions, as the Defendants urge upon this Court, is not permitted under 8 U.S.C. § 1447(b).

Congress evidently chose to specify that a district court may remand only "with appropriate instructions" because it intended for 8 U.S.C. § 1447(b) to provide a real remedy for agency delays in naturalization. In enacting section 1447(b), Congress specifically intended that the immigration agency should not be permitted to delay naturalization decisions indefinitely, and that applicants should have recourse to a judicial remedy in cases of delay. *Hovsepian*, 359 F.3d at 1163 ("A central purpose of the statute was to reduce the waiting time for naturalization applicants."). The legislative history demonstrates that Congress was deeply troubled by backlogs in the naturalization process. See 135 Cong. Rec. H4539-02, 4542 (statement of Rep. Morrison) ("This legislation … addresses a very substantial concern that so many of all of our

1   constituents have faced, and that is the problem of long backlogs in moving through the

2   naturalization process ….”); id. at 4543 (statement of Rep. Richardson) (“Those seeking

3   American citizenship fulfill several needed obligations….It is unfair, however, that we postpone

4   their citizenship because of administrative backlog.”).

5          As one district court has noted, “when Congress has clearly granted jurisdiction, it is the

6   Court’s responsibility to exercise it.” *Mostovoi v. Sec’y of Dep’t of Homeland Security*, No. 06

7   Civ. 6388 (GEL), 2007 WL 1610209 at *3 (S.D.N.Y. June 4, 2007).  One judge in this District

8   has granted naturalization outright after the government failed to comply with court-imposed

9   deadlines.  *Astafieva v. Gonzales*, No C06-04820, 2007 WL 1031333, at *3 (N.D. Cal. Apr. 3,

10  2007).  Even when district courts have chosen not to grant naturalization outright, they have set

11  hard deadlines for agency action and have imposed penalties for failure to comply with those

12  deadlines.  *See*, *e.g.*, *Mostovoi*, 2007 WL 1610209, at *5 (remanding to CIS with instruction to

13  “take whatever steps are necessary” to make a determination within 30 days, and in the event to a

14  positive determination to swear in the applicant within the next 30 days, and retaining

15  jurisdiction to monitor compliance); *Aslam v. Gonzales*, No C06-614, 2006 WL 3749905 (W.D.

16  Wash. Dec. 19, 2006) (holding case in abeyance for 60 days for FBI to complete name check,

17  and ordering government to show cause why applicant should not be immediately naturalized if

18  name check is not complete within 60 days); *Said v. Gonzales*, No. C06-986P, 2006 WL

19  2711765 *4 (W.D. Wash. Sept. 21, 2006) (ordering that government must complete status report

20  on name check by date certain and that if government failed to provide information supporting

21  assertion of a name check problem, court would approve application and administer oath of

22  citizenship); *Al-Kudsi v. Gonzales*, No. CV-05-1584, 2006 WL 752556 (D. Or. Mar. 22, 2006)

23  (ordering FBI to complete name check within 90 days; ordering that if FBI fails to comply, CIS

24  is to deem the name check completed with no adverse information; that naturalization should be

25  granted within next 30 days after such event; and ordering CIS to forward naturalization

26  certificate to court so that court may administer the oath of citizenship to applicant).  What the

27  Court cannot do is remand without any directions or deadlines.

28

**IV.    PLAINTIFFS' CLAIMS ARE PROPERLY JOINED UNDER FEDERAL RULE OF CIVIL PROCEDURE 20.**

Contrary to the Defendants' contention, Plaintiffs' claims for relief under 8 U.S.C. § 1447(b) are properly joined in this lawsuit.  Federal Rule of Civil Procedure 20(a) provides that plaintiffs may join in one action "if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action."  Plaintiffs clearly meet this standard.  While the government may raise separate issues of fact relating to the merits of each named Plaintiff's claim to naturalization,[5] all of the Plaintiffs raise common issues of law and fact as they are all being denied a timely adjudication of his or her naturalization application solely because of a systemic delay in processing of the FBI name check.[6]  FAC ¶¶ 45-46, 51-52, 56, 58, 61, 65, 68-69, 73-74.  All Plaintiffs therefore assert a right to relief "in respect of or arising out of the same … series of transactions or occurrences" and also raise common questions of law and fact about the FBI name check as a cause of naturalization delays.

Defendants have failed to make the requisite showing of prejudice to justify severing the trials of Plaintiffs' 8 U.S.C. § 1447(b) claims.  Federal Rule of Civil Procedure 20(b) provides that the Court "may order separate trials or make other orders to prevent delay or prejudice."  *See also* Fed. R. Civ. P. 21 (providing that "[a]ny claim against a party may be severed and proceeded with separately"); Fed. R. Civ. P. 42(b) ("The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim …

---

[5] The existence of such separate issues is purely speculative at this point, as the Defendants have not identified any.

[6] Each of the named Plaintiffs raises identical issues of law and fact relating to a specific practice and policy of delay due to FBI name checks, both on his or her own behalf and on behalf of a proposed class.  *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997), involving a "allegation of general delay," and therefore is inapposite.

