Not For Publication

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
:
RAISA YAKUBOVA, EMMA UNGURYAN, :
BELLA VESNOVSKAYA, DAVID VESNOVSKIY, :
VYACHESLAV VOLOSIKOV, and :
SHEHATA AWADIBRAHIM, on behalf of themselves :
and all others similarly situated, :
:
       Plaintiffs, :
   v. : 06 CV 3203 (ERK) (RLM)
:
MICHAEL CHERTOFF, in his official capacity as : **MEMORANDUM &**
Secretary of the Department of Homeland Security, : **ORDER**
EMILIO GONZALEZ, in his official capacity as the :
Director of the United States Citizenship and :
Immigration Services, MARY ANN GANTER, in her :
official capacity as District Director of the New York City :
District of the United States Citizenship and Immigration :
Services, ALBERTO GONZALES, in his official capacity :
as Attorney General of the United States, and :
ROBERT S. MUELLER, in his official capacity as the :
Director of the Federal Bureau of Investigation, :
:
       Defendants. :
------------------------------------------------------------------------ X

KORMAN, C.J.

      The authority to naturalize persons as citizens of the United States has been delegated to the United States Citizenship and Immigration Service ("CIS" or the "Service") within the Department of Homeland Security. 6 U.S.C. § 271; 8 U.S.C. § 1103(a); 8 C.F.R. § 100.2(a). Under the Immigration and Nationality Act ("INA"), a naturalization applicant submits an application to CIS and is examined by a designated Service officer. 8 U.S.C. §§ 1445, 1446; 8 C.F.R. §§ 335.2(a), 335.3(a). The applicant bears the burden of proving, among other things, good moral character, including an account of criminal history. 8 U.S.C. § 1427(d); 8 C.F.R. § 316.10. In 1997, Congress

required that applicants receive a Federal Bureau of Investigation ("FBI") criminal background check before citizenship by naturalization could be conferred. See Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub. L. 105-119, Title I, 111 Stat. 2440, 2448-49. Accordingly, the Service adopted 8 C.F.R. § 335.2(b), which provides that the Service will only notify a naturalization applicant to appear for an "initial examination" once his or her FBI background check is completed.

Pursuant to 8 U.S.C. § 1447(b), if after 120 days from the date of examination there is no determination of the application by the CIS, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. The district court may either determine the matter on the merits or remand it with appropriate instructions to the Service. Id.; see also 8 C.F.R. § 335.3(a) ("A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2."); 8 U.S.C. § 1571(b) ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."). The Administrative Procedure Act ("APA") requires all agencies to conclude matters presented to it "within a reasonable time," 5 U.S.C. § 555(b), and provides that a reviewing court can "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1).

Plaintiffs have brought this action under 8 U.S.C. § 1447(b) and the APA. The six named plaintiffs in this action are individuals residing in this District who, at the time of the Complaint was filed, had naturalization applications pending with the CIS for more than 120 days since their interview with a Service officer. They seek to represent a class of similarly situated individuals

residing in this District and allege that defendants Chertoff, Gonzalez, Gantner, and Gonzales (collectively the "CIS defendants") have established a CIS custom and practice of failing to grant or deny naturalization applications: (i) within 120 days after the date of initial examinations in violation of 8 C.F.R. § 335.3 and 8 U.S.C. § 1447(b); and (ii) within a reasonable time in violation of 5 U.S.C. § 555(b). Plaintiffs further allege that defendants Gonzales and Mueller have implemented an FBI custom and practice of failing to complete, within a reasonable time, the criminal background checks necessary for the adjudication of naturalization applications. Finally, plaintiffs assert that all defendants have collectively failed to take all steps necessary to adjudicate naturalization applications within a reasonable time.

The plaintiffs moved for class certification on June 29, 2006. On September 1, 2006, the defendants filed motions to dismiss and to sever the action. I address below the reasons denying defendants' motion to dismiss. Plaintiffs' motion for class certification and defendants' motion to sever are both premature and are denied without prejudice to renewal after the completion of discovery.

