United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALIA AHMADI; MIAO LING HUANG; YAN WANG, FU ZHONG,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL CHERTOFF, U.S. Secretary of Homeland Security; ROBERT S. MUELLER III, Director of the Federal Bureau of Investigations; ALBERTO GONZALEZ, Attorney General of the United States; EMILIO T. GONZALEZ, Director, U.S. Department of Homeland Security, Bureau of Citizenship and Immigration Services; DAVID STILL, District Director, U.S. Department of Homeland Security, Bureau of Citizenship and Immigration Services, San Francisco District,<br><br>Defendants. | No. C 07-03455 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

**INTRODUCTION**

In this putative class action concerning naturalization petitions, federal defendants move to dismiss the first amended complaint for lack of jurisdiction and failure to state a claim. Plaintiffs have demonstrated that this Court has subject-matter jurisdiction over plaintiffs' applications under 8 U.S.C. 1447(b). Since no administrative record has been presented with regard to plaintiffs' applications, remand back to United States Citizenship and Immigration Services, with or without instructions, is not appropriate at this time. Plaintiffs have a statutory

remedy under Section 1447(b), so plaintiffs may not state a claim for the same remedies under the Administrative Procedure Act. Plaintiffs have failed to plead a liberty interest on which to base their due process claims. Accordingly, defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Taking as true, as must be done, all well-pled allegations of fact, plaintiffs Alia Ahmadi, Vladimir Mikulicic, Igor Ovchinnokov, Biljana Petrovic, Sergei Sapozhnikov, Eiman Taky, and Yan Wang are long-time, lawful residents of the United States. Each is in the process of applying for naturalization, and claims to meet all statutory requirements. Each filed their application between 2003 and 2005. None of their applications, however, has been adjudicated. Allegedly, this is because they are among tens of thousands of applicants suffering from systemic delays in the naturalization process caused by the policies, practices, and procedures instituted by defendants Michael Chertoff, Robert S. Mueller III, Alberto Gonzales, Emilio T. Gonzalez, and David Still.

Plaintiffs allege that these delays in processing naturalization applications are a result of a requirement to go through an FBI "name check" (Compl. ¶ 8). The name check runs an applicant's name against an FBI database containing all the names of persons who are or were the subjects of FBI investigations (*id.* at ¶ 36). In 2002, the FBI expanded the scope of the name check to include names that were only mentioned in the FBI files (*id.* at ¶ 37). Plaintiffs allege that name checks implemented in this manner are not calculated to reveal criminal activity or national security risks. Applicants' names register a hit if they were merely a witness or victim of a crime, if they had assisted the FBI with an investigation, or if they had undergone an employment-related security clearance in the past (*id.* at ¶ 38). The name checks also turn up a high number of false positives because they use alternate permutations of applicants' names (*id.* at ¶ 39). CIS will allegedly not process an application for naturalization unless the FBI name check is completed (*id.* at ¶ 40). This policy at CIS was allegedly implemented in April 2006.

The gravamen of plaintiffs' complaint is that defendants have policies and practices that unreasonably delay naturalization applications. Specifically, the Secretary of Homeland Security, the national director of CIS, and the district director of CIS allegedly have a policy of failing to adjudicate naturalization applications within 120 days of the naturalization examination and a policy of unlawfully withholding approval or unreasonably delaying applications (*id*. at ¶¶ 77–78). Plaintiffs allege that defendants Mueller and Alberto Gonzales[1] have a policy of unlawfully withholding and unreasonably delaying the completion of FBI name checks while knowing that CIS requires them to be completed before adjudicating the applications (*id*. at ¶ 79). In short, plaintiffs allege that they had their naturalization interviews at CIS, and that CIS is required to give them a decision within 120 days of the completion of the interview. Because of the name-check requirement, plaintiffs' applications have been held up. For some, four years have elapsed without a decision. Plaintiffs are allegedly prejudiced because of the uncertainty associated with the process and their inability to participate fully as United States citizens.

