CECILIA D. WANG (CSB #187782)
LUCAS GUTTENTAG (CSB #90208)
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950
Email: CWang@aclu.org

Attorneys for Plaintiffs-Petitioners
*Additional counsel listed on following page

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| ALIA AHMADI, ANGEL GENTCHEV, JIWEI HUANG, IGOR OVCHINNIKOV, SERGEI SAPOZHNIKOV, and HELGA SCOVAJSA,<br><br>          Plaintiffs-Petitioners,<br><br>     v.<br><br>MICHAEL CHERTOFF, U.S. Secretary of Homeland Security; ROBERT S. MUELLER III, Director of the Federal Bureau of Investigation; MICHAEL MUKASEY, Attorney General of the United States; EMILIO T. GONZALEZ, Director, U.S. Department of Homeland Security, Bureau of Citizenship and Immigration Services; DAVID STILL, District Director, U.S. Department of Homeland Security, Bureau of Citizenship and Immigration Services, San Francisco District,<br><br>          Defendants-Respondents. | Case No.  07-CV-3455-WHA<br><br>**SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)**<br><br>**CLASS ACTION**<br><br>Judge:  Hon. William A. Alsup |

1

1    Additional counsel:

2    JULIA HARUMI MASS (CSB #189649)
     ALAN L. SCHLOSSER (CSB #49957)
3    AMERICAN CIVIL LIBERTIES UNION
         FOUNDATION OF NORTHERN CALIFORNIA
4    39 Drumm Street
     San Francisco, CA 94111
5    Telephone: (415) 621-2493
     Facsimile: (415) 255-8437
6
     SIN YEN LING*
7    JOREN LYONS (CSB #203403)
     ASIAN LAW CAUCUS
8    939 Market Street, Suite 201
     San Francisco, CA 94103
9    Telephone:  (415) 896-1701
     Facsimile:  (415) 896-1702
10
     *Application for admission pro hac vice forthcoming
11

12   Of counsel:

13   TODD GALLINGER (CSB #238666)
     COUNCIL ON AMERICAN-ISLAMIC RELATIONS
14       (CAIR) – SAN FRANCISCO BAY AREA
     3000 Scott Boulevard, Suite 212
15   Santa Clara, CA 95054
     Telephone:  (408) 986-9874
16   Facsimile:  (408) 986-9875

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

# INTRODUCTION

1.      Plaintiffs-Petitioners, Alia AHMADI, Angel GENTCHEV, Jiwei HUANG, Igor OVCHINNIKOV, Sergei SAPOZHNIKOV, and Helga SCOVAJSA, are all long-time lawful permanent residents of the United States.  Each of them has sought to become a citizen of this country by applying for naturalization, having met all statutory requirements.  However, despite successfully undergoing their naturalization interviews and clearing criminal background checks more than two years ago, none of the Plaintiffs has received an adjudication from the U.S. Bureau of Citizenship and Immigration Services ("CIS") on the ground that a background check known as an "FBI name check" is still pending.

2.      Plaintiffs are among tens of thousands of naturalization applicants throughout the United States who are suffering from systemic delays in the naturalization process caused by the policies, practices and procedures of the Defendants.

3.      Defendants are officers of CIS and the Federal Bureau of Investigation ("FBI") and are responsible for the naturalization process, including the FBI name check, which CIS requires for naturalization despite the absence of any promulgated rule or regulation.

4.      Each named Plaintiff seeks to be naturalized by this Court, as Congress has authorized through the Immigration and Nationality Act.  See 8 U.S.C. § 1447(b) (district court may make a determination of a naturalization application if there has been no adjudication within 120 days of the date of examination – i.e., the applicant's naturalization interview); United States v. Hovsepian, 359 F.3d 1144, 1151 (9th Cir. 2004) (en banc).  The named Plaintiffs also seek declaratory and injunctive relief on behalf of themselves and the proposed class members, to eliminate the systemic delays that Defendants have caused through their policies, practices and procedures.

5.      In failing to adjudicate the Plaintiffs' naturalization applications, Defendant officers of CIS have violated CIS regulations requiring that such applications be adjudicated within 120 days of the initial examination.  8 C.F.R. § 335.3.

6.      In addition, Defendant officers of both CIS and the FBI have engaged in unreasonable and extraordinary delay in adjudicating Plaintiffs' naturalization applications, in

3

1  violation of the Administrative Procedures Act, 5 U.S.C. §§ 555, 706, and the Due Process

2  Clause of the Fifth Amendment.

3      7.    Defendants' rationale for CIS's unreasonable naturalization delays – that the

4  delays are required to complete FBI name checks – highlights an independent violation of the

5  Administrative Procedures Act:  Defendants' failure to follow the notice and comment

6  requirements of 5 U.S.C. § 553.  CIS has promulgated no regulations concerning an FBI name

7  check, but nonetheless has imposed the current version of the FBI name check as a requirement

8  for over four years – without any deadlines for completion of the checks.  In contrast,

9  immigration regulations do provide for criminal records checks based on Plaintiffs' fingerprints

10 and biographical data.  Each of the Plaintiffs has passed those criminal background checks.

11 Because Defendants' addition of the FBI name check constitutes a substantive rule and causes

12 undue burden and prejudice to Plaintiffs and other members of the proposed class, the public

13 should have been provided notice and an opportunity to comment prior to its implementation.

14     8.    CIS's own ombudsman has criticized the rampant delays in the processing of

15 naturalization applications.  In an annual report released in June 2007, the CIS Ombudsman

16 concluded:  "FBI name checks, one of several security screening tools used by USCIS, continue

17 to significantly delay adjudication of immigration benefits for many customers, hinder backlog

18 reduction efforts, and may not achieve their intended national security benefits.  FBI name

19 checks may be the single biggest obstacle to the timely and efficient delivery of immigration

20 benefits.  The problem of long-pending FBI name checks cases worsened during the reporting

21 period [of June 2006 to June 2007]."  CIS Ombudsman, Annual Report 2007, at 37 (emphasis in

22 original), available at http://www.dhs.gov/xabout/structure/gc_1183751418157.shtm.

23     9.    Plaintiffs all have spent many years in the United States and have made this

24 Nation their home.  They seek to pledge their allegiance to their adopted country and to

25 participate fully in U.S. society as citizens.  Each of the Plaintiffs has met the statutory

26 requirements to become a U.S. citizen, and in some cases they have sought relief through

27 requests to members of Congress and through formal and informal inquiries with the

28 government.  Nonetheless, each of the Plaintiffs has been stymied in his or her efforts by the

4

1  unreasonable and extraordinary delay of the Defendants.

