# EXHIBIT A

1  CECILLIA D. WANG (CSB #187782)
   LUCAS GUTTENTAG (CSB #90208)
2  AMERICAN CIVIL LIBERTIES UNION
       FOUNDATION
3  IMMIGRANTS' RIGHTS PROJECT
   39 Drumm Street
4  San Francisco, CA 94111
   Telephone: (415) 343-0775
5  Facsimile: (415) 395-0950
   Email: CWang@aclu.org
6
   Attorneys for Plaintiffs-Petitioners
7  *Additional counsel listed on following page

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12

13  ALIA AHMADI, ANGEL GENTCHEV,
    JIWEI HUANG, VLADIMIR MIKULICIC,
    IGOR OVCHINNIKOV, BILJANA
14  PETROVIC, SERGEI SAPOZHNIKOV,
    AMIR SAYED, HELGA SCOVAJSA,        Case No.  07-CV-3455-WHA
15  BIREN SHAH, EIMAN TAKY, MIEKE
    VANDEWALLE-CALLINAN, and YAN
16  WANG,                              [PROPOSED] THIRD AMENDED
                                       COMPLAINT FOR DECLARATORY
17               Plaintiffs-Petitioners,  AND INJUNCTIVE RELIEF AND
                                       PETITION FOR NATURALIZATION
18       v.                            PURSUANT TO 8 U.S.C. § 1447(B)

19  MICHAEL CHERTOFF, U.S. Secretary of
    Homeland Security; ROBERT S. MUELLER
20  III, Director of the Federal Bureau of   CLASS ACTION
    Investigation; MICHAEL MUKASEY,
21  Attorney General of the United States;   Judge:  Hon. William A. Alsup
    EMILIO T. GONZALEZ, Director, U.S.
22  Department of Homeland Security, Bureau of
    Citizenship and Immigration Services; DAVID
23  STILL, District Director, U.S. Department of
    Homeland Security, Bureau of Citizenship and
24  Immigration Services, San Francisco District,

25               Defendants-Respondents.

26

27

28
                                    1

1    Additional counsel:

2    JULIA HARUMI MASS (CSB #189649)
     ALAN L. SCHLOSSER (CSB #49957)
3    AMERICAN CIVIL LIBERTIES UNION
         FOUNDATION OF NORTHERN CALIFORNIA
4    39 Drumm Street
     San Francisco, CA 94111
5    Telephone: (415) 621-2493
     Facsimile: (415) 255-8437
6
     SIN YEN LING*
7    JOREN LYONS (CSB #203403)
     ASIAN LAW CAUCUS
8    939 Market Street, Suite 201
     San Francisco, CA 94103
9    Telephone:  (415) 896-1701
     Facsimile:  (415) 896-1702
10
     *Application for admission pro hac vice forthcoming
11

12   Of counsel:

13   TODD GALLINGER (CSB #238666)
     COUNCIL ON AMERICAN-ISLAMIC RELATIONS
14       (CAIR) – SAN FRANCISCO BAY AREA
     3000 Scott Boulevard, Suite 212
15   Santa Clara, CA 95054
     Telephone:  (408) 986-9874
16   Facsimile:  (408) 986-9875

17

18

19

20

21

22

23

24

25

26

27

28

                                    2

## INTRODUCTION

1.      Plaintiffs-Petitioners, Alia AHMADI, Angel GENTCHEV, Jiwei HUANG, Vladimir MIKULICIC, Igor OVCHINNIKOV, Biljana PETROVIC, Sergei SAPOZHNIKOV, Amir SAYED, Helga SCOVAJSA, Biren SHAH, Eiman TAKY, Mieke VANDEWALLE-CALLINAN, and Yan WANG, all are or were long-time lawful permanent residents of the United States.  Each of them has sought to become a citizen of this country by applying for naturalization, having met all statutory requirements.  Each of the Plaintiffs has joined this lawsuit because of Defendants' policies and practices causing unreasonable and prolonged delays in adjudicating Plaintiffs' naturalization applications.  Each Plaintiff successfully passed the naturalization examination and cleared criminal background checks at least two years prior to joining this lawsuit.  Plaintiffs Ahmadi, Sayed, Shah and Vandewalle-Callinan continue to await adjudication of their applications.

2.      Plaintiffs are among tens of thousands of naturalization applicants throughout the United States who are suffering or have suffered from systemic delays in the naturalization process caused by the policies, practices and procedures of the Defendants.

3.      Defendants are officers of U.S. Citizenship and Immigration Services ("CIS") and the Federal Bureau of Investigation ("FBI") and are responsible for the naturalization process, including the FBI name check, which CIS requires for naturalization despite the absence of any promulgated rule or regulation.

4.      Plaintiffs Ahmadi, Sayed, Shah, and Vandewalle-Callinan seek to be naturalized by this Court, as Congress has authorized through the Immigration and Nationality Act.  *See* 8 U.S.C. § 1447(b) (district court may make a determination of a naturalization application if there has been no adjudication within 120 days of the date of examination – i.e., the applicant's naturalization interview); *United States v. Hovsepian*, 359 F.3d 1144, 1151 (9th Cir. 2004) (en banc).  Each of named Plaintiffs also seeks declaratory and injunctive relief on behalf of themselves and the proposed class members, to eliminate the systemic delays that Defendants have caused through their policies, practices and procedures.

5.      In failing to timely adjudicate the Plaintiffs' naturalization applications,

1  Defendant officers of CIS have violated CIS regulations requiring that such applications be

2  adjudicated within 120 days of the initial examination.  8 C.F.R. § 335.3.

3       6.    In addition, Defendant officers of both CIS and the FBI have engaged in

4  unreasonable and extraordinary delay in adjudicating Plaintiffs' naturalization applications, in

5  violation of the Administrative Procedure Act, 5 U.S.C. §§ 555, 706, and the Due Process Clause

6  of the Fifth Amendment.

7       7.    Defendants' rationale for CIS's unreasonable naturalization delays – that the

8  delays are required to complete FBI name checks – highlights an independent violation of the

9  Administrative Procedure Act:  Defendants' failure to follow the notice and comment

10  requirements of 5 U.S.C. § 553.  CIS has promulgated no regulations concerning an FBI name

11  check, but nonetheless has imposed the current version of the FBI name check as a requirement

12  for over four years – without any deadlines for completion of the checks.  In contrast,

13  immigration regulations do provide for criminal records checks based on Plaintiffs' fingerprints

14  and biographical data.  Each of the Plaintiffs has passed those criminal background checks.

15  Because Defendants' addition of the FBI name check constitutes a substantive rule and causes

16  undue burden and prejudice to Plaintiffs and other members of the proposed class, the public

17  should have been provided notice and an opportunity to comment prior to its implementation.

18       8.    CIS's own ombudsman criticized the rampant delays in the processing of

19  naturalization applications.  In an annual report released in June 2007, the CIS Ombudsman

20  concluded:  "FBI name checks, one of several security screening tools used by USCIS, continue

21  to significantly delay adjudication of immigration benefits for many customers, hinder backlog

22  reduction efforts, and may not achieve their intended national security benefits.  FBI name

23  checks may be the single biggest obstacle to the timely and efficient delivery of immigration

24  benefits.  The problem of long-pending FBI name checks cases <u>worsened</u> during the reporting

25  period [of June 2006 to June 2007]."  CIS Ombudsman, Annual Report 2007, at 37 (emphasis in

26  original), available at http://www.dhs.gov/xabout/structure/gc_1183751418157.shtm.

27       9.    Plaintiffs all have spent many years in the United States and have made this

28  Nation their home.  They seek to pledge their allegiance to their adopted country and to

[PROPOSED] THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

1    participate fully in U.S. society as citizens.  Each of the Plaintiffs has met the statutory

2    requirements to become a U.S. citizen, and in many cases they have sought relief through

3    requests to members of Congress and through formal and informal inquiries with the

4    government.  Nonetheless, each of the Plaintiffs has been stymied in his or her efforts by the

5    unreasonable and extraordinary delay of the Defendants.

6        10.    As a result of the Defendants' failure to process naturalization applications within

7    a reasonable time, under timelines set by Congress, Plaintiffs have been unable to participate in

8    civic society by voting and jury service.  Plaintiffs also have been unable expeditiously to

9    petition for lawful permanent residency on behalf of immediate relatives living abroad including,

10   in some cases, their spouses and children.  Plaintiffs also have been unable to participate freely

11   as U.S. citizens in the Visa Waiver Program or to travel abroad and to return to the United States

12   without fear of exclusion.  One of the named Plaintiffs was blocked in his professional

13   advancement because of the delay in naturalization.

14       11.    Plaintiffs seek or have sought not only their own naturalization through 8 U.S.C. §

15   1447(b), but also declaratory and injunctive relief as representatives of a class of other

16   individuals who have satisfied all statutory requirements for naturalization and are suffering

17   similar unreasonable delays.  Plaintiffs ask the Court to declare that the Defendants are violating

18   the due process rights of Plaintiffs and the proposed class, as well as the Administrative

19   Procedure Act and the immigration laws and regulations, in failing to complete all background

20   checks necessary for adjudication of naturalization applications within a reasonable time as

21   established by Congress and by CIS's own regulations.

22                              **JURISDICTION AND VENUE**

23       12.    This Court has subject matter jurisdiction over this matter pursuant to 8 U.S.C. §

24   1447(b) (district court jurisdiction to adjudicate delayed naturalization applications), 5 U.S.C. §

25   702 (Administrative Procedure Act), 28 U.S.C. § 1361 (writ of mandamus), and 28 U.S.C. §

26   1331 (federal question).

