CECILIA D. WANG (CSB #187782)
LUCAS GUTTENTAG (CSB #90208)
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950
Email: CWang@aclu.org

Attorneys for Plaintiffs-Petitioners
*Additional counsel listed on following page

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMIR SAYED, BIREN SHAH and MIEKE VANDEWALLE-CALLINAN,<br><br>          Plaintiffs-Petitioners,<br><br>     v.<br><br>MICHAEL CHERTOFF, U.S. Secretary of Homeland Security; ROBERT S. MUELLER III, Director of the Federal Bureau of Investigation; MICHAEL MUKASEY, Attorney General of the United States; EMILIO T. GONZALEZ, Director, U.S. Department of Homeland Security, Bureau of Citizenship and Immigration Services; DAVID STILL, District Director, U.S. Department of Homeland Security, Bureau of Citizenship and Immigration Services, San Francisco District,<br><br>          Defendants-Respondents. | Case No. 07-CV-3455-WHA<br><br>**THIRD AMENDED COMPLAINT**<br><br>Judge: Hon. William A. Alsup |

Additional counsel:

JULIA HARUMI MASS (CSB #189649)
ALAN L. SCHLOSSER (CSB #49957)
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

SIN YEN LING*
JOREN LYONS (CSB #203403)
ASIAN LAW CAUCUS
939 Market Street, Suite 201
San Francisco, CA 94103
Telephone: (415) 896-1701
Facsimile: (415) 896-1702

*Application for admission pro hac vice forthcoming

Of counsel:

TODD GALLINGER (CSB #238666)
COUNCIL ON AMERICAN-ISLAMIC RELATIONS
   (CAIR) – SAN FRANCISCO BAY AREA
3000 Scott Boulevard, Suite 212
Santa Clara, CA 95054
Telephone: (408) 986-9874
Facsimile: (408) 986-9875

**INTRODUCTION**

1. This action was brought by long-time lawful permanent residents of the United States who, like tens of thousands of others around the United States, have suffered from extraordinary, systemic delays in the processing of naturalization applications. Defendant officials of U.S. Citizenship and Immigration Services ("CIS") and the Federal Bureau of Investigation ("FBI") have caused these system-wide delays – which have often left applicants waiting for an answer for years – through their policies and practices concerning a background check known as an "FBI name check." As currently implemented, the FBI name check is run against a wildly overinclusive database that contains not only the names of criminals, suspects and targets of investigations, but also countless innocent persons who happen to come into contact with the FBI, such as crime victims and witnesses.

2. CIS's own ombudsman has criticized the rampant delays in the processing of naturalization applications. In an annual report released in June 2007, the CIS Ombudsman concluded: "FBI name checks, one of several security screening tools used by USCIS, continue to significantly delay adjudication of immigration benefits for many customers, hinder backlog reduction efforts, and may not achieve their intended national security benefits. FBI name checks may be the single biggest obstacle to the timely and efficient delivery of immigration benefits. The problem of long-pending FBI name checks cases <u>worsened</u> during the reporting period [of June 2006 to June 2007]." CIS Ombudsman, Annual Report 2007, at 37 (emphasis in original), available at http://www.dhs.gov/xabout/structure/gc_1183751418157.shtm.

3. Because of their FBI name check procedures, the Defendants are engaging in rampant violations of 8 C.F.R. § 335.3, a federal regulation providing that naturalization applications shall be adjudicated within 120 days of an initial examination (*i.e.*, a naturalization interview).

4. The original Complaint in this matter, as well as the First and Second Amended Complaints, included individual claims for *de novo* adjudication of the plaintiffs' naturalization applications by the Court pursuant to 8 U.S.C. § 1447(b), and also claims under the Administrative Procedure Act ("APA") and Due Process Clause of the Fifth Amendment for

