# EXHIBIT 1

JOSEPH P. RUSSONIELLO
United States Attorney
JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
Chief, Civil Division
EDWARD A. OLSEN, CSBN 214150
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-6915
    FAX: (415) 436-6927

GREGORY G. KATSAS
United States Department of Justice
Acting Assistant Attorney General, Civil Division
ELIZABETH J. STEVENS VSBN 47445
Assistant Director, District Court Section
Office of Immigration Litigation
JEFFREY S. ROBINS NY SBN 4355244
Trial Attorney, District Court Section

    P.O. Box 868, Ben Franklin Station
    Washington, D.C. 20044
    Telephone: (202) 616-1246
    FAX: (202) 305-7000

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMIR SAYED, et al., ) | No. C-07-3455-WHA |
|     Plaintiffs, ) | |
|     v. ) | DECLARATION OF RANDALL RICKS |
| MICHAEL CHERTOFF, et al., ) | |
|     Defendants. ) | |

Declaration of Randall Ricks
C-07-3455-WHA

I, Randall Ricks, do hereby declare and say:

1. I am employed by the United States Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"), formerly known as the Immigration and Naturalization Service ("INS"). I am employed as a Senior Adjudications officer at the San Francisco District Office, in the Citizenship Branch of the Adjudications Unit which oversees the adjudication of applications for Naturalization. I have been employed by the Department of Homeland Security (formerly Department of Justice), since May 26, 1998. During that time I have worked as an adjudications officer, supervisory adjudications officer, and senior adjudications officer.

2. I make this declaration based upon my personal knowledge and information made known to me in the course of my professional duties and responsibilities.

3. When a lawful permanent resident applies to USCIS for citizenship by filing an N-400 Application for Naturalization (or other application seeking an immigration benefit), the agency conducts numerous mandatory criminal and national security background checks. These checks are conducted both to enhance national security and to ensure the integrity of the immigration and naturalization processes. These security and background checks serve to screen out aliens who may seek to harm the United States and its citizens or who may be seeking immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. Pursuant to established agency policy, all required security checks must be completed prior to adjudication of the application.

4. In addition to record checks of the alien applicant against United States Department of Homeland Security's own immigration record(s) systems, these background checks include, but are not limited to (a) FBI fingerprint check for criminal history records on the alien applicant; (b) a check against the DHS-managed Interagency Border Inspection System (IBIS). The IBIS system contains records and information from more than 20 federal law enforcement and intelligence agencies including the Central Intelligence

1    Agency (CIA), FBI and other divisions of the U.S. Department of Justice, the Department
2    of State, DHS Customs and Border Protection (CBP) and other DHS agencies; and (c) an
3    FBI Name Check, which is run against FBI investigative databases containing information
4    that is not necessarily revealed in the FBI's fingerprint check or IBIS check. The records
5    maintained in the FBI name check process consist of administrative, applicant, criminal,
6    personnel and other files compiled by law enforcement agencies.

7  5. Once USCIS receives an Application for Naturalization, N-400, the applicant's file is opened and an electronic record of that application is created. The generation of an FBI Name check request is automated through our DHS systems. USCIS maintains reports from FBI regarding the status of the FBI name check requests. If a problem is reported, the FBI name check request will be initiated a second time and resent manually or electronically to the FBI for a response. In this way, USCIS ensures that the FBI has in fact received all requests for name checks. If an application is otherwise approvable, but all the background checks are not completed, the application is placed on a pending background check shelf.

16  6. All files on the background check shelf are audited regularly in order to identify those in which a response from the FBI has been received. This audit is conducted at least every week. In this manner the agency ensures that as FBI responses are received, files are expeditiously released for adjudication.

20  7. Although in the majority of FBI name checks no matches are found, some cases involve complex or highly sensitive information and cannot be resolved quickly.

22  8. Resolving name checks is a multi-agency effort with a central system that combines information from these various sources and databases to compile information regarding national security risks, public safety concerns, and other law enforcement concerns.