11

1    or of any issue"). Defendants have not shown any prejudice that would result from the

2    joint trial of Plaintiffs' section 1447(b) claims, and indeed, the same defendants and

3    counsel will try all of the claims in any event, whether the claims are severed or not. On

4    the other hand, joint trial will serve the interests of judicial economy as each of the

5    Plaintiffs will raise common issues of law and fact concerning the Defendants' policies

6    and practices regarding FBI name checks. *League to Save Lake Tahoe v. Tahoe Regional*

7    *Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (Rule 20(a) should be construed

8    liberally in order to promote trial convenience and to expedite the final determination of

9    disputes, thereby preventing multiple lawsuits). At the least, Defendants' motion to sever

10   is premature. *See Medina v. Argent Mortgage Co.*, No. 05-CV-2905 RS, 2006 WL

11   1305230 at *4 (N.D. Cal. May 11, 2006) (noting that denial of severance does not mean

12   all claims ultimately will be tried together, as court retains discretion to sever under Fed.

13   R. Civ. P. 20(b) as case progresses).

14   **V.    PLAINTIFFS STATE A CLAIM FOR RELIEF FROM UNREASONABLE**
     **DELAY UNDER THE ADMINISTRATIVE PROCEDURES ACT.**

15
     **A.    The First Amended Complaint Alleges Facts to Support a Finding of**
16   **Unreasonable Delay.**

17          The Administrative Procedures Act ("APA") provides for judicial review of agency

18   action (or inaction) that causes a person to suffer a legal wrong or to be otherwise aggrieved or

19   adversely affected. 5 U.S.C. § 702. In particular, the APA provides a remedy for an agency's

20   failure to carry out a required action in a timely manner. Under § 706(1), a court "shall . . .

21   compel agency action unlawfully withheld or unreasonably delayed." The Ninth Circuit has

22   adopted a six-factor test for determining when the administrative delay of a required action is

23   unreasonable. *Brower v. Evans*, 257 F.3d 1058, 1068-69 (9th Cir. 2001) (citing

24   *Telecommunications Research & Action Ctr. V. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir.

25   1984)).[7]

26

27   ───────────────
     [7] The *TRAC* factors include: (1) whether the time taken by the agency meets the "rule of reason,"
28   (2) whether the time taken by the agency comports with congressional timetables or other
     indications of the speed at which the agency is expected to act, (3) whether the delays occur in

1    Plaintiffs have clearly stated a claim of unreasonable delay under the APA, as they allege

2    that Defendants have unreasonably delayed carrying out their ministerial duties of completing

3    name checks and adjudicating naturalization applications, to the extreme prejudice of members

4    of the proposed class.  The FAC alleges the elements of the unreasonable delay claim, including

5    support for a number of the factors in the extremely fact-intensive *TRAC* test.  FAC ¶¶ 21-25

6    (defendants are responsible for processing FBI name checks submitted by CIS and/or

7    adjudicating naturalization applications); 28-32 (by statute, CIS must grant or deny a

8    naturalization application within 120 days of holding an interview with the applicant and 180

9    days of the filing of the application and must grant naturalization to applicants who meet the

10    statutory requirements); 38-42 and 77-83 (FBI name check procedure is likely to identify

11    applicants erroneously as being "of interest" and to result in years-long delays for Plaintiffs and

12    proposed class members; delays are not justified by asserted national security interests; and

13    defendants do not use mechanisms to track or minimize delays); and 86-91 (prejudice suffered

14    by applicants with delayed cases).  By these allegations, plaintiffs have clearly stated a cause of

15    action for unreasonable delay under the APA.  At this stage of the litigation, before Plaintiffs

16    have had an opportunity to conduct discovery and present evidence, consideration of the merits

17    of this claim would be premature.

18    **B.    Defendants' Procedural Arguments Are Unavailing.**

19    **1.    Section 1447(b) Does Not Provide a Remedy for Systemic Delay.**

20    Ironically, after arguing that this court lacks jurisdiction to consider plaintiffs' individual

21    claims for relief under 8 U.S.C. § 1447(b), the government goes on to claim that plaintiffs' APA

22    claim fails because § 1447(b) provides an adequate legal remedy.[8]

23    Section 1447(b) provides judicial review for individuals whose applications are not

24    _____

25    the sphere of economic regulation or impact human health and welfare, (4) the effect of
expediting delayed action on agency activities of a higher or competing priority, (5) the nature

26    and extent of the interests prejudiced by delay, and (6) that a finding of impropriety is not
necessary for a finding of unreasonable delay.  *Brower*, 257 F.3d at 1068-69.

27    [8] It is worth noting that the government has repeatedly sought to vitiate judicial review under §
1447(b) not only in this case, but in cases throughout the country.  *See Walji*, 2007 WL 2685028

28    at *2 (citing cases).

adjudicated within 120 days of their interviews, but cannot provide the systemic relief sought by this proposed class action. Plaintiffs have put into issue Defendants' policy and practice of unreasonably delaying naturalization adjudications for at least hundreds of applicants. FAC ¶ 77-85; Corrected Memo. of P. & A. in Support of Mot. for Class Certification at 4-6. This Court's consideration of Plaintiffs' unreasonable delay claim will necessarily include discovery and presentation of evidence of the government's practices and policies, analysis of whether the same objectives could be met in a more efficient and timely manner, evaluating the current practices' actual value to national security, and balancing the relative hardships to the parties. *TRAC*, 750 F.2d at 80. Resolution of these questions will save judicial, government, and private resources that might otherwise be devoted to *seriatim* 1447(b) petitions and provide opportunities for addressing root causes of the delay that would be outside the scope of an individual § 1447(b) petition. Perhaps most important, Plaintiffs' APA claim can provide relief to the many people suffering from unreasonable delay who do not have the resources to bring individual petitions. *See* FAC ¶ 93 (as of June 2007, there were 31,144 naturalization applicants for whom FBI name check cases were pending more than 33 months).[9]