## DISCUSSION

1.  <u>Ripeness Under 8 U.S.C. § 1447(b)</u>

Section 1447(b) of Title 8 provides for the exercise of jurisdiction over a complaint by a citizenship applicant "if there is a failure to make a determination under section 1446 of this title before the end of the 120-day period *after the date on which the examination is conducted* under such section." 8 U.S.C. § 1447(b) (emphasis added). The U.S. Attorney argues that the term "examination" referred to in the statute is ambiguous and could reasonably describe the entire "process" of examining the applicant, including his or her FBI background check. Under

3

defendants' construction of section 1447(b) jurisdiction does not lie because plaintiffs cannot show that 120 days have passed since their *full* examination, which defendants argue includes FBI clearance. Plaintiffs, on the other hand, argue that "examination" refers specifically to the date of the applicant's interview with the CIS officer and, because 120 days have passed since those respective dates for all plaintiffs, their claims are ripe under 8 U.S.C. § 1447(b).

The U.S. Attorney's reading of the statute has failed to garner the support of the vast majority of other district courts that have considered the issue for three main reasons. *First*, the language of § 1447(b) relates to "*the date* on which the examination is conducted" (emphasis added). Thus, the statutory language "strongly implies that there is a single date on which the examination occurs." Khan v. Chertoff, CV-05-005602006 (SRB), 2006 WL 2009055, at *2 (D. Ariz. July 14, 2006); see also El-Daour v. Chertoff, 417 F. Supp. 2d 679, 681 (The statutory language "contemplates that the examination occurs on a particular, identifiable, date. A 'process' does not occur on one particular and identifiable date."); Daami v. Gonzales, No. 05 Civ. 3667 (KSH), 2006 WL 1457862, at *5 (D. N.J. May 22, 2006) ("The majority position is that the word 'examination' in § 1447(b) refers to the date of the examination interview with a CIS officer, and not the entire 'examination process.'"). *Second*, by distinguishing between examinations and investigations in 8 U.S.C. § 1446, Congress has evinced an understanding that the investigation, including the FBI background check, is separate from the examination. Daami, 2006 WL 1457862, at *5. *Third*, the pertinent CIS regulations evidence the agency's own understanding that an "examination" is a discrete event rather than a prolonged process with multiple components. Khelifa v. Chertoff, 433 F. Supp. 2d 836, 841 (E.D. Mich. 2006). Indeed, the regulation entitled "Examination of applicant" provides that the requisite examination consists of the applicant's

4

"appear[ance] in person before a Service officer designated to conduct examinations" and that "[t]he Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only *after* the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2(a)-(b) (emphasis added). By referring separately to the FBI background check and the "initial examination," this provision plainly contemplates that the background check is independent from, as opposed to a part of, the "examination." See Khelifa, 433 F. Supp. 2d at 841; El-Daour, 417 F. Supp. 2d at 683 ("Section 335.2 can only be understood as equating the 'examination' with the 'interview' conducted by the Service officer.").

Because the meaning of "examination" is unambiguous and the agency's position in this litigation is contrary to its own regulations, Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), deference is not appropriate. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 213 (1988) ("We have never applied the principle of [Chevron] to [an] agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice. . . . Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."). Under these circumstances, I agree with the majority position that the decision-making period commences when an applicant "appear[s] in person before a Service officer," 8 C.F.R. § 335.2, and that subject matter jurisdiction lies over this action under 8 U.S.C. § 1447(b).

2. Claims Under the APA

Defendants also move to dismiss the Complaint for a failure to state a claim under the APA. The statute provides that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it," 5 U.S.C. § 555(b), and that a reviewing court can "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1). The plaintiffs argue that the delays of their naturalization applications and prerequisite FBI background checks are in violation of the APA.

An application is unlawfully withheld if the agency fails to meet a clear deadline prescribed by Congress. See Forest Guardians v. Babbitt, 164 F.3d 1261, 1272 (10th Cir. 1998). Here, the plaintiffs admit that no mandatory deadline applies to the FBI checks. Instead they argue that the FBI's actions have been unreasonably delayed, which is forbidden by 5 U.S.C. § 555 even in the absence of a Congressionally mandated deadline. Id. (a court may compel agency action that is unreasonably delayed where an agency has no concrete deadline establishing a date by which it must act). The reasonableness of an agency's delay is determined by examining the following considerations, known as the *TRAC* factors:

> "(1) the time agencies take to make decisions must be governed by a 'rule of reason;' (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

Tummino v. Von Eschenbach, 427 F. Supp. 2d 212, 231 (E.D.N.Y. 2006) (Pohorelsky, Mag. J.) (citing In re Barr Laboratories, Inc., 930 F.2d 72, 74-75 (D.C. Cir. 1991) (quoting Telecommunications Research & Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984)).