This action was filed on July 2, 2007. Plaintiffs filed a first amended complaint on August 10, 2007. Plaintiffs purport to represent the class of all people who applied for naturalization, had an interview with CIS, and more than 120 days have passed since the interview without a decision on their applications.[2] They allege claims for: (1) the right to *de novo* judicial determination of applications for naturalization pursuant to 8 U.S.C. 1447(b); (2) unreasonable delay in violation of the Administrative Procedure Act; (3) failure to follow notice and comment procedures in violation of the Administrative Procedure Act; and (4) violations of the Fifth Amendment's due process clause. Plaintiffs ask for injunctive relief, among other things. Also in August, parties stipulated to dismiss the claims of Miao Ling Huang and Fu Zhong because they had been naturalized as citizens. This motion was filed on

---

[1] Defendant Alberto Gonzales resigned as Attorney General effective September 17, 2007. In this action, he is sued in his official capacity as head of the United States Department of Justice. Until a new Attorney General is confirmed, the acting Attorney General will be deemed to be a defendant.

[2] To be clear, the ACLU made clear at the hearing that this action is *not* brought on behalf of applicants still waiting for an interview/examination.

3

August 31, 2007, and plaintiffs filed their motion to certify a class on September 5, 2007. The motion to certify a class was continued until after the resolution of this motion. Parties filed an additional stipulation on October 12, 2007, to dismiss claims by Vladimir Mikulicic, Biljana Petrovic, Eiman Taky, and Yan Wang because their FBI name checks were completed.

**ANALYSIS**

Defendants first argue that this Court does not yet have jurisdiction over plaintiffs' claims. They ask that either this action be dismissed under Rule 12(b)(1), or remanded to CIS without instructions. In the alternative they move to dismiss plaintiffs' claims under the Administrative Procedure Act and due process claims under Rule 12(b)(6) for failure to state a claim.

**1.   JURISDICTION UNDER 8 U.S.C. 1447(b).**

To be naturalized as a United States citizen, an applicant must be a lawful permanent resident for at least five years, meet certain residence and continual physical presence requirements, be a person of good moral character, and must demonstrate an understanding of the English language, United States history, and principles of government. 8 U.S.C. 1427(a)–(c). While the naturalization application is pending:

> an employee of the Service [CIS], or of the United States designated by the Attorney General, shall conduct a personal investigation of the person applying for naturalization in the vicinity or vicinities in which such person has maintained his actual place of abode and in the vicinity or vicinities in which such person has been employed or has engaged in business or work for at least five years immediately preceding the filing of his application for naturalization.

8 U.S.C. 1446(a). Regulations promulgated thereunder explain that "[t]he investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business for at least the five years immediately preceding the filing of the application." 8 C.F.R. 335.1. Applicants must also appear for an examination regarding the factors related to naturalization. 8 C.F.R. 335.2(a). Before the examination takes place, a criminal background check for the applicant must be completed. The background check entails at least receiving confirmation from the Federal Bureau of Investigations that the applicant does

4

not have a criminal record, does have a criminal record, or that two properly-prepared fingerprint cards have been returned unclassifiable. 8 C.F.R. 335.2(b).

Primary authority over naturalization is vested in the Secretary of the Department of Homeland Security, with the administrative processes conducted by CIS. 8 U.S.C. 1421(a), 1446(a)–(c). An applicant may seek review of a naturalization petition in a federal district court under certain circumstances. For instance:

> [i]f there is a failure to make a determination under Section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instruction, to the Service to determine the matter.

8 U.S.C. 1447(b). Plaintiffs argue that this Court has subject-matter jurisdiction over their claims because more than 120 days have passed from their naturalization interviews. Defendants contend that because of changes in naturalization procedures, the 120-day clock does not begin to run until after an FBI name check is completed. In essence, the agencies argue that the term "examination" as used in Section 1447(b) encompasses the FBI name check. Because of that, according to defendants, this Court does not have jurisdiction over any of plaintiffs' claims because even though the naturalization interview had already taken place, the "examination," which is supposed to precede the interview, is not yet complete. So, this motion turns mainly on the statutory meaning of the word "examination."