2      10.    As a result of the Defendants' failure to process naturalization applications within

3  a reasonable time, under timelines set by Congress, Plaintiffs are unable to participate in civic

4  society by voting and jury service.  Plaintiffs also are unable expeditiously to petition for lawful

5  permanent residency immediate relatives living abroad including, in some cases, their spouses

6  and children.  Plaintiffs also are unable to participate freely as U.S. citizens in the Visa Waiver

7  Program or to travel abroad and to return to the United States without fear of exclusion.  One of

8  the named Plaintiffs is blocked in his professional advancement because of the delay in

9  naturalization.

10      11.    Plaintiffs seek not only their own naturalization through 8 U.S.C. § 1447(b), but

11  also declaratory and injunctive relief as representatives of a class of other individuals who have

12  satisfied all statutory requirements for naturalization and are suffering similar unreasonable

13  delays.  Plaintiffs ask the Court to declare that the Defendants are violating the due process rights

14  of Plaintiffs and the proposed class, as well as the Administrative Procedures Act and the

15  immigration laws and regulations, in failing to complete all background checks necessary for

16  adjudication of naturalization applications within a reasonable time as established by Congress

17  and by CIS's own regulations.

18                              **JURISDICTION AND VENUE**

19      12.    This Court has subject matter jurisdiction over this matter pursuant to 8 U.S.C. §

20  1447(b) (district court jurisdiction to adjudicate delayed naturalization applications), 5 U.S.C. §

21  702 (Administrative Procedures Act), 28 U.S.C. § 1361 (writ of mandamus), and 28 U.S.C. §

22  1331 (federal question).

23      13.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§

24  1391(e).  Plaintiffs sue the Defendants in their official capacities as officers and employees of the

25  United States.  A substantial portion of the events giving rise to this Complaint occurred within

26  this District, where the Plaintiffs' applications for naturalization are pending before the San

27  Francisco District of the CIS.  In addition, venue is proper in this District pursuant to 8 U.S.C. §

28  1447(b), which provides that a petition for de novo review of a naturalization application shall be

filed in the district in which the applicant resides.  All of the Plaintiffs live within this District.

## PARTIES

14.     Plaintiff Alia Ahmadi is a citizen of Afghanistan.  She is a lawful permanent resident of the United States and lives in Union City, California.  She applied for naturalization with CIS and passed her naturalization examination in May 2003.  Her naturalization application has not been adjudicated.

15.     Plaintiff Angel Gentchev is a citizen of Bulgaria.  He is a lawful permanent resident of the United States and lives in Fremont, California.  He applied for naturalization with CIS and passed his naturalization examination in May 2003.  His naturalization application has not been adjudicated.

16.     Plaintiff Jiwei Huang is a citizen of China.  He is a lawful permanent resident of the United States and lives in Fremont, California.  He applied for naturalization with CIS and passed his naturalization examination in January 2004.  His naturalization application has not been adjudicated.

17.     Plaintiff Igor Ovchinnikov is a citizen of Ukraine.  He is a lawful permanent resident of the United States and lives in San Francisco, California.  He applied for naturalization with CIS and passed his naturalization examination in February 2004.  His naturalization application has not been adjudicated.

18.     Plaintiff Sergei Sapozhnikov is a native of the former Soviet Union and a citizen of Russia.  He is a lawful permanent resident of the United States and lives in Walnut Creek, California.  He applied for naturalization with CIS and passed his naturalization examination in July 2004.  His naturalization application has not been adjudicated.

19.     Plaintiff Helga Scovajsa is a citizen of the Czech Republic.  She is a lawful permanent resident of the United States and lives in San Francisco, California.  She applied for naturalization with CIS and passed her naturalization examination in November 2004.  Her naturalization application has not been adjudicated.

20.     Defendant Michael Chertoff is the U.S. Secretary of Homeland Security and has

ultimate responsibility for CIS, a subunit of the Department of Homeland Security. Mr. Chertoff is ultimately responsible for the administration of all immigration and naturalization laws, including the processing and determination of applications for naturalization. He is sued in his official capacity.

21. Defendant Robert S. Mueller III is the Director of the Federal Bureau of Investigation. Mr. Mueller is ultimately responsible for the processing of FBI name checks submitted by CIS to the FBI during the naturalization process. Mr. Mueller is sued in his official capacity.

22. Defendant Michael Mukasey is the Attorney General of the United States. He is the head of the U.S. Department of Justice, which encompasses the FBI. Mr. Mukasey is also jointly responsible with Mr. Chertoff for enforcement of immigration laws. Mr. Mukasey is sued in his official capacity.

23. Respondent Emilio T. Gonzalez is the Director of CIS. Mr. Gonzalez is responsible for the processing and determination of all applications for naturalization submitted to CIS. He is sued in his official capacity.

24. Respondent David Still is the District Director for the San Francisco District of the Bureau of Citizenship and Immigration Services ("CIS"), U.S. Department of Homeland Security. Mr. Still is responsible for applications for naturalization pending in the San Francisco District. Mr. Still is sued in his official capacity.

## LEGAL FRAMEWORK

### General Requirements for Naturalization

25. Federal immigration law allows persons who have been residing in the United States as lawful permanent residents to become United States citizens through a process known as naturalization.

26. A person seeking to naturalize must meet certain requirements, including an understanding of the English language and history and civics of the United States; a sufficient period of physical presence in the United States; and good moral character. 8 U.S.C. § 1423, 1427(a).

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

27.    Persons seeking to naturalize must submit an application for naturalization to CIS. 8 U.S.C. § 1445.  CIS is the agency that is responsible for adjudicating naturalization applications.

28.    Once an application is submitted, CIS conducts a criminal background investigation of each naturalization applicant.  8 U.S.C. § 1446(a); 8 C.F.R. § 335.1.

29.    After a criminal background investigation is completed, CIS schedules a naturalization examination, at which an applicant meets with a CIS examiner who is authorized to ask questions and take testimony.  The CIS examiner must determine whether to grant or deny the naturalization application.  8 U.S.C. § 1446(d).

30.    CIS must grant a naturalization application if the applicant has complied with all requirements for naturalization.  8 C.F.R. § 335.3.  Naturalization is not a discretionary benefit, but a right upon satisfaction of statutory requirements.

31.    CIS must grant or deny a naturalization application at the time of the examination or, at the latest, within 120 days after the date of the examination.  8 C.F.R. § 335.3.  Once an application is granted, the applicant is sworn in as a United States citizen.

32.    When CIS fails to adjudicate a naturalization application within 120 days of the examination, the applicant may seek de novo review of the application by a district court.  8 U.S.C. § 1447(b).  When the applicant requests district court review, the district court gains exclusive jurisdiction over the application, United States v. Hovsepian, 359 F.3d 1144 (9th Cir. 2004), and it may naturalize the applicant.  8 U.S.C. § 1447(b).