27       13.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§

28   1391(e).  Plaintiffs sue the Defendants in their official capacities as officers and employees of the

United States.  A substantial portion of the events giving rise to this Complaint occurred within this District, where the Plaintiffs' applications for naturalization are pending before the San Francisco District of the CIS.  In addition, venue is proper in this District pursuant to 8 U.S.C. § 1447(b), which provides that a petition for de novo review of a naturalization application shall be filed in the district in which the applicant resides.  All of the Plaintiffs live within this District.

## PARTIES

14.     Plaintiff Alia Ahmadi is a citizen of Afghanistan.  She is a lawful permanent resident of the United States and lives in Union City, California.  She applied for naturalization with CIS and passed her naturalization examination in May 2003.  Her naturalization application has not been adjudicated.

15.     Plaintiff Angel Gentchev resides in Fremont, California.  Before joining this lawsuit, he was a citizen of Bulgaria and a lawful permanent resident of the United States.  He applied for naturalization with CIS and passed his naturalization examination in May 2003.  His naturalization application was not adjudicated until, by stipulation of the parties filed February 15, 2008, his individual claim under 8 U.S.C. § 1447(b) was dismissed to allow CIS to act on his application.  Mr. Gentchev remains a party to this case in order to represent a class of similarly situated naturalization applicants who are suffering delays due to the FBI name check process.

16.     Plaintiff Jiwei Huang lives in Fremont, California. Before joining this lawsuit, he was a citizen of China and a lawful permanent resident of the United States.  He applied for naturalization with CIS and passed his naturalization examination in January 2004.  His naturalization application was not adjudicated until, by stipulation of the parties filed February 15, 2008, his individual claim under 8 U.S.C. § 1447(b) was dismissed to allow CIS to act on his application.  Mr. Huang remains a party to this case in order to represent a class of similarly situated naturalization applicants who are suffering delays due to the FBI name check process.

17.     Plaintiff Vladimir Mikulicic was born in former Yugoslavia.   Before he joined this litigation, he was a citizen of Croatia and a lawful permanent resident of the United States. He lives in Lafayette, California.  He applied for naturalization with CIS and passed his naturalization examination on or about December 1, 2004.  His naturalization application was

1    not adjudicated until, by stipulation of the parties filed October 11, 2007, his individual claim
2    under 8 U.S.C. § 1447(b) was dismissed to allow CIS to act on his application.  Mr. Mikulicic
3    remains a party to this case in order to represent a class of similarly situated naturalization
4    applicants who are suffering delays due to the FBI name check process.

5          18.    Plaintiff Igor Ovchinnikov lives in San Francisco, California.  Before he joined
6    this lawsuit, he was a citizen of Ukraine and a lawful permanent resident of the United States.
7    He applied for naturalization with CIS and passed his naturalization examination in February
8    2004.  His naturalization application was not adjudicated until, by stipulation of the parties filed
9    February 15, 2008, his individual claim under 8 U.S.C. § 1447(b) was dismissed to allow CIS to
10   act on his application.  Mr. Ovchinnikov remains a party to this case in order to represent a class
11   of similarly situated naturalization applicants who are suffering delays due to the FBI name
12   check process.

13         19.    Plaintiff Biljana Petrovic is a native of former Yugoslavia and was a naturalized
14   citizen of Canada.  Until she joined this litigation, she was a lawful permanent resident of the
15   United States.  She lives in Los Altos, California.  She applied for naturalization with CIS and
16   passed her naturalization examination in February 2004.  Her naturalization application was not
17   adjudicated until, by stipulation of the parties filed October 11, 2007, her individual claim under
18   8 U.S.C. § 1447(b) was dismissed to allow CIS to act on her application.  Ms. Petrovic remains a
19   party to this case in order to represent a class of similarly situated naturalization applicants who
20   are suffering delays due to the FBI name check process.

21         20.    Plaintiff Sergei Sapozhnikov is a native of the former Soviet Union.  Until he
22   joined this litigation, he was a citizen of Russia and a lawful permanent resident of the United
23   States.  He lives in Walnut Creek, California.  He applied for naturalization with CIS and passed
24   his naturalization examination in July 2004.  His naturalization application was not adjudicated
25   until, by stipulation of the parties filed February 15, 2008, his individual claim under 8 U.S.C. §
26   1447(b) was dismissed to allow CIS to act on his application.  Mr. Sapozhnikov remains a party
27   to this case in order to represent a class of similarly situated naturalization applicants who are
28   suffering delays due to the FBI name check process.

7

21.    Plaintiff Amir Sayed lives in Oakland, California.  He is a citizen of Pakistan and a lawful permanent resident of the United States.  He applied for naturalization with CIS and passed his naturalization examination in February 2005.  His naturalization application has not been adjudicated.

22.    Plaintiff Helga Scovajsa lives in San Francisco, California.  Before she joined this lawsuit, she was a citizen of the Czech Republic and a lawful permanent resident of the United States.  She applied for naturalization with CIS and passed her naturalization examination in November 2004.  Her naturalization application was not adjudicated until, by stipulation of the parties filed February 15, 2008, her individual claim under 8 U.S.C. § 1447(b) was dismissed to allow CIS to act on her application.  Ms. Scovajsa remains a party to this case in order to represent a class of similarly situated naturalization applicants who are suffering delays due to the FBI name check process.

23.    Plaintiff Biren Shah is a native and citizen of India.  He is a lawful permanent resident of the United States and lives in San Jose, California. He applied for naturalization with CIS and passed his naturalization examination in May, 2005.  His naturalization application has not been adjudicated.

24.    Plaintiff Eiman Taky lives in San Jose, California.  Before she joined this lawsuit, she was a citizen of Egypt and a lawful permanent resident of the United States.  She applied for naturalization with CIS and passed her naturalization examination in March 2005.  Her naturalization application was not adjudicated until, by stipulation of the parties filed October 11, 2007, her individual claim under 8 U.S.C. § 1447(b) was dismissed to allow CIS to act on her application.  Ms. Taky remains a party to this case in order to represent a class of similarly situated naturalization applicants who are suffering delays due to the FBI name check process.

25.    Plaintiff Mieke Vandewalle-Callinan is a Belgian citizen.  She is a lawful permanent resident of the United States and lives in San Francisco, California.  She applied for naturalization with CIS and passed her naturalization examination in August 2004.  Her naturalization application has not been adjudicated.

26.    Plaintiff Yan Wang resides in San Francisco, California.  Before she joined this

8

1  lawsuit, she was a citizen of China and a lawful permanent resident of the United States.  She

2  applied for naturalization with CIS and passed her naturalization examination in January 2004.

3  Her naturalization application was not adjudicated until, by stipulation of the parties filed

4  October 11, 2007, her individual claim under 8 U.S.C. § 1447(b) was dismissed to allow CIS to

5  act on her application.  Ms. Wang remains a party to this case in order to represent a class of

6  similarly situated naturalization applicants who are suffering delays due to the FBI name check

7  process.

8       27.    Defendant Michael Chertoff is the U.S. Secretary of Homeland Security and has

9  ultimate responsibility for CIS, a subunit of the Department of Homeland Security.  Mr. Chertoff

10  is ultimately responsible for the administration of all immigration and naturalization laws,

11  including the processing and determination of applications for naturalization.  He is sued in his

12  official capacity.

13       28.    Defendant Robert S. Mueller III is the Director of the Federal Bureau of

14  Investigation.  Mr. Mueller is ultimately responsible for the processing of FBI name checks

15  submitted by CIS to the FBI during the naturalization process.  Mr. Mueller is sued in his official

16  capacity.

17       29.    Defendant Michael Mukasey is the Attorney General of the United States.  He is

18  the head of the U.S. Department of Justice, which encompasses the FBI.  Mr. Mukasey is also

19  jointly responsible with Mr. Chertoff for enforcement of immigration laws.  Mr. Mukasey is sued

20  in his official capacity.

21       30.    Respondent Emilio T. Gonzalez is the Director of CIS.  Mr. Gonzalez is

22  responsible for the processing and determination of all applications for naturalization submitted

23  to CIS.  He is sued in his official capacity.

24       31.    Respondent David Still is the District Director for the San Francisco District of

25  CIS.  Mr. Still is responsible for applications for naturalization pending in the San Francisco

26  District.  Mr. Still is sued in his official capacity.

27

28

[PROPOSED] THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

## LEGAL FRAMEWORK

## General Requirements for Naturalization

32.     Federal immigration law allows persons who have been residing in the United States as lawful permanent residents to become United States citizens through a process known as naturalization.

33.     A person seeking to naturalize must meet certain requirements, including an understanding of the English language and history and civics of the United States; a sufficient period of physical presence in the United States; and good moral character.  8 U.S.C. §§ 1423, 1427(a).

34.     Persons seeking to naturalize must submit an application for naturalization to CIS.  8 U.S.C. § 1445.  CIS is the agency that is responsible for adjudicating naturalization applications.

35.     Once an application is submitted, CIS conducts a criminal background investigation of each naturalization applicant.  8 U.S.C. § 1446(a); 8 C.F.R. § 335.1.

36.     After a criminal background investigation is completed, CIS schedules a naturalization examination, at which an applicant meets with a CIS examiner who is authorized to ask questions and take testimony.  The CIS examiner must determine whether to grant or deny the naturalization application.  8 U.S.C. § 1446(d).

37.     CIS must grant a naturalization application if the applicant has complied with all requirements for naturalization.  8 C.F.R. § 335.3.  Naturalization is not a discretionary benefit, but a right upon satisfaction of statutory requirements.

38.     CIS must grant or deny a naturalization application at the time of the examination or, at the latest, within 120 days after the date of the examination.  8 C.F.R. § 335.3.  Once an application is granted, the applicant is sworn in as a United States citizen.