1   declaratory and injunctive relief from the Defendants' policy, pattern and practice of systemic
2   delays in the naturalization process and for Defendants' failure to follow the APA's notice-and-
3   comment requirements.  By an order dated October 15, 2007, the Court granted the Defendants'
4   motion to dismiss the APA and Due Process claims.  By a separate order and judgment filed on
5   April 25, 2008, the Court granted Plaintiffs' request for a partial judgment under Federal Rule of
6   Civil Procedure 54(b) as to the dismissal of the APA and Due Process claims and also granted
7   leave to add new plaintiffs in order to maintain a live controversy for purposes of appealing the
8   partial judgment.
9       5.   The new Plaintiffs, Amir Sayed, Biren Shah and Mieke Vandewalle-Callinan, are
10  long-time lawful permanent residents of the United States.  Each of them has sought to become a
11  citizen of this country by applying for naturalization, having met all statutory requirements.
12  Each of the Plaintiffs has joined this lawsuit because of Defendants' policies and practices
13  causing unreasonable and prolonged delays in adjudicating Plaintiffs' naturalization applications.
14  Each Plaintiff successfully passed the naturalization examination and cleared criminal
15  background checks at least three years prior to joining this lawsuit.  Each Plaintiff continues to
16  await adjudication of his or her application.
17      6.   Plaintiffs Sayed, Shah and Vandewalle-Callinan seek to be naturalized by this
18  Court, as Congress has authorized through the Immigration and Nationality Act.  *See* 8 U.S.C. §
19  1447(b) (district court may make a determination of a naturalization application if there has been
20  no adjudication within 120 days of the date of examination – i.e., the applicant's naturalization
21  interview).  *See United States v. Hovsepian*, 359 F.3d 1144, 1151 (9th Cir. 2004) (en banc).
22      7.   Anticipating the possibility that the Court may deem completion of the FBI name
23  check a necessary precondition for its *de novo* adjudication of Plaintiffs' petitions under 8 U.S.C.
24  1447, Plaintiffs also bring claims under the APA and, in the alternative, 28 U.S.C. § 1361 against
25  Defendant FBI officials specifically for the purpose of obtaining injunctive relief requiring
26  completion of the FBI name check.  Plaintiffs' APA claim against the FBI is brought with the
27  understanding that the Court's order dated October 15, 2007, dismissing Plaintiffs' unreasonable
28  delay claim under the APA, was based on the Court's conclusion that 8 U.S.C. § 1447(b)

provided a legal remedy that precluded systemic APA relief against the CIS defendants. Plaintiffs' instant claims against the FBI defendants are distinguishable in that Plaintiffs have no remedy, other than the APA or mandamus, to seek injunctive relief requiring the FBI's completion of the name check process in their individual cases.

8. Plaintiffs' naturalization has been delayed not because of any individual fault in their applications, but as a result of the Defendants' policies and practices of unreasonable and systemic delays in the naturalization and FBI name check processes nationwide. But for the Court's April 25, 2008, order denying class certification, each of the Plaintiffs would seek to serve as class representatives for purposes of pursuing systemic claims for relief from Defendants' policies and practices under the APA and Due Process Clause.

9. Plaintiffs all have spent many years in the United States and have made this Nation their home. They seek to pledge their allegiance to their adopted country and to participate fully in U.S. society as citizens. Each of the Plaintiffs has met the statutory requirements to become a U.S. citizen, and in many cases they have sought relief through requests to members of Congress and through formal and informal inquiries with the government. Nonetheless, each of the Plaintiffs has been stymied in his or her efforts by the unreasonable and extraordinary delay of the Defendants.

10. As a result of the Defendants' failure to process naturalization applications within a reasonable time, under timelines set by Congress, Plaintiffs have been unable to participate in civic society by voting and jury service. Plaintiffs also have been unable expeditiously to petition for lawful permanent residency on behalf of immediate relatives living abroad. Plaintiffs also have been unable to participate freely as U.S. citizens in the Visa Waiver Program or to travel abroad and to return to the United States without fear of exclusion.

## **JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over this matter pursuant to 8 U.S.C. § 1447(b) (district court jurisdiction to adjudicate delayed naturalization applications), 5 U.S.C. § 702 (Administrative Procedure Act), 28 U.S.C. § 1361 (writ of mandamus) and 28 U.S.C. § 1331 (federal question).

12. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 1391(e). Plaintiffs sue the Defendants in their official capacities as officers and employees of the United States. A substantial portion of the events giving rise to this Complaint occurred within this District, where the Plaintiffs' applications for naturalization are pending before the San Francisco District of the CIS. In addition, venue is proper in this District pursuant to 8 U.S.C. § 1447(b), which provides that a petition for de novo review of a naturalization application shall be filed in the district in which the applicant resides. All of the Plaintiffs live within this District.