25  9. For most applicants, USCIS can quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. However, due both to the sheer volume of security checks USCIS conducts, and the fact that USCIS must await responses from the FBI or other relevant agencies that conduct

Declaration of Randall Ricks
C-07-3455-WHA                                    1

some of the required security checks, some delays on individual applications are unavoidable and may be lengthy. Moreover, in some cases a background or security check will reveal that positive (derogatory) information on the subject alien is possessed by some agency other than USCIS without necessarily revealing the substance of that information. In such cases, USCIS works closely with the other law enforcement or intelligence agencies to obtain all available information concerning the positive result in order to properly evaluate its significance. Even where the FBI or a third agency has provided a final response, a case may still be considered pending where the response requires further investigation or review by USCIS or another agency. It is vitally important to thoroughly screen each applicant in order to resolve all concerns of a law enforcement or national security nature before determining that an individual is eligible for an immigration benefit.

10. USCIS reports the average processing times for specific applications and petitions on the USCIS website. This information reflects only average processing times on the date the information is published. Average processing times fluctuate widely and will sometimes even regress for a specific form type due to a number of factors, including a reallocation of agency resources, reordering of the agency's priorities, and other reasons. Additionally, not every application will require the same level of inquiry. Some may require a more detailed level of review and or investigation from either the USCIS or other agencies for a number of reasons ranging from the alien's eligibility for the benefit sought to national security concerns. Accordingly, even when it appears that the adjudication of a particular application is outside the average processing time, this does not establish that the delay is unreasonable or even due to factors within the control of USCIS.

11. The FBI has an established procedure of processing FBI Name Check requests from USCIS chronologically based on the date the request is forwarded. It is important to note that whenever a particular application or petition receives expedited processing and is moved up in the queue, it is at the expense of those still unadjudicated petitions or applications that bear an earlier filing date.

Declaration of Randall Ricks
C-07-3455-WHA                                  2

12. I have reviewed the administrative file of Plaintiff Amir Sayed, A 078 064 514, and thus am familiar with the facts and circumstances of the case.

13. The record reflects that Amir Sayed became a lawful permanent resident on September 26, 2000. He filed an N-400 Application for Naturalization on June 14, 2004. An FBI name check was initiated on June 30, 2004, the FBI completed the name check on March 21, 2008, and USCIS received the results of that name check on May 9, 2008. Amir Sayed was interviewed regarding his application for naturalization on February 7, 2005. On May 21, 2008 and May 27, 2008, USCIS requested that Amir Sayed resubmit his fingerprints and complete an affidavit regarding his activities since his interview on February 7, 2005. Once USCIS receives the requested information and required security checks are completed, USCIS is prepared to adjudicate Plaintiff's application.

14. I have reviewed various USCIS databases containing information regarding administrative file of the Plaintiff Biren Shah, A 076 373 283, and thus am familiar with the facts and circumstances of the case.

15. The record reflects that Biren Shah became a lawful permanent resident on March 26, 1999. He filed an N-400 Application for Naturalization on February 10, 2004. An FBI name check was initiated on March 12, 2004, the FBI completed the name check on March 11, 2008, and USCIS received the results of that name check on May 9, 2008. Biren Shah was interviewed regarding his application for naturalization on May 2, 2005. On May 15, 2008, prior to the filing of Plaintiffs' Third Amended Complaint in the matter captioned above, USCIS adjudicated and approved Plaintiff Shah's naturalization application.

16. I have reviewed the administrative file of the plaintiff, Mieke Vandewalle-Callinan, A 71 929 120, and thus am familiar with the facts and circumstances of the case.

17. The record reflects that Mieke Vandewalle-Callinan became a lawful permanent resident on March 24, 1992. She filed an N-400 Application for Naturalization on January 27, 2004. An FBI name check was initiated on March 5, 2004, the FBI completed the name check on March 20, 2008, and USCIS received the results of that name check on March 25, 2008. Mieke Vandewalle-Callinan was interviewed regarding her application for naturalization on

August 12, 2004. On April 2, 2008 USCIS requested that Mieke Vandewalle-Callinan resubmit her fingerprints and complete an affidavit regarding her activities since her interview on August 12, 2004. USCIS received the requested information from Mieke Vandewalle-Callinan on April 25, 2008. USCIS is prepared to adjudicate Plaintiff Vandewalle-Callinan's naturalization application but for the United States District Court for the Northern District of California's exclusive jurisdiction over that application.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of May, 2008 at San Francisco, California.

                                                          Randall Ricks
                                                         Senior Adjudications Officer