The government cites *Danilov v. Aguirre*, 370 F.Supp.2d 441 (E.D. Va. 2005), in support of its position that § 1447(b) precludes the Court's jurisdiction over Plaintiffs' APA challenge. MTD at 13. However, in addition to having been disapproved by the majority of district courts to consider jurisdiction under § 1447(b), *Danilov* concerned only an individual petitioner's claim of unreasonable delay in the processing of his naturalization application. *See* 370 F. Supp. 2d at 442. Where, as here, a class of plaintiffs seeks systemic relief, the existence of a more specific remedial scheme does not thwart district court jurisdiction. *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991) (statute providing for administrative review and precluding district court review of agency decisions denying "special agricultural worker" status did not strip

---

[9] In addition, judicial review of the name check system may provide relief to many individuals who, the government asserts, have no remedy under §1447(b) – *i.e.*, individuals whose naturalization applications are unreasonably delayed *before* the interview. *See* FAC ¶¶ 43 (In April 2006, CIS implemented policy of delaying naturalization examinations until after the FBI name check is completed in order to defeat district court jurisdiction over delays in the

1  district court of jurisdiction over class action due process claim challenging agency's practices

2  and procedures in the processing of such applications).[10]

3            Other district courts have asserted jurisdiction over APA claims challenging delays in the

4  adjudication of naturalization petitions.  In *Yakubova v. Chertoff*, No. 06-CV-3203 (E.D.N.Y.),

5  the district court retained jurisdiction over class claims of unreasonable delay under the APA

6  without ruling on the government's argument that § 1447(b) provided an exclusive remedy.  Slip

7  op. at * 7 (retaining jurisdiction of related claim to avoid waste of judicial resources) (copy

8  attached hereto as Exhibit A).  *See also Alkenani v. Barrows*, 356 F. Supp. 2d 652, 656 (N.D.

9  Tex. 2005) (court has subject matter jurisdiction over a challenge to the immigration agency's

10  delay in adjudicating his naturalization petition under the APA and 28 U.S.C. § 1331).  Section

11  1447(b) does not provide meaningful relief as to the broad systemic challenges brought on behalf

12  of Plaintiffs' proposed class, and therefore does not preclude review of Plaintiffs' unreasonable

13  delay claim under the APA.

                    **2.     Review of Unreasonable Delay under § 706 Is Available Without Final
                             Agency Action.**

14

15            Defendants assert that APA review is unavailable because the agency has not yet

16  adjudicated Plaintiffs' naturalization applications and therefore there is no "final agency action"

17  to review.  MTD at 13.  However, "agency action" for purposes of the APA is defined to include

18  "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial

19  thereof, *or failure to act.*"  *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004)

20  (emphasis in original) (quoting 5 U.S.C. § 551(13)).  Indeed, the APA's creation of a judicial

21  remedy for an agency's unreasonable delay would be meaningless if it required an action to be

22  taken before court jurisdiction was conferred.  5 U.S.C. § 706(1).  Because plaintiffs challenge

23  the failures of CIS and FBI to execute non-discretionary, ministerial duties within a reasonable

24

---

25  naturalization process).

26  [10]  *U.S. v. Fausto*, 484 U.S. 439, 441-442 (1988), cited by the government for the proposition
    that a specific grant of jurisdiction precludes jurisdiction on a more general basis, also involved
27  an individual claim that was inconsistent with the governing statutory scheme rather than a
    systemic challenge to an agency's practices and policies.
28

1    time, they assert valid claims under the APA.  *Norton*, 542 U.S. at 62-63.[11]

2            **3.    Plaintiffs Seek to Compel Legally Required Agency Action.**

3            In their final procedural challenge to Plaintiffs' unreasonable delay claim, Defendants

4    argue that the Court may only compel agency action that is legally required.  MTD at 14.  This

5    argument is a red herring, as the Defendants do have a legal obligation to act.  Defendants assert

6    that they are under no obligation to act because there are no statutory deadlines, but that assertion

7    is false.

8            First, it is legally correct that courts may only compel "agency action unreasonably

9    delayed or unlawfully withheld" if the delayed or withheld action is legally required.  *Norton*,

10   542 U.S. at 63.  This presents no problem for Plaintiffs' APA claim, however, because CIS *is*

11   legally required to adjudicate naturalization applications.  *See infra* Part VII.