Plaintiffs aver that they have stated allegations consistent with the *TRAC* factors – including that sections 1447(b) and 1571(b) should inform the FBI standard of reasonableness – and that they are entitled to discovery on the facts surrounding the agency delays. Defendants rely on the proof that they have submitted with their papers to argue that plaintiffs will not be able to show that they have been acting unreasonably. Indeed, defendants argue that it is resource constraints, especially in the face of a post-9/11 increase in volume and scope for background checks, that prevent them from eliminating the backlogs. Defendants also cite to cases where courts have upheld agency delays up to five years as reasonable, see, e.g., Saleh v. Ridge, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005), to argue that plaintiffs' claims here should fail as a matter of law.

While defendants have submitted persuasive evidence that they have been acting reasonably given the competing priorities of the Executive Branch, none of defendants' submissions on this motion have been tested by discovery and plaintiffs should be allowed some discovery on this issue. See Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998); Kim v. Ashcroft, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) ("Although it is entirely possible that this delay is reasonable, there is insufficient information upon which to base such a determination at this [motion to dismiss] stage in the proceedings."); Cordoba v. McElroy, 78 F. Supp. 2d 240, 245 (S.D.N.Y. 2000) (motion to dismiss denied because "although the government's statistics seem impressive, they do not necessarily carry the day. . . . Perhaps plaintiffs here might establish facts which, notwithstanding the volume of cases before the INS, would make out a nonfrivolous claim of a violation of Section

7

6 of the APA").

The U.S. Attorney also argues that the APA is not available to plaintiffs in connection with the CIS defendants because 8 U.S.C. § 1447(b) is the exclusive means to challenge delayed naturalization applications. At this stage, I need not address the issue of whether the APA claim survives in connection with the CIS defendants. Plaintiffs have stated proper claims against them under 8 U.S.C. § 1447 and "[i]f one of a number of integrally related causes of action have to be tried, it makes little sense to grant a motion to dismiss as to one or more of them, as it may prove necessary to hold yet another trial in the event that it is determined on appeal that the motion to dismiss was improperly granted." Friedman v. New York City Admin. for Children's Services, No. 04 Civ. 3077, 2005 WL 2436219, at *9 (E.D.N.Y. Sept. 30, 2005) (Korman, C.J.).

3. Claim for a Mandatory Injunction

Finally, defendants argue that the plaintiffs' claim for injunctive relief should be dismissed because plaintiffs have not established the prerequisites for a mandatory injunction. Defendants argue that plaintiffs do not suffer from irreparable harm because lawful residents have the ability to work and travel and because expedited CIS processes exist for applicants that are in danger of losing benefits or have other emergencies. Defendants further aver that plaintiffs have an adequate remedy at law to pursue individual lawsuits under 8 U.S.C. § 1447(b) and that the injunction would be against the public interest in light of post-9/11 security concerns. However, I need not address whether plaintiffs have met the criteria for a mandatory injunction at this stage of litigation. Plaintiffs are also seeking declaratory relief and the appropriate remedy may be determined if plaintiffs successfully prove their claims. See Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F. 2d 1568, 1576 (5th Cir. 1988) (holding that requests for permanent injunctive relief were

not the proper subject of a motion to dismiss).

## CONCLUSION

The defendants' motion to dismiss is denied except as to plaintiff Shehata Awadibrahim, as to whom the motion is granted without prejudice due to his imminent naturalization by CIS. The plaintiffs' motion for class certification and defendants' motion to sever the action are denied as premature without prejudice to renewal after the completion of discovery.

SO ORDERED.

Brooklyn, New York
November 1, 2006

/s/ Edward R. Korman
Edward R. Korman
United States Chief District Judge