**A.     Definition of "Examination."**

Defendants argue that Section 1447(b) does not define "examination," while plaintiffs urge that examination means the naturalization interview itself. The Ninth Circuit has noted that Section 1447(b) "requires the INS to make a decision regarding a naturalization application within 120 days of the initial interview of the applicant." *United States v. Hovsepian*, 359 F.3d 1144, 1161 (9th Cir. 2004) (en banc). Defendants contend that this statement was merely dicta, and that the actual holding of the *Hovsepian* decision was only that the district court has exclusive jurisdiction,to the exclusion of agencies, over a naturalization petition under Section 1447(b). Although defendants are correct, this statement is still instructive. Moreover, the

5

Fourth Circuit reached the same conclusion — that the 120-day period runs from the completion of the initial interview — when holding that the district court has exclusive jurisdiction over a naturalization application after the applicant files a petition under Section 1447(b). *Etape v. Chertoff*, 497 F.3d 379, 386–87 (4th Cir. Aug. 2, 2007).

On very similar facts to this action, the Fifth Circuit held that the 120-day period begins to run when the initial interview is conducted. *Walji v. Gonzales*, ___ F.3d ____, 2007 WL 2685028, *2 (5th Cir. Sept. 14, 2007). In *Walji*, an applicant's petition for naturalization was held up for more than two years after his initial interview had been conducted because his FBI name check was still pending. He petitioned a district court under Section 1447(b), and the government argued that the district court did not have jurisdiction because the FBI name check was not complete. The decision noted that the plain language of the statute supported the interpretation that the "examination" was a single event, and that the 120-day period begins to run after "the date on which the examination is conducted." *Id*. at *3. Additionally, the regulations referred to the FBI background check and the examination as two separate events. For instance, if deficiencies in an application are discovered, CIS personnel can schedule an additional interview, provided it falls within the 120-day period. *See* 8 C.F.R. 335.3(b). Finally, the Fifth Circuit noted that the legislative history supported its interpretation of "examination" as a discrete event — the initial interview. It stated "we believe the definition of 'examination' in § 1447(b) urged by the Government, which would permit virtually unbounded time to respond to naturalization applications, is contrary to the intended purpose of Congress in passing the Immigration and Nationality Act. A central purpose of the statute was to reduce the waiting time for naturalization applicants." *Walji* at *5.

Some district courts have reached the opposite conclusion. A pair of decisions from the Eastern District of Virginia held that "examination" encompasses all procedures that the agency deems necessary to the investigation, including the FBI name check. *Martinez v. Gonzalez*, 463 F. Supp. 2d 569 (E.D. Va. 2006) (Friedman, J.); *Danilov v. Aguirre*, 370 F. Supp. 2d 441, 444–45 (E.D. Va. 2006) (Ellis, J.). Given that the Fourth Circuit recently noted in *Etape* that the 120-day period runs from the date of the initial interview, the status of those decisions is

6

doubtful. 497 F.3d at 386–87. The *Etape* decision did not address the directly address the question of when jurisdiction attaches under Section 1447(b), but it considerably weakens the persuasive force of those two decisions. Another decision similarly held that "examination" includes the FBI name check. *Damra v. Chertoff*, 2006 WL 1786246 (N.D. Ohio 2006) (Boyko, J.). None of these decisions are from this circuit. Moreover, none of these decisions come to terms with the concern identified in by the Fifth Circuit in *Walji* — that the FBI name-check process could go on almost indefinitely. Accordingly, this order finds the logic of *Walji* to be persuasive. This order holds, as per the prevailing view of appellate authority, that the term "examination" does not necessarily encompass an FBI name check, and the 120-day clock begins to run as of the close of the initial interview.

Defendants also contend that even if the examination does not include the name check, they have merely conducted the process in reverse. The agencies failed to complete the background check until after the initial interview took place. For expedience, they conducted the interviews before the investigation was completed. The regulations clearly contemplate that a background check should be conducted before the initial interview, at least to the extent that the FBI must verify that the applicant does not have a criminal record. 8 C.F.R. 335.2(b). The agencies contend the FBI name check is actually part of the background check that must be conducted before the interview happens. Plaintiffs vociferously disagree, and argue that the FBI need only run the applicant's fingerprints and verify whether the applicant has a criminal record, not conduct the expansive search of FBI files performed for a name check. This order need not decide the scope of the examination, however, because Section 1447(b) indicates that the 120-day clock runs from the close of the initial interview.