33.    In general, Congress has provided that applications for immigration benefits should be adjudicated within 180 days of the initial filing of the application.  8 U.S.C. § 1571. The President has also expressed that view.  *See* Remarks by the President at INS Naturalization Ceremony (July 10, 2001), available at http://www.whitehouse.gov/news/releases/2001/07/print 20010710-1.html (urging immigration agencies to adopt standard of six-month processing time for applications for immigration benefits).

**Pre-Naturalization Background Checks**

34.    Under 8 U.S.C. § 335.2, CIS should not schedule the "initial examination" (i.e.,

8

the naturalization interview) until the agency has received "a definitive response from the [FBI] that a full criminal background check" has been completed.  The regulation defines a "definitive response" as one of the following:  (1) FBI confirmation that the applicant "does not have an administrative or criminal record; (2) FBI confirmation that the applicant does have such a record; or (3) FBI confirmation that the applicant's fingerprint cards "have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected."  8 U.S.C. § 335.2(b).  Thus, 8 C.F.R. § 335.2(b) contemplates that the "criminal background check" required by regulation is based upon fingerprint records, and is not a "name check."  The FBI fingerprint check is run against criminal records showing arrests, criminal charges not leading to convictions, and criminal convictions.

35.    Nonetheless, CIS runs two name-based background checks on each naturalization applicant.  First, CIS runs each applicant's name against the Interagency Border Inspection System ("IBIS"), a centralized records system combining information on "national security risks, public safety issues and other law enforcement concerns" from multiple law enforcement and intelligence agencies.  Second, in 1998, CIS instituted the FBI name check.  As originally implemented in 1998, the FBI name check ran a naturalization applicant's name against a database containing the names of persons who are or were the subjects of an FBI investigation.

36.    In 2002, without giving public notice and an opportunity for public comment, CIS drastically expanded the scope of the FBI name check, so that an applicant's name would be checked against not only the names of investigation subjects, but also other names that are merely mentioned in FBI files.

37.    As expanded in 2002, the FBI name check requirement is implemented in such a manner that it is highly likely that an applicant may be identified erroneously as a person "of interest" to the FBI, thereby delaying adjudication of the naturalization application, even though the applicant has committed no crimes, does not pose any kind of security risk, and has never been a suspect in any investigation.  For example, the name check may result in a "hit" when the applicant's name is mentioned in FBI records because he has been an innocent witness or victim of a crime, has undergone an employment-related security clearance in the past, or has assisted

1    the FBI in an investigation.  Thus, since 2002, the FBI name check has not been implemented in

2    a manner that is calculated effectively to uncover national security risks, criminal conduct, or

3    other wrongdoing.

4        38.    The FBI name check procedure is also highly likely to result in false positive

5    results because the FBI runs not only a naturalization applicant's actual name, but also various

6    alternate spellings and permutations of the applicant's given and family names.

7        39.    Plaintiffs are informed and believe that CIS does not adjudicate applications for

8    naturalization until it receives a completed FBI name check.  Neither CIS nor the FBI imposes

9    any time limits for completion of FBI name checks.  As a result of their policies, practices and

10   procedures, including their failure to require FBI name checks to be completed in a reasonable

11   time period, Defendants are responsible for systemic, years-long delays in adjudicating tens of

12   thousands of naturalization applications nationwide, including those submitted by Plaintiffs.

13       40.    Although Defendants have asserted that the FBI name checks are necessary for

14   national security, there is no justification for delays in the FBI name check process.  Delays in

15   the FBI name check process do not serve the interest of national security.  Indeed, as the CIS

16   Ombudsman has reported, "the current USCIS name check policy may *increase* the risk to

17   national security by prolonging the time a potential criminal or terrorist remains in the country."

18   CIS Ombudsman, Annual Report 2006 at 25 (emphasis added), available at

19   http://www.dhs.gov/xlibrary/assets/CISOmbudsman_AnnualReport_2006.pdf.  In his most

20   recent annual report, the CIS Ombudsman expressed his "agree[ment] with the assessment of

21   many case workers and supervisors at USCIS field offices and service centers that the FBI name

22   check process has limited value to public safety or national security, especially because in almost

23   every case the applicant is in the United States during the name check process, living or working

24   without restriction."  CIS Ombudsman, Annual Report 2007 at 40.

25       41.    Upon information and belief, CIS has not reported any instance of a security

26   threat discovered through an FBI name check that was not also disclosed through criminal

27   background checks such as the fingerprint check and IBIS database check.  The CIS

28   Ombudsman has questioned CIS's claims that the FBI name check provides information that is

10

not otherwise available through other, existing background checks in the naturalization process. In his 2007 annual report, the CIS Ombudsman states: "It is unclear how many of the FBI name check 'responses' also were revealed by one or more of the other security checks conducted for the [naturalization] applications. To date, the Ombudsman has been unable to ascertain from USCIS the total number of actual problem cases that the agency discovered exclusively as a result of the FBI name check. The Ombudsman understands that most, if not all, of the problem cases which would result in an eventual denial of benefits also can be revealed by the other more efficient, automated criminal and security checks that USCIS initiates." CIS Ombudsman, Annual Report 2007, at 41.

42. Plaintiffs are informed and believe that in April 2006, CIS implemented a new policy or practice of delaying naturalization examinations until after the FBI name check is completed. Thus, for certain applicants for naturalization, lengthy delays in adjudication now occur prior to the examination, rather than after the examination. Upon information and belief, the April 2006 policy change has resulted in delayed scheduling of the naturalization examination for thousands of applicants. CIS has stated that a purpose of the policy change was to discourage litigation under 8 U.S.C. § 1447(b), which gives district courts jurisdiction to adjudicate applications when CIS has failed to act within 120 days of the examination.

## FACTS

### Plaintiffs

43. Alia Ahmadi is a 73-year-old native and citizen of Afghanistan. She came to the United States as a lawful permanent resident in November 1986, through a petition by her son Basheer Ahmadi, a U.S. citizen. Ms. Ahmadi lives in Union City, California, with one of her daughters. Ms. Ahmadi has six adult children. Five of her children are U.S. citizens and one is a lawful permanent resident of the United States. Ms. Ahmadi also has 13 grandchildren, all U.S. citizens.

44. In October 2002, Ms. Ahmadi applied for citizenship and successfully completed her naturalization interview and criminal background checks in May 2003. She meets all other statutory requirements for naturalization. At the end of the interview, the CIS officer told Ms.

1    Ahmadi that she had passed her examination and would receive her oath notice shortly.

2        45.    Approximately three to four months after successfully passing her naturalization

3    examination, Ms. Ahmadi contacted CIS because she had not received her oath notice.    A CIS

4    employee told Ms. Ahmadi that her application was still pending.  Ms. Ahmadi has followed up

5    with further contacts with CIS by telephone and in person.  Each time, CIS officers have

6    informed her that her naturalization application is still pending due to an FBI name check.  She

7    also has had to re-submit her fingerprints as her application has been pending so long that CIS

8    informed her that her original fingerprint card "expired."  Ms. Ahmadi's children also contacted

9    their representatives in Congress for assistance.  Representative Pete Stark made an inquiry to

10   CIS, which responded that a name check was pending.

11       46.    Although CIS informed Ms. Ahmadi that her naturalization application has not

12   been adjudicated because her FBI name check is pending, Plaintiffs are informed and believe

13   that in fact the FBI did complete Ms. Ahmadi's name check on or about October 13, 2005.