39.     When CIS fails to adjudicate a naturalization application within 120 days of the examination, the applicant may seek de novo review of the application by a district court.  8 U.S.C. § 1447(b).  When the applicant requests district court review, the district court gains exclusive jurisdiction over the application, *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir.

2004), and it may naturalize the applicant.  8 U.S.C. § 1447(b).

40.    In general, Congress has provided that applications for immigration benefits should be adjudicated within 180 days of the initial filing of the application.  8 U.S.C. § 1571. The President has also expressed that view.  *See* Remarks by the President at INS Naturalization Ceremony (July 10, 2001), available at http://www.whitehouse.gov/news/releases/2001/07/print 20010710-1.html (urging immigration agencies to adopt standard of six-month processing time for applications for immigration benefits).

**Pre-Naturalization Background Checks**

41.    Under 8 U.S.C. § 335.2, CIS should not schedule the "initial examination" (i.e., the naturalization interview) until the agency has received "a definitive response from the [FBI] that a full criminal background check" has been completed.  The regulation defines a "definitive response" as one of the following:  (1) FBI confirmation that the applicant "does not have an administrative or criminal record; (2) FBI confirmation that the applicant does have such a record; or (3) FBI confirmation that the applicant's fingerprint cards "have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected."  8 U.S.C. § 335.2(b).  Thus, 8 C.F.R. § 335.2(b) contemplates that the "criminal background check" required by regulation is based upon fingerprint records, and is not a "name check."  The FBI fingerprint check is run against criminal records showing arrests, criminal charges not leading to convictions, and criminal convictions.

42.    Nonetheless, CIS runs two name-based background checks on each naturalization applicant.  First, CIS runs each applicant's name against the Interagency Border Inspection System ("IBIS"), a centralized records system combining information on "national security risks, public safety issues and other law enforcement concerns" from multiple law enforcement and intelligence agencies.  Second, in 1998, CIS instituted the FBI name check.  As originally implemented in 1998, the FBI name check ran a naturalization applicant's name against a database containing the names of persons who are or were the subjects of an FBI investigation.

43.    In 2002, without giving public notice and an opportunity for public comment, CIS drastically expanded the scope of the FBI name check, so that an applicant's name would be

1   checked against not only the names of investigation subjects, but also other names that are

2   merely mentioned in FBI files.

3       44.     As expanded in 2002, the FBI name check requirement is implemented in such a

4   manner that it is highly likely that an applicant may be identified erroneously as a person "of

5   interest" to the FBI, thereby delaying adjudication of the naturalization application, even though

6   the applicant has committed no crimes, does not pose any kind of security risk, and has never

7   been a suspect in any investigation.  For example, the name check may result in a "hit" when the

8   applicant's name is mentioned in FBI records because he has been an innocent witness or victim

9   of a crime, has undergone an employment-related security clearance in the past, or has assisted

10  the FBI in an investigation.  Thus, since 2002, the FBI name check has not been implemented in

11  a manner that is calculated effectively to uncover national security risks, criminal conduct, or

12  other wrongdoing.

13      45.     The FBI name check procedure is also highly likely to result in false positive

14  results because the FBI runs not only a naturalization applicant's actual name, but also various

15  alternate spellings and permutations of the applicant's given and family names.

16      46.     Plaintiffs are informed and believe that CIS does not adjudicate applications for

17  naturalization until it receives a completed FBI name check.  Neither CIS nor the FBI imposes

18  any time limits for completion of FBI name checks.  As a result of their policies, practices and

19  procedures, including their failure to require FBI name checks to be completed in a reasonable

20  time period, Defendants are responsible for systemic, years-long delays in adjudicating tens of

21  thousands of naturalization applications nationwide, including those submitted by Plaintiffs.

22      47.     Although Defendants have asserted that the FBI name checks are necessary for

23  national security, there is no justification for delays in the FBI name check process.  Delays in

24  the FBI name check process do not serve the interest of national security.  Indeed, as the CIS

25  Ombudsman has reported, "the current USCIS name check policy may *increase* the risk to

26  national security by prolonging the time a potential criminal or terrorist remains in the country."

27  CIS Ombudsman, Annual Report 2006 at 25 (emphasis added), available at

28  http://www.dhs.gov/xlibrary/assets/CISOmbudsman_AnnualReport_2006.pdf.  In his most

12

[PROPOSED] THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

recent annual report, the CIS Ombudsman expressed his "agree[ment] with the assessment of many case workers and supervisors at USCIS field offices and service centers that the FBI name check process has limited value to public safety or national security, especially because in almost every case the applicant is in the United States during the name check process, living or working without restriction."  CIS Ombudsman, Annual Report 2007 at 40.

48.      Upon information and belief, CIS has not reported any instance of a security threat discovered through an FBI name check that was not also disclosed through criminal background checks such as the fingerprint check and IBIS database check.  The CIS Ombudsman has questioned CIS's claims that the FBI name check provides information that is not otherwise available through other, existing background checks in the naturalization process. In his 2007 annual report, the CIS Ombudsman states:  "It is unclear how many of the FBI name check 'responses' also were revealed by one or more of the other security checks conducted for the [naturalization] applications.  To date, the Ombudsman has been unable to ascertain from USCIS the total number of actual problem cases that the agency discovered exclusively as a result of the FBI name check.  The Ombudsman understands that most, if not all, of the problem cases which would result in an eventual denial of benefits also can be revealed by the other more efficient, automated criminal and security checks that USCIS initiates."  CIS Ombudsman, Annual Report 2007, at 41.

49.      Plaintiffs are informed and believe that in April 2006, CIS implemented a new policy or practice of delaying naturalization examinations until after the FBI name check is completed.  Thus, for certain applicants for naturalization, lengthy delays in adjudication now occur prior to the examination, rather than after the examination.  Upon information and belief, the April 2006 policy change has resulted in delayed scheduling of the naturalization examination for thousands of applicants.  CIS has stated that a purpose of the policy change was to discourage litigation under 8 U.S.C. § 1447(b), which gives district courts jurisdiction to adjudicate applications when CIS has failed to act within 120 days of the examination.

[PROPOSED] THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

# FACTS

## Plaintiffs

50.     Alia Ahmadi is a 74-year-old native and citizen of Afghanistan. She came to the United States as a lawful permanent resident in November 1986, through a petition by her son Basheer Ahmadi, a U.S. citizen. Ms. Ahmadi lives in Union City, California, with one of her daughters. Ms. Ahmadi has six adult children. Five of her children are U.S. citizens and one is a lawful permanent resident of the United States. Ms. Ahmadi also has 13 grandchildren, all U.S. citizens.

51.     In October 2002, Ms. Ahmadi applied for citizenship and successfully completed her naturalization interview and criminal background checks in May 2003. She meets all other statutory requirements for naturalization. At the end of the interview, the CIS officer told Ms. Ahmadi that she had passed her examination and would receive her oath notice shortly.

52.     Approximately three to four months after successfully passing her naturalization examination, Ms. Ahmadi contacted CIS because she had not received her oath notice. A CIS employee told Ms. Ahmadi that her application was still pending. Ms. Ahmadi has followed up with further contacts with CIS by telephone and in person. Each time, CIS officers have informed her that her naturalization application is still pending due to an FBI name check. She also has had to re-submit her fingerprints as her application has been pending so long that CIS informed her that her original fingerprint card "expired." Ms. Ahmadi's children also contacted their representatives in Congress for assistance. Representative Pete Stark made an inquiry to CIS, which responded that a name check was pending.

53.     Although CIS informed Ms. Ahmadi that her naturalization application has not been adjudicated because her FBI name check is pending, Plaintiffs are informed and believe that in fact the FBI did complete Ms. Ahmadi's name check on or about October 13, 2005. On or about March 4, 2008, Ms. Ahmadi was reinterviewed at CIS's request. CIS has since sought additional information from Ms. Ahmadi. Her application for naturalization has not yet been adjudicated.

54.     Ms. Ahmadi has suffered harm from the delay of her naturalization. One of her

14

daughters lives outside of the U.S. part-time.  Because it is difficult for citizens of Afghanistan to obtain visas for foreign travel, she has sometimes been deterred from visiting her daughter and grandchildren while they are abroad.  Ms. Ahmadi is 73 years old and the anxiety surrounding the delay in the granting of her citizenship has put extreme pressure on her already frail health.

55.    Angel Gentchev is a 53-year-old native and was a citizen of Bulgaria.  He came to the United States in or about August 1996 as an H1-B visa holder, sponsored by his then-employer, Computer Products, Inc.  He became a lawful permanent resident of the United States in or about October 1997 through the sponsorship of Computer Products, Inc.

56.    Mr. Gentchev lives in Fremont, California, with his wife, a U.S. citizen, and two daughters, one of whom is a U.S. citizen and the other a lawful permanent resident.  Mr. Gentchev is employed as Director of Research and Development at Integration Associates, one of Silicon Valley's fastest growing semiconductor companies.  During his 11 years as a resident of the United States, Mr. Gentchev worked at many Silicon Valley firms, including Intel and Volterra, Inc.

57.    In or about October 2002, Mr. Gentchev applied for citizenship.  He successfully completed his criminal background checks and passed his naturalization examination in or about May 2003.  He met all other statutory requirements for naturalization.  At the end of Mr. Gentchev's naturalization examination, a CIS officer informed him that he had passed the examination, including the English language and U.S. history and civics tests, but that his application could not be adjudicated because of a pending background check.