## PARTIES

13. Plaintiff Amir Sayed lives in Oakland, California. He is a citizen of Pakistan and a lawful permanent resident of the United States. He applied for naturalization in 2004 and passed his naturalization examination in February 2005. His naturalization application has not been adjudicated.

14. Plaintiff Biren Shah is a native and citizen of India. He is a lawful permanent resident of the United States and lives in San Jose, California. He applied for naturalization in 2004 and passed his naturalization examination in May 2005. His naturalization application has not been adjudicated.

15. Plaintiff Mieke Vandewalle-Callinan is a native and citizen of Belgium. She is a lawful permanent resident of the United States and lives in San Francisco, California. She applied for naturalization in 2004 and passed her naturalization examination in August 2004. Her naturalization application has not been adjudicated.

16. Defendant Michael Chertoff is the U.S. Secretary of Homeland Security and has ultimate responsibility for CIS, a subunit of the Department of Homeland Security. Mr. Chertoff is ultimately responsible for the administration of all immigration and naturalization laws, including the processing and determination of applications for naturalization. He is sued in his official capacity.

17. Defendant Robert S. Mueller III is the Director of the Federal Bureau of Investigation. Mr. Mueller is ultimately responsible for the processing of FBI name checks submitted by CIS to the FBI during the naturalization process. Mr. Mueller is sued in his official

capacity.

18. Defendant Michael Mukasey is the Attorney General of the United States. He is the head of the U.S. Department of Justice, which encompasses the FBI. Mr. Mukasey is also jointly responsible with Mr. Chertoff for enforcement of immigration laws. Mr. Mukasey is sued in his official capacity.

19. Respondent Emilio T. Gonzalez is the Director of CIS. Mr. Gonzalez is responsible for the processing and determination of all applications for naturalization submitted to CIS. He is sued in his official capacity.

20. Respondent David Still is the District Director for the San Francisco District of CIS. Mr. Still is responsible for applications for naturalization pending in the San Francisco District. Mr. Still is sued in his official capacity.

## LEGAL FRAMEWORK

### General Requirements for Naturalization

21. Federal immigration law allows persons who have been residing in the United States as lawful permanent residents to become United States citizens through a process known as naturalization.

22. A person seeking to naturalize must meet certain requirements, including an understanding of the English language and history and civics of the United States; a sufficient period of physical presence in the United States; and good moral character. 8 U.S.C. §§ 1423, 1427(a).

23. Persons seeking to naturalize must submit an application for naturalization to CIS. 8 U.S.C. § 1445. CIS is the agency that is responsible for adjudicating naturalization applications.

24. Once an application is submitted, CIS conducts a criminal background investigation of each naturalization applicant. 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1.

25. After a criminal background investigation is completed, CIS schedules a naturalization examination, at which an applicant meets with a CIS examiner who is authorized to ask questions and take testimony. The CIS examiner must determine whether to grant or deny

the naturalization application. 8 U.S.C. § 1446(d).

26. CIS must grant a naturalization application if the applicant has complied with all requirements for naturalization. 8 C.F.R. § 335.3. Naturalization is not a discretionary benefit, but a right upon satisfaction of statutory requirements.

27. CIS must grant or deny a naturalization application at the time of the examination or, at the latest, within 120 days after the date of the examination. 8 C.F.R. § 335.3. Once an application is granted, the applicant is sworn in as a United States citizen.

28. When CIS fails to adjudicate a naturalization application within 120 days of the examination, the applicant may seek de novo review of the application by a district court. 8 U.S.C. § 1447(b). When the applicant requests district court review, the district court gains exclusive jurisdiction over the application, *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004), and it may naturalize the applicant. 8 U.S.C. § 1447(b).

29. In general, Congress has provided that applications for immigration benefits should be adjudicated within 180 days of the initial filing of the application. 8 U.S.C. § 1571. The President has also expressed that view. *See* Remarks by the President at INS Naturalization Ceremony (July 10, 2001), available at http://www.whitehouse.gov/news/releases/2001/07/print 20010710-1.html (urging immigration agencies to adopt standard of six-month processing time for applications for immigration benefits).