12           Second, the APA provides a remedy for unreasonable delays in agency action even when

13   the delayed actions are not subject to a specific statutory deadline.  The Tenth Circuit has held

14   that there are two distinct cognizable claims under § 706(1):  when an agency does not act within

15   a statutory deadline, the action must be compelled as "unlawfully withheld"; in addition, when

16   an agency fails to take an action that is legally required, but for which there is no statutory

17   deadline, the court should compel the action if it is "unreasonably delayed."  *Forest Guardians v.*

18   *Babbitt*, 164 F.3d 1261, 1270-72 (1998) (citing 5 U.S.C. § 706).   *Cf. In re Barr Labs, Inc.*, 930

19   F.2d 72 (D.C.Cir. 1991) (analyzing unreasonable delay beyond statutorily imposed deadline

20   through consideration of *TRAC* factors).  In *San Francisco BayKeeper v. Whitman*, the Ninth

21   Circuit cited this passage from *Forest Guardians*, but distinguished the claim before it on the

22   basis that the agency action sought to be compelled in that case was *not* legally required at all.

23   297 F.3d 877, 885-86 (9th Cir. 2002) (plaintiffs' argument that unreasonable delay finding is

---

[11] The cases cited by defendants in support of its argument are not unreasonable delay cases
under the APA and are therefore inapposite.  *See Bennett v. Spear*, 520 U.S. 154, 178 (1997)
(rejecting argument that issuance of an agency report was not a "final action" for purposes of
APA review); *Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 984-990 (9th
Cir. 2006) (issuance of annual operating instructions constituted "final action" for purposes of
APA review); *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 478 (2001) (EPA's implementation
policy was final agency action subject to judicial review).

available without a specific deadline is unavailing because there was no "statutory duty in the first place").[12]  A review of decisions readily confirms that statutory deadlines for agency action are not a prerequisite to relief from unreasonable delay.  *See Brower v. Evans*, 257 F.3d at 1069-70 (finding unreasonable delay without firm statutory deadline for agency action); *TRAC*, 750 F.2d at 80-81 (discussing a "rule of reason" that may encompass "months, a year or two, but not several years or a decade"); *Santillan v. Gonzalez*, 388 F. Supp. 2d 1065, 1080-82 (N.D. Cal. 2005) (despite absence of statutory deadline, USCIS has "a duty to provide documentation to [lawful permanent residents] at a time that does not unreasonably compromise [their] enhanced rights"); *Singh*, 470 F. Supp. 2d at 1067-71 (seven-year delay in resolution of application for lawful permanent resident status unreasonable despite absence of statutory deadline).

    Third, with respect to the adjudication of naturalization petitions, the governing statutes and regulations do provide deadlines for agency actions.  *See* 8 U.S.C. § 1447(b) (adjudication of naturalization application to be completed 120 days after examination); 8 U.S.C. §1571 (applications for immigration benefits should be adjudicated within 180 days of the initial filing of the application); 8 C.F.R. §§ 335.3 (CIS must grant or deny a naturalization application at the time of the examination, or at the latest, within 120 days after the date of the examination).  Even if the Court decides that such deadlines do not *automatically* mandate compulsion of agency action "unlawfully withheld" as suggested by the Tenth Circuit, they certainly provide content for the "rule of reason" to be included in the Court's consideration of plaintiffs' unreasonable delay claim.  *Forest Guardians*, 164 F.3d at 1270-72; *Brower*, 257 F.3d 1068-69 (listing TRAC factors).

    With respect to the FBI's ministerial duty to process name check requests, defendants depart from their previous refrain and assert that the FBI's action is *not* legally required for purposes of the APA.  Plaintiffs agree that the FBI name check is not required by statute.  But,

---

[12]  Other cases cited by defendants are similarly inapposite.  *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. at 66-67, 72-73, (actions sought to be compelled are not discrete mandatory acts or legally binding commitments enforceable under § 706) *and W. Watersheds Project v. Matejko*, 468 F.3d 1099, 1110 (9th Cir. 2006) ("This is not a lawsuit to 'compel agency action' under s 706(1) of the APA").

1   where CIS – which is required by statute to conduct a background check and investigation –

2   adopts a rule to require the FBI name check as part of that process, and where the FBI agrees to

3   provide the name check service for the purpose of an application process that is non-

4   discretionary and subject to statutory time limits, the FBI's action must also be carried out

5   without unreasonable delay. There is no dispute that CIS submits information about

6   naturalization applicants to the FBI and that the FBI accepts the duty of completing a name

7   check with respect to each of those applicants. FAC ¶¶ 21-23, 35-43; MTD at 3-4.[13] That being

8   so, the FBI, as a federal agency, must act within a reasonable amount of time to conclude each

9   such "matter presented to it." 5 U.S.C. § 555. Under the APA, "[t]he critical issue is not

10  whether a particular branch of the federal government is responsible for the delay; it is whether

11  the individual petitioner versus the government *qua* government is responsible." *Singh*, 470 F.

12  Supp. 2d at 1068.[14]

13        **C.**      **Plaintiffs State a Claim that CIS and FBI Actions Are Unreasonably Delayed.**

14

15          Defendants argue that FBI and CIS procedures do not violate the APA because any

16  delays are reasonable. Those arguments go to merits of Plaintiffs' claims and therefore should

17  be rejected under Rule 12(b)(6). Defendants use the *TRAC* factors – without explicitly saying so

18  – to argue against a finding of unreasonable delay. For example, the government argues that it

19  "has prioritized the processing of name checks in a reasonable . . . manner" (MTD at 17:15-21),

20  that the current systems is necessary to national security (MTD at 17:26-27), that the burdens on

21  plaintiffs and the members of the proposed class are minimal (MTD at 17:22-25), and that

22  _____

23  [13]   The facts surrounding the FBI's agreement with CIS and any legal obligations that may arise from that relationship will be the proper subject of discovery. For purposes of the present motion, Plaintiffs have alleged facts sufficient to support a claim that the FBI has a ministerial duty to complete the name checks presented to it.