The agencies next argue that Congress mandated that a "full criminal background check" be completed before adjudicating a naturalization application. The language on which they rely, from an appropriations bill, states that:

> during fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Services has received

7

> confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed . . .

Pub. L. No. 105-119, Title 1, 111 Stat. 2448 (Nov. 26, 1997). This law does require defendants to conduct a criminal background check before adjudicating a naturalization application. It does not, however, necessarily mandate the FBI name check currently employed by the agencies. Moreover, it does not excuse the delays in the system or have any effect at all on whether or not this Court has jurisdiction under Section 1447(b).

Next, defendants contend that the examination could not have been completed until the FBI name check was finished, so the 120-day period has not begun to run. Regardless of whether it is a discrete event or not, it is argued, no examination could have taken place or been completed before the background check is completed. According to defendants, there was no triggering event to start the 120-day clock until the agency decides that whatever necessary examination procedures have been completed. This tortured argument begs the question of why CIS would even bother call in an applicant for an interview if doing must be deemed a fiction. As a practical matter, this interpretation reads the 120-day period out of existence. Indeed, if the agencies could conduct a languid investigation with no time limit, it would be unclear if the district court would ever have jurisdiction under Section 1447(b). In practice, applicants could be left waiting indefinitely for a decision on their applications with no way of getting review. Applicants could be stuck in a bureaucratic loop for an undetermined amount of time. Legitimate applicants would be denied naturalization. Conversely, those whose applications should be denied would be allowed to stay in the United States. The will of Congress would be thwarted.

The agencies also argue that the statute contemplates the district court conducting a full review on the record. This, according to defendants, indicates that the name check should be complete before the district court can adjudicate any applications. Remedies other than adjudication, however, are available under Section 1447(b). The district court can approve the application, deny it, or remand it back to CIS with appropriate instructions. The statute says so expressly. The latter option may be apt where the record is incomplete because defendants have not completed the background check.

8

1    Finally, in the reply brief, the agencies contend that they are fulfilling their
2 administrative function of filling interpretive gaps in the meaning of statutes using their
3 expertise. As such, they say, the district court should defer to their definition of "examination."
4 *See Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 543 (1978). Since the
5 statute does not define what a background check entails, the agencies filled in the gaps by
6 deciding that the FBI name check is necessary to complete a background check. The agencies
7 raise valid points, arguing that thorough background checks are necessary for the security and
8 safety of the United States, at least in the facts and circumstances of many cases. Still, this does
9 not negate this Court's express jurisdiction under Section 1447(b). Accordingly, this Court has
10 jurisdiction over plaintiffs' claims under 8 U.S.C. 1447(b). Defendants' motion to dismiss for
11 lack of jurisdiction is **DENIED**.[3]

**B.    Remand.**

13    Defendants ask, in the alternative, to have these applications remanded to CIS,
14 preferably without instructions. This issue is not ripe at this time. Defendants raise the specter
15 that if the Court retains jurisdiction over these claims, CIS cannot adjudicate them even if the
16 FBI name check is completed. This problem is easily fixed. In fact, parties have stipulated to
17 dismiss some plaintiffs' claims so their applications can be adjudicated. If the name check is
18 completed, then remand to CIS to adjudicate the application may be appropriate. Remanding
19 back to CIS with no instruction or deadline, however, runs the risk that the application could
20 still be pending years into the future. Moreover, no record as to any of plaintiffs' applications
21 has been presented on this motion to dismiss. Accordingly, defendants' request to remand these
22 applications back to CIS is **DENIED**.

---

[3] There is no statutory command to hold the interview at any given time and the agency can wait on holding the interview until the FBI name check is done. Indeed, the *Walji* decision contemplated the agencies doing just that. *Walji*, 2007 WL 2685028 at *5–*6. Or, the agency can hold the interview, and if discrepancies arise, CIS may schedule a reexamination within the 120-day period after the initial interview. If the applicant requests a postponement of the reexamination such that it is more than 90 days after the initial interview, the applicant must expressly waive the requirement that CIS should render a decision within 120 days of the initial interview. Instead, the 120-day clock begins to run after the second interview. 8 C.F.R. 335. In the cases before the Court, this did not happen. Plaintiffs' interviews were deemed completed.