14   Nonetheless, CIS has failed to adjudicate the application to date.

15       47.    Ms. Ahmadi has suffered harm from the delay of her naturalization.  One of her

16   daughters lives outside of the U.S. part-time.  Because it is difficult for citizens of Afghanistan to

17   obtain visas for foreign travel, she has sometimes been deterred from visiting her daughter and

18   grandchildren while they are abroad.  Ms. Ahmadi is 73 years old and the anxiety surrounding

19   the delay in the granting of her citizenship has put extreme pressure on her already frail health.

20       48.    Angel Gentchev is a 53-year-old native and citizen of Bulgaria.  He came to the

21   United States in or about August 1996 as an H1-B visa holder, sponsored by his then-employer,

22   Computer Products, Inc.  He became a lawful permanent resident of the United States in or about

23   October 1997 through the sponsorship of Computer Products, Inc.

24       49.    Mr. Gentchev lives in Fremont, California, with his wife, a U.S. citizen, and two

25   daughters, one of whom is a U.S. citizen and the other a lawful permanent resident.  Mr.

26   Gentchev is employed as Director of Research and Development at Integration Associates, one

27   of Silicon Valley's fastest growing semiconductor companies.  During his 11 years as a resident

28   of the United States, Mr. Gentchev has worked at many Silicon Valley firms, including Intel and

12

Volterra, Inc.

50.    In or about October 2002, Mr. Gentchev applied for citizenship.  He successfully completed his criminal background checks and passed his naturalization examination in or about May 2003.  He meets all other statutory requirements for naturalization.  At the end of Mr. Gentchev's naturalization examination, a CIS officer informed him that he had passed the examination, including the English language and U.S. history and civics tests, but that his application could not be adjudicated because of a pending background check.

51.    During the pendency of his naturalization application, Mr. Gentchev has made numerous inquiries of CIS about the delay in his naturalization.  CIS has responded by informing Mr. Gentchev that background or national security checks are pending.  Mr. Gentchev retained a private attorney to assist him in inquiring with CIS, to no avail.  Mr. Gentchev also has sought the assistance of U.S. Representatives Pete Stark and Nancy Pelosi and Senator Barbara Boxer.  Despite inquiries made by those members of Congress on Mr. Gentchev's behalf, CIS has failed to adjudicate his application.

52.    Jiwei Huang is a 44-year-old native and citizen of China.  He first came to the United States on an H-4 visa as the spouse of an employment visa holder.  He became a lawful permanent resident of the United States on or about October 10, 1994, based upon the petition of his wife.

53.    Mr. Huang lives in Fremont, California, with his wife and two young children, who are all U.S. citizens.  Mr. Huang is employed as a Senior Network Engineer at a major U.S. financial institution and is responsible for information technology systems throughout the firm's offices around the world.

54.    In or about June 2003, Mr. Huang applied for citizenship.  He successfully completed his criminal background checks and passed his naturalization interview on or about January 30, 2004.  Mr. Huang meets all statutory requirements for naturalization.  At the time of his interview, a CIS officer told Mr. Huang that his application was complete but could not be adjudicated because a background check was still pending.

55.    During the pendency of his naturalization application, Mr. Huang has made

13

1    numerous inquiries about the delay in person and by telephone.  In response, CIS has informed

2    him that this application is still pending because of a background check and that there is nothing

3    that CIS can do to resolve the delay.

4        56.    Mr. Huang is suffering serious prejudice from the delay of his naturalization

5    application.  His employer, a major U.S. financial institution, has requested on several occasions

6    that Mr. Huang travel to foreign countries in order to establish information technology systems

7    in the firm's international offices.  Mr. Huang has been forced to decline those requests because

8    he has been unable to secure visas for such business travel in a timely manner as a Chinese

9    citizen.  If Mr. Huang were a U.S. citizen, he would not require a visa to travel to those

10    countries.  Thus, as a result of the delay in his naturalization, Mr. Huang's professional

11    advancement has been hindered and his employer's projects have been adversely affected.

12        57.    Igor Ovchinnikov is a 43-year-old native of the former Soviet Union and citizen

13    of Ukraine.  He first came to the United States in 1989 on a student visa as part of an exchange

14    program at Willamette University in Salem, Oregon, and again from 1992-94 as an Edmund

15    Muskie Fellow at the business school at Ohio State University.  Mr. Ovchinnikov immigrated to

16    the United States as a lawful permanent resident through the diversity visa program in January

17    1998.

18        58.    Mr. Ovchinnikov lives with his wife and teenaged daughter, who are both

19    naturalized U.S. citizens.  Mr. Ovchinnikov holds an M.B.A. degree from Ohio State University

20    and has previously worked as a management consultant for IBM and Price Waterhouse.  He is

21    currently working at a nonprofit organization in the Mission District of San Francisco, teaching

22    computer skills as part of a job training program.  He also works part-time as a licensed real

23    estate broker.

24        59.    In or about May 2003, Mr. Ovchinnikov applied for citizenship.  He successfully

25    completed his criminal background checks and passed his naturalization interview on or about

26    February 9, 2004.  Mr. Ovchinnikov meets all statutory requirements for naturalization.  At the

27    time of his interview, a CIS officer told him that his application was complete but that his case

28    required "further supervisory review."

14

60.     During the course of the long delay in adjudication of Mr. Ovchinnikov's naturalization application, CIS directed him to reappear for fingerprinting twice, in or about June 2003 and in July 2005.  On information and belief, CIS commonly makes such requests of delayed applicants because it regularly purges its records of fingerprint cards once they have been in CIS's system for a certain period of time.

61.     During the pendency of his naturalization application, Mr. Ovchinnikov has made numerous inquiries of CIS about the delay.  In response, CIS has informed him that his application is still pending because of "background" or "security" checks.  Mr. Ovchinnikov also has submitted a written request to CIS for expediting of his application, to no avail.  Mr. Ovchinnikov also has made requests for assistance to the CIS Ombudsman and to U.S. Representative Nancy Pelosi.

62.     Mr. Ovchinnikov is suffering serious prejudice from the delay of his application. He would like to petition for his mother, who lives alone in Ukraine, to join him in the United States.  Because Mr. Ovchinnikov is not yet a U.S. citizen, he has been unable to do so.  *See* 8 U.S.C. § 1151(b)(2)(A)(i) (providing that children, spouses, and parents of U.S. citizens are not subject to worldwide limitations on numbers of visas issued); 8 U.S.C. § 1153(a) (setting forth preferences for issuance of visas to unmarried sons or daughters of U.S. citizens, spouses and unmarried sons or daughters of lawful permanent residents, married sons and daughters of U.S. citizens, and brothers or sisters of U.S. citizens, in that order).  Mr. Ovchinnikov has not seen his mother since he immigrated to the United States in 1998.