58.    During the pendency of his naturalization application, Mr. Gentchev made numerous inquiries of CIS about the delay in his naturalization.  CIS has responded by informing Mr. Gentchev that background or national security checks were pending.  Mr. Gentchev retained a private attorney to assist him in inquiring with CIS, to no avail.  Mr. Gentchev also sought the assistance of U.S. Representatives Pete Stark and Nancy Pelosi and Senator Barbara Boxer.  Despite inquiries made by those members of Congress on Mr. Gentchev's behalf, CIS failed to adjudicate his application.

59.    Finally, after Mr. Gentchev joined this litigation, CIS sought to adjudicate Mr.

15

Gentchev's application.  Pursuant to a stipulation filed February 15, 2008, Mr. Gentchev

dismissed his 8 U.S.C. §1447(b) claim in order to allow such adjudication.

60.    Jiwei Huang is a 44-year-old native and former citizen of China.  He first came to

the United States on an H-4 visa as the spouse of an employment visa holder.  He became a

lawful permanent resident of the United States on or about October 10, 1994, based upon the

petition of his wife.

61.    Mr. Huang lives in Fremont, California, with his wife and two young children,

who are all U.S. citizens.  Mr. Huang is employed as a Senior Network Engineer at a major U.S.

financial institution and is responsible for information technology systems throughout the firm's

offices around the world.

62.    In or about June 2003, Mr. Huang applied for citizenship.  He successfully

completed his criminal background checks and passed his naturalization interview on or about

January 30, 2004.  Mr. Huang met all statutory requirements for naturalization.  At the time of

his interview, a CIS officer told Mr. Huang that his application was complete but could not be

adjudicated because a background check was still pending.

63.    During the pendency of his naturalization application, Mr. Huang made numerous

inquiries about the delay in person and by telephone.  In response, CIS informed him that this

application was still pending because of a background check and that there was nothing that CIS

can do to resolve the delay.

64.    Mr. Huang suffered serious prejudice from the delay of his naturalization

application.  His employer, a major U.S. financial institution, requested on several occasions that

Mr. Huang travel to foreign countries in order to establish information technology systems in the

firm's international offices.  Mr. Huang was forced to decline those requests because he was

unable to secure visas for such business travel in a timely manner as a Chinese citizen.  If Mr.

Huang had been a U.S. citizen, he would not have required a visa to travel to those countries.

Thus, as a result of the delay in his naturalization, Mr. Huang's professional advancement has

been hindered and his employer's projects have been adversely affected.

65.    Finally, after Mr. Huang joined this litigation, CIS sought to adjudicate Mr.

1    Huang's application. Pursuant to a stipulation filed February 15, 2008, Mr. Huang dismissed his

2    8 U.S.C. §1447(b) claim in order to allow such adjudication.

3        66.    Vladimir Mikulicic is a 61-year-old native of former Yugoslavia and was a citizen

4    of Croatia. Having previously visited the United States several times, he came on a tourist visa

5    in 1991, to visit his sister in San Francisco and to ski in Colorado. While in the United States, he

6    decided to enroll in an English language course and changed his visa status accordingly, with the

7    assistance of counsel. During Mr. Mikulicic's visit to the United States, the civil war in the

8    former Yugoslavia escalated. As a result of a previous conflict with a Croatian nationalist

9    official, Mr. Mikulicic feared that he would be in danger if he returned to Yugoslavia, and he

10   applied for asylum through counsel. In 1994, Mr. Mikulicic began dating his sister's coworker,

11   Suzanne Craft, a U.S. citizen. They married in 1996. Mr. Mikulicic and his wife applied for

12   adjustment of his status and he became a lawful permanent resident in or about September 1996.

13       67.    Mr. Mikulicic and his wife live in Lafayette, California. He is an engineer and is

14   employed by the Parsons Corporation as a Ports and Harbors Operational Manager.

15       68.    In or about May 2004, Mr. Mikulicic applied for citizenship. He successfully

16   completed his criminal background checks and passed his naturalization interview on or about

17   December 1, 2004. Mr. Mikulicic met all statutory requirements for naturalization. At the time

18   of the naturalization interview, a CIS officer told Mr. Mikulicic that he had passed the

19   examination, but that the agency would have wait for a response from the FBI before Mr.

20   Mikulicic would receive his oath notice.

21       69.    During the pendency of his naturalization application, Mr. Mikulicic made

22   numerous inquiries of CIS about the delay. Beginning six months after his interview, he made

23   numerous inquiries of CIS by telephone. CIS responded by informing him that his background

24   checks were still pending. In addition, Mr. Mikulicic and his wife twice requested assistance

25   from the office of Senator Dianne Feinstein. In response to inquiries from Senator Feinstein's

26   staff, CIS responded that Mr. Mikulicic's name check was still pending. Mr. Mikulicic also

27   telephoned his local FBI office to inquire about the delay of his FBI name check, and was told to

28   be patient as the FBI is overwhelmed with pending name checks.

17

70.    Finally, after Mr. Mikulicic joined this litigation, CIS sought to adjudicate Mr. Mikulicic's application. Pursuant to a stipulation filed October 11, 2007, Mr. Mikulicic dismissed his 8 U.S.C. § 1447(b) claim in order to allow such adjudication.

71.    Mr. Mikulicic suffered serious prejudice from the delay of his naturalization. He is employed by a Pasadena-based engineering firm, Parsons Corporation, as a Ports and Harbors Operational Manager. Because he was not a U.S. citizen, he was precluded from obtaining certain security clearances that are necessary for some aspects of his job. As a result, he had several temporary gaps in his employment with Parsons. In addition, Mr. Mikulicic had to forgo job assignments that would have required him to stay outside the United States for extended periods, so that he could maintain his lawful permanent resident status and meet the physical presence requirement for naturalization. These restrictions on Mr. Mikulicic's work opportunities also affected his salary and opportunities for advancement.

72.    Igor Ovchinnikov is a 43-year-old native of the former Soviet Union and was a citizen of Ukraine. He first came to the United States in 1989 on a student visa as part of an exchange program at Willamette University in Salem, Oregon, and again from 1992-94 as an Edmund Muskie Fellow at the business school at Ohio State University. Mr. Ovchinnikov immigrated to the United States as a lawful permanent resident through the diversity visa program in January 1998.

73.    Mr. Ovchinnikov lives with his wife and teenaged daughter, who are both naturalized U.S. citizens. Mr. Ovchinnikov holds an M.B.A. degree from Ohio State University and has previously worked as a management consultant for IBM and Price Waterhouse. Until recently, he worked at a nonprofit organization in the Mission District of San Francisco, teaching computer skills as part of a job training program. He now works as a licensed real estate broker.

74.    In or about May 2003, Mr. Ovchinnikov applied for citizenship. He successfully completed his criminal background checks and passed his naturalization interview on or about February 9, 2004. Mr. Ovchinnikov met all statutory requirements for naturalization. At the time of his interview, a CIS officer told him that his application was complete but that his case required "further supervisory review."

[PROPOSED] THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

75. During the course of the long delay in adjudication of Mr. Ovchinnikov's naturalization application, CIS directed him to reappear for fingerprinting twice, in or about June 2003 and in July 2005. On information and belief, CIS commonly makes such requests of delayed applicants because it regularly purges its records of fingerprint cards once they have been in CIS's system for a certain period of time.

76. During the pendency of his naturalization application, Mr. Ovchinnikov made numerous inquiries of CIS about the delay. In response, CIS informed him that his application was still pending because of "background" or "security" checks. Mr. Ovchinnikov also submitted a written request to CIS for expediting of his application, to no avail. Mr. Ovchinnikov also made requests for assistance to the CIS Ombudsman and to U.S. Representative Nancy Pelosi.

77. Finally, after Mr. Ovchinnikov joined this litigation, CIS sought to adjudicate Mr. Ovchinnikov's application. Pursuant to a stipulation filed February 15, 2008, Mr. Ovchinnikov dismissed his 8 U.S.C. §1447(b) claim in order to allow such adjudication.

78. Mr. Ovchinnikov suffered serious prejudice from the delay of his application. He was unable to petition for his mother, who lives alone in Ukraine, to join him in the United States. *See* 8 U.S.C. § 1151(b)(2)(A)(i) (providing that children, spouses, and parents of U.S. citizens are not subject to worldwide limitations on numbers of visas issued); 8 U.S.C. § 1153(a) (setting forth preferences for issuance of visas to unmarried sons or daughters of U.S. citizens, spouses and unmarried sons or daughters of lawful permanent residents, married sons and daughters of U.S. citizens, and brothers or sisters of U.S. citizens, in that order). Mr. Ovchinnikov has not seen his mother since he immigrated to the United States in 1998.

79. Biljana Petrovic is a 55-year-old native of former Yugoslavia and was a naturalized citizen of Canada prior to joining this lawsuit. Ms. Petrovic was a lawful permanent resident for 19 years. She entered the United States in June 23, 1988, upon the petition of her husband, Ihab Abu-Hakima, who was then a lawful permanent resident and has since naturalized. Ms. Petrovic and her husband have two children who are both U.S. citizens. Ms. Petrovic is full-time homemaker and cares for her two children, while her husband works as the Chief Executive

Officer of a small start-up wireless company in Silicon Valley. Ms. Petrovic is an active member of her local community. She is a member of the YMCA and the Parent-Teacher Association at Mountain View High School. From 1999 to 2004, Ms. Petrovic was an active member of the Peninsula Children's Auxiliary, which provides services to autistic children.