**Pre-Naturalization Background Checks**

30. Under 8 U.S.C. § 335.2, CIS should not schedule the "initial examination" (i.e., the naturalization interview) until the agency has received "a definitive response from the [FBI] that a full criminal background check" has been completed. The regulation defines a "definitive response" as one of the following: (1) FBI confirmation that the applicant "does not have an administrative or criminal record; (2) FBI confirmation that the applicant does have such a record; or (3) FBI confirmation that the applicant's fingerprint cards "have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected." 8 U.S.C. § 335.2(b). Thus, 8 C.F.R. § 335.2(b) contemplates that the "criminal background check" required by regulation is based upon fingerprint records, and is not a "name

check." The FBI fingerprint check is run against criminal records showing arrests, criminal charges not leading to convictions, and criminal convictions.

31. Nonetheless, CIS runs two name-based background checks on each naturalization applicant. First, CIS runs each applicant's name against the Interagency Border Inspection System ("IBIS"), a centralized records system combining information on "national security risks, public safety issues and other law enforcement concerns" from multiple law enforcement and intelligence agencies. Second, in 1998, CIS instituted the FBI name check. As originally implemented in 1998, the FBI name check ran a naturalization applicant's name against a database containing the names of persons who are or were the subjects of an FBI investigation.

32. In 2002, without giving public notice and an opportunity for public comment, CIS drastically expanded the scope of the FBI name check, so that an applicant's name would be checked against not only the names of investigation subjects, but also names of innocent people such as victims and witnesses who are merely mentioned in FBI files.

33. As expanded in 2002, the FBI name check requirement is implemented in such a manner that it is highly likely that an applicant may be identified erroneously as a person "of interest" to the FBI, thereby delaying adjudication of the naturalization application, even though the applicant has committed no crimes, does not pose any kind of security risk, and has never been a suspect in any investigation. For example, the name check may result in a "hit" when the applicant's name is mentioned in FBI records because he has been an innocent witness or victim of a crime, has undergone an employment-related security clearance in the past, or has assisted the FBI in an investigation. Thus, since 2002, the FBI name check has not been effectively implemented to uncover national security risks, criminal conduct, or other wrongdoing.

34. The FBI name check procedure is also highly likely to result in false positive results because the FBI runs not only a naturalization applicant's actual name, but also various alternate spellings and permutations of the applicant's given and family names.

35. Plaintiffs are informed and believe that CIS does not adjudicate applications for naturalization until it receives a completed FBI name check. Neither CIS nor the FBI imposes any binding time limits for completion of FBI name checks. As a result of their policies,

practices and procedures, including their failure to require FBI name checks to be completed in a reasonable time period, Defendants are responsible for systemic, years-long delays in adjudicating tens of thousands of naturalization applications nationwide, including those submitted by Plaintiffs.

36.     Although Defendants have asserted that the FBI name checks are necessary for national security, there is no justification for delays in the FBI name check process.  Delays in the FBI name check process do not serve the interest of national security.  Indeed, as the CIS Ombudsman has reported, "the current USCIS name check policy may *increase* the risk to national security by prolonging the time a potential criminal or terrorist remains in the country." CIS Ombudsman, Annual Report 2006 at 25 (emphasis added), available at http://www.dhs.gov/xlibrary/assets/CISOmbudsman_AnnualReport_2006.pdf.  In his most recent annual report, the CIS Ombudsman expressed his "agree[ment] with the assessment of many case workers and supervisors at USCIS field offices and service centers that the FBI name check process has limited value to public safety or national security, especially because in almost every case the applicant is in the United States during the name check process, living or working without restriction."  CIS Ombudsman, Annual Report 2007 at 40.

37.     Upon information and belief, CIS has not reported any instance of a security threat discovered through an FBI name check that was not also disclosed through criminal background checks such as the fingerprint check and IBIS database check.  The CIS Ombudsman has questioned CIS's claims that the FBI name check provides information that is not otherwise available through other, existing background checks in the naturalization process. In his 2007 annual report, the CIS Ombudsman states: "It is unclear how many of the FBI name check 'responses' also were revealed by one or more of the other security checks conducted for the [naturalization] applications.  To date, the Ombudsman has been unable to ascertain from USCIS the total number of actual problem cases that the agency discovered exclusively as a result of the FBI name check.  The Ombudsman understands that most, if not all, of the problem cases which would result in an eventual denial of benefits also can be revealed by the other more efficient, automated criminal and security checks that USCIS initiates."  CIS Ombudsman,

1   Annual Report 2007, at 41.

2   **FACTS**

3   **Plaintiffs**

4       38.    Amir Sayed is a 47-year-old native and citizen of Pakistan.  He became a lawful
5   permanent resident of the United States in 2000, based upon the petition of his wife, who is a
6   U.S. citizen.