24

25  [14]   Defendants' citation to the Intelligence Reform and Terrorism Prevention Act of 2004 is instructive, though not for the purpose Defendants suggest. Defendants point out that Congress could have imposed a time limit on FBI name checks for naturalization applications as it did for the hiring of certain employees. MTD at 16. More important, the fact that Congress explicitly mandated FBI name checks for this category of individuals but did *not* do so for naturalization applicants strongly undermines Defendants' constant refrain that an FBI name check is statutorily required prior to naturalization.

26

27

28

USCIS "continues to take efforts to complete the adjudication of naturalization applicants with complete background checks." (MTD at 18:15-16).[15]  Several of these assertions are disputed by the CIS Ombudsman's 2006 Annual Report, as cited in the First Amended Complaint.  *See* FAC ¶¶ 41 ("the current USCIS name check policy may *increase* the risk to national security by prolonging the time a potential criminal or terrorist remains in the country"), and 8 (with respect to reasonable prioritizing, "[t]he problem of long-pending FBI name check cases *worsened*" during June 2006-2007").  The motion to dismiss must be denied because Plaintiffs must be permitted to engage in discovery to test the government's factual assertions.  This portion of the government's motion does not point to any defects in the First Amended Complaint.[16]  Instead, by engaging in the balancing of facts to be considered in an  unreasonable delay claim, the government has ventured beyond the scope of Rule 12(b)(6) motion to dismiss.  *Arpin v. Santa Clara Valley Transportation* Agency, 261 F.3d at 925 (defect challenged in 12(b)(6) motion must appear on the face of the complaint).[17]

   The government's arguments against Plaintiffs' unreasonable delay claim rely on legal tautologies and factual arguments that are improper in a Rule 12(b)(6) motion.  Defendants' approach is nicely summed up with this assertion: "The naturalization process has not been unreasonably delayed because Congress has required name checks to be completed prior to

---

[15]   These factual assertions are largely made without any evidentiary support.  Where the government's assertions are supported by a proffered declaration, such as the Cannon and Hadary Declarations, cited at pages 17 and 18 of the Motion to Dismiss, such evidence may not be considered.  Consideration of such extrinsic evidence would convert the motion to a motion for summary judgment under Rule 56 and require that plaintiffs be given an opportunity to discover and present evidence material to the arguments made.  Fed. R. Civ. P. 12(b) and 56(f).

[16]   The cases cited by defendants are not cases decided under Rule 12(b)(6).  *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105 (D.D.C. 2005) (court entertained jurisdiction over unreasonable delay claim and entered summary judgment for defendants); *In re Barr Lab*, 930 F.2d 72 (D.C. Cir. 1991) (writ of mandamus denied after balancing of *TRAC* factors); *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094 (D.C. Cir. 2003) (writ of mandamus reversed on appeal).

[17]   The government's attempt to relieve CIS of its statutory duty to adjudicate applications without unreasonable delay by blaming the delay on the FBI name checks which CIS has elected to include in the process must also fail.  Under the APA, "[t]he critical issue is not whether a particular branch of the federal government is responsible for the delay; it is whether the individual petitioner versus the government *qua* government is responsible."  *Singh*, 470 F. Supp. 2d at 1068 (rejecting argument that CIS "cannot be blamed for slowness of the name

---

1   action on naturalization applications and has not provided any time limitation on completing that

2   investigation."  MTD at p. 15, ll. 15-17.  Actually, Congress has not required FBI name checks;

3   the agency has.  Moreover, contrary to Defendants' assertion, even if the FBI name check were

4   required by statute, that requirement could not be a defense to unreasonable delay.  If it were,

5   there could never be judicial review over mandatory, but uncompleted, agency actions.  Third,

6   Congress has recommended deadlines for adjudication of immigration benefits generally and

7   naturalization applications in particular, and has therefore provided a basis for determining the

8   reasonableness or unreasonableness of a delay.  Finally, because the Ninth Circuit has adopted

9   the six-factor *TRAC* test for unreasonable delay, the existence or non-existence of statutory

10  deadlines is only one part of the APA's fact-intensive inquiry into the reasonableness of an

11  agency's delay.  The government's essential position – "the delay is not unreasonable because

12  we say it is necessary" – is not a valid basis for granting its motion.

13  **VI.  PLAINTIFFS STATE A CAUSE OF ACTION UNDER THE APA'S NOTICE AND
14      COMMENT REQUIREMENT.**

15          CIS expanded the FBI name check requirement to "reference files" in November 2002

16  without going through notice and comment procedures required by 5 U.S.C. § 553.  FAC ¶ 37.