9

**C.    Joinder.**

Defendants also contend that individual plaintiffs' claims are not properly joined in this action. They ask that since plaintiffs ask for individual hearings on their petitions, individual plaintiffs' claims should be severed under Rule 21. Given the early stage of this action, this request to sever is premature. The question of holding separate hearings is more appropriately addressed when it becomes clearer that a hearing is actually necessary. Given the overlap in the threshold issues, however, joinder was appropriate.

**2.    UNREASONABLE DELAY.**

Under the APA, a court can review agency action or inaction if a person has suffered legal wrong or has been adversely affected. 5 U.S.C. 702. The APA instructs that courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. 706(1). Plaintiffs contend that the agencies have unlawfully withheld and unreasonably delayed adjudication of their naturalization applications after the interview has been closed. They argue that their claim itself is targeted toward systemic delays in the system, not in the delay in any particular application. This is the proposed class relief part of this ACLU case.

"When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). Generally, it is improper to rely on general grants of jurisdiction in the face of a specific statute that confers jurisdiction. *United States v. Fausto*, 484 U.S. 439, 448–49 (1988). Defendants argue that this claim fails as a matter of law because plaintiffs already have a remedy for administrative delays under 8 U.S.C. 1447(b). District courts already have jurisdiction 120 days after the examination is completed. The district court can adjudicate the petition itself or remand to CIS with instructions. Again, this action is drawn so as to address only those applications for whom the interview has been closed and the 120-day clock has run. It does not, the ACLU says, include pre-interview applicants.

Plaintiffs contend that this action is actually targeted at systemic delays in processing FBI name checks, so any remedy obtained on any individual application in the district courts is

10

1    inadequate. Adjudicating delayed applications on a case-by-case basis does not address the real
2    problem identified by plaintiffs. Plaintiffs' argument assumes that a class will be certified in
3    this action. This is far from clear, given that each application has its own unique fact issues,
4    some with criminal records, some without. For now, only the claims of our individual plaintiffs
5    are presented at this time. At least for them, this Court can provide a remedy — it could decide
6    to adjudicate the application itself, or remand to CIS with instructions to adjudicate the
7    application in a timely fashion. Individual plaintiffs end up with the same relief under Section
8    1447(b) that they would receive under the APA even if a class was certified. But even if the
9    facts of plaintiffs' applications were sufficiently similar to certify a class, each plaintiff would
10   end up in the same place under the statute as with an APA claim.

11        In support of their argument, plaintiffs cite to *McNary v. Haitian Refugee Center, Inc.*,
12   498 U.S. 479 (1991). In that decision, the plaintiffs sought review under the APA of the
13   administration of grants of special agricultural worker status by the INS. The decision held that
14   a statute that precluded direct review of the denial of an application for special agricultural
15   worker status did not preclude administrative review under the APA. *Id*. at 497–98. Because of
16   that, certifying a class of those workers whose applications were unreasonably denied was held
17   proper. The instant case is the opposite. In the instant case, there is no such limit on direct
18   review. As Section 1447(b) makes clear, a district court *has* jurisdiction to review and
19   adjudicate the petitions 120 days after the examination, so unlike *McNary*, plaintiffs *have* a
20   remedy. Plaintiffs fault the government for arguing that they have no remedy under either the
21   statute or the APA. If plaintiffs have no APA remedy, and the agencies can decide on their own
22   when the examination is complete, plaintiffs would never have a remedy under the
23   government's logic. This order, however, has already rejected the government's crabbed
24   reading of the statute and has determined that Section 1447(b) does give jurisdiction over
25   plaintiffs' applications, so plaintiffs do have a remedy for delays in the naturalization process.

26        In sum, because plaintiffs already have a remedy under statute, they cannot assert one
27   under the APA. Accordingly, plaintiffs cannot state a claim for relief under the APA for agency
28

action unlawfully withheld or unreasonably delayed. Defendants' motion to dismiss the APA claim is **GRANTED**. This order need not address defendants' other arguments.