63.     Sergei Yuri Sapozhnikov is a 46-year old native of the former Soviet Union and citizen of Russia.  He came to the United States in August 1991 on an H1-B employment visa and became a lawful permanent resident through the sponsorship of his former employer, Tech Met Traders.  He has been working in Silicon Valley for Sun Microsystems as a computer engineer for approximately seven years.  Mr. Sapozhnikov's wife, a professor at California State University at Hayward, is a lawful permanent resident.  The Sapozhnikovs have three children – two of whom are U.S. citizens and one of whom is a lawful permanent resident.   Mr. Sapozhnikov's wife and younger son are also facing delays of their citizenship applications.

1    64.    In or about February 2004, Mr. Sapozhnikov submitted his citizenship

2    application.  He successfully passed his criminal background checks and successfully passed his

3    naturalization examination on or about July 22, 2004.  Mr. Sapozhnikov meets all statutory

4    requirements for naturalization.  At the end of his examination, the CIS officer informed Mr.

5    Sapozhnikov that he passed the tests for English and U.S. history and government.  However, the

6    CIS officer gave him written notice stating that a decision cannot be made on his application

7    because background checks have not been completed.  Mr. Sapozhnikov has been waiting for his

8    oath notice for approximately three years.

9    65.    Mr. Sapozhnikov has suffered serious prejudice from the delay of his

10   naturalization.  Mr. Sapozhnikov would like to petition for his 70-year-old father and his sister to

11   live with him in the United States.  Since the death of Mr. Sapozhnikov's mother in January

12   2005, his father has been living alone in Russia.  The burden of providing care to his father has

13   shifted to his sister even though she also has responsibility for her own family.  Mr. Sapozhnikov

14   seeks to naturalize so that he can reunite with his family, and fulfill his responsibilities as a son

15   in the event that his father should become ill.

16   66.    Helga Scovajsa is a 68-year-old native of former Czechoslovakia and a citizen of

17   the Czech Republic.  She came to the United States as a lawful permanent resident in April 1978,

18   through the petition of her husband of 38 years, Frank Joseph Scovajsa, a U.S. citizen.  Ms.

19   Skovajsa lives in San Francisco with her husband.  The Scovajsas have an adult daughter who is

20   a U.S. citizen.

21   67.    In or about April 2004, Ms. Scovajsa submitted her naturalization application.

22   She successfully passed her criminal background checks and successfully passed her

23   naturalization examination in or about November 2004.  Ms. Scovajsa meets all other statutory

24   requirements for naturalization.  At the end of her examination, a CIS officer informed Ms.

25   Skovajsa that she had passed the tests for English and U.S. history and government but that

26   background checks were still pending.

27   68.    During the pendency of her naturalization application, Ms. Scovajsa has made

28   numerous inquiries of CIS by letter, telephone, and in person.  CIS's only response has been to

16

tell her that the application is pending because of the FBI name check and that CIS can do nothing to resolve the delay.

69.     Ms. Scovajsa has suffered harm from the delay of her naturalization.  She is 68 years old and has lived in the United States for almost 30 years.  She has suffered extreme anxiety and emotional distress, with a negative impact on her frail health, as a result of the delay.

**Defendants' Policies and Practices**

70.     Plaintiffs are informed and believe that Defendants Still, Gonzalez and Chertoff have a policy, pattern, and practice of failing to adjudicate the applications for naturalization of the proposed plaintiff class within 120 days of the date of naturalization examinations, because of unreasonable delays in the processing of FBI name checks.

71.     Plaintiffs are informed and believe that Defendants Still, Gonzalez and Chertoff have a policy, pattern, and practice of unlawfully withholding and unreasonably delaying the adjudication of applications for naturalization of the proposed plaintiff class, because of unreasonable delays in the processing of FBI name checks.

72.     Plaintiffs are informed and believe that Defendants Mueller and Mukasey have a policy, pattern, and practice of unlawfully withholding and unreasonably delaying the completion of FBI name checks, with the full knowledge that CIS requires the completion of such FBI name checks for adjudication of applications for naturalization of the proposed plaintiff class.

73.     Plaintiffs are informed and believe that Defendants have a policy, pattern and practice of failing to set reasonable deadlines for completing FBI name checks and taking all the other reasonable steps necessary to complete the adjudication of applications for naturalization of the proposed plaintiff class.

74.     Plaintiffs are informed and believe that Defendants Still, Gonzalez and Chertoff have a policy, pattern and practice of requiring FBI name checks for adjudication of applications for naturalization of the proposed plaintiff class, despite having no statutory or regulatory authorization for such FBI name checks.

75.     Plaintiffs are informed and believe that Defendants do not have or use any

17

1    mechanisms to identify or to track the number and status of naturalization cases in which

2    applicants satisfy all eligibility criteria, have passed naturalization interviews, and are awaiting

3    adjudication solely on the basis of FBI name checks.  In addition, CIS and FBI do not have any

4    policies or practices in place to ensure final adjudication of those naturalization applications.

5         76.    Plaintiffs are informed and believe that Defendants do not have or use any

6    mechanisms to track the number and status of naturalization cases in which applicants satisfy all

7    eligibility criteria, have passed naturalization examinations, and are awaiting adjudication for

8    more than 120 days after their naturalization examinations.  In addition, CIS and FBI do not have

9    any policies or practices in place to ensure final adjudication of those naturalization applications.

10        77.    Plaintiffs are informed and believe that Defendants Still, Gonzalez and Chertoff

11   implemented the requirement of FBI name checks for naturalization without giving notice to the

12   public and allowing a period for public comment.  The Administrative Procedures Act requires

13   such notice and comment because the FBI name check requirement is a substantive change in

14   prior CIS policy and because the requirement has an adverse effect on individuals by causing a

15   delay in adjudication of their naturalization applications.

16        78.    As a result of the Defendants' policies, practices, actions and omissions, members

17   of the proposed plaintiff class have suffered injury, in that they have been unlawfully denied the

18   rights and benefits of U.S. citizenship for more than 120 days since they passed their

19   naturalization examinations.

20   **Prejudice Suffered By Applicants With Delayed Cases**

21        79.    The named Plaintiffs and other members of the proposed class suffer concrete

22   harms from the unreasonable delays caused by Defendants' policies and practices.