80.    In or about April 2003, Ms. Petrovic submitted her citizenship application. She passed criminal background checks and successfully completed her naturalization interview on or about February 13, 2004. At the end of the interview, the CIS officer informed Ms. Petrovic that she had passed the tests for English and U.S. history and civics. CIS directed her to attend another interview on July 15, 2004, but then later sent a notice that the second interview was canceled. Ms. Petrovic met all statutory requirements for naturalization. After passing her interview, she made at least five inquiries to CIS by mail. She also twice visited the CIS office in San Jose in person and was told that her case was pending with the FBI. On October 24, 2005, a CIS officer informed Ms. Petrovic's former counsel that her application was still pending because of the background and name check. In October 2004, Ms. Petrovic contacted Senator Dianne Feinstein, and she received a response on November 12, 2004, stating that the FBI name check was still pending. In April 2006, Ms. Petrovic contacted Representative Anna G. Eshoo in an effort to expedite her citizenship application. In April 28, 2006, she received a response from the staff of Representative Eshoo confirming the name check delay and that a request to expedite the application has been made with CIS.

81.    On or about October 10, 2006, Ms. Petrovic submitted a request to the FBI under the Freedom of Information Act, seeking information about the delay of her name check. By letter dated February 5, 2007, the FBI responded with the notation: "No arrest record, CJIS Division FBI."

82.    Finally, after Ms. Petrovic joined this litigation, CIS sought to adjudicate Ms. Petrovic's application. Pursuant to a stipulation filed October 11, 2007, Ms. Petrovic dismissed his 8 U.S.C. §1447(b) claim in order to allow such adjudication.

83.    Ms. Petrovic suffered severe prejudice from the delay of her naturalization. Ms. Petrovic's parents are 80 and 81 years old and living in Canada. She is their only child. Her

1  mother is beginning to suffer early stages of dementia, and Ms. Petrovic has feared that her

2  parents would soon need her full-time attention and assistance.  Because of the delay in her

3  naturalization, Ms. Petrovic was unable to petition for her parents to join her in the United States.

4  This circumstance has caused her a great deal of anguish, as she has two children and would not

5  be able to care for both her children and her parents, while the latter were still living in Canada.

6          84.      Sergei Yuri Sapozhnikov is a 46-year old native of the former Soviet Union and

7  was a citizen of Russia.  He came to the United States in August 1991 on an H1-B employment

8  visa and became a lawful permanent resident through the sponsorship of his former employer,

9  Tech Met Traders.  He has been working in Silicon Valley for Sun Microsystems as a computer

10 engineer for approximately seven years.  Mr. Sapozhnikov's wife, a professor at California State

11 University at Hayward, is a lawful permanent resident.  The Sapozhnikovs have three children –

12 two of whom are U.S. citizens and one of whom is a lawful permanent resident.   Mr.

13 Sapozhnikov's wife and younger son are also facing delays of their citizenship applications.

14         85.      In or about February 2004, Mr. Sapozhnikov submitted his citizenship

15 application.  He successfully passed his criminal background checks and successfully passed his

16 naturalization examination on or about July 22, 2004.  Mr. Sapozhnikov met all statutory

17 requirements for naturalization.  At the end of his examination, the CIS officer informed Mr.

18 Sapozhnikov that he passed the tests for English and U.S. history and government.  However, the

19 CIS officer gave him written notice stating that a decision could not be made on his application

20 because background checks had not been completed.

21         86.      Finally, after Mr. Sapozhnikov joined this litigation, CIS sought to adjudicate his

22 naturalization application.  Pursuant to a stipulation filed February 15, 2008, Mr. Sapozhnikov

23 dismissed his 8 U.S.C. §1447(b) claim in order to allow such adjudication.

24         87.      Mr. Sapozhnikov suffered serious prejudice from the delay of his naturalization.

25 Because of the delay in his naturalization, he was unable to petition for his 70-year-old father

26 and his sister to live with him in the United States.  Since the death of Mr. Sapozhnikov's mother

27 in January 2005, his father has lived alone in Russia.  The burden of providing care to his father

28 shifted to his sister even though she also has responsibility for her own family.  Mr. Sapozhnikov

1    sought to naturalize so that he could reunite with his family, and fulfill his responsibilities as a

2    son in the event that his father should become ill.

3          88.    Amir Sayed is a 47-year-old native and citizen of Pakistan.  He became a lawful

4    permanent resident of the United States in 2000, based upon the petition of his wife, who is a

5    U.S. citizen.

6          89.    Mr. Sayed lives in Oakland, California, with his wife of nine years.  Mr. Sayed is

7    employed as the Chief Executive Officer of three small businesses, Pacific Fleet and Leasing, an

8    automobile leasing company; Pacific E-Port Trading, an import-export business; and Pacific

9    Fleece and Apparel, a clothing import business.  Mr. Sayed also is a part-owner of the first two

10    companies.

11          90.    In or about June 2004, Mr. Sayed applied for citizenship.  He successfully

12    completed his naturalization interview and criminal background checks on or about February 7,

13    2005.  He meets all other statutory requirements for naturalization.

14          91.    At the end of his naturalization interview, a CIS officer told Mr. Sayed that he had

15    passed his examination and that he should expect a notice of oath ceremony within a few days.

16          92.    To date, CIS has failed to adjudicate Mr. Sayed's naturalization application.  In

17    the two years since passing his examination in February 2005, Mr. Sayed has visited the CIS

18    office in Oakland at least twice, and was told that his application is pending due to a name check.

19    Mr. Sayed also has emailed CIS on at least two occasions to inquire about the delay, but never

20    received any response.  In or about February 2007, Mr. Sayed wrote to CIS to inquire formally

21    about the delay in his naturalization and received a form letter informing him that his application

22    was still pending due to a name check.  Mr. Sayed's private attorney, who is a family friend,

23    wrote to CIS in or about February 2008 and received a similar form letter advising that Mr.

24    Sayed's application is being delayed due to a name check.

25          93.    Mr. Sayed has suffered serious prejudice from the delay in adjudication of his

26    naturalization application.  One of his employers, Pacific E-Port Trading, has recently opened a

27    satellite office in Vietnam and Mr. Sayed will be required to travel there on business frequently.

28    As a citizen of Pakistan, it has been difficult for him to arrange a visa to travel to Vietnam and

22

1    for other countries through which he must pass en route to Vietnam.  Although Mr. Sayed has

2    obtained the necessary visas for one upcoming business trip with great difficulty, he will

3    continue to face difficulty in obtaining visas in the future.  Mr. Sayed is informed and believes

4    that if he were a U.S. citizen, he would not face difficulties in obtaining a visa for travel to

5    Vietnam and other Asian countries.

6        94.    Helga Scovajsa is a 68-year-old native of former Czechoslovakia and was a

7    citizen of the Czech Republic.  She came to the United States as a lawful permanent resident in

8    April 1978, through the petition of her husband of 38 years, Frank Joseph Scovajsa, a U.S.

9    citizen.  Ms. Skovajsa lives in San Francisco with her husband.  The Scovajsas have an adult

10   daughter who is a U.S. citizen.

11       95.    In or about April 2004, Ms. Scovajsa submitted her naturalization application.

12   She successfully passed her criminal background checks and successfully passed her

13   naturalization examination in or about November 2004.  Ms. Scovajsa met all other statutory

14   requirements for naturalization.  At the end of her examination, a CIS officer informed Ms.

15   Skovajsa that she had passed the tests for English and U.S. history and government but that

16   background checks were still pending.

17       96.    During the pendency of her naturalization application, Ms. Scovajsa made

18   numerous inquiries of CIS by letter, telephone, and in person.  CIS's only response was to tell

19   her that the application was pending because of the FBI name check and that CIS could do

20   nothing to resolve the delay.

21       97.    Finally, after Ms. Scovajsa joined this litigation, CIS sought to adjudicate Ms.

22   Scovajsa's application.  Pursuant to a stipulation filed February 15, 2008, Ms. Scovajsa

23   dismissed her 8 U.S.C. §1447(b) claim in order to allow such adjudication.

24       98.    Ms. Scovajsa suffered harm from the delay of her naturalization.  She is 68 years

25   old and has lived in the United States for almost 30 years.  She suffered extreme anxiety and

26   emotional distress, with a negative impact on her frail health, as a result of the delay.

27       99.    Biren Shah is a 39-year-old native and citizen of India.  He came to the United

28   States in or about June 1995 as an H1-B visa holder, sponsored by his then-employer HCL

America.  He became a lawful permanent resident of the United States in or about March 1999 through the sponsorship of another employer, Tekedge Corporation.

100.    Mr. Shah lives in San Jose, California with his wife, who is also a lawful permanent resident seeking citizenship, and his two U.S. citizen children, ages six and eleven. Mr. Shah is employed by Electronic Data Systems Corporation in Mountain View, where he has worked as a lead database administrator for approximately six years.  During his nearly 13 years in the United States, Mr. Shah has worked at several Silicon Valley firms as a software engineer.

101.    In or about January 2004, Mr. Shah applied for citizenship.  He successfully completed his criminal background checks and passed his naturalization application in or about May 2005.  He meets all other statutory requirements for naturalization.  At the end of Mr. Shah's naturalization examination, a CIS officer informed him that he had passed the examination, including the English language and U.S. history and civics tests, but that his application could not be adjudicated because of a pending FBI name check.

102.    During the pendency of his naturalization application, Mr. Shah has made repeated inquiries of CIS about the delay in his naturalization.  CIS has responded by informing Mr. Shah that his background or name checks are pending.  In or about December 2005, Mr. Shah filed a Freedom of Information/Privacy Act request with the Federal Bureau of Information and received a response indicating that he has never been "of investigatory interest" to the FBI. In addition, Mr. Shah has sought the assistance of Senators Dianne Feinstein and Barbara Boxer and U.S. Representative Mike Honda.  He has also written to President Bush, First Lady Laura Bush, and Vice President Dick Cheney regarding the delay of his naturalization application. Despite inquiries made by Mr. Shah's Congressional representatives and others on his behalf, CIS has failed to adjudicate his application.