7       39.    Mr. Sayed lives in Oakland, California, with his wife of nine years.  Mr. Sayed is
8   employed as the Chief Executive Officer of three small businesses, Pacific Fleet and Leasing, an
9   automobile leasing company; Pacific E-Port Trading, an import-export business; and Pacific
10  Fleece and Apparel, a clothing import business.  Mr. Sayed also is a part-owner of the first two
11  companies.

12      40.    In or about June 2004, Mr. Sayed applied for citizenship.  He successfully
13  completed his naturalization interview and criminal background checks on or about February 7,
14  2005.  He meets all other statutory requirements for naturalization.

15      41.    At the end of his naturalization interview, a CIS officer told Mr. Sayed that he had
16  passed his examination and that he should expect a notice of oath ceremony within a few days.

17      42.    To date, CIS has failed to adjudicate Mr. Sayed's naturalization application.  In
18  the two years since passing his examination in February 2005, Mr. Sayed has visited the CIS
19  office in Oakland at least twice, and was told that his application is pending due to a name check.
20  Mr. Sayed also has emailed CIS on at least two occasions to inquire about the delay, but never
21  received any response.  In or about February 2007, Mr. Sayed wrote to CIS to inquire formally
22  about the delay in his naturalization and received a form letter informing him that his application
23  was still pending due to a name check.  Mr. Sayed's private attorney, who is a family friend,
24  wrote to CIS in or about February 2008 and received a similar form letter advising that Mr.
25  Sayed's application is being delayed due to a name check.

26      43.    Mr. Sayed has suffered serious prejudice from the delay in adjudication of his
27  naturalization application.  One of his employers, Pacific E-Port Trading, has recently opened a
28  satellite office in Vietnam and Mr. Sayed will be required to travel there on business frequently.

11
THIRD AMENDED COMPLAINT
No. 07-CV-3455-WHA

1  As a citizen of Pakistan, it has been difficult for him to arrange a visa to travel to Vietnam and
2  for other countries through which he must pass en route to Vietnam.  Although Mr. Sayed has
3  obtained the necessary visas for one upcoming business trip with great difficulty, he will
4  continue to face difficulty in obtaining visas in the future.  Mr. Sayed is informed and believes
5  that if he were a U.S. citizen, he would not face difficulties in obtaining a visa for travel to
6  Vietnam and other Asian countries.

7        44.    Biren Shah is a 39-year-old native and citizen of India.  He came to the United
8  States in or about June 1995 as an H1-B visa holder, sponsored by his then-employer HCL
9  America.  He became a lawful permanent resident of the United States in or about March 1999
10 through the sponsorship of another employer, Tekedge Corporation.

11       45.    Mr. Shah lives in San Jose, California with his wife, who is also a lawful
12 permanent resident seeking citizenship, and his two U.S. citizen children, ages six and eleven.
13 Mr. Shah is employed by Electronic Data Systems Corporation in Mountain View, where he has
14 worked as a lead database administrator for approximately six years.  During his nearly 13 years
15 in the United States, Mr. Shah has worked at several Silicon Valley firms as a software engineer.

16       46.    In or about January 2004, Mr. Shah applied for citizenship.  He successfully
17 completed his criminal background checks and passed his naturalization application in or about
18 May 2005.  He meets all other statutory requirements for naturalization.  At the end of Mr.
19 Shah's naturalization examination, a CIS officer informed him that he had passed the
20 examination, including the English language and U.S. history and civics tests, but that his
21 application could not be adjudicated because of a pending FBI name check.

22       47.    During the pendency of his naturalization application, Mr. Shah has made
23 repeated inquiries of CIS about the delay in his naturalization.  CIS has responded by informing
24 Mr. Shah that his background or name checks are pending.  In or about December 2005, Mr.
25 Shah filed a Freedom of Information/Privacy Act request with the Federal Bureau of Information
26 and received a response indicating that he has never been "of investigatory interest" to the FBI.
27 In addition, Mr. Shah has sought the assistance of Senators Dianne Feinstein and Barbara Boxer
28 and U.S. Representative Mike Honda.  He has also written to President Bush, First Lady Laura

Bush, and Vice President Dick Cheney regarding the delay of his naturalization application. Despite inquiries made by Mr. Shah's Congressional representatives and others on his behalf, CIS has failed to adjudicate his application.