17  The government claims that the name check requirement is required by statute, and therefore is

18  merely an "interpretive rule" not subject to notice and comment.  MTD at 19 (citing 5 U.S.C. §

19  553(b)(3)).  However, as explained above, the government's premise that "[t]he actual

20  requirement of a the [sic] name check portion of the 'full criminal background check' was

21  unchanged," MTD at 19, is false.  Congress has never required the FBI name check.  *See supra*

22  Part II(B).

23          As set forth in the FAC, the FBI name check requirement "work[s] a change in extant law

24  or policy," and is thus a substantive rule subject to the APA's notice and comment requirements.

25  *Flagstaff Medical Center, Inc. v. Sullivan*, 962 F.2d 879, 886 (9th Cir. 1992).  While "[t]here is

26  no bright-line distinction between interpretive and substantive rules," the Ninth Circuit's "focus

27  _____

28  check because that is the responsibility of the FBI").

on the impact of the rules on agency decisionmaking" supports Plaintiffs' claim under 5 U.S.C. § 553. *Id.* CIS's adoption of the name check procedure amounts to a new requirement for naturalization applicants, and it has had significant impact on the agency's decisionmaking process and on the rights of members of the proposed class. FAC ¶ 8 (according to CIS Ombudsman, "FBI name checks . . . continue to significantly delay adjudication of immigration benefits for many customers, hinder backlog reduction efforts, and may not achieve their intended national security benefits. FBI name checks may be the single biggest obstacle to the timely and efficient delivery of immigration benefits"). As such, the new rule should have been published to provide notice and an opportunity for the public to comment in order to have "force or effect of law." 5 U.S.C. § 553(b); *Chrysler Corp. v. Brown*, 441 U.S. 281, 313 (1979); *Fraga v. Smith*, 607 F. Supp. 517, 523 (D. Or. 1985) (class wide relief granted under 5 U.S.C. § 552(a) requiring that immigration agency comply with notice and comment procedures for internal rules regarding standards for proof of citizenship eligibility for foreign-born children of U.S. citizens).

The government's own description of how the FBI name check requirement was added to the naturalization process demonstrates that it should have complied with the APA's notice and comment requirement. In making its allegation that the FBI "name check requirement is not new," the government chronicles changes in agency requirements for naturalization that were all published in the Federal Register either with a comment period or, in the case of the March 17, 1998, Federal Register entry, treated as a substantive rule for which notice and comment would have been required but for the invocation of the "good cause" exception to the APA's notice and comment requirements. *See* MTD at 20 (citing Administrative Naturalization, 56 Fed. Reg. 50,475 (Oct. 7, 1991) (setting forth requirements for naturalization investigation); Information Collections Under Review, 60 Fed. Reg. 38,371 (July 26, 2005) (giving notice and soliciting comments regarding introduction of FBI checks to some naturalization applications); Fingerprinting by the Service; Requiring Completion of Criminal Background Checks Before Final Adjudication of Naturalization Applications, 63 Fed. Reg. 12,987 (March 17, 1998) (requiring completion of criminal background checks before examination); 63 Fed. Reg. at

1   12983 (invoking "good cause" exception under 5 U.S.C. § 553(b)(B)).  The government provides

2   no explanation for why the most recent change in naturalization requirements – the addition of

3   the FBI name check – was not published in the same manner that previous changes were.

### VII.    PLAINTIFFS HAVE A LIBERTY OR PROPERTY INTEREST IN A TIMELY ADJUDICATION OF THEIR NATURALIZATION APPLICATION AND IN BEING NATURALIZED.

6       Defendants move to dismiss Plaintiffs' claim under the Due Process Clause, contending

7   that Plaintiffs do not have a protected liberty interest.  That contention must be rejected.

8   Plaintiffs in this case have far more than an abstract need or desire for naturalization or a timely

9   adjudication of their naturalization applications.  Under the Immigration and Nationality Act and

10  the implementing regulations on naturalization, Plaintiffs in this case have concrete right to (1)

11  their naturalization based upon their satisfaction of all statutory requirements; and (2) a timely

12  adjudication – whether grant or denial – of their naturalization applications within 120 days of

13  their naturalization examinations.

14      Under prevailing Supreme Court and Ninth Circuit caselaw, a statute or regulation

15  creates a protected liberty interest when it sets forth "'substantive predicates' to govern official

16  decision making" and contains "'explicitly mandatory language,' *i.e.*, a specific directive to the

17  decisionmaker that mandates a particular outcome if the substantive predicates have been met."

18  *Valdez v. Rosenbaum*, 302 F.3d 1039, 1044 (9th Cir. 2002);[18] *see also Ky. Dep't of Corrections*

19  *v. Thompson*, 490 U.S. 454, 463 (1989) ("[T]he use of 'explicitly mandatory language,' in

20  connection with the establishment of 'specific substantive predicates' to limit discretion, forces a

21  conclusion that the State has created a liberty interest.") (quoting *Hewitt v. Helms*, 459 U.S. 460,

22  472 (1983)); *Bd. of Regents v. Roth*, 408 U.S. 564, 566-67, 577-78 (1972); *Roberts v. Spalding*,

23  783 F.2d 867, 870 (9th Cir. 1986) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).