### 3.   FAILURE TO FOLLOW NOTICE-AND-COMMENT PROCEDURES.

Under the APA, a reviewing court must hold unlawful and set aside an agency action found to be "without observance of procedure required by law." 5 U.S.C. 706. Under 5 U.S.C. 553(a), an agency is required to give notice in the Federal Register of a proposed change in rules and give an opportunity for public comment before a rule is adopted. This requirement does not apply to general statements of policy, interpretive rules, or rules of agency organization, procedure or practice. 5 U.S.C. 553(b)(3)(B).

#### A.   Relief Under the APA.

Plaintiffs' third claim is for failure to follow notice-and-comment procedures in allegedly adding the requirement of a completed FBI name check to the naturalization process. Plaintiffs allege that in November 2002, CIS expanded the FBI name-check requirement to encompass both the FBI's main files and reference files without giving the public an opportunity to comment. According to plaintiffs, the addition of the FBI name check was tantamount to making a new rule because it added a requirement for obtaining citizenship. Accordingly, they say there should have been an opportunity for notice and comment under the APA. Defendants contend that the requirement of running a background check has long been present, and that extending the background check to encompass the FBI's main files and reference files was merely an interpretation of an existing rule. No notice-and-comment procedures were needed, according to the agencies.

The agencies first point out that plaintiffs did not ask for relief based on this claim in their complaint. Plaintiff's prayer for relief focuses on getting named plaintiffs' applications adjudicated in a timely fashion and requiring the agencies to adopt policies to ensure that applications get processed. They also ask for a declaratory judgment holding unlawful the failure to complete FBI name checks and the failure to timely adjudicate applications. At no point do plaintiffs ask that CIS or other agencies conduct notice-and-comment proceedings on the expanded scope of the FBI name check. Even if this procedural failing were corrected,

12

notice-and-comment proceedings are unlikely to remedy the harms plaintiffs allege that they have suffered. Irrespective of the scope of the name check, plaintiffs want to have their applications adjudicated in a timely fashion. Moreover, plaintiffs aruge that the name check takes too long. Even if the agency conducted notice-and-comment proceedings, that does not guarantee plaintiffs' desired result. Plaintiffs do have a remedy to streamline the adjudication of their applications. They can (and did) petition the district court under 8 U.S.C. 1447(b).

### B. Substantive Versus Interpretive Rules.

"Substantive rules are those which effect a change in existing law or policy." *Powderly v. Schweiker*, 704 F.2d 1092, 1098 (9th Cir. 1983). "These are rules which create law, and are usually implementary to an existing law, incrementally imposing general, extra-statutory obligations pursuant to authority properly delegated by the legislature." *Alcaraz v. Block*, 746 F.2d 593, 613 (9th Cir. 1984). Generally, agencies issue interpretive rules to clarify or explain existing laws or regulations to advise the public of the agency's construction of those laws and regulations. *Gunderson v. Hood*, 268 F.3d 1149, 1154 (9th Cir. 2001).

Defendants contend that the change in the rules only modified their construction of the term "full criminal background check," as used in 8 C.F.R. 355. They also argue that they expanded the scope of the search in response to concerns about terrorist attacks. The addition of the FBI name check is merely one in a long line of adjustments to the investigation process, according to the agencies. In support, they cite to a number of regulations promulgated regarding requirements for naturalization petitions. As plaintiffs point out, however, for a number of those rules, the agencies followed notice-and-comment procedures. Here, however, the agency was merely interpreting the scope of the FBI name check. It did not actually add anything to the process except to require a more expansive search.

The mere fact that an interpretive rule has a substantial impact does not, without more, mean that it is subject to notice and comment. *Alcaraz*, 746 F.2d at 614 (9th Cir. 1984). Plaintiffs urge that the expansion of the name check created a new requirement for naturalization and causes significant delays in the naturalization process. In part, they are correct — the expanded name check has created significant delays. The expanded name check

did not, however, add a new requirement in the naturalization process, as plaintiffs contend. The agencies have long been required to conduct an investigation into an applicants' background before adjudicating an application. The expanded name check merely enlarged the scope of that investigation. Accordingly, this order holds that notice-and-comment procedures under the APA were not required to merely enlarge the scope of the FBI criminal background check. Defendants' motion to dismiss is **GRANTED** as to this claim.