23        80.    Delays in naturalization can prevent applicants from conferring citizenship or

24   lawful permanent status on their immediate family members.  For example, delays can cause a

25   citizenship applicant to lose the opportunity to transmit her new nationality to a minor child.  If a

26   parent naturalizes before her child turns 18, the child may automatically gain derivative

27   citizenship if the child is living in the United States in the parent's custody and is also a

28   permanent resident.  8 U.S.C. § 1431.  Thus, if a naturalization application is delayed for so long

18

1  that a minor child reaches the age of 18, the applicant's child will lose the opportunity for

2  automatic derivative citizenship.  In addition, as compared to a lawful permanent resident, a U.S.

3  citizen has a far greater ability to petition for the immigration of immediate relatives to the

4  United States.  See 8 U.S.C. § 1151(b)(2) (spouses, children and parents of U.S. citizen are

5  "immediate relatives" generally not subject to worldwide limitations on number of immigrant

6  visas); 8 U.S.C. § 1153 (setting forth priority list for issuance of visas to family-sponsored

7  immigrants).

8       81.     Delays in naturalization can cause applicants to be separated from their children

9  living in the United States if the child does not otherwise have permanent status and reaches the

10  age of majority during the pendency of the naturalization application.  *See*, *e.g.*, *Alhamedi v.*

11  *Gonzales*, No. 07 Civ. 2541, 2007 WL 1573935 at *2 (S.D.N.Y. May 30, 2007) (noting that

12  applicant's 20-year-old daughter might be forced to leave her studies in the United States and

13  return to home country if delay were not resolved before her birthday).  In other cases, the

14  applicant's spouse and children may still be living in the home country, and thus delays in

15  naturalization mean delays in family reunification because relatives of lawful permanent

16  residents are subject to visa limitations.  8 U.S.C. § 1153.  Many permanent residents report that

17  the years-long separation from a spouse and children is the most agonizing aspect of the delay.

18  See New York University School of Law, Center for Human Rights and Global Justice,

19  Americans on Hold: Profiling, Citizenship and the "War on Terror" ("NYU Report") at 2, 5, 22,

20  40, available at www.chrgj.org/docs/AOH/AmericansonHoldReport.pdf.

21       82.     Naturalization delays result in restrictions on the ability of immigrants to travel

22  freely.  Many permanent residents are from countries that do not participate in the Visa Waiver

23  Program, which affords U.S. citizens the ability to make short trips to 26 countries without the

24  need for a visa.  See http://travel.state.gov/visa/temp/without/without_1990. html#countries.

25  Many permanent residents who are Muslim, or are perceived to be such, report that they are

26  routinely subjected as non-citizens to intrusive questioning and searches by U.S. government

27  officials while traveling.  See NYU Report at 33-34.  Thus, naturalization delays have caused

28  many applicants – as well as their immediate family members who may be U.S. citizens – to

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

1  refrain from travel altogether, even for urgent matters such as illness or death in the family.  See

2  NYU Report at 5, 23.

3          83.     For many permanent residents, naturalization delays have had a negative impact

4  on their employment.  This is particularly true for highly skilled scientists, engineers, and other

5  professional workers, who often have existing FBI records – which trigger "hits" in the FBI

6  name check, although there is no derogatory information – as a result of previous employment-

7  related security checks.  U.S. Gov't Accountability Office, Report to Congressional Requesters,

8  Immigration Benefits: Improvements Needed to Address Backlogs and Ensure Quality of

9  Adjudications (Nov. 2005) at 44-45.  These permanent residents often are hampered in their

10 professional advancement because many jobs in their fields are available only to U.S. citizens.

11 This is most often an impediment for white-collar professionals, but other immigrants who aspire

12 to work in law enforcement or the U.S. military are similarly impeded.  NYU Report at 24.

13         84.     Naturalization delays have blocked the enfranchisement of tens of thousands of

14 longtime permanent residents who wish to join American civic society formally, after years of

15 contributing their work, community involvement, and tax revenues.  See NYU Report at 33-23.

16 FBI name check delays have delayed tens of thousands of immigrants from obtaining the right to

17 vote.  Nina Bernstein, Backlog Blocks Immigrants Hoping To Vote, N.Y. Times, Oct. 15, 2004,

18 at B1.

19                        **CLASS ALLEGATIONS**

20         85.     Plaintiffs bring this action on behalf of themselves and all other persons similarly

21 situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).  The class, as proposed

22 by Plaintiffs, consists of:

23         All persons who have submitted or will submit applications for naturalization to CIS, and

24         who have met all statutory requirements for naturalization, and whose applications for

25         naturalization are not adjudicated within 120 days of the date of their naturalization

26         examinations.

27         86.     The requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) are met

28 in that the class is so numerous that joinder of all members is impracticable.  Counsel for

20

Plaintiffs are aware of dozens of putative class members who are similarly situated to the named Plaintiffs in this District.  Plaintiffs are not aware of the exact numbers of putative class members because Defendants are in the best position to identify such persons.  The CIS Ombudsman has noted the enormous extent of the naturalization problem, reporting that "[a]s of May 2007, USCIS reported a staggering 329,160 FBI name check cases pending, with approximately 64 percent (211,341) of those cases pending more than 90 days and approximately 32 percent (106,738) pending more than one year."  CIS Ombudsman, Annual Report 2007, at 37. According to the CIS Ombudsman, as of June 2007, there were 31,144 FBI name check cases pending more than 33 months.  The CIS Ombudsman further reports that from 2006 to 2007, the number of delayed naturalization cases has increased by 93,358.  *Id.*

87.    The numerosity of the proposed class is further demonstrated by a November 2005 report of the CIS Office of Chief Counsel indicating that in the preceding one-year period, there were 1,000 federal lawsuits filed challenging FBI name check delays.

88.    There are questions of law and fact common to the proposed class that predominate over any questions affecting only the individually named Plaintiffs, including: (1) whether CIS's failure to adjudicate the applications for naturalization of the proposed plaintiff class within 120 days of the date of naturalization examinations due to delays in FBI name checks violates the Due Process Clause, the Immigration and Nationality Act and implementing regulations, and the Administrative Procedures Act; (2) whether CIS's imposition of a name check requirement violates the notice and comment provision of the Administrative Procedures Act; (3)  whether the FBI's actions in unlawfully withholding and unreasonably delaying the completion of FBI name checks, with the full knowledge that CIS requires the completion of such FBI name checks for adjudication of applications for naturalization of the proposed plaintiff class, violates the Constitution and laws of the United States, including the Administrative Procedures Act; and (4) whether CIS and the FBI's failure to set deadlines for completing FBI name checks and failure to take all the other reasonable steps necessary to complete the adjudication of applications for naturalization of the proposed plaintiff class, violates the Constitution and laws of the United States, including the Administrative Procedures Act.

89.     The claims of the named Plaintiffs are typical of the claims of the proposed class. The named Plaintiffs, like all class members, have not had their applications for naturalization adjudicated despite the passage of over 120 days since their naturalization examinations; they have been denied timely completion of FBI name checks which CIS requires for adjudication of their applications; and their applications for naturalization have been unlawfully withheld or unreasonably delayed on the basis of FBI name checks.

90.     Like the named Plaintiffs, members of the proposed class are suffering prejudice from the delay of their naturalization applications, including the inability to participate in civic society by voting and jury service, the effective inability to sponsor immediate relatives for lawful permanent resident status, the inability to travel freely as U.S. citizens, and the harm of having an uncertain status in the country they have made their home and where they have established themselves as part of a community.

91.     The named Plaintiffs will fairly and adequately represent the interests of all members of the proposed class because they seek relief on behalf of the class as a whole and have no interests antagonistic to other members of the class.  The named Plaintiffs are represented by pro bono counsel, including the ACLU Immigrants' Rights Project, the ACLU of Northern California and the Asian Law Caucus, who have extensive expertise in class action litigation and/or immigrants' rights cases.  Finally, the Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

## DECLARATORY AND INJUNCTIVE RELIEF ALLEGATIONS

92.     An actual and substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties.  Plaintiffs contend that Defendants' actions violate Plaintiffs' rights and the rights of proposed class members.  Defendants contend the opposite.

93.     Defendants' failure to timely process Plaintiffs' naturalization applications, including any name check, has caused and will continue to cause irreparable injury to Plaintiffs and other class members.  Plaintiffs have no plain, speedy, and adequate remedy at law.

94.     Based on the foregoing, the Court should grant declaratory and injunctive relief

22

under 28 U.S.C. §§ 1361, 2201, 2202 and 5 U.S.C. § 702.

## CAUSES OF ACTION

## COUNT ONE

## RIGHT TO DE NOVO JUDICIAL DETERMINATION

## OF APPLICATION FOR NATURALIZATION

## 8 U.S.C. § 1447(B)

### [By the Named Plaintiffs Against Defendants Still, Gonzalez and Chertoff]

95.    The allegations contained in paragraphs 1 through 101 above are repeated and incorporated as though fully set forth herein.

96.    Because Respondents have failed to adjudicate each named Plaintiff's naturalization application within 120 days after the date of his or her naturalization examination, each named Plaintiff is entitled to de novo adjudication of his or her naturalization application by this Court under 8 U.S.C. § 1447(b).

97.    This Court should grant each named Plaintiff's naturalization application pursuant to 8 U.S.C. § 1447(b), because each named Plaintiff meets all of the requirements for naturalization under chapter 2 of the Immigration and Nationality Act, 8 U.S.C. § 1421 *et seq.*, and therefore has a right to become a naturalized citizen of the United States.

## COUNT TWO

## UNREASONABLE DELAY

## IN VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

### [By the Named Plaintiffs on Behalf of the Proposed Class Against All Defendants]

98.    The allegations contained in paragraphs 1 through 104 above are repeated and incorporated as though fully set forth herein.

99.    The Administrative Procedure Act requires administrative agencies to conclude matters presented to them "within a reasonable time."  5 U.S.C. § 555.  A district court reviewing agency action may "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The court also may hold unlawful and set aside agency action that, inter alia, is found to be: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law," 5 U.S.C. § 706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C); or "without observance of procedure required by law," 5 U.S.C. § 706(2)(D). "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §551(13).

100.    The failure of Defendants Still, Gonzalez and Chertoff to adjudicate the applications for naturalization of the proposed plaintiff class within a reasonable time on the basis of delays in the processing of FBI name checks, in violation of 8 U.S.C. § 1446(d) and 8 C.F.R. § 335.3, violates the Administrative Procedures Act, 5 U.S.C. § 555(b); 5 U.S.C. §§ 706(1), 706(2)(A), 706(2)(C), 706(2)(D).

101.    The failure of Defendants Mukasey and Mueller to complete FBI name checks within a reasonable time period, with the full knowledge that CIS requires the completion of such FBI name checks for adjudication of applications for naturalization of the proposed plaintiff class, violates the Administrative Procedures Act, 5 U.S.C. § 555(b); 5 U.S.C. §§ 706(1), 706(2)(A), 706(2)(C), 706(2)(D).

102.    Defendants' failure to set reasonable deadlines for completing FBI name checks, to track the number and status of naturalization cases awaiting final adjudication solely on the basis of FBI name checks, to track the number and status of naturalization cases awaiting final adjudication for more than 120 days after the naturalization examinations, and to take all the other reasonable steps necessary to complete the adjudication of applications for naturalization of the proposed plaintiff class, in violation of 8 U.S.C. § 1446(d) and 8 C.F.R. § 335, violates the Administrative Procedures Act, 5 U.S.C. § 555(b); 5 U.S.C. §§ 706(1), 706(2)(A), 706(2)(C), 706(2)(D).

103.    As a result of Defendants' actions, Plaintiffs and members of the proposed class have suffered and continue to suffer injury. Declaratory and injunctive relief are therefore warranted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT THREE

## FAILURE TO FOLLOW NOTICE-AND-COMMENT REQUIREMENTS OF THE ADMINISTRATIVE PROCEDURES ACT

### [By the Named Plaintiffs Against Defendants Still, Gonzalez and Chertoff]

104.    The allegations contained in paragraphs 1 through 110 above are repeated and incorporated as though fully set forth herein.

105.    By regulation, CIS is required to conduct a criminal background check before a naturalization application can be granted.  8 C.F.R. § 335.2(b).  CIS does conduct or cause to be conducted criminal background checks, including a check of a naturalization applicant's fingerprints against the FBI's criminal records, and a check of an applicant's name against a multi-agency law enforcement database known as the Interagency Border Inspection System ("IBIS").

106.    In or about November 2002, CIS implemented an expanded version of a third background check known as an FBI name check, which goes beyond the criminal background check required by statute and regulation.  Unlike the databases searched during the criminal background checks, the expanded FBI name check runs applicants' names against a database containing names of persons who have never been convicted of, arrested for, or even suspected of a crime – including innocent witnesses and even crime victims.   This added requirement of an FBI name check constitutes a substantive rule that departed from prior policy and practice.

107.    Defendants implemented the expanded FBI name check requirement for naturalization without giving notice and providing a period for public comment, even though the name check requirement has an adverse impact on individuals whose naturalization applications are delayed due to the name check.

108.    The Administrative Procedures Act requires that administrative agencies provide the public with notice and an opportunity to comment prior to promulgating substantive rules, such as implementation of new requirements for naturalization.  5 U.S.C. § 553.

109.    Defendants' failure to provide a notice-and-comment period prior to implementing the FBI name check requirement violates the Administrative Procedures Act, 5

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

U.S.C. § 553.

## COUNT FOUR

### VIOLATION OF FIFTH AMENDMENT DUE PROCESS CLAUSE

**[By the Named Plaintiffs on Behalf of the Proposed Class Against All Defendants]**

110.    The allegations contained in paragraphs 1 through 116 above are repeated and incorporated as though fully set forth herein.

111.    The Due Process Clause of the Fifth Amendment prohibits the government from depriving any person of life, liberty or property without due process of law.

112.    Plaintiffs have a liberty or property interest in having their naturalization applications decided within a reasonable time period.

113.    Defendants Still, Gonzalez and Chertoff have a pattern, practice or policy of failing to adjudicate the applications for naturalization of the proposed plaintiff class within a reasonable time period because of delays in FBI name checks, in violation of 8 U.S.C. § 1446(d) and 8 C.F.R. § 335.  Defendants Mukasey and Mueller have a pattern, practice or policy of failing to complete FBI name checks in a reasonably timely manner, with the full knowledge that CIS requires the completion of FBI name checks for adjudication of applications for naturalization of the proposed plaintiff class.  Defendants have a pattern, practice or policy of failing to set deadlines for completing FBI name checks and to take all the other reasonable steps necessary to complete the adjudication of applications for naturalization of the proposed plaintiff class, in violation of 8 U.S.C. § 1446(d) and 8 C.F.R. § 335.3.  These actions by Defendants violate Plaintiffs' rights to due process of law.

114.    As a result of Defendants' actions, Plaintiffs and members of the proposed class have suffered and continue to suffer injury.  Declaratory and injunctive relief are therefore warranted.

## **PRAYER FOR RELIEF**

WHEREFORE, in view of the arguments and authority noted herein, Petitioner prays for the following relief:

    (1)      Assume jurisdiction over the matter;

    (2)      Certify this case as a class action lawsuit, as proposed herein;

    (3)      Review de novo and grant the named Plaintiffs' applications for naturalization, pursuant to 8 U.S.C. § 1447(b);

    (4)      Order Defendants to promptly adjudicate, in a time period not to exceed 90 days, the currently pending applications for naturalization of all members of the proposed class;

    (5)      Order Defendants to adjudicate, within a reasonable time period not to exceed 180 days from the date of the application date, all applications for naturalization that shall be submitted in the future;

    (6)      Order that any name checks Defendants choose to conduct shall be completed in a manner that does not delay adjudication of naturalization applications beyond 180 days from the date the application is received by CIS;

    (7)      Order Defendants to adopt a procedure for identifying naturalization cases awaiting final adjudication based solely on FBI name checks, and for identifying naturalization cases awaiting final adjudication for more than 120 days after successful completion of the naturalization examination, or 180 days from the date CIS receives the naturalization application;

    (8)      Issue a declaratory judgment holding unlawful: (a) the failure of Defendants Still, Gonzalez and Chertoff to adjudicate applications for naturalization within 180 days of the date of the naturalization application is received by CIS; (b) The failure of Defendants Mukasey and Mueller to complete FBI name checks within a reasonable time; and (c) Defendants' failures to take all necessary steps to adjudicate applications for

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

1    naturalization within 180 days of receipt by CIS.

2        (9)    Award reasonable attorney fees and costs pursuant to the Equal Access to

3        Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412; and

4        (10)    Grant any and all further relief this Court deems just and proper.

5    Dated:  November 15, 2007                          Respectfully submitted,

6                                                      CECILLIA D. WANG
                                                       LUCAS GUTTENTAG
7                                                      AMERICAN CIVIL LIBERTIES UNION
                                                          FOUNDATION
8                                                      IMMIGRANTS' RIGHTS PROJECT
                                                       39 Drumm Street
9                                                      San Francisco, CA 94111

10                                                     JULIA HARUMI MASS
                                                       ALAN L. SCHLOSSER
11                                                     AMERICAN CIVIL LIBERTIES UNION
                                                          FOUNDATION OF NORTHERN
12                                                        CALIFORNIA
                                                       39 Drumm Street
13                                                     San Francisco, CA 94111

14                                                     SIN YEN LING
                                                       JOREN LYONS
15                                                     ASIAN LAW CAUCUS
                                                       939 Market Street, Suite 201
16                                                     San Francisco, CA 94103
                                                       Telephone:  (415) 896-1701
17                                                     Facsimile:  (415) 896-1702

18                                                     TODD GALLINGER
                                                       Of Counsel
19                                                     COUNCIL ON AMERICAN-ISLAMIC
                                                          RELATIONS (CAIR) – SAN
20                                                        FRANCISCO BAY AREA
                                                       3000 Scott Boulevard, Suite 212
21                                                     Santa Clara, CA 95054
                                                       Telephone:  (408) 986-9874
22                                                     Facsimile:  (408) 986-9875

23

24                                          By:  _____/s/_____
                                                       CECILLIA D. WANG
25
                                                       Attorneys for Plaintiffs
26

27

28

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

**CERTIFICATE OF SERVICE**

I, Cecillia D. Wang, declare as follows:

I hereby certify that today I electronically filed the foregoing SECOND AMENDED

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR

NATURALIZATION PURSUANT TO 8 U.S.C. § 1447 with the Clerk of the Court using the

ECF system, which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Alan Lawrence Schlosser<br>American Civil Liberties Union<br>  Foundation of Northern California | *Via ECF*<br>*at* aschlosser@aclunc.org |
| Joren Lyons<br>Asian Law Caucus | *Via ECF*<br>at joren@asianlawcaucus.org |
| Lucas Guttentag<br>American Civil Liberties Union<br>  Immigrants' Rights Project | *Via ECF*<br>*at* lguttentag@aclu.org |
| Julia Harumi Mass<br>American Civil Liberties Union<br>  Foundation of Northern California | *Via ECF*<br>*at* jmass@aclunc.org |
| Edward A. Olsen<br>United States Attorney's Office | *Via ECF*<br>*at* edward.olsen@usdoj.gov |
| Elizabeth J. Stevens<br>United States Department of Justice | *Via ECF*<br>*at* elizabeth.stevens@usdoj.gov |
| Jeffrey S. Robins<br>United States Department of Justice | *Via ECF*<br>*at* jeffrey.robins@usdoj.gov |

In addition, I hereby certify that on this 15th day of November 2007, true and correct

copies of the SECOND AMENDED COMPLAINT FOR DECLARATORY AND

INJUNCTIVE RELIEF AND PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C.

§ 1447 were served by U.S. Mail on the following non-ECF filers:

| | |
|---|---|
| Sin Yen Ling<br>Asian Law Caucus<br>939 Market Street, Suite 201<br>San Francisco, CA 94103 | Todd Gallinger<br>Council on American-Islamic Relations<br>3000 Scott Boulevard, Suite 212<br>Santa Clara, CA 95054 |

1      I declare under penalty of perjury under the laws of the State of California that the above

2    is true and correct.

3

4    Dated: November 15, 2007
    San Francisco, California

5

6              _____/s/_____
          CECILLIA D. WANG

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28