103.    Mr. Shah desires to take his family for an extended visit to India to be with his parents, but he has been unable to without jeopardizing his naturalization application by interrupting his physical presence in the United States.

104.    Eiman Taky is a 44-year-old native and former citizen of Egypt.  She first came to the United States on an F-1 student visa in January 1987 and became a lawful permanent resident

in May 1993 following her marriage to a lawful permanent resident. Ms. Taky, who was divorced from her husband in 2001, lives with her teenaged children, who are both U.S. citizens. Ms. Taky trained as a dentist in her home country and now works as a dental hygienist in the Bay Area.

105.    In August 2004, Ms. Taky applied for citizenship. She successfully completed her criminal background checks and passed her naturalization interview on or about March 15, 2005. Ms. Taky met all statutory requirements for naturalization. At the time of her interview, a CIS officer told her that her application was complete but for an FBI name check.

106.    Until she joined this lawsuit, CIS failed to adjudicate Ms. Taky's naturalization application. In an effort to obtain a decision, Ms. Taky retained a private immigration attorney who made inquiries with CIS and FBI. The government's only response to the inquiries was that Ms. Taky's FBI name check was still pending.

107.    During the course of the long delay in adjudication of Ms. Taky's naturalization application, CIS directed her to reappear for fingerprinting in June 2006. On information and belief, CIS commonly makes such requests of delayed applicants because it regularly purges its records of fingerprint cards once they have been in CIS's system for a certain period of time.

108.    Finally, after Ms. Taky joined this litigation, CIS sought to adjudicate Ms. Taky's application. Pursuant to a stipulation filed October 11, 2007, Ms. Taky dismissed her 8 U.S.C. §1447(b) claim in order to allow such adjudication.

109.    Ms. Taky suffered serious prejudice from the delay of her application. Her elderly parents live in Egypt and she was unable to petition for them to join her in the United States because she was not a U.S. citizen. *See* 8 U.S.C. § 1151(b)(2)(A)(i) (providing that children, spouses, and parents of U.S. citizens are not subject to worldwide limitations on numbers of visas issued); 8 U.S.C. § 1153(a) (setting forth preferences for issuance of visas to unmarried sons or daughters of U.S. citizens, spouses and unmarried sons or daughters of lawful permanent residents, married sons and daughters of U.S. citizens, and brothers or sisters of U.S. citizens, in that order). Ms. Taky's elderly mother has been serving as the sole caretaker for Ms. Taky's father, even though both parents are in poor health. Ms. Taky has wanted to bring her

[PROPOSED] THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

1    parents to the United States so that she can care for them in their old age and ill health.

2        110.    Mieke Vandewalle-Callinan is a 35-year old native and citizen of Belgium.  She

3    came to the United States as a fiancée visa-holder in late 1991.  She married Sean Michael

4    Callinan, a U.S. citizen, on February 29, 1992, and they petitioned for her adjustment of status.

5    On March 24, 1992, she became a lawful permanent resident.  She and her husband divorced on

6    May 3, 2000.  Ms. Vandewalle-Callinan has been working at Grand Jean Capital Management,

7    an investment company in San Francisco, for six years as a data manager.   She has been living

8    in San Francisco for approximately eleven years.

9        111.    In or about January 2004, Ms. Vandewalle-Callinan submitted her citizenship

10   application.  She successfully completed criminal background checks and passed her

11   naturalization examination on August 12, 2004.  She meets all other statutory requirements for

12   naturalization.  At the end of her interview, the CIS officer informed her that she passed the tests

13   for English and U.S. history and government.

14       112.    In 2004, following the interview date, Ms. Vandewalle-Callinan contacted CIS

15   about every two to three months to inquire about the status of her citizenship application.  Since

16   the interview, she has made a total of ten to fifteen inquiries with Citizenship and Immigration

17   Services through phone calls, in-person visits to the CIS office, and letters.  On each occasion,

18   she has been informed by CIS that her application was pending because of national security

19   checks.

20       113.    Yan Wang is a 36-year old native and former citizen of China.  She came to the

21   United States on a K-1 fiancée visa in February 1999 and became a lawful permanent resident on

22   July 2000.  Ms. Wang and her husband, a U.S. citizen, live in San Francisco, California.  Ms.

23   Wang is currently attending San Francisco City College part-time.  She also works full-time for

24   the City of San Francisco providing home care for disabled persons.

25       114.    In May 2003, Ms. Wang applied for citizenship and successfully completed her

26   naturalization interview and criminal background checks in January 2004.  She met all other

27   statutory requirements for naturalization.  At the end of the interview, a CIS officer told Ms.

28   Wang that she had passed her examination and would receive her oath shortly.

115.    Approximately four months after successfully passing her naturalization examination, Ms. Wang contacted CIS because she had not received her oath notice.  CIS informed her that the application was pending because of a name check.  Ms. Wang made approximately eight to nine inquiries with CIS in the course of the last few years, and each time, she was informed that the FBI name check was not complete.

116.    Plaintiffs are informed and believe that CIS submitted Ms. Wang's FBI name check request to the FBI on or about May 15, 2003.  Despite the passage of more than four years, the FBI failed to complete Ms. Wang's name check until she joined this lawsuit.

117.    Finally, after Ms. Wang joined this litigation, CIS sought to adjudicate Ms. Wang's application.  Pursuant to a stipulation filed October 11, 2007, Ms. Wang dismissed her 8 U.S.C. § 1447(b) claim in order to allow such adjudication.

118.    Ms. Wang suffered harm from the delay of her naturalization.  Her ailing father lives in China and she wished to spend time with him.  During the unreasonably long delay in her naturalization, she was unable to petition for lawful permanent resident status for her father so that she can care for him.  *See* 8 U.S.C. § 1151(b)(2)(A)(i) (providing that children, spouses, and parents of U.S. citizens are not subject to worldwide limitations on numbers of visas issued); 8 U.S.C. § 1153(a) (setting forth preferences for issuance of visas to unmarried sons or daughters of U.S. citizens, spouses and unmarried sons or daughters of lawful permanent residents, married sons and daughters of U.S. citizens, and brothers or sisters of U.S. citizens, in that order).

**Defendants' Policies and Practices**

119.    Plaintiffs are informed and believe that Defendants Still, Gonzalez and Chertoff have a policy, pattern, and practice of failing to adjudicate the applications for naturalization of the proposed plaintiff class within 120 days of the date of naturalization examinations, because of unreasonable delays in the processing of FBI name checks.

120.    Plaintiffs are informed and believe that Defendants Still, Gonzalez and Chertoff have a policy, pattern, and practice of unlawfully withholding and unreasonably delaying the adjudication of applications for naturalization of the proposed plaintiff class, because of unreasonable delays in the processing of FBI name checks.

27

121.    Plaintiffs are informed and believe that Defendants Mueller and Mukasey have a policy, pattern, and practice of unlawfully withholding and unreasonably delaying the completion of FBI name checks, with the full knowledge that CIS requires the completion of such FBI name checks for adjudication of applications for naturalization of the proposed plaintiff class.

122.    Plaintiffs are informed and believe that Defendants have a policy, pattern and practice of failing to set reasonable deadlines for completing FBI name checks and taking all the other reasonable steps necessary to complete the adjudication of applications for naturalization of the proposed plaintiff class.

123.    Plaintiffs are informed and believe that Defendants Still, Gonzalez and Chertoff have a policy, pattern and practice of requiring FBI name checks for adjudication of applications for naturalization of the proposed plaintiff class, despite having no statutory or regulatory authorization for such FBI name checks.

124.    Plaintiffs are informed and believe that Defendants do not have or use any mechanisms to identify or to track the number and status of naturalization cases in which applicants satisfy all eligibility criteria, have passed naturalization interviews, and are awaiting adjudication solely on the basis of FBI name checks.  In addition, CIS and FBI do not have any policies or practices in place to ensure final adjudication of those naturalization applications.

125.    Plaintiffs are informed and believe that Defendants do not have or use any mechanisms to track the number and status of naturalization cases in which applicants satisfy all eligibility criteria, have passed naturalization examinations, and are awaiting adjudication for more than 120 days after their naturalization examinations.  In addition, CIS and FBI do not have any policies or practices in place to ensure final adjudication of those naturalization applications.

126.    Plaintiffs are informed and believe that Defendants Still, Gonzalez and Chertoff implemented the requirement of FBI name checks for naturalization without giving notice to the public and allowing a period for public comment.  The Administrative Procedure Act requires such notice and comment because the FBI name check requirement is a substantive change in prior CIS policy and because the requirement has an adverse effect on individuals by causing a

28

1   delay in adjudication of their naturalization applications.

2       127.    As a result of the Defendants' policies, practices, actions and omissions, members

3   of the proposed plaintiff class have suffered injury, in that they have been unlawfully denied the

4   rights and benefits of U.S. citizenship for more than 120 days since they passed their

5   naturalization examinations.

6   **Prejudice Suffered By Applicants With Delayed Cases**

7       128.    The named Plaintiffs and other members of the proposed class suffer concrete

8   harms from the unreasonable delays caused by Defendants' policies and practices.

9       129.    Delays in naturalization can prevent applicants from conferring citizenship or

10  lawful permanent status on their immediate family members.  For example, delays can cause a

11  citizenship applicant to lose the opportunity to transmit her new nationality to a minor child.  If a

12  parent naturalizes before her child turns 18, the child may automatically gain derivative

13  citizenship if the child is living in the United States in the parent's custody and is also a

14  permanent resident.  8 U.S.C. § 1431.  Thus, if a naturalization application is delayed for so long

15  that a minor child reaches the age of 18, the applicant's child will lose the opportunity for

16  automatic derivative citizenship.  In addition, as compared to a lawful permanent resident, a U.S.

17  citizen has a far greater ability to petition for the immigration of immediate relatives to the

18  United States.  See 8 U.S.C. § 1151(b)(2) (spouses, children and parents of U.S. citizen are

19  "immediate relatives" generally not subject to worldwide limitations on number of immigrant

20  visas); 8 U.S.C. § 1153 (setting forth priority list for issuance of visas to family-sponsored

21  immigrants).

22      130.    Delays in naturalization can cause applicants to be separated from their children

23  living in the United States if the child does not otherwise have permanent status and reaches the

24  age of majority during the pendency of the naturalization application.  *See*, *e.g.*, *Alhamedi v.*

25  *Gonzales*, No. 07 Civ. 2541, 2007 WL 1573935 at *2 (S.D.N.Y. May 30, 2007) (noting that

26  applicant's 20-year-old daughter might be forced to leave her studies in the United States and

27  return to home country if delay were not resolved before her birthday).  In other cases, the

28  applicant's spouse and children may still be living in the home country, and thus delays in

29

---

[PROPOSED] THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

1   naturalization mean delays in family reunification because relatives of lawful permanent

2   residents are subject to visa limitations.  8 U.S.C. § 1153.  Many permanent residents report that

3   the years-long separation from a spouse and children is the most agonizing aspect of the delay.

4   See New York University School of Law, Center for Human Rights and Global Justice,

5   Americans on Hold: Profiling, Citizenship and the "War on Terror" ("NYU Report") at 2, 5, 22,

6   40, available at www.chrgj.org/docs/AOH/AmericansonHoldReport.pdf.

7       131.    Naturalization delays result in restrictions on the ability of immigrants to travel

8   freely.  Many permanent residents are from countries that do not participate in the Visa Waiver

9   Program, which affords U.S. citizens the ability to make short trips to 26 countries without the

10  need for a visa.  See http://travel.state.gov/visa/temp/without/without_1990. html#countries.

11  Many permanent residents who are Muslim, or are perceived to be such, report that they are

12  routinely subjected as non-citizens to intrusive questioning and searches by U.S. government

13  officials while traveling.  See NYU Report at 33-34.  Thus, naturalization delays have caused

14  many applicants – as well as their immediate family members who may be U.S. citizens – to

15  refrain from travel altogether, even for urgent matters such as illness or death in the family.  See

16  NYU Report at 5, 23.

17      132.    For many permanent residents, naturalization delays have had a negative impact

18  on their employment.  This is particularly true for highly skilled scientists, engineers, and other

19  professional workers, who often have existing FBI records – which trigger "hits" in the FBI

20  name check, although there is no derogatory information – as a result of previous employment-

21  related security checks.  U.S. Gov't Accountability Office, Report to Congressional Requesters,

22  Immigration Benefits: Improvements Needed to Address Backlogs and Ensure Quality of

23  Adjudications (Nov. 2005) at 44-45.  These permanent residents often are hampered in their

24  professional advancement because many jobs in their fields are available only to U.S. citizens.

25  This is most often an impediment for white-collar professionals, but other immigrants who aspire

26  to work in law enforcement or the U.S. military are similarly impeded.  NYU Report at 24.

27      133.    Naturalization delays have blocked the enfranchisement of tens of thousands of

28  longtime permanent residents who wish to join American civic society formally, after years of

1    contributing their work, community involvement, and tax revenues.  See NYU Report at 33-23.

2    FBI name check delays have delayed tens of thousands of immigrants from obtaining the right to

3    vote.  Nina Bernstein, Backlog Blocks Immigrants Hoping To Vote, N.Y. Times, Oct. 15, 2004,

4    at B1.

5                                 **CLASS ALLEGATIONS**

6           134.    Plaintiffs bring this action on behalf of themselves and all other persons similarly

7    situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).  The class, as proposed

8    by Plaintiffs, consists of:

9           All persons who have submitted or will submit applications for naturalization to CIS, and

10          who have met all statutory requirements for naturalization, and whose applications for

11          naturalization are not adjudicated within 120 days of the date of their naturalization

12          examinations.

13          135.    The requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) are met

14   in that the class is so numerous that joinder of all members is impracticable.  Counsel for

15   Plaintiffs are aware of dozens of putative class members who are similarly situated to the named

16   Plaintiffs in this District.  Plaintiffs are not aware of the exact numbers of putative class members

17   because Defendants are in the best position to identify such persons.  The CIS Ombudsman has

18   noted the enormous extent of the naturalization problem, reporting that "[a]s of May 2007,

19   USCIS reported a staggering 329,160 FBI name check cases pending, with approximately 64

20   percent (211,341) of those cases pending more than 90 days and approximately 32 percent

21   (106,738) pending more than one year."  CIS Ombudsman, Annual Report 2007, at 37.

22   According to the CIS Ombudsman, as of June 2007, there were 31,144 FBI name check cases

23   pending more than 33 months.  The CIS Ombudsman further reports that from 2006 to 2007, the

24   number of delayed naturalization cases has increased by 93,358.  *Id.*

25          136.    The numerosity of the proposed class is further demonstrated by a November

26   2005 report of the CIS Office of Chief Counsel indicating that in the preceding one-year period,

27   there were 1,000 federal lawsuits filed challenging FBI name check delays.

28          137.    There are questions of law and fact common to the proposed class that

31

predominate over any questions affecting only the individually named Plaintiffs, including: (1) whether CIS's failure to adjudicate the applications for naturalization of the proposed plaintiff class within 120 days of the date of naturalization examinations due to delays in FBI name checks violates the Due Process Clause, the Immigration and Nationality Act and implementing regulations, and the Administrative Procedure Act; (2) whether CIS's imposition of a name check requirement violates the notice and comment provision of the Administrative Procedure Act; (3)  whether the FBI's actions in unlawfully withholding and unreasonably delaying the completion of FBI name checks, with the full knowledge that CIS requires the completion of such FBI name checks for adjudication of applications for naturalization of the proposed plaintiff class, violates the Constitution and laws of the United States, including the Administrative Procedure Act; and (4) whether CIS and the FBI's failure to set deadlines for completing FBI name checks and failure to take all the other reasonable steps necessary to complete the adjudication of applications for naturalization of the proposed plaintiff class, violates the Constitution and laws of the United States, including the Administrative Procedure Act.

138.    The claims of the named Plaintiffs are typical of the claims of the proposed class. The named Plaintiffs, like all class members, have not had or did not have their applications for naturalization adjudicated despite the passage of over 120 days since their naturalization examinations; they have been or were denied timely completion of FBI name checks which CIS requires for adjudication of their applications; and their applications for naturalization have been or were unlawfully withheld or unreasonably delayed on the basis of FBI name checks.

139.    Like the named Plaintiffs, members of the proposed class are suffering or have suffered prejudice from the delay of their naturalization applications, including the inability to participate in civic society by voting and jury service, the effective inability to sponsor immediate relatives for lawful permanent resident status, the inability to travel freely as U.S. citizens, and the harm of having an uncertain status in the country they have made their home and where they have established themselves as part of a community.

140.    The named Plaintiffs will fairly and adequately represent the interests of all members of the proposed class because they seek relief on behalf of the class as a whole and

1    have no interests antagonistic to other members of the class.  The named Plaintiffs are

2    represented by pro bono counsel, including the ACLU Immigrants' Rights Project, the ACLU of

3    Northern California and the Asian Law Caucus, who have extensive expertise in class action

4    litigation and/or immigrants' rights cases.  Finally, the Defendants have acted on grounds

5    generally applicable to the class, thereby making appropriate final injunctive relief with respect

6    to the class as a whole.

7                    **DECLARATORY AND INJUNCTIVE RELIEF ALLEGATIONS**

8          141.    An actual and substantial controversy exists between Plaintiffs and Defendants as

9    to their respective legal rights and duties.  Plaintiffs contend that Defendants' actions violate

10   Plaintiffs' rights and the rights of proposed class members.  Defendants contend the opposite.

11         142.    Defendants' failure to timely process Plaintiffs' naturalization applications,

12   including any name check, has caused and will continue to cause irreparable injury to Plaintiffs

13   and other class members.  Plaintiffs have no plain, speedy, and adequate remedy at law.

14         143.    Based on the foregoing, the Court should grant declaratory and injunctive relief

15   under 28 U.S.C. §§ 1361, 2201, 2202 and 5 U.S.C. § 702.

16                                **CAUSES OF ACTION**

17                                    **COUNT ONE**

18                **RIGHT TO DE NOVO JUDICIAL DETERMINATION**

19                    **OF APPLICATION FOR NATURALIZATION**

20                                  **8 U.S.C. § 1447(b)**

21   **[By the Plaintiffs Alia Ahmadi, Amir Sayed, Biren Shah, and Mieke Vandewalle-Callinan**

22                **Against Defendants Still, Gonzalez and Chertoff]**

23         144.    The allegations contained in paragraphs 1 through 143 above are repeated and

24   incorporated as though fully set forth herein.

25         145.    Because Respondents have failed to adjudicate the naturalization applications of

26   Plaintiffs Alia Ahmadi, Amir Sayed, Biren Shah, and Mieke Vandewalle-Callinan within 120

27   days after the date of his or her naturalization examination, each of them is entitled to de novo

28   adjudication of his or her naturalization application by this Court under 8 U.S.C. § 1447(b).

146.    This Court should grant the naturalization applications of Plaintiffs Alia Ahmadi, Amir Sayed, Biren Shah, and Mieke Vandewalle-Callinan pursuant to 8 U.S.C. § 1447(b), because each of them meets all of the requirements for naturalization under chapter 2 of the Immigration and Nationality Act, 8 U.S.C. § 1421 *et seq.*, and therefore has a right to become a naturalized citizen of the United States.

## COUNT TWO

## UNREASONABLE DELAY

## IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

## [By the Named Plaintiffs on Behalf of the Proposed Class Against All Defendants]

147.    The allegations contained in paragraphs 1 through 146 above are repeated and incorporated as though fully set forth herein.

148.    The Administrative Procedure Act requires administrative agencies to conclude matters presented to them "within a reasonable time."  5 U.S.C. § 555.  A district court reviewing agency action may "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The court also may hold unlawful and set aside agency action that, inter alia, is found to be: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C); or "without observance of procedure required by law," 5 U.S.C. § 706(2)(D).  "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).

149.    The failure of Defendants Still, Gonzalez and Chertoff to adjudicate the applications for naturalization of the proposed plaintiff class within a reasonable time on the basis of delays in the processing of FBI name checks, in violation of 8 U.S.C. § 1446(d) and 8 C.F.R. § 335.3, violates the Administrative Procedure Act, 5 U.S.C. § 555(b); 5 U.S.C. §§ 706(1), 706(2)(A), 706(2)(C), 706(2)(D).

150.    The failure of Defendants Mukasey and Mueller to complete FBI name checks within a reasonable time period, with the full knowledge that CIS requires the completion of such FBI name checks for adjudication of applications for naturalization of the proposed plaintiff

1   class, violates the Administrative Procedure Act, 5 U.S.C. § 555(b); 5 U.S.C. §§ 706(1),
2   706(2)(A), 706(2)(C), 706(2)(D).

3       151.   Defendants' failure to set reasonable deadlines for completing FBI name checks,
4   to track the number and status of naturalization cases awaiting final adjudication solely on the
5   basis of FBI name checks, to track the number and status of naturalization cases awaiting final
6   adjudication for more than 120 days after the naturalization examinations, and to take all the
7   other reasonable steps necessary to complete the adjudication of applications for naturalization of
8   the proposed plaintiff class, in violation of 8 U.S.C. § 1446(d) and 8 C.F.R. § 335, violates the
9   Administrative Procedure Act, 5 U.S.C. § 555(b); 5 U.S.C. §§ 706(1), 706(2)(A), 706(2)(C),
10  706(2)(D).

11      152.   As a result of Defendants' actions, Plaintiffs and members of the proposed class
12  have suffered and continue to suffer injury.  Declaratory and injunctive relief are therefore
13  warranted.

14                                  **COUNT THREE**

15      **FAILURE TO FOLLOW NOTICE-AND-COMMENT REQUIREMENTS OF THE**
16                          **ADMINISTRATIVE PROCEDURE ACT**

17          **[By the Named Plaintiffs Against Defendants Still, Gonzalez and Chertoff]**

18      153.   The allegations contained in paragraphs 1 through 152 above are repeated and
19  incorporated as though fully set forth herein.

20      154.   By regulation, CIS is required to conduct a criminal background check before a
21  naturalization application can be granted.  8 C.F.R. § 335.2(b).  CIS does conduct or cause to be
22  conducted criminal background checks, including a check of a naturalization applicant's
23  fingerprints against the FBI's criminal records, and a check of an applicant's name against a
24  multi-agency law enforcement database known as the Interagency Border Inspection System
25  ("IBIS").

26      155.   In or about November 2002, CIS implemented an expanded version of a third
27  background check known as an FBI name check, which goes beyond the criminal background
28  check required by statute and regulation.  Unlike the databases searched during the criminal

35

1   background checks, the expanded FBI name check runs applicants' names against a database

2   containing names of persons who have never been convicted of, arrested for, or even suspected

3   of a crime – including innocent witnesses and even crime victims.   This added requirement of an

4   FBI name check constitutes a substantive rule that departed from prior policy and practice.

5         156.    Defendants implemented the expanded FBI name check requirement for

6   naturalization without giving notice and providing a period for public comment, even though the

7   name check requirement has an adverse impact on individuals whose naturalization applications

8   are delayed due to the name check.

9         157.    The Administrative Procedure Act requires that administrative agencies provide

10   the public with notice and an opportunity to comment prior to promulgating substantive rules,

11   such as implementation of new requirements for naturalization.  5 U.S.C. § 553.

12         158.    Defendants' failure to provide a notice-and-comment period prior to

13   implementing the FBI name check requirement violates the Administrative Procedure Act, 5

14   U.S.C. § 553.

15   **<u>COUNT FOUR</u>**

16   **<u>VIOLATION OF FIFTH AMENDMENT DUE PROCESS CLAUSE</u>**

17   **<u>[By the Named Plaintiffs on Behalf of the Proposed Class Against All Defendants]</u>**

18         159.    The allegations contained in paragraphs 1 through 158 above are repeated and

19   incorporated as though fully set forth herein.

20         160.    The Due Process Clause of the Fifth Amendment prohibits the government from

21   depriving any person of life, liberty or property without due process of law.

22         161.    Plaintiffs have a liberty or property interest in having their naturalization

23   applications decided within a reasonable time period.

24         162.    Defendants Still, Gonzalez and Chertoff have a pattern, practice or policy of

25   failing to adjudicate the applications for naturalization of the proposed plaintiff class within a

26   reasonable time period because of delays in FBI name checks, in violation of 8 U.S.C. § 1446(d)

27   and 8 C.F.R. § 335.  Defendants Mukasey and Mueller have a pattern, practice or policy of

28   failing to complete FBI name checks in a reasonably timely manner, with the full knowledge that

1    CIS requires the completion of FBI name checks for adjudication of applications for

2    naturalization of the proposed plaintiff class.  Defendants have a pattern, practice or policy of

3    failing to set deadlines for completing FBI name checks and to take all the other reasonable steps

4    necessary to complete the adjudication of applications for naturalization of the proposed plaintiff

5    class, in violation of 8 U.S.C. § 1446(d) and 8 C.F.R. § 335.3.  These actions by Defendants

6    violate Plaintiffs' rights to due process of law.

7         163.    As a result of Defendants' actions, Plaintiffs and members of the proposed class

8    have suffered and continue to suffer injury.  Declaratory and injunctive relief are therefore

9    warranted.

10                              **PRAYER FOR RELIEF**

11        WHEREFORE, in view of the arguments and authority noted herein, Plaintiffs pray for

12   the following relief:

13        (1)    Assume jurisdiction over the matter;

14        (2)    Certify this case as a class action lawsuit, as proposed herein;

15        (3)    Review de novo and grant the applications for naturalization of Plaintiffs

16               Ahmadi, Sayed, Shah and Vandewalle-Callinan, pursuant to 8 U.S.C. §

17               1447(b);

18        (4)    Order Defendants to promptly adjudicate, in a time period not to exceed

19               90 days, the currently pending applications for naturalization of all

20               members of the proposed class;

21        (5)    Order Defendants to adjudicate, within a reasonable time period not to

22               exceed 180 days from the date of the application date, all applications for

23               naturalization that shall be submitted in the future;

24        (6)    Order that any name checks Defendants choose to conduct shall be

25               completed in a manner that does not delay adjudication of naturalization

26               applications beyond 180 days from the date the application is received by

27               CIS;

28        (7)    Order Defendants to adopt a procedure for identifying naturalization cases

                                       37

awaiting final adjudication based solely on FBI name checks, and for

identifying naturalization cases awaiting final adjudication for more than

120 days after successful completion of the naturalization examination, or

180 days from the date CIS receives the naturalization application;

(8)     Issue a declaratory judgment holding unlawful: (a) the failure of

Defendants Still, Gonzalez and Chertoff to adjudicate applications for

naturalization within 180 days of the date of the naturalization application

is received by CIS; (b) The failure of Defendants Mukasey and Mueller to

complete FBI name checks within a reasonable time; and (c) Defendants'

failures to take all necessary steps to adjudicate applications for

naturalization within 180 days of receipt by CIS.

(9)     Award reasonable attorney fees and costs pursuant to the Equal Access to

Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412; and

(10)    Grant any and all further relief this Court deems just and proper.

[PROPOSED] THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)

1    Dated: April ___, 2008                              Respectfully submitted,

2                                                        CECILLIA D. WANG
                                                         LUCAS GUTTENTAG
3                                                        AMERICAN CIVIL LIBERTIES UNION
                                                             FOUNDATION
4                                                        IMMIGRANTS' RIGHTS PROJECT
                                                         39 Drumm Street
5                                                        San Francisco, CA 94111

6                                                        JULIA HARUMI MASS
                                                         ALAN L. SCHLOSSER
7                                                        AMERICAN CIVIL LIBERTIES UNION
                                                             FOUNDATION OF NORTHERN
8                                                            CALIFORNIA
                                                         39 Drumm Street
9                                                        San Francisco, CA 94111

10                                                       SIN YEN LING
                                                         JOREN LYONS
11                                                       ASIAN LAW CAUCUS
                                                         939 Market Street, Suite 201
12                                                       San Francisco, CA 94103
                                                         Telephone:  (415) 896-1701
13                                                       Facsimile:  (415) 896-1702

14                                                       TODD GALLINGER
                                                         Of Counsel
15                                                       COUNCIL ON AMERICAN-ISLAMIC
                                                             RELATIONS (CAIR) – SAN
16                                                       FRANCISCO BAY AREA
                                                         3000 Scott Boulevard, Suite 212
17                                                       Santa Clara, CA 95054
                                                         Telephone:  (408) 986-9874
18                                                       Facsimile:  (408) 986-9875

19
                                              By:  _____/s/_____
20                                                       CECILLIA D. WANG

21                                                       Attorneys for Plaintiffs

22

23

24

25

26

27

28

[PROPOSED] THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
PETITION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1447(B)