48.     Mr. Shah desires to take his family for an extended visit to India to be with his parents, but he has been unable to without jeopardizing his naturalization application by interrupting his physical presence in the United States.

49.     Mieke Vandewalle-Callinan is a 36-year old native and citizen of Belgium.  She came to the United States as a fiancée visa-holder in 1992.  She married Sean Michael Callinan, a U.S. citizen, on February 29, 1992, and they petitioned for her adjustment of status.  On March 24, 1992, she became a lawful permanent resident.  She and her husband divorced on May 3, 2000.  Ms. Vandewalle-Callinan has been working at Grand Jean Capital Management, an investment company in San Francisco, for six years as a data manager.   She has been living in the Bay Area for approximately eleven years.

50.     In or about January 2004, Ms. Vandewalle-Callinan submitted her citizenship application.  She successfully completed criminal background checks and passed her naturalization examination on August 12, 2004.  She meets all other statutory requirements for naturalization.  At the end of her interview, the CIS officer informed her that she passed the tests for English and U.S. history and government.

51.     In 2004, following the interview date, Ms. Vandewalle-Callinan contacted CIS about every two to three months to inquire about the status of her citizenship application.  Since the interview, she has made a total of ten to fifteen inquiries with Citizenship and Immigration Services through phone calls, in-person visits to the CIS office, and letters.  On each occasion, she has been informed by CIS that her application was pending because of national security checks.

## CAUSES OF ACTION

## COUNT ONE

## RIGHT TO DE NOVO JUDICIAL DETERMINATION

## OF APPLICATION FOR NATURALIZATION

## 8 U.S.C. § 1447(b)

**[By the Plaintiffs Against Defendants Still, Gonzalez and Chertoff]**

52. The allegations contained in paragraphs 1 through 51 above are repeated and incorporated as though fully set forth herein.

53. Because Defendants Still, Gonzalez and Chertoff have failed to adjudicate the naturalization applications of Plaintiffs within 120 days after the date of his or her naturalization examination, each of them is entitled to de novo adjudication of his or her naturalization application by this Court under 8 U.S.C. § 1447(b).

54. This Court should grant the naturalization applications of each of the Plaintiffs pursuant to 8 U.S.C. § 1447(b), because each of them meets all of the requirements for naturalization under chapter 2 of the Immigration and Nationality Act, 8 U.S.C. § 1421 *et seq.*, and therefore has a right to become a naturalized citizen of the United States.

## COUNT TWO

## UNREASONABLE DELAY

## IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

**[By the Plaintiffs Against Defendants Mukasey and Mueller]**

55. The allegations contained in paragraphs 1 through 54 above are repeated and incorporated as though fully set forth herein.

56. The Administrative Procedure Act requires administrative agencies to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555. A district court reviewing agency action may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The court also may hold unlawful and set aside agency action that, inter alia, is found to be: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or short

1  of statutory right," 5 U.S.C. § 706(2)(C); or "without observance of procedure required by law,"
2  5 U.S.C. § 706(2)(D). "Agency action" includes, in relevant part, "an agency rule, order, license,
3  sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

4      57.    The failure of Defendants Mukasey and Mueller to complete FBI name checks for
5  Plaintiffs Sayed, Shah and Vandewalle-Callinan within a reasonable time period, with the full
6  knowledge that CIS requires the completion of such FBI name checks for adjudication of their
7  applications for naturalization, violates the Administrative Procedure Act, 5 U.S.C. § 555(b); 5
8  U.S.C. §§ 706(1), 706(2)(A), 706(2)(C), 706(2)(D).

9      58.    Plaintiffs have suffered and continue to suffer injury from the actions and
10  omissions of Defendants Mukasey and Mueller and are entitled to injunctive relief requiring
11  Defendants Mukasey and Mueller to complete their FBI name checks and to submit the results to
12  CIS.

## COUNT THREE

## WRIT OF MANDAMUS

## 28 U.S.C. § 1361

**[By the Plaintiffs Against Defendants Still, Gonzalez and Chertoff]**

17      59.    The allegations contained in paragraphs 1 through 58 above are repeated and
18  incorporated as though fully set forth herein.

19      60.    Defendants Mukasey and Mueller have a ministerial duty to the Plaintiffs to
20  timely complete the FBI name checks required by CIS for their naturalization. They have failed
21  in that duty.

22      61.    Plaintiffs have no adequate remedy at law for the failure of Defendants Mukasey
23  and Mueller to timely complete the FBI name checks required for naturalization.

24      62.    The Court should grant relief in the form of a writ of mandamus compelling
25  Defendants Mukasey and Mueller to complete the FBI name checks required by CIS for
26  Plaintiffs' naturalization.

**PRAYER FOR RELIEF**

WHEREFORE, in view of the arguments and authority noted herein, Plaintiffs pray for the following relief:

(1) Assume jurisdiction over the matter;

(2) Review de novo and grant the applications for naturalization of Plaintiffs Sayed, Shah and Vandewalle-Callinan, pursuant to 8 U.S.C. § 1447(b);

(3) To the extent the Court deems necessary for the granting of relief under 8 U.S.C. § 1447(b), order injunctive relief requiring Defendants Mukasey and Mueller to complete immediately the FBI name checks for each of the Plaintiffs pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1), 706(2)(A), 706(2)(C), and 706(2)(D).

(4) In the alternative to granting injunctive relief under the Administrative Procedure Act, and to the extent the Court deems necessary for the granting of relief under 8 U.S.C. § 1447(b), compel Defendants Mukasey and Mueller to complete immediately the FBI name checks for each of the Plaintiffs pursuant to the Court's mandamus authority under 28 U.S.C. § 1361;

(5) Award reasonable attorney fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412; and

(6) Grant any and all further relief this Court deems just and proper.

1 | Dated: May 15, 2008

Respectfully submitted,

CECILLIA D. WANG
LUCAS GUTTENTAG
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111

JULIA HARUMI MASS
ALAN L. SCHLOSSER
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111

SIN YEN LING
JOREN LYONS
ASIAN LAW CAUCUS
939 Market Street, Suite 201
San Francisco, CA 94103
Telephone: (415) 896-1701
Facsimile: (415) 896-1702

TODD GALLINGER
Of Counsel
COUNCIL ON AMERICAN-ISLAMIC RELATIONS (CAIR) – SAN FRANCISCO BAY AREA
3000 Scott Boulevard, Suite 212
Santa Clara, CA 95054
Telephone: (408) 986-9874
Facsimile: (408) 986-9875


By: _____/s/_____
    CECILLIA D. WANG

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I, Cecillia D. Wang, declare as follows:

I hereby certify that today I electronically filed the foregoing THIRD AMENDED COMPLAINT with the Clerk of the Court using the ECF system, which will send notification of such filing to the following email addresses:

| | | |
|---|---|---|
| Alan Lawrence Schlosser<br>American Civil Liberties Union<br>  Foundation of Northern California | *Via ECF*<br>at *aschlosser@aclunc.org* | |
| Joren Lyons<br>Asian Law Caucus | *Via ECF*<br>at *joren@asianlawcaucus.org* | |
| Lucas Guttentag<br>American Civil Liberties Union<br>  Immigrants' Rights Project | *Via ECF*<br>at *lguttentag@aclu.org* | |
| Julia Harumi Mass<br>American Civil Liberties Union<br>  Foundation of Northern California | *Via ECF*<br>at *jmass@aclunc.org* | |
| Edward A. Olsen<br>United States Attorney's Office | *Via ECF*<br>at *edward.olsen@usdoj.gov* | |
| Elizabeth J. Stevens<br>United States Department of Justice | *Via ECF*<br>at *elizabeth.stevens@usdoj.gov* | |
| Jeffrey S. Robins<br>United States Department of Justice | *Via ECF*<br>at *jeffrey.robins@usdoj.gov* | |

In addition, I hereby certify that on this 15th day of May 2008, true and correct copies of the THIRD AMENDED COMPLAINT were served by U.S. Mail on the following non-ECF filers:

Sin Yen Ling                                Todd Gallinger
Asian Law Caucus                            Council on American-Islamic Relations
939 Market Street, Suite 201                3000 Scott Boulevard, Suite 212
San Francisco, CA 94103                     Santa Clara, CA 95054

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Dated: May 15, 2008
       San Francisco, California

_____/s/_____
CECILLIA D. WANG