---

[18] In *Valdez*, the Ninth Circuit noted that the mandatory/discretionary distinction is no longer the test for whether there is a protected liberty interest in certain cases involving convicted prisoners, but held that the mandatory/discretionary standard is still valid for pretrial detainees raising due process claims.  302 F.3d at 1044 n.3 (citing *Sandin v. Connor*, 515 U.S. 472 (1995)); *see also McQuillion v. Duncan*, 306 F.3d 895, 903 (9th Cir. 2002) (noting that *Sandin's* limitation on the mandatory/discretionary test is "limited to internal prison disciplinary regulations"); *Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997).  *A fortiori*, the test still applies in the non-

Even when an ultimate decision is discretionary (which is not the case here), if a statute requires an outcome when certain requirements are met, there is a protected liberty interest. *Bd. of Pardons v. Allen*, 482 U.S. 369, 376 (1987) (quoting *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 12 (1979)); *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 466 (1981); *Steisberg v. State of Calif.*, 80 F.3d 353, 356 (9th Cir. 1996). The naturalization laws create two concrete entitlements for Planitiffs, giving rise to protected liberty interests.

First, the statute and regulations require the government, in mandatory terms, to make a timely decision on a naturalization application. Second, the regulations require the government to grant the naturalization application when an applicant has met all statutory requirements, as Plaintiffs and other members of the putative class have done here, *see* FAC ¶¶ 45, 51, 56, 61, 65, 68, 73, 92; Plaintiffs' Notice of Motion and Motion for Class Certification at 3; Plaintiffs' Corrected Memo. of P. & A. in Support of Motion for Class Certification at 3.[19] Under the naturalization statute, "[t]he employee designated to conduct any such [naturalization] examination *shall* make a determination as to whether the application should be granted or denied, with reasons therefor." 8 U.S.C. § 1446(d) (emphasis added). The implementing regulation contains an even more specific mandatory direction to the agency regarding both the outcome and the timing of the determination:

> The Service officer *shall grant* the application if the applicant has complied with all requirements for naturalization under this chapter. A decision to grant or deny the application *shall be made* at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2. The applicant *shall be notified* that the application has been granted or denied and, if the application has been granted, of the procedures to be followed for the administration of the oath of allegiance pursuant to part 337 of this chapter.

8 C.F.R. § 335.3(a). Federal courts have long recognized that naturalization is mandatory upon the applicant's satisfaction of the statutory requirements. *See Tutun v. United States*, 270 U.S. 568, 578 (1926) ("The opportunity [to naturalize] having been conferred by the Naturalization

---

prisoner context here.

[19] To the extent that Defendants wish to dispute that the named Plaintiffs have met all statutory requirements for naturalization, they are creating a factual dispute, which cannot be resolved through a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

1   Act, there is a statutory right in the alien to submit his petition and evidence to a court, to have

2   that tribunal pass upon them, and, if the requisite facts are established, to receive the

3   certificate.") (citing *United States v. Shanahan*, 232 F. 169, 171 (E.D. Pa. 1916)); *United States*

4   *v. Ginsberg*, 243 U.S. 472, 475 (1917).

5          Despite the clear mandatory language of the naturalization statutes and regulations,

6   Defendants argue that there is no liberty interest in having the government follow certain

7   procedures in the course of making a discretionary decision.  While the legal principle is correct,

8   *see*, *e.g.*, *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983), this argument is a red herring.  As set

9   forth above, the Defendants' decisionmaking power with respect to naturalization is not

10  discretionary under the immigration statutes and regulations.  Moreover, Plaintiffs are not

11  asserting a liberty interest in certain procedures (such as a hearing), but in an outcome and in a

12  timely determination.  The Plaintiffs here can enforce, through federal court review, their rights

13  to a timely adjudication, 8 U.S.C. § 1447(b) (authorizing district courts to grant naturalization

14  when agency has delayed), and to a grant of naturalization upon meeting the statutory

15  requirements, 8 U.S.C. § 1421(c) (person whose naturalization application is denied by CIS may

16  obtain de novo judicial review, and court "shall make its own findings of fact and conclusions of

17  law and shall, at the request of the petitioner, conduct a hearing de novo on the application).

18  They therefore have a protected liberty interest.  *See Ky. Dep't of Corrections*, 490 U.S. at 465

19  (because prison "regulations are not worded in such a way that an inmate could reasonably

20  expect to enforce them against the prison officials," they did not have protected liberty interest).

21  **VIII.   PLAINTIFFS' ENTITLEMENT TO INJUNCTIVE RELIEF IS NOT A
          PROPER ISSUE FOR A MOTION TO DISMISS.**

22

23          Defendants' final argument that plaintiffs are not entitled to injunctive relief, MTD at 22,

24  is entirely inappropriate for a motion to dismiss.  Plaintiffs have alleged that they have sustained

25  and will continue to sustain irreparable injury unless the court grants injunctive relief.  FAC ¶¶

26  48, 53, 59, 63, 66, 71, 76, 86-91 (describing prejudice to named plaintiffs and to all individuals

27  whose applications for naturalization are unreasonably delayed).  As explained above in Part

28

1    V(B), 8 U.S.C. § 1447(b) does not provide an adequate remedy at law to address the systemic

2    delays that are the subject of this proposed class action. *See also* FAC ¶¶ 97 and 100 (irreparable

3    injury and inadequacy of legal remedy allegations). These allegations are sufficient to state a

4    claim for injunctive relief. *See Bell Atlantic Corp.*, 127 S.Ct. at 1964-65 (plaintiffs need only

5    plead a "cognizable legal theory" with facts that raise the right to relief "above a speculative

6    level") (citations omitted); *Scheuer v. Rhodes*, 416 U.S. at 236 (in reviewing the sufficiency of a

7    complaint, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant

8    is entitled to offer evidence to support the claims").[20]

9         Before the court may consider whether plaintiffs have established success on the merits

10   and engage in the balancing of equities necessary for injunctive relief, the parties must be given

11   an opportunity to engage in discovery and present evidence to the Court with respect to those

12   considerations. For this reason, defendants' final argument against the Court's consideration of

13   plaintiffs' injunctive relief claim is inappropriate for a motion to dismiss and must be rejected.

## CONCLUSION

15        For the foregoing reasons, the Court should deny Defendants' motion to dismiss. In the

16   event the Court considers Defendants' declarations, the Court should postpone any ruling in

17   order to allow Plaintiffs to conduct discovery in response to such declarations. Finally, in the

18   event that the Court grants any part of Defendants' motion, it should be granted with leave for

19   Plaintiffs to amend the First Amended Complaint.

20

21

22

23

24

25

26

27

28

---

[20]    None of the cases cited by Defendants, MTD at 22-23, in support of this final argument involve the dismissal of injunctive relief claims for failure to state a claim under Rule 12(b)(6).

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
07-CV-3455-WHA

1     Dated:  September 20, 2007                    Respectfully submitted,

2                                                   CECILLIA D. WANG
                                                    LUCAS GUTTENTAG
3                                                   AMERICAN CIVIL LIBERTIES UNION
                                                        FOUNDATION
4                                                   IMMIGRANTS' RIGHTS PROJECT
                                                    39 Drumm Street
5                                                   San Francisco, CA 94111

6                                                   JULIA HARUMI MASS
                                                    ALAN L. SCHLOSSER
7                                                   AMERICAN CIVIL LIBERTIES UNION
                                                        FOUNDATION OF NORTHERN
8                                                       CALIFORNIA
                                                    39 Drumm Street
9                                                   San Francisco, CA 94111

10                                                  SIN YEN LING
                                                    JOREN LYONS
11                                                  ASIAN LAW CAUCUS
                                                    939 Market Street, Suite 201
12                                                  San Francisco, CA 94103
                                                    Telephone:  (415) 896-1701
13                                                  Facsimile:  (415) 896-1702

14                                                  TODD GALLINGER
                                                    Of Counsel
15                                                  COUNCIL ON AMERICAN-ISLAMIC
                                                        RELATIONS (CAIR) – SAN
16                                                  FRANCISCO BAY AREA
                                                    3000 Scott Boulevard, Suite 212
17                                                  Santa Clara, CA 95054
                                                    Telephone:  (408) 986-9874
18                                                  Facsimile:  (408) 986-9875

19                                                  Attorneys for Plaintiffs

20

21                                          By:  _____/s/_____
                                                    CECILLIA D. WANG

22

23                                                  _____/s/_____
                                                    JULIA HARUMI MASS

24

25

26

27

28
                                       26
─────────────────────────────────────────────────────────────
                MEMORANDUM OF POINTS AND AUTHORITIES
        IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
                          07-CV-3455-WHA

**CERTIFICATE OF SERVICE**

I, Cecillia D. Wang, declare as follows:

    I hereby certify that today I electronically filed the foregoing MEMORANDUM OF

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

with the Clerk of the Court using the ECF system, which will send notification of such filing to

the following email addresses:

| | |
|---|---|
| Alan Lawrence Schlosser<br>American Civil Liberties Union<br>  Foundation of Northern California | *Via ECF*<br>at *aschlosser@aclunc.org* |
| Joren Lyons<br>Asian Law Caucus | *Via ECF*<br>at *joren@asianlawcaucus.org* |
| Lucas Guttentag<br>American Civil Liberties Union<br>  Immigrants' Rights Project | *Via ECF*<br>at *lguttentag@aclu.org* |
| Julia Harumi Mass<br>American Civil Liberties Union<br>  Foundation of Northern California | *Via ECF*<br>at *jmass@aclunc.org* |
| Edward A. Olsen<br>United States Attorney's Office | *Via ECF*<br>at *edward.olsen@usdoj.gov* |
| Elizabeth J. Stevens<br>United States Department of Justice | *Via ECF*<br>at *elizabeth.stevens@usdoj.gov* |
| Jeffrey S. Robins<br>United States Department of Justice | *Via ECF*<br>at *jeffrey.robins@usdoj.gov* |

    In addition, I hereby certify that on this 20th day of September, 2007, true and correct

copies of the MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO

DEFENDANTS' MOTION TO DISMISS were served by U.S. Mail on the following counsel

not registered for ECF:

| | |
|---|---|
| Sin Yen Ling<br>Asian Law Caucus<br>939 Market Street, Suite 201<br>San Francisco, CA 94103 | Todd Gallinger<br>Council on American-Islamic Relations<br>3000 Scott Boulevard, Suite 212<br>Santa Clara, CA 95054 |

    I declare under penalty of perjury under the laws of the State of California that the above

1    is true and correct.

2

3    Dated:  September 20, 2007
            San Francisco, California

4                                              _____/s/_____

5                                              CECILLIA D. WANG

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28