### 4. DUE PROCESS CLAIMS.

Plaintiffs' final claim alleges that the FBI name check requirement violates their constitutional rights under the due process clause of the Fifth Amendment. Specifically, they allege that defendants have a practice that violates 8 U.S.C. 1446(d) and 8 C.F.R. 335 by adding requirements to the citizenship process. They also allege that defendants' failure to set deadlines and arrange for the FBI name checks to be completed in a timely fashion violates their due process rights.

A plaintiff asserting a due process claim must first show that he has a protected interest in liberty or property. *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). Plaintiffs identify two purported concrete protected interests: (1) the right to their naturalization based upon their satisfaction of all statutory requirements; and (2) a timely adjudication of their naturalization applications within 120 days of their naturalization examinations.

"No alien has the slightest right to naturalization unless all statutory requirements have been complied with." *United States v. Ginsberg*, 243 U.S. 472, 475 (1917). There is no protected interest in mere process by itself. *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 280 n.2 (1998). Plaintiffs admit that they have no *per se* right to naturalization. They do, however, assert that if they have first satisfied all of the statutory requirements for naturalization, then they have a right to be naturalized. Moreover, mandatory language requires CIS to make some determination on the application, stating that "[t]he employee designated to conduct any such examination shall make a determination as to whether the application should be granted or denied, with reasons therefor." 8 U.S.C. 1446(d). The implementing regulation

14

of this section states that "[t]he Service officer shall grant the application if the applicant has complied with all requirements for naturalization under this chapter." 8 C.F.R. 335.3(a).

Plaintiffs allege that they have, in fact, completed all of the necessary statutory requirements to be naturalized, so they have a right to have their applications granted. Defendants claim that there may be some question as to whether that allegation is true. Specifically, they argue that the FBI name check has not been completed for some plaintiffs, and that it is unclear whether or not they have actually fulfilled all of the statutory requirements. Even assuming that plaintiffs have a right to be naturalized if they fulfill all of the requirements, it is unclear whether or not they can plead that they have done so. As indicated in the briefing done by both sides, there are serious questions as to what those statutory requirements entail.

Plaintiffs here do not allege that they met the statutory criteria and their applications were denied. They allege that they have met the statutory criteria, and their applications have not been granted yet. As described more fully below, even if an applicant does meet all of the statutory requirements for naturalization, nothing guarantees that their application must be granted by any date certain. In addition, plaintiffs have a remedy under Section 1447(b) for their delayed applications. Accordingly, there is no protected liberty interest in being naturalized within any specific time.

As to plaintiffs' second theory, they have attempted to assert a right that is simply not found in any statute or rule. There is no right to have an application adjudicated within 120 days of completion of the examination. To the extent that plaintiffs point to 8 U.S.C. 1447(b) as the source of that purported right, that statute only gives a district court jurisdiction over the petition after 120 days. Once it has jurisdiction over the petition, the district court can grant, deny, or remand the application back to CIS. Plaintiffs overestimate the powers and efficiency of the district court if they assert that this statute gives them a right to have the application adjudicated within 120 days. Accordingly, this purported right to a timely adjudication cannot form the basis of a due-process claim. Accordingly, defendants' motion to dismiss is **GRANTED** as to this claim.

15

### 5. INJUNCTIVE RELIEF.

Finally, defendants move to strike plaintiffs' claims for injunctive relief. Defendants' argument here rests on the idea that plaintiffs are not entitled to relief here. As this order has found above, however, plaintiffs are entitled to relief, at least under 8 U.S.C. 1447(b). Under that section, this Court has the power to remand individual plaintiffs' petitions back to CIS with instructions, or to adjudicate the applications itself. Striking plaintiffs' claims for injunction relief is simply not appropriate at this stage. Accordingly, defendants' motion to strike is **DENIED**.

## CONCLUSION

For all of the above-stated reasons, defendants' motion to dismiss for lack of jurisdiction is **DENIED**. Defendants' request to remand plaintiffs' applications back to CIS is **DENIED**. Defendants' motion to dismiss for failure to state a claim is **GRANTED** as to plaintiffs' claims under the APA and for violations of due process. Defendants' motion to strike plaintiffs' claims for injunctive relief is